**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **CASSAVA SCIENCES, INC.,** | : |
| | : |
| Plaintiffs, | : |
| | : |
| - against - | : |
| | : |
| **DAVID BREDT; GEOFFREY PITT;** | : |
| **QUINTESSENTIAL CAPITAL MANAGEMENT** | : |
| **LLC; ADRIAN HEILBUT; JESSE BRODKIN;** | : |
| **ENEA MILIORIS; and PATRICK MARKEY,** | : |
| | : |
| Defendants. | : |

Case No. 22-cv-9409-GHW-OTW

**ORAL ARGUMENT REQUESTED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**QUINTESSENTIAL CAPITAL MANAGEMENT LLC'S**
<u>**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

 

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
500 Fifth Avenue
New York, New York  10110
Telephone:  (212) 986-6000
Facsimile:  (212) 986-8866

*Attorneys for Defendant Quintessential Capital*
*Management LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .................................................................................................2

LEGAL STANDARD..........................................................................................6

ARGUMENT ......................................................................................................7

I.      QCM'S STATEMENTS ARE NOT DEFAMATORY AS A MATTER OF LAW ..........7

        A.      The QCM Statements Are Substantially True ........................................7

        B.      QCM's Statements Are Nonactionable Opinion...................................10

                i.      QCM's Statements Are Based on Disclosed Facts, and Cassava
                        Does  Not Challenge the Veracity of the Underlying Facts......................12

                ii.     The QCM Statements Are Accompanied by Cautionary Language..........13

                iii.    The QCM Statements are Hyperbolic or Equivocal and Carry No
                        Precise Meaning as Used ........................................................15

                iv.     QCM's Statements Lack Defamatory Meaning........................................16

                v.      Certain Statements Are Not Attributable to QCM or Are Otherwise
                        Not Actionable ..........................................................18

II.     CASSAVA HAS FAILED TO PLAUSIBLY ALLEGE ACTUAL MALICE .................19

        A.      The "Actual Malice" Standard is Applicable...........................................19

        B.      Cassava Has Failed To Plausibly Allege Actual Malice .......................20

III.    QCM'S STATEMENTS WERE NOT DEFAMATORY *PER SE*, AND
        CASSAVA HAS FAILED TO PLEAD SPECIAL DAMAGES, OR ANY
        DAMAGES AT ALL..................................................................................23

IV.     THE VOLUMINOUS COMPLAINT AND APPENDICES THERETO
        VIOLATE FEDERAL RULE OF CIVIL PROCEDURE 8 .............................................25

CONCLUSION....................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................6

*Biro v. Condé Nast*,
 171 A.D.3d 463 (N.Y. App. Div. 2019) ..............................................................18

*Biro v. Condé Nast*,
 807 F.3d 541 (2d Cir. 2015)..................................................................................20

*Biro v. Condé Nast*,
 883 F. Supp. 2d 441 (S.D.N.Y. 2012)...................................................................13

*Biro v. Condé Nast*,
 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015)....................6, 7, 19

*Brimelow v. N.Y. Times Co.*,
 2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210
 (2022)......................................................................................................................23

*BYD Co. Ltd v. VICE Media LLC*,
 531 F. Supp. 3d 810 (S.D.N.Y. 2021) *aff'd*, 2022 WL 598973 (2d Cir. 2022),
 *cert. denied*, 143 S. Ct. 103 (2022) ......................................................................21

*Celle v. Filipino Rep. Enters. Inc.*,
 209 F.3d 163 (2d Cir. 2000)............................................................................16, 17

*Chau v. Lewis*,
 771 F.3d 118 (2d Cir. 2014)........................................................................8, 15, 17

*Chau v. Lewis*,
 935 F. Supp. 2d 644 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014)............................12

*Church of Scientology Int'l v. Behar*,
 238 F.3d 168 (2d Cir. 2001)..................................................................................21

*Collins v. Travers Fine Jewels Inc.*,
 2017 WL 1184305 (S.D.N.Y. Mar. 28, 2017) ......................................................24

*Cummings v. City of New York*,
 2022 WL 2166585 (2d Cir. June 16, 2022) ............................................................7

*Cummins v. SunTrust Cap. Mkts., Inc.*,
    416 F. App'x 101 (2d Cir. 2011) ........................................................14

*Dongguk Univ. v. Yale Univ.*,
    734 F.3d 113 (2d Cir. 2013)...............................................................22

*Eros Int'l, PLC v. Mangrove Partners*,
    140 N.Y.S.3d 518 (N.Y. App. Div. 2021) .........................13, 14, 15, 16

*Eros Int'l, PLC v. Mangrove Partners*,
    2019 WL 1129196 (N.Y. Sup. Ct. Mar. 8, 2019), *aff'd*, 140 N.Y.S.3d 518
    (N.Y. App. Div. 2021) ...................................................................10, 12

*Fedak v. YIMBY, Inc.*,
    2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018) .......................................13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)......................................................................11, 22

*Hodges v. Lutwin*,
    595 F. Supp. 3d 12 (S.D.N.Y. 2022)....................................................21

*Immuno AG v. Moor-Jankowski*,
    77 N.Y.2d 235 (N.Y. 1991) .................................................................11

*Kesner v. Buhl*,
    590 F. Supp. 3d 680 (S.D.N.Y. 2022)......................................20, 21, 22

*Kesner v. Dow Jones & Co.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021)...................................................18

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)................................................................13

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (N.Y. 1992) ................................................................23

*Lindberg v. Dow Jones & Co.*,
    2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021)..................................18, 20

*Lindell v. Mail Media Inc.*,
    575 F. Supp. 3d 479 (S.D.N.Y. 2021)...................................................17

*Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*,
    2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016)..................................10, 16

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990).............................................................................15

12335020

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ...............................................................11, 19, 21

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..........................................................................................................2

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)........................................................................................11, 23

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..............................................................................................6

*Prince v. The Intercept*,
    2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022) ........................................................19, 21, 22, 23

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977).................................................................................19

*Sanders v. Sanders*,
    2022 WL 16984681 (2d Cir. Nov. 17, 2022)...................................................................4, 22

*Schubert v. City of Rye*,
    775 F. Supp. 2d 689 (S.D.N.Y. 2011)................................................................................4

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
    959 N.Y.S.2d 92 (N.Y. Sup. Ct. 2012) ....................................................................12, 14, 16

*Sorvillo v. St. Francis Preparatory Sch.*,
    607 F. App'x 22 (2d Cir. 2015) ........................................................................................12

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (N.Y. 1986) ........................................................................................11, 15

*Sweigert v. Goodman*,
    2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021).......................................................................19

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)..............................................................................................7

*Thai v. Cayre Grp., Ltd.*,
    726 F. Supp. 2d 323 (S.D.N.Y. 2010)...............................................................................24

*Valley Elecs. AG v. Polis*,
    2022 WL 893674 (2d Cir. Mar. 28, 2022)..................................................................14, 15, 16

12335020

*Weinstein v. Friedman*,
    1996 WL 137313 (S.D.N.Y. Mar. 26, 1996), *aff'd*, 112 F.3d 507 (2d Cir.
    1996) ......................................................................................................................17

*Yangtze River Port & Logistics Ltd. v. Hindenburg Rsch.*,
    2020 WL 905770 (N.Y. Sup. Ct. Feb. 25, 2020) ....................................................12

**Statutes and Rules**

Federal Rule of Civil Procedure 8 ............................................................................25

Federal Rule of Civil Procedure 12(b)(6) ..................................................................6

N.Y. Civil Rights Law § 76-a ..............................................................................19, 20

12335020

# PRELIMINARY STATEMENT

In this action, Plaintiff Cassava Sciences, Inc. ("Cassava") seeks to retaliate for the exercise of free speech in a robust public debate concerning the efficacy of a treatment for Alzheimer's disease and the legitimacy of scientific studies that Cassava itself publicized in myriad press releases. Several months after Cassava's methodology was publicly challenged by other defendants, Defendant Quintessential Capital Management LLC ("QCM"), an investment firm with a successful track record of exposing fraud in publicly-traded companies, published a report of its own in-depth investigation into Cassava and the company's development of simufilam, a drug that was (and still is) undergoing clinical trials for the treatment of Alzheimer's disease (the "QCM Report"). The QCM Report set forth a detailed analysis of already-known irregularities in Cassava's scientific research and clinical trials, and presented additional well-documented facts to support the analysis and opinions expressed in the report. Several of QCM's opinions concerning Cassava and simufilam were reiterated in a series of Twitter posts on QCM's Twitter page (together with the QCM Report, the "QCM Statements").[1]

Because Cassava does not, and cannot, dispute that the irregularities and supporting facts cited by QCM exist, the QCM Statements are, as a matter of law, substantially true. Unable to dispute facts, Cassava instead takes issue with QCM's opinions. However, Cassava's disagreement with QCM's opinions, no matter how vehement, does not make them actionable.

Even if QCM had made any false and defamatory statement about Cassava (and it did not), despite almost 500 paragraphs of allegations and 106 exhibits, the First Amended Complaint ("Complaint" or "FAC") is conspicuously devoid of facts demonstrating that QCM acted with

---

[1] A table of the QCM Statements, together with QCM's arguments as to why each statement is not actionable, is annexed as Exhibit A to the Declaration of David M. Levy dated February 6, 2023 (the "Levy Decl.").

actual malice. Cassava's conclusory assertions that QCM had an improper motive, lacked supporting evidence, knew of inconsistent information, or purposely avoided learning the truth cannot alter the fact that its prolix Complaint contains no well-pleaded facts evidencing that QCM held subjective doubts about the truth of its statements. Given that the facts in the QCM Report were amply documented or independently supported by scientific authority, the allegation that QCM "acted with actual malice" cannot, as a matter of law, be sustained. Finally, Cassava failed to plead that QCM's statements caused it special damages (or any damages), dooming its claims.

This litigation is nothing more than a transparent attempt to suppress rigorous scientific debate and deflect attention from Cassava's own misconduct, in direct conflict with our longstanding and "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Cassava's meritless claims should be dismissed with prejudice.

## BACKGROUND[2]

Cassava is a publicly traded "clinical-stage biotechnology company focused on neuroscience." FAC ¶¶ 11-12. Cassava claims that it is "currently conducting late-stage clinical studies to test the efficacy and safety" of a drug it developed for the treatment of Alzheimer's disease, simufilam. FAC ¶ 11.

Cassava made an Investigational New Drug ("IND") submission to the U.S. Food and Drug Administration ("FDA") for simufilam in 2017, and after the FDA's acceptance of the IND, proceeded with "Phase 1" and "Phase 2a" studies. FAC ¶¶ 64-70. Cassava conducted a "Phase 2b" study of sixty-four patients in March 2020 and "reported final positive Phase 2b clinical study results" purporting to indicate that simufilam "was safe and well-tolerated," notwithstanding

---

[2] All factual allegations are accepted as true for purposes of this Motion only.

12335020

"limitations around study size" and the exclusion of an unspecified number of patients. FAC ¶¶ 71, 74, 84. Cassava admits that these "positive" results were only achieved following a retesting of the Phase 2b results by Dr. Hoau-Yan Wang of the City University of New York ("CUNY") and that "the initial biomarker data showed high levels of inconsistent values without explanation for the high level or variation." FAC ¶ 214. In August 2021, Cassava announced that it had reached agreement with the FDA to begin "Phase 3" clinical studies. FAC ¶¶ 87-90.

Also in August 2021, Dr. David Bredt, "a neuroscientist who served as Vice President of Integrative Biology at Eli Lilly and Company from 2004 to 2011" and "as the Global Head of Neuroscience Discovery at Johnson & Johnson Pharmaceuticals" from 2011 to 2021, and Dr. Geoffrey Pitt, "a cardiologist at Weill Cornell Medicine," (together, the "CP Defendants"), submitted a "citizen's petition" (the "Citizen Petition") to the FDA, which was made publicly available on the official website of the FDA. FAC ¶¶ 13-14, 120, and Ex. 3. The Citizen Petition set forth "grave concerns about the quality and integrity of the laboratory-based studies surrounding [simufilam] and supporting the claims for its efficacy" and requested that the FDA "halt the clinical studies pending a thorough audit of the publications and data relied on by Cassava in support of its claims." FAC, Ex. 3 at 3.[3] Although the Citizen Petition did not conclude with certainty that Cassava had engaged in misconduct, it noted that misconduct and data manipulation

---

[3] The Citizen Petition identified three primary areas of concern in the data on which Cassava relied in its FDA filings: (1) a series of underlying papers by Dr. Wang of CUNY and Dr. Lindsay Burns of Cassava employed "Western blot" analyses "show[ing] a series of anomalies that [we]re suggestive of systematic data manipulation"; (2) the methodology used to study the effects of simufilam based on "experiments conducted on postmortem human brain tissue . . . defie[d] logic" and "the data presented again ha[d] hallmarks of manipulation"; and (3) "Cassava's presentation of clinical biomarker data from the Phase 2b trials raise[d] questions about the validity of the data" because samples in the study were first analyzed by an outside lab, which had first concluded that simufilam was "ineffective in improving the primary biomarkers end point," and it was only upon their reanalysis that the samples indicated that simufilam was effective. *Id.* at 4-5.

3

were likely explanations. *Id.* at 27. The CP Defendants submitted additional letters to the FDA on August 30 and September 9, 2021, which also were made public. FAC ¶¶ 124-30.

Cassava refused to acknowledge the legitimate concerns raised about its data, instead going on the attack. In an August 25, 2021 press release, Cassava stated that it "stands behind its science" (FAC, Ex. 63 at 1), and in a September 3, 2021 press release, stated that it "intend[ed] to vigorously defend ourselves and our stakeholders against false and misleading allegations." FAC, Ex. 65 at 1. Meanwhile, scientific journals that had published the papers by Drs. Burns and Wang that were flagged in the Citizen Petition commenced reexaminations of the data and noted errors and concerns. *See* FAC, Ex. 17 at 2 ("Expression of Concern" issued by the *Journal of Neuroscience* regarding a Dr. Wang paper).[4] And on August 27, 2021, a securities fraud class action was brought against Cassava concerning its conduct in connection with the development of simufilam.[5]

It is in the context of this rigorous public debate concerning Cassava and simufilam that on November 3, 2021, QCM published the QCM Report. *See* FAC, Ex. 8.

Prior to publication, QCM "had multiple experts review the 'Citizen Petition' and found it highly credible," but nevertheless performed its own extensive "in-depth study into Cassava," in which QCM conducted "a thorough investigation including infiltration of undercover investigators

---

[4] *See also Expression of Concern: Wang et al., (2017) PTI-125 binds and reverses an altered conformation of filamin A to reduce Alzheimer's disease pathogenesis. Neurobiol. Aging*, 55:99-114, 113 Neurobiology of Aging 152 (2022), https://www.sciencedirect.com/science/article/pii/S0197458022000562l. The journal PLoS One also retracted five articles authored by Dr. Wang and issued an expression of concern regarding a sixth. *See* Adam Marcus, *Five studies linked to Cassava Sciences retracted*, Retraction Watch (Mar. 30, 2022), https://retractionwatch.com/2022/03/30/five-studies-linked-to-cassava-biosciences-retracted/#more-124589. This Court may take judicial notice of these publications, as they are being offered for the limited purpose of demonstrating that the Expressions of Concern were issued, and not for the truth of their content. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 711 n.20 (S.D.N.Y. 2011).

[5] *See* Complaint, *Rao v. Cassava Sciences, Inc., et al.*, No. 21-cv-00751 (W.D. Tex. Aug. 27, 2021); *see Sanders v. Sanders*, 2022 WL 16984681, at *1 (2d Cir. Nov. 17, 2022) ("[W]e have held that '[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'").

4

into [Cassava's] clinical research centers, surveillance of its research facilities, background checks on the actors involved, and multiple expert opinions from industry leaders." FAC, Ex. 8 at 4, 7-8. The QCM Report details the robust diligence that QCM undertook prior to publication, including: (1) reviewing Cassava's documented history and track record; (2) conducting open-source research concerning Cassava's staff and affiliates; (3) surveilling Cassava's facilities and clinical research centers; (4) using undercover investigators who participated in the simufilam clinical research process; (5) speaking with a former employee of Cassava and its clinical research centers; and (6) obtaining expert opinions from scientists, investigators, and forensic experts. *Id.* at 8. In QCM's opinion, considering the totality of the information reviewed, simufilam "appear[ed] based on allegedly forged scientific research" because "Phase II trials have been conducted with numerous and serious irregularities." *Id.* at 4. The QCM Report specifies the evidence that supports its theory, including but not limited to Cassava's compensation policy, indicia of data manipulation, the involvement of individuals with criminal records or histories of alleged fraud, and prior alleged fraud against Cassava's predecessor in connection with a separate drug, Remoxy. *Id.* at 8-38. The QCM Report contains an unambiguous disclaimer stating that it "reflects the opinions and projections of [QCM]" and disclosing in boldface, red type that QCM was "**<span style="color:red">SHORT the stock of Cassava Sciences</span>**." *Id.* at 3. As importantly, the QCM Report disclosed virtually all of its sources in the text of the report and in an extensive series of 44 footnotes.

On November 3, 2021, the day that the QCM Report was issued, Cassava's stock price closed at $56.66 per share, down from the previous day's close of $58.07.[6] The next day, Cassava issued a press release stating that it "ha[d] been informed by the *Journal of Neuroscience* that there is no evidence of data manipulation in an article it published in July 2012" and quoted CEO Remi

---

[6] *See Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pUAd.

Barbier as stating, "I've never doubted the integrity of our people or science." FAC, Ex. 16 at 1. That day, Cassava's stock price skyrocketed to $84.40 per share, and closed at $90.91 on November 5, a more than 60% *increase* over the two days after the QCM Report was published.[7] QCM reiterated its opinions concerning Cassava in a series of Twitter posts from November 2021 through January 2022 (*see* FAC, App. A), while Cassava repeatedly issued press releases touting simufilam. *See* FAC, Exs. 17, 68, 69, 70, 71. Cassava's stock price trended downward during this period, though the FAC does not attribute that trend to particular QCM Twitter posts.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept as true all factual allegations and draw all reasonable inferences in favor of the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679.

Courts encourage the resolution of defamation claims "at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015); *see Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("Rules 8 and 12(b)(6) . . . help 'to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of

---

[7] *See Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pPUAd.

12335020

his suit.'"). "In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro*, 963 F. Supp. 2d at 279.

## ARGUMENT

## I. QCM'S STATEMENTS ARE NOT DEFAMATORY AS A MATTER OF LAW

Under New York law, a plaintiff bringing a defamation claim "must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Cummings v. City of New York*, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Id.* (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (N.Y. 2008)). Here, all of the QCM Statements are substantially true, consist of nonactionable opinion, and/or lack any defamatory meaning. Accordingly, the Complaint should be dismissed with prejudice.

### A. The QCM Statements Are Substantially True

A defamation plaintiff "must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). Courts analyzing the truth or falsity of an allegedly defamatory statement use the "substantial truth" standard, holding that a statement is "substantially true" if it "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," taking into account "[t]he entire publication, as well as the circumstances of its issuance . . . in terms of its effect upon the ordinary reader." *Id.* at 242-43. The statement

7

"need not be *completely* true" provided "the overall 'gist or substance of the challenged statement' is true." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

Cassava alleges that QCM "published and republished false statements and implications about Cassava, including but not limited to stating and implying that Cassava is a fraud that relies on fabricated research and fabricated testing results." FAC ¶ 461. Cassava claims that it "can establish it is not a fraud, its underlying research is not fabricated, and its testing results for simufilam is [*sic*] not fabricated." FAC ¶ 418. Yet the overall gist of the QCM Statements is substantially true: QCM analyzed whether there were irregularities in the scientific research and clinical trials for simufilam and identified factors that might support such a theory, including Cassava's executive compensation policy, evidence of data manipulation, involvement with individuals with criminal records or a history of alleged fraud, and prior fraud allegations concerning management's misleading statements made in connection with another drug, Remoxy. *See generally* FAC, Ex. 8; *see also* FAC, App. A. Critically, Cassava does not dispute the truth of any of these facts, but rather takes issue with QCM's opinions based on those facts.

For example, the QCM Report states:

> After reviewing the information in its entirety, **we are of the opinion that Cassava Sciences could be a scheme orchestrated by management to enrich itself at the expense of shareholders, patients, and the US Federal government.** The approval of an outrageous compensation policy, blatantly rewarding short term stock price appreciation ("pump & dump") may have provided a clear incentive for management to engage in this reckless behavior.

FAC, Ex. 8 at 4; FAC ¶¶ 140, 161(nn). Cassava alleges that this statement is false because "Cassava's management has not received cash payments tied to the Company's stock price, and may or may never receive any such cash payments, depending on final test results for simufilam and other variables." FAC ¶ 166. Even if true, this has no bearing on the alleged falsity of the statement at issue, which asserts only that Cassava *approved* a compensation policy that *could*

8

reward short-term stock price appreciation. Nowhere in the Complaint does Cassava contend that it did not approve such a policy, and anything else in the statement is pure opinion (as explicitly noted in the statement itself). Similarly, the QCM Report states:

> This alleged exercise in deception has taken place with the involvement of an astounding number of **questionable characters**: Cassava's former Senior Clinical Research Associate is a **convicted felon with a record in fraud and theft**. Cassava's prominent clinical research site (whose CEO is coauthor of critical research on Simufilam), IMIC Inc., is co-owned by a **former escort, stripper and crack addict with a criminal record for consumption and possession of cocaine**. IMIC's Principal Investigator has been hit with a rare and ominous **FDA warning letter** during recent trials. Cassava's CEO and CMO have been caught making allegedly **fraudulent statements** about Simufilam's predecessor Remoxy, which duly failed, devastating shareholders. Casava's recent board addition, Richard Barry, has been **involved with multiple frauds**.

FAC, Ex. 8 at 4-5; FAC ¶¶ 258(g), 266(a). In its Complaint, Cassava contends that it "did not know about any of the alleged criminal activities [or] criminal affiliations" and was not required to have such knowledge by FDA rules or regulations. *See* FAC ¶¶ 259-65. Conspicuously, Cassava does not contend that these factual statements are false. That Cassava did not have prior knowledge of these facts or was not required to have such knowledge, even if true, is wholly irrelevant to Cassava's defamation claims.

The same holds for each of the QCM Statements: Cassava has failed to plead facts demonstrating the falsity of the statements, each of which is substantially true. *See, e.g.*, FAC ¶ 161(mm) (title of QCM Report stating that it is "[a] warning for the US healthcare system"); *id.* ¶ 161(oo) (stating that there were irregularities in Phase II trials for simufilam); *id.* ¶ 161(rr), (ww) (stating that if QCM's allegations are substantiated, Cassava's behavior "might" or "may" constitute fraud and a violation of the False Claims Act, and that QCM has sent federal institutions copies of the QCM Report); *id.* ¶ 161(uu) (recommending that readers review the Citizen Petition and describing certain of the evidence and findings contained therein "suggesting" wrongdoing by

9

Cassava); *id.* ¶ 179(aa) (stating that forensic experts had reviewed Cassava documents and pointed out that Cassava could have easily disputed claims by releasing originals of images in question, but had not done so); *id.* ¶ 205(a)-(c) (comparing and contrasting Cassava's Phase 2b clinical study to other studies and noting potential deficiencies in Cassava's study); *see generally* Levy Decl., Ex. A. Rather than pleading facts demonstrating falsity, Cassava affirmatively *concedes* the truth of many statements, presenting benign alternative explanations for the facts presented.[8] Cassava thus has failed to satisfy its burden of establishing falsity. *See Eros Int'l, PLC v. Mangrove Partners*, 2019 WL 1129196, at *8 (N.Y. Sup. Ct. Mar. 8, 2019), *aff'd*, 140 N.Y.S.3d 518 (N.Y. App. Div. 2021) (rejecting plaintiff's allegations "target[ing] the articles' conclusions and critiqu[ing] their authors' methodologies but [] not disput[ing] the underlying facts").

## B.     QCM's Statements Are Nonactionable Opinion

New York law distinguishes "between statements of fact, which may be defamatory, and expressions of opinion, which 'are not defamatory; instead, they receive absolute protection under the New York Constitution.'" *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, 2016

---

[8] *See, e.g.*, FAC ¶ 187 ("[e]ach 'issue' and 'inconsistency' [with Western blots] identified by Defendants in their publications can be caused by adjusting and/or compressing the digital image for publication or an unintentional error"); *id.* ¶¶ 188, 238 ("'issues' and 'inconsistencies' identified by Defendants in their publications relating to Western blot analysis did not and would not change the data conclusions ultimately reached in the research and studies" because Western blots "are not quantitative evidence"); *id.* ¶¶ 195, 398 ("the research community does not have a widely accepted 'expiration date' on human post-mortem brain tissue"); *id.* ¶¶ 209, 401 ("it is common and widely accepted to exclude patients from testing results for the reasons they were included in the Phase 2b study"); *id.* ¶¶ 214, 230 ("it is a common and accepted practice to analyze testing results a second time when initial testing results show inconsistent and inexplicably high values or variations"); *id.* ¶ 220 ("it is a common and accepted practice to reanalyze testing results when initial testing results show inconsistent and inexplicably high values or variations"); *id.* ¶ 221 ("errors in displaying figures in any published reports on the Phase 2b study were typographical only"); *id.* ¶ 226 ("it is a common and accepted practice to exclude patients from testing results for the reasons they were excluded in the Phase 2b study"); *id.* ¶ 257 ("'issues' and 'inconsistencies' identified by Defendants did not and would not change the ultimate conclusions reached in the studies"); *id.* ¶ 260 ("none of the alleged criminal activities, criminal affiliations, or certification discrepancies affected or impacted the testing of simufilam at IMIC facilities"); *id.* ¶ 320 ("the process of preparing Western blot images for publication can include image cropping, splicing or other acceptable forms of image manipulation"); *id.* ¶ 363 (explaining various reasons for the "'problems' with the Western blot data," including use of x-ray films, use of low-dpi images, compression artifacts created by resizing, issues with proteins, errors in marking figures, and issues with gels and gel combs, among other explanations).

10

WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas"); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (N.Y. 1986) ("It is a settled rule that expressions of an opinion 'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.'").

New York courts use a four-factor test for differentiating statements of opinion from those asserting or implying actionable facts: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) "whether the statement is capable of being objectively characterized as true or false"; (3) "the full context of the communication in which the statement appears"; and (4) "the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Steinhilber*, 68 N.Y.2d at 292. This is not a rigid test, and courts "must have the flexibility to consider the relevant factors and to accord each the degree of importance which the specific circumstances warrant." *Id.* at 291-93. Accordingly, courts look to "the content of the whole communication, its tone and apparent purpose." *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (N.Y. 1991).

"[A]s a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013). Additionally, courts in New York have consistently held that market analyst reports and investment advice, including by short sellers, are nonactionable opinion. *See, e.g.*, *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018

11

WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018) ("defamation law cannot be used to deter 'would-be critics' from voicing their criticism as there is 'a need for information concerning the stock market in general or the successes, failures or manipulations of specific corporations in which thousands of people have invested their personal fortunes'"); *Eros Int'l, PLC*, 2019 WL 1129196, at *6-10 (dismissing defamation claims and finding that articles, reports, and Twitter posts published by defendants, including short sellers, expressed opinions); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 959 N.Y.S.2d 92 (N.Y. Sup. Ct. 2012) (considering letters and postings by defendant short sellers as a whole and finding that statements about plaintiff were nonactionable opinion); *Yangtze River Port & Logistics Ltd. v. Hindenburg Rsch.*, 2020 WL 905770, at *7 (N.Y. Sup. Ct. Feb. 25, 2020) ("[C]ourts frequently determine that investment analysis, such as that presented in the Report, constitutes the author's opinion."). This Court should do the same.

i. **QCM's Statements Are Based on Disclosed Facts, and Cassava Does Not Challenge the Veracity of the Underlying Facts**

Even if this Court were to conclude that the QCM Statements are not entirely opinion, they are at most statements of mixed opinion and fact. A plaintiff may maintain a mixed opinion-fact defamation claim only where the defendant "makes otherwise non-actionable statements of opinion," but (1) "the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it" (*Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015)), or (2) "a plaintiff challenges the opinions and the facts" (*see Chau v. Lewis*, 935 F. Supp. 2d 644, 659 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014)).

Here, QCM consistently and repeatedly disclosed the publicly-available basis for its statements. The QCM Report is replete with footnotes citing the sources on which it relied in formulating its opinions, and disclaimers stressing the importance of reviewing the hyperlinks and

12

footnotes.[9]  Similarly, QCM's Twitter posts contain hyperlinks directing readers to their sources. *See generally* FAC, App. A.  "Courts have consistently held that when an author fully sets forth the factual basis for a particular view (and that factual basis is not challenged as false), then the author's conclusion constitutes nonactionable opinion." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 461, 468 (S.D.N.Y. 2012); *see also Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("[I]f a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable."); *Fedak v. YIMBY, Inc.*, 2018 WL 6697963, at *6 (S.D.N.Y. Dec. 20, 2018) ("[T]he statement that 'Dan George is a fraud' is an opinion accompanied by a recitation of the facts on which it is based.  As a result, the statement 'is readily understood by the audience as conjecture.'"); *Eros Int'l, PLC v. Mangrove Partners*, 140 N.Y.S.3d 518, 519 (N.Y. App. Div. 2021) ("[S]tatements . . . accompanied by a recitation of facts on which they were based [are] nonactionable opinion.").  As set forth *supra* Section I.A, Cassava does not (and cannot) challenge the truth of the facts underlying QCM's opinions, and in fact concedes the truth of many (if not all) of those facts.  The QCM Statements, if not pure opinions, thus constitute nonactionable opinion based upon disclosed facts.

### ii.     The QCM Statements Are Accompanied by Cautionary Language

The QCM Report and QCM's Twitter page each include broad disclaimers that clearly convey to readers that the statements made are solely the author's opinion, and that QCM was short Cassava's stock.[10]  It is well settled that an author's use of such disclaimers supports a finding

---

[9] *See* FAC, Ex. 8 at 3 ("The information presented in this report is supplemented by footnotes, which identify QCM's sources, assumptions, estimates, and calculations.  The information contained herein should be reviewed in conjunction with the footnotes. . . .  IMPORTANT: the following text contains important <u>hyperlinks</u> and footnotes.").

[10] *See* FAC, Ex. 8 at 3 ("DISCLAIMER This report reflects the opinions and projections of Quintessential Capital Management ('QCM') . . . .  QCM does not represent that any opinion or projection will be realized.  While the information presented in this report is believed to be reliable, no representation or warranty is made concerning the accuracy of any data presented in this report or its attachments.  All information provided in this report is for informational purposes only and should not be deemed as investment advice or a recommendation to purchase or sell

that the allegedly defamatory statements are nonactionable opinion.  *See, e.g.*, *Cummins v. SunTrust Cap. Mkts., Inc.,* 416 F. App'x 101, 103-04 (2d Cir. 2011) (characterizations of option grants as "self-interested, abusive, unethical, unjustifiable, a manipulation of securities regulations, and akin to backdating" were "subjective, non-verifiable opinions," particularly where "defendants included several disclaimers that they could not say whether the options were actually backdated or otherwise illegal"); *Eros*, 140 N.Y.S.3d at 520 ("Moreover, each [] article contained a disclaimer as to the accuracy of any information reported therein, which . . . supports the conclusion that a reasonable reader would construe the statements not as fact but as opinion."); *Silvercorp Metals Inc.*, 959 N.Y.S.2d 92 ("The documents themselves reveal the disclosure of the author's self interest in that the author 'works for a firm that currently has a short position' in Silvercorp.  Such motive . . . indicates to the reader that the author is expressing his opinion.").

Here too, the QCM Statements include specific disclaimers and cautionary language that would convey to ordinary readers areas of uncertainty and the limits of QCM's analysis.  *See, e.g.*, FAC, Ex. 8 at 4 ("we are of the opinion . . . .  In our opinion . . ."); *id.* at 5 ("we believe . . . .  If our allegations are substantiated . . . .  We believe"); *id.* at 14 ("we believe might not be"); *id.* at 38 ("if these allegations are proven correct"); *id.* at 39 ("We believe . . . .  If these allegations are confirmed . . . .");[11] *see also Valley Elecs. AG v. Polis*, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (statement that "'it does not appear' that Valley is interested in providing its consumers

---

any specific security.  **QCM is SHORT the stock of Cassava Sciences (SAVA)** QCM's economic interest is subject to change without notice. . . ."); QCM (@QCMFunds), Twitter (Feb. 6, 2023, 1:23 p.m. EST), https://twitter.com/qcmfunds?lang=en ("Seeking excellence through value investing, shareholder activism, deep due diligence.  Statements are opinions.  Assume we hold positions in securities discussed").

[11] *See, e.g.*, FAC, Ex. 8 at 8 ("we suspect"); *id.* at 9 ("what looks to us like . . . .  we think it will"); *id.* at 21 ("we fear . . . .  According to our thesis . . . ."); *id.* at 24 ("we strongly suspect"); *id.* at 26 ("We believe . . . .  We deduce . . . ."); *id.* at 27 ("We believe"); *id.* at 32 ("We fear such behavior might constitute undue influence or coercion, which would be a serious violation of current regulations . . . ."); *id.* at 35 ("I am wary of"); *id.* at 36 ("my impression . . . .  I have a very hard time believing that . . . .").

12335020

accurate information" constitutes nonactionable opinion); *Eros*, 140 N.Y.S.3d at 521 (tweet beginning with "I still believe" was nonactionable opinion). QCM's prominent use of disclaimers and cautionary language renders the QCM Statements nonactionable opinion.[12]

### iii.    The QCM Statements are Hyperbolic or Equivocal and Carry No Precise Meaning as Used

"[L]oose, figurative, or hyperbolic language" cannot give rise to a defamation claim (*see Milkovich v. Lorain J. Co.*, 497 U.S. 1, 17 (1990)). "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate . . . or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole.'" *Steinhilber*, 68 N.Y.2d at 294. The QCM Statements conveyed broad and general concepts, rather than specific allegations of wrongdoing by Cassava. Use of such imprecise language constitutes nonactionable opinion, since a reader cannot reasonably construe such statements as facts capable of being proven true or false. *See Valley Elecs. AG*, 2022 WL 893674, at *1-2 & nn.1-2 (finding imprecise statements that a company marketed a product "without solid evidence," "put[] people in harm[']s way," and is "unethical" constituted nonactionable opinion).

Further, the QCM Statements were made in the context of a fiery public debate concerning the safety and efficacy of simufilam and Cassava's related research and clinical trials. A review of the QCM Statements in this context, coupled with the pervasive use of rhetorical indicators and epithets, makes clear that the statements at issue "carry no precise meaning as used" and are nonactionable opinion. *Valley Elecs. AG*, 2022 WL 893674, at *2 (finding that statements were nonactionable opinions where "the vast majority of [the defendant's] statements carry no precise meaning as used"); *Chau*, 771 F.3d at 129 ("[T]he epithets . . . 'sucker,' 'fool,' 'frontman,'

---

[12] *See* Levy Decl. Ex. A (identifying QCM Statements with cautionary and/or limiting language and disclaimers).

'industrial waste,' 'pilot' of the 'ship of doom,' and 'crooks or morons'—are hyperbole and therefore not actionable opinion."); *Eros*, 140 N.Y.S.3d at 521 (tweet that certain results "should" prove that the company is a fraud, rather than that the results *do* prove fraud, was nonactionable opinion); *Live Face on Web, LLC*, 2016 WL 1717218, at *3 ("[T]he effect of the use of the rhetorical indicators 'one can only ascertain' and 'what could be construed' is that 'the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, [which] signals the reader that what is said is opinion, and not fact.'"); *Silvercorp Metals Inc.*, 959 N.Y.S.2d 92 (finding that allegation of fraud, when read in the full context of the letters and postings at issue and the broader social context in which they were published, "leads to a conclusion that a reasonable reader would likely believe that [defendant] was conveying its opinion about Silvercorp"). With regard to QCM's Twitter posts in particular, the Second Circuit has found that publications on social media are opinion in part because social media sites are "typically regarded by the public as . . . vehicle[s] for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter." *Valley Elecs., AG*, 2022 WL 893674, at *2; *see also Live Face on Web, LLC*, 2016 WL 1717218, at *4 (finding that the use of Twitter to disseminate publications "suggest[ed] to readers that they contain opinions, not facts").[13]

###### iv.    QCM's Statements Lack Defamatory Meaning

"A plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement or publication." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). A statement is defamatory if it "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an

---

[13] *See* Levy Decl. Ex. A (identifying QCM Statements that carry no precise meaning as used or include equivocal language and/or hyperbole).

evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Id.* at 177. "To be actionable . . . the statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau*, 771 F.3d at 127. Whether a statement is capable of defamatory meaning is a question of law to be resolved by the Court, when considering "the publication as a whole" and "against the background of its issuance with respect to the circumstances of its publication." *Weinstein v. Friedman*, 1996 WL 137313, at *11 (S.D.N.Y. Mar. 26, 1996), *aff'd*, 112 F.3d 507 (2d Cir. 1996) (internal quotation marks and citations omitted).

Considering the QCM Statements as a whole and against the backdrop of their issuance—*i.e.*, a blistering public debate concerning simufilam—the heart of QCM's message is that there were irregularities in the scientific research and clinical trials for simufilam. QCM never stated definitively that Cassava intentionally caused the irregularities or grossly disregarded or mishandled the clinical trials, such that the statements necessarily could induce an ordinary reader to have an evil opinion of Cassava. In contrast, merely describing irregularities (including many that Cassava concedes) and identifying factors that support QCM's opinions would not and could not expose Cassava to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace," nor could it "induce[] an evil opinion of [Cassava] in the minds of right-thinking persons." *Celle*, 209 F.3d at 177; *see also Chau*, 771 F.3d at 127-28 (dismissing defamation claims as to certain statements that were "not reasonably susceptible to a defamatory connotation and [we]re therefore non-actionable" and stating that "[a] statement . . . can meet all of the other elements of defamation . . . but still not be actionable if it fails to rise to the necessary level of derogation"); *Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 487 (S.D.N.Y.

17

2021) (dismissing defamation claim where statements, even though potentially embarrassing or annoying, lacked defamatory meaning); *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 175 (S.D.N.Y. 2021) (finding that neither the individual statements in the article at issue, nor the article as a whole, were defamatory). The fact that Cassava's stock sharply *increased* in value after the publication of the QCM report squarely belies any assertion to the contrary.[14]

###### v.      Certain Statements Are Not Attributable to QCM or Are Otherwise Not Actionable

Cassava apparently seeks to impute to QCM certain statements made by Gabriel Grego in an interview and on Twitter. *See* FAC ¶¶ 161(ggg), 161(hhh), 239(r), 258(n); *see also id.*, App. A at 119-20. Although Mr. Grego is the sole member of QCM, Mr. Grego is not a named defendant. Since Cassava does not specifically allege the basis on which Mr. Grego's statements should be attributed to QCM, these statements are not actionable against QCM and any defamation claim based on them should be dismissed.

Similarly, Cassava's allegations that QCM republished allegedly defamatory statements made by its co-defendants fail to state a claim.[15] As an initial matter, Cassava's assertion that QCM defamed it by hyperlinking to publications by its-co-defendants must be rejected. "[A] hyperlink is merely 'the twenty-first century equivalent of the footnote" and "courts consistently agree that the publication of a hyperlink that 'reference[s] . . . an article' but 'does not restate the defamatory material is not a republication of the material.'" *Lindberg v. Dow Jones & Co.*, 2021 WL 3605621, at *5 (S.D.N.Y. Aug. 11, 2021) (citations omitted); *Biro v. Condé Nast*, 171 A.D.3d 463, 464 (N.Y. App. Div. 2019) (finding that email containing a hyperlink to an article did not

---

[14] *See* Levy Decl. Ex. A (identifying QCM Statements lacking defamatory meaning).

[15] To the extent the Complaint fails to distinguish between the conduct of QCM and its co-defendants (or improperly conflates them) and the conduct at issue is addressed in the CP MTD, QCM joins in that section of the CP MTD and incorporates by reference the arguments made therein.

constitute a republication). To the extent QCM can actually be said to have republished statements made by its co-defendants, those statements are not defamatory for the reasons set forth *supra* Sections I.A–I.B.iv, as well as in the CP Defendants' Motion to Dismiss the First Amended Complaint [ECF Nos. 74, 74-1] (the "CP MTD"), and because Cassava has failed to plead that QCM acted with actual malice or caused special damages, as set forth *infra* Sections II–III.

## II. CASSAVA HAS FAILED TO PLAUSIBLY ALLEGE ACTUAL MALICE

### A. The "Actual Malice" Standard is Applicable

Cassava is required to plead that QCM acted with actual malice under both the First Amendment and New York's Anti-SLAPP statute, N.Y. Civil Rights Law § 76-a.[16]

Under First Amendment jurisprudence, determining whether a plaintiff is a public figure "is a question of law" answered in the affirmative when a plaintiff "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Prince v. The Intercept*, 2022 WL 5243417, at *11 (S.D.N.Y. Oct. 6, 2022); *Biro*, 963 F. Supp. 2d at 274. Courts have consistently held that publicly-traded companies are public figures under this rubric. *See MiMedx Grp., Inc.*, 2018 WL 847014, at *6 ("When the plaintiff is a public figure, such as a public company, the plaintiff must demonstrate that the defendant acted with 'actual malice' in connection with the defamatory statements."); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1346 (S.D.N.Y. 1977) (public company found to be public figure).

Additionally, New York's Anti-SLAPP statute protects citizens facing litigation arising from their public petition and participation, applying the actual malice standard to "any communication in a place open to the public or a public forum in connection with an issue of public

---

[16] Federal courts sitting in diversity must apply N.Y. Civil Rights Law § 76-a because it is a substantive, rather than procedural, provision. *Sweigert v. Goodman*, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021).

12335020

interest." *See* N.Y. Civil Rights Law § 76-a(1)(a). The statute directs that "public interest" is to "be construed broadly, and shall mean any subject other than a purely private matter." *See id.* § 76-a(1)(d). "Matters of 'public concern' include 'matter[s] of political, social, or other concern to the community,'" and "have been held to encompass 'reports of improper business practices, particularly where such conduct may result in loss to stakeholders.'" *Kesner v. Buhl*, 590 F. Supp. 3d 680, 692 (S.D.N.Y. 2022); *Lindberg*, 2021 WL 3605621, at *8.

Cassava is a public figure because it voluntarily injected itself into public controversy concerning the development and testing of simufilam, which it admits was a matter of public interest. *See, e.g.*, FAC ¶¶ 108-09 ("Cassava's successful testing of simufilam received attention from academics, scientists, and investors. . . . Over the next six months, *Cassava issued press releases announcing completion of the development milestones for simufilam*.") (emphasis added); *see also id.* ¶¶ 11-12, 36. As a public figure, Cassava was required to plausibly allege that the QCM Statements were made with actual malice.

### B. Cassava Has Failed To Plausibly Allege Actual Malice

Cassava has not, and cannot, plead "plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice," (*Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015))—*i.e.*, facts indicating that each of the QCM Statements was "made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2). "Reckless disregard as to falsity means that the statement is made with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the publication's truth." *Kesner*, 590 F. Supp. 3d at 693-94. This is "a difficult standard to meet, and quite purposefully so," because it "does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the

20

truth of the publication." *Id.*; *see also Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will"). "[T]he operative question is whether a defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'" *BYD Co. Ltd v. VICE Media LLC*, 531 F. Supp. 3d 810, 827 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 103 (2022) (quoting *Biro*, 963 F. Supp. 2d at 278). Cassava falls far short of this exacting standard.

First, Cassava alleges that QCM acted with actual malice because it held a short position in Cassava's stock. FAC ¶¶ 290-94. But "actual malice is a measure of the defendant's attitude toward the truth, not his attitude toward the plaintiff," and "allegations of a defendant's bias or 'hostility fail plausibly to establish . . . actual malice.'" *MiMedx Grp., Inc.*, 2018 WL 847014, at *8 (finding that short seller did not have actual malice in publishing article about shorted company and recommending that the motion to dismiss be granted); *see also Hodges v. Lutwin*, 595 F. Supp. 3d 12, 21 (S.D.N.Y. 2022) (dismissing defamation claims after rejecting contention that defendants had motivation for defamation because they were competitors of the plaintiffs); *Prince*, 2022 WL 5243417, at *17 (finding that "allegation[s] about improper political or personal biases do not establish actual malice without additional facts to suggest that the speaker acted pursuant to that bias"). QCM's potential benefit from a decrease in the price of Cassava's stock does not indicate that it had actual, subjective doubts about the truth of its statements, and Cassava has failed to plead any facts suggesting QCM harbored such doubts, which is fatal to its claims.

Cassava's remaining arguments—that QCM lacked evidence to support its statements, which were inherently improbable; had knowledge of contradictory information, including concepts and practices that were common knowledge in the scientific community; and purposely

21

avoided learning the truth (FAC ¶¶ 295-365)—are not well-pleaded facts showing that QCM had subjective doubts about the truth of its statements. The immutable fact remains that the QCM Report painstakingly details the steps QCM took in its investigation into Cassava prior to publishing the QCM Statements. *See* FAC, Ex. 8 at 6-7. Even if Cassava could show that QCM had *not* engaged in this thorough investigative effort, "[f]ailure to investigate does not in itself establish bad faith." *Prince*, 2022 WL 5243417, at *16; *see also Gertz*, 418 U.S. at 332 ("[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth."); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) ("[A] publisher who does not already have 'obvious reasons to doubt' the accuracy of a story is not required to initiate an investigation that might plant such doubt . . . ."). Further, as discussed *supra* Section I.B.i, the QCM Statements are replete with references to the facts QCM had uncovered. Cassava's conclusory allegations that QCM lacked evidence supporting its statements and purposely avoided the truth ignores the facts amply pleaded in the Complaint that the public debate already reflected an abundance of scientific opinion evidencing the significant irregularities in Cassava's methodology.[17]

Cassava's argument that QCM had knowledge of falsity because it had access to Cassava's SEC filings and press releases and to journal articles published by Doctors Burns and Wang (FAC ¶¶ 302-09) also is unavailing. It is well settled that a defamation plaintiff's "denials without more

---

[17] QCM also published its statements after a securities fraud class action was instituted against Cassava in August 2021 (*see* Complaint, *Rao v. Cassava Scis., Inc.*, No. 21-cv-00751 (W.D. Tex. Aug. 27, 2021)), and after alleged securities fraud concerning Cassava's prior drug, Remoxy (*see* Complaint, *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 11-ca-01034 (W.D. Tex. Dec. 2, 2011)). *See Sanders*, 2022 WL 16984681, at *1 (permitting the Court to take judicial notice of the existence of separate litigations and related filings). The existence of these securities fraud lawsuits lends substantial support to the conclusion that QCM did not have knowledge that the QCM Statements were false, or harbored subjective doubts about their truth. *See Kesner*, 590 F. Supp. 3d at 696 (finding that on the issue of actual malice, a separate malpractice action against the plaintiff involving similar allegations provided "[f]urther support for the inference of illegality" and that "[t]he assembled evidence, far from putting [defendant] on notice that an accusation of illegality against [plaintiff] would be false, lent substantial support to that conclusion").

do not support a plausible claim of actual malice." *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022); *Prince*, 2022 WL 5243417, at *17. Additionally, Cassava's reliance on the existence of publications and research that *might* support the science behind simufilam is entirely misplaced, as it does not render competing interpretations by QCM and other experts false. *See ONY, Inc.*, 720 F.3d at 497 ("In a sufficiently novel area of research, propositions of empirical 'fact' advanced in the literature may be highly controversial and subject to rigorous debate by qualified experts. Needless to say, courts are ill-equipped to undertake to referee such controversies.").[18] Cassava's failure to plausibly plead actual malice is fatal to its claim, and the Complaint should be dismissed for this reason alone.

## III. QCM'S STATEMENTS WERE NOT DEFAMATORY *PER SE*, AND CASSAVA HAS FAILED TO PLEAD SPECIAL DAMAGES, OR ANY DAMAGES AT ALL

In New York, statements that are defamatory *per se* "consist of statements: (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 347 (N.Y. 1992). Cassava's argument that the QCM Statements tended to injure Cassava in its "trade, business or profession" must fail, as that category is "limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself" and "must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." *Id.* at 48. The QCM Statements simply identified irregularities in the scientific research and clinical trials for simufilam; they did not "impute[] incompetence, incapacity or unfitness in

---

[18] Cassava's allegation that the QCM Statements were "inherently improbable" cannot be sustained merely because Cassava received NIH grants, the underlying science was peer-reviewed and published, certain test results for simufilam were published and discussed by Cassava and others, Cassava raised money to develop and test simufilam, and Cassava executives refrained from selling (and some bought) Cassava shares in the past (FAC ¶¶ 348-56). None of these facts make it "a contradiction for [QCM's] allegations to be true." *Prince*, 2022 WL 5243417, at *17.

the performance of [Cassava's] profession." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336 (S.D.N.Y. 2010). Cassava therefore was required to plead special damages, or "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation," with particularity. *Collins v. Travers Fine Jewels Inc.*, 2017 WL 1184305, at *3 (S.D.N.Y. Mar. 28, 2017) ("Special damages must be 'fully and accurately stated, with sufficient particularity to identify actual losses.'") (citation omitted).

Here, Cassava not only failed to plead special damages; it failed to plead any facts demonstrating how it was damaged by QCM. As an initial matter, Cassava claims that the alleged "disinformation campaign" began in August 2021, when Cassava's stock price had reached a record high. FAC ¶¶ 117-18. From August 2021 to November 2021, Cassava concedes that information about Cassava and the irregularities in its research and clinical trials was widely circulated and even made available on the official website of the FDA. *Id.* ¶¶ 117-38. It was only on November 3, 2021 that Cassava claims "QCM joined the disinformation campaign." *Id.* ¶ 139. Historical stock price data for Cassava makes clear that the price of Cassava stock *increased* in the days following publication of the QCM Report.[19] It is thus unclear what, if any, impact QCM's alleged participation in the "disinformation campaign" could have had on Cassava's stock price. Perhaps more critically, any decrease in the stock price would represent economic damage to Cassava's shareholders, and not to Cassava itself, and is not a proper measure of damages in the first instance. Regardless, Cassava's conclusory claims that "Defendants' statements," taken together, were a "substantial cause" of unquantified damage to Cassava (FAC ¶¶ 423-38) does not satisfy the requirement that Cassava plead special damages flowing directly from an injury to its reputation caused *specifically* by the QCM Statements, particularly given the mix of information

---

[19] *See Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pUAd.

simultaneously being presented to the public by various non-parties in the scientific community and by Cassava itself. Cassava's failure to plausibly allege special damages, or indeed any damages at all, is fatal to its claim.

## IV. THE VOLUMINOUS COMPLAINT AND APPENDICES THERETO VIOLATE FEDERAL RULE OF CIVIL PROCEDURE 8

The extreme prolixity of the Complaint—spanning nearly 190 pages and 500 multi-sentence paragraphs—coupled with references to over 100 exhibits, squarely runs afoul of Federal Rule of Civil Procedure 8's requirement that Cassava provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and that the allegations "be simple, concise, and direct." QCM joins in Section III of the CP MTD and incorporates by reference the arguments made therein requesting dismissal of the Complaint.

## CONCLUSION

For the reasons set forth above, QCM respectfully requests an Order dismissing the Complaint as against QCM with prejudice, and any other relief the Court deems just and proper.

Dated: February 6, 2023

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By:_____
David M. Levy
Joshua K. Bromberg
Alisa Benintendi

500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 986-6000
Facsimile:    (212) 986-8866

Attorneys for Defendant **QUINTESSENTIAL CAPITAL MANAGEMENT LLC**

25

## CERTIFICATE OF SERVICE

**I, DAVID M. LEVY**, hereby certify that a copy of the foregoing Memorandum of Law in Support of Quintessential Capital Management LLC's Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 6, 2023.

Dated: February 6, 2023

_____

David M. Levy

12335020