UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASSAVA SCIENCES, INC., | Civil Action No. 22-cv-9409-GHW-OTW |
| Plaintiff, | |
| v. | |
| DAVID BREDT; GEOFFREY PITT; QUINTESSENTIAL CAPITAL MANAGEMENT LLC; ADRIAN HEILBUT; JESSE BRODKIN; ENEA MILIORIS; and PATRICK MARKEY, | |
| Defendants. | |

## PLAINTIFF CASSAVA SCIENCES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DAVID BREDT'S AND GEOFFREY PITT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

J. Erik Connolly (*admitted pro hac vice*)
Matthew J. Langley
Timothy Frey (*admitted pro hac vice*)
Kate Watson Moss (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

i

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

OVERVIEW OF ARGUMENTS ................................................................................. 1

FACTUAL BACKGROUND ........................................................................................ 2

I.      Cassava's work to find an effective treatment for Alzheimer's disease ............................ 3

II.     Bredt and Pitt's profit-driven defamation campaign ........................................... 3

LEGAL STANDARD .................................................................................................... 8

ARGUMENT ................................................................................................................. 8

I.      Cassava has adequately pled a claim for defamation *per se* against Bredt and Pitt. .......... 8

      A.     Cassava adequately alleged actionable false statements and implications made by Bredt and Pitt. ....................................................................................... 9

           1.     Bredt and Pitt's statements and implications are false............................... 9

           2.     Bredt and Pitt's accusations are not protected opinions. ......................... 12

      B.     Cassava adequately alleged that Bredt and Pitt defamed it with actual malice. .... 18

      C.     Bredt and Pitt's statements were defamatory *per se*. ........................................... 21

II.     Cassava's defamation claim is not barred by the statute of limitations. .......................... 22

III.    Cassava has adequately pled a civil conspiracy theory of liability................................. 24

IV.    Cassava's First Amended Complaint complies with FRCP Rule 8................................ 24

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AM Cosms., Inc. v. Solomon*,
  67 F. Supp. 2d 312 (S.D.N.Y. 1999)........................................24

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
  464 F.3d 338 (2d Cir. 2006).................................................24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................18

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009) (en banc).....................................8

*Armstrong v. Simon & Schuster*,
  649 N.E.2d 825 (1995).....................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................8

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  390 F. Supp. 3d 432 (S.D.N.Y. 2019).....................................22

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................22, 23

*In re Cassava Sciences, Inc. Securities Litig.*,
  No. 1:21-cv-00751-DAE (W.D. Tex.) ....................................14

*Celle v. Filipino Reporter Enterprs., Inc.*,
  209 F.3d 163 (2d Cir. 2000)................................................21

*Church of Scientology Intern. v. Eli Lilly & Co.*,
  778 F. Supp. 661 (S.D.N.Y. 1991) .......................................15

*Cianci v. New Times Publ'g Co.*,
  639 F.2d 54 (2d Cir. 1980).................................................22

*Coliniatis v. Dimas*,
  848 F. Supp. 462 (S.D.N.Y. 1994) ...........................12, 13, 15, 16

*Crime Victims Ctr., Inc. v. Logue*,
  119 N.Y.S.3d 550 (N.Y. App. Div. 2020) ...............................18

*Cromarty v. Prentice-Hall, Inc.*,
    421 N.Y.S.2d 603 (N.Y. App. Div. 1979) ...........................................................22

*Dalbec v. Gentleman's Companion, Inc.*,
    828 F.2d 921 (2d Cir. 1987)...............................................................................18

*Daytree at Cortland Square, Inc. v. Walsh*,
    332 F. Supp. 3d 610 (E.D.N.Y. 2018) ...............................................................9

*Firth v. State*,
    98 N.Y.2d 365 (2002) .........................................................................................23

*Gross v. New York Times Co.*,
    623 N.E.2d 1163 (1993)..........................................................................12, 15, 16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ......................................................................................19, 20

*Held v. Pokorny*,
    583 F. Supp. 1038 (S.D.N.Y. 1984)...................................................................13

*Ivy Mar Co., Inc. v. C.R. Seasons, Ltd.*,
    1998 WL 704112 (E.D.N.Y. Oct. 7, 1998) ........................................................24

*Karedes v. Ackerley Grp.*,
    423 F.3d 107 (2d Cir. 2005)...............................................................................19

*Kleeberg v. Sipser*,
    191 N.E. 845 (N.Y. 1934)..................................................................................21

*Levy v. Nissani*,
    115 N.Y.S.3d 418 (N.Y. App. Div. 2020) ....................................................15, 16

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020)...............................................................................8, 19

*Moore v. M.P. Howlett, Inc.*,
    704 F.2d 39 (2d Cir. 1983).................................................................................22

*Nolan v. State of New York*,
    69 N.Y.S.3d 277 (N.Y. App. Div. 2018) ......................................................21, 22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)...............................................................................16

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019).............................................................18, 19, 20, 21

*Prozeralik v. Cap. Cities Commc'ns*,
626 N.E.2d 34 (N.Y. 1993)..................................................................18

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
53 F. Supp. 3d 705 (S.D.N.Y. 2014)..........................................8, 14, 16, 17

*Rinaldi v. Viking Penguin, Inc.*,
425 N.Y.S.2d 101 (N.Y. App. Div. 1980) .........................................23

*Sepenuk v. Marshall*,
2000 WL 1808977 (S.D.N.Y. Dec. 8, 2000) .....................................24

*Sharon v. Time, Inc.*,
599 F. Supp. 538 (S.D.N.Y. 1984) .................................................19

*Shomo v. State of New York*,
374 Fed. App'x 180 (2d Cir. 2010)..................................................25

*Simmons v. Abruzzo*,
49 F.3d 83 (2d Cir. 1995)...............................................................25

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)......................................................9, 10

*Trump v. Chicago Trib. Co.*,
616 F. Supp. 1434 (S.D.N.Y. 1985).............................................12, 16

*World Wrestling Fed'n Ent., Inc. v. Bozell*,
142 F. Supp. 2d 514 (S.D.N.Y. 2001)...............................................24

**Statutes**

18 U.S.C. § 371....................................................................................22

18 U.S.C. § 1001..................................................................................21

New York Civil Rights Law § 76-a(2) ..................................................18


**Other Authorities**

FRCP Rule 8 ...................................................................................24, 25

FRCP Rule 12(b)(6).................................................................................8

Restatement (Second) of Torts §577A, comment d....................................23

## INTRODUCTION

Bredt and Pitt spent months calling Cassava Sciences a fraud and telling people Cassava relied on fabricated research and test results. Bredt and Pitt did not publish these accusations to further scientific debate. They published these accusations (repeatedly) to sink the price of Cassava's stock. As short sellers, Bredt and Pitt needed to deflate Cassava's stock price to make money. To accomplish that goal, they published demonstrably false and defamatory statements about Cassava—specifically, calling Cassava a fraud and telling people and the FDA that Cassava relied on fabricated research and test results. These accusations constitute defamation *per se*.

## OVERVIEW OF ARGUMENTS

Bredt and Pitt offer the Court no basis to dismiss the claims against them. *First*, the First Amended Complaint ("FAC") adequately alleges facts showing that Bredt and Pitt published false statements about Cassava. The FAC identifies over 100 statements made by Bredt and Pitt that were false and defamatory. For each statement, the FAC includes factual allegations explaining why the statement was factually inaccurate and defamatory. Indeed, the statements made by Bredt and Pitt constitute defamation *per se* because they accused Cassava of a crime (defrauding regulators and investors) and made accusations that impugned Cassava's integrity (relying on and reporting fabricated test results) which would (and did) injure Cassava in its business.

*Second*, the FAC adequately alleges facts showing that the statements made by Bredt and Pitt do not constitute non-actionable opinion. The statements (*e.g.*, that Cassava "doctored its research and clinical trial studies") are demonstrably false. Bredt and Pitt published the statements in official petitions to government regulators, giving them the appearance of being factual. And third parties who read the statements reacted as if their statements were fact, not opinion. Bredt

and Pitt are not allowed to accuse Cassava of being a fraud and then escape liability by arguing, after the fact, that they were just offering opinions.

*Third*, the FAC adequately alleges facts showing Bredt and Pitt acted with actual malice. The FAC includes 77 paragraphs and 92 exhibits demonstrating some of the evidence Cassava will use to show the defendants knew their statements were false or acted with reckless disregard for the truth. Bredt and Pitt's improper motive—to deflate Cassava's stock price—is just the tip of the iceberg. Bredt and Pitt knew they had no basis for the accusations about Cassava, knew their accusations were contradicted by publicly available information, and knew their accusations were inconsistent with general scientific knowledge and studies. That is enough to plead actual malice.

*Fourth*, Cassava's claims are timely. The FAC identifies dozens of statements made by Bredt and Pitt on November 17, 2021 and December 8, 2021. Bredt and Pitt do not (and cannot) argue that the statute of limitations bars claims based on those statements. Similarly, on November 17, Bredt and Pitt republished the defamatory statements made by the QCM and Dot.com Defendants. Bredt and Pitt do not contest their liability as a re-publisher of those defamatory statements. And, on November 17, Bredt and Pitt republished their own prior Citizen's Petition and supplements. This republication restarted the one-year statute of limitations for those statements as well. Accordingly, November 17 is the start of the statute of limitations for all of Bredt and Pitt's defamatory statements.

## FACTUAL BACKGROUND

This case is not about a scientific debate. This case is about a small company that has spent hundreds of millions of dollars and tens of thousands of hours developing a promising treatment for a debilitating disease *and* unscrupulous short sellers who used defamation to make money at the company's expense. Practically everything that Bredt and Pitt wrote about Cassava is factually inaccurate or misleading.

2

## I. Cassava's work to find an effective treatment for Alzheimer's disease

Cassava is a biotechnology company focused on R&D for Alzheimer's disease. (FAC ¶ 36.)[1] It is developing two biotechnology products: a drug candidate called simufilam for people with Alzheimer's disease; and SavaDX, a potential diagnostic to detect the presence of Alzheimer's disease in blood. (*Id.* ¶ 37.) Simufilam targets an altered form of the protein filamin A ("FLNA"), which studies have linked to neuronal dysfunction, degeneration, and inflammation in Alzheimer's brains. (*Id.* ¶ 38.) Peer-reviewed studies show that simufilam may counter the toxic effects of altered FLNA and suppress the degeneration and inflammation characteristic of Alzheimer's disease. (*Id.* ¶¶ 39–46.)

The U.S. Food and Drug Administration ("FDA") has reviewed research and test results for simufilam and has approved its advancement to late-stage, Phase 3 clinical trials in people with Alzheimer's disease. (*Id.* ¶¶ 88–91.) Peer-reviewed science publications confirmed that simufilam has a strong scientific foundation to treat Alzheimer's. (*Id.* ¶¶ 63–64.) Early trials in people confirm that simufilam appears safe. (*Id.* ¶¶ 74, 98, 100, 104.) Following these promising results, the FDA agreed to work with Cassava to develop a Special Protocol Assessment for Phase 3 clinical trials, the last step before drug approval. (*Id.* ¶¶ 88–91.)

## II. Bredt and Pitt's profit-driven defamation campaign

Cassava's stock price rose following the announcement of its test results. (*Id.* ¶¶ 108–109.) This rise in Cassava's stock price also created an opportunity for manipulative short selling. Short selling is a bet against a company's stock price. (*Id.* ¶¶ 111–112.) Short sellers make money by selling borrowed shares when the price is high and buying back those shares at a future date when the price is low. (*Id.*) Short sellers make money if the price of a stock drops. (*Id.*) They lose money

---

[1] Unless otherwise noted, all emphasis is added, all quoting and citing references are omitted, and all internal quotation mark are omitted.

if the price of a stock increases. (*Id.*) Short selling is a risky proposition, but it can be quite profitable when successful. (*Id.* ¶ 112.)

Bredt and Pitt decided to rig the game by manipulating Cassava's stock price to make money on their short bets. (*Id.* ¶ 119.) Before August 18, 2021, Bredt and Pitt took short positions in Cassava's stock. (*Id.*) They then retained Jordan Thomas, a New York-based lawyer, to help them spread disinformation about Cassava. (*Id.*) Specifically, Bredt and Pitt conspired with Thomas to prepare and submit a series of "Citizen's Petitions" to the FDA about Cassava. (*Id.* ¶¶ 120, 125, 128, 143, 149.) Their petitions claimed to be prepared in hopes of convincing the FDA to launch an investigation into Cassava. (*See generally* Exs. 3–5, 9, 11.) But Bredt, Pitt, and Thomas knew that the FDA could not and would not launch such an investigation. (*See, e.g.*, FAC ¶ 292.) The real purpose was to cloak Bredt and Pitt's defamation campaign inside the credibility of a regulatory filing. (*Id.* ¶¶ 115–116, 122–123, 127, 130, 145, 155.)

On August 18, 2021, Bredt and Pitt launched their scheme by authorizing Thomas to file a Citizen's Petition with FDA. (*Id.* ¶ 120.) The petition did not identify Bredt or Pitt, disclose their short positions against Cassava, or request any administrative relief that FDA could grant. (*Id.* ¶¶ 118–23, 292–93.) Instead, it accused Cassava of manipulating data in its studies and defrauding both investors and regulators. (*See generally* Ex. 3[2].) For example:

> Detailed analysis of the western blots in the published journal articles show a series of anomalies that are suggestive of systematic ***data manipulation and misrepresentation.*** (FAC ¶ 179(a).)
>
> ***
>
> The methodology allegedly used in these experiments defies logic, and the data presented again have ***hallmarks of manipulation.*** (FAC ¶ 189(a).)

---

[2] All references to exhibits herein refer to exhibits to the First Amended Complaint, unless otherwise indicated.

These accusations, and others made in the August 18 petition, are factually inaccurate. None of the research underlying simufilam was manipulated. (FAC ¶ 121.) None of the testing data for simufilam was manipulated. (*Id*.) Bredt and Pitt accused Cassava of doing something (relying on and reporting manipulated results) that did not happen.

Bredt and Pitt's first petition did not gain enough attention to achieve the deflationary impact they needed, so they did it again. On August 30, 2021, Bredt and Pitt directed Thomas to send a second submission to FDA containing more factually inaccurate statements. (Ex. 4.) For example:

> Over the last two weeks, publicly and privately, the scientific community has validated many of my clients concerns and identified ***countless new errors and anomalies that strongly suggest scientific misconduct in their reports about both preclinical and clinical data***. (FAC ¶ 161(k).)

> ***

> [T]he scientific community has identified countless red flags that call into question the accuracy and integrity of Wang's research. In fact, some scientific integrity experts (see below) have suggested that most of his published research has data that appears to be "***deliberately falsified or fabricated***." (FAC ¶ 227(b).)

Again, these statements and the others made in the August 30 petition were demonstrably false. Cassava and its scientific collaborators did not engage in "scientific misconduct" and did not falsify or fabricate data. (FAC ¶¶ 124–27.)

Bredt and Pitt were not done. On September 9, 2021, they directed Thomas to submit yet another petition to the FDA that continued the defamation campaign. (Ex. 5.) For example:

> Many of the results from Dr. Wang's Phase 2b redo have what appear to ***be data manipulation or GROSS LAB ERRORS***—values incompatible with standards for these types of analyses—which raises additional questions about the validity of the biomarker results associated with the redo. (FAC ¶ 210(f).)

> ***

> For the many reasons enumerated in my original Citizen's Petition and the two supplemental submissions, we strongly believe ***countless such false and misleading statements have been made by Cassava Sciences***. (FAC ¶ 246(a).)

All factually inaccurate. There was no data manipulation, no gross lab errors, no major lab errors, no manipulation, and no false or misleading statements by Cassava. (FAC ¶ 129.) Bredt and Pitt made up these and other accusations to drive down Cassava's stock price. (FAC ¶¶ 129–30.)

Bredt and Pitt were back at it on November 17 with another submission to the FDA. (*See id.* ¶¶ 143–48; Ex. 9.) Among other things, the November 17 submission repeated and republished defamatory statements made about Cassava by the QCM and Dot.com Defendants. For example:

> On November 3, 2021, Quintessential Capital released a public report that raises new and serious questions about Cassava Sciences and its drug candidate simufilam. . . . Following an in-depth investigation, among other things, the firm found that Cassava's clinical trials were administered by several controversial and questionable characters, ***that there were irregularities in the manner that the simufilam trials were conducted, and that the reported results of Cassava's clinical trials appear to have been manipulated***—in various ways. (FAC ¶ 161(aaa).)

> \*\*\*

> Specifically, among other significant things, the authors . . . reported that Cassava Sciences and Dr. Hoau-Yan Wang appear to have ***fabricated pre-clinical and clinical evidence across the entire simufilam program, provided inadequate and unreliable safety studies for simufilam, and engaged in serious misconduct in the analysis of and reporting of clinical trial data***—particularly the drug's much touted cognitive outcomes. (FAC ¶ 161(bbb).)

> \*\*\*

> This seemingly ***irrefutable data manipulation*** is important both because it implies a pattern of reckless scientific misconduct and because it undercuts foundational science related to simufilam mechanism of action in Alzheimer's disease. (FAC ¶ 179(dd).)

Once again, each of these accusations and others made in the submission are factually inaccurate. (FAC ¶144.) The reported results were not manipulated, the research supporting simufilam was

not "fabricated," Cassava's collaborator did not "engage in serious misconduct," and there was no "data manipulation," much less "*irrefutable* data manipulation." (*Id.*)

On December 8, 2021, Bredt and Pitt made one last submission to the FDA. (Ex. 11.) In this final submission, Bredt and Pitt incorporated by reference their earlier petitions and, again, elaborated on their false accusations. For example:

> As detailed in my Citizen's Petition and in subsequent filings, including this one, their major concern relates to the mounting evidence that Cassava Sciences has ***doctored its research and clinical trial results to dupe peer-reviewed journals and to trick the FDA into approving its clinical trials***. (FAC ¶ 161(fff).)

***

> Our recent re-inspection of the Methods section for this crucial experiment shows seemingly ***irrefutable evidence of data manipulation/fabrication***. (FAC ¶ 174(l).)

These statements and others in the December 8 submission were factually, historically, and demonstrably inaccurate. There was no "mounting evidence" of doctored research because no research was doctored. Nor was there "irrefutable evidence of data manipulation/fabrication" because Cassava's data had been neither manipulated nor fabricated. (FAC ¶¶ 154–55.)

In the end, the FDA denied Bredt and Pitt's petition because the FDA could not even theoretically offer the relief they requested. (*Id.* ¶¶ 292–93.) That did not matter: Bredt and Pitt never intended to obtain relief from the FDA. (*Id.*) To carry out their scheme, they just needed a credible vehicle to give a commanding tone to claims they knew to be false, because only false claims could deflate Cassava's share price. Bredt and Pitt had no evidence that Cassava manipulated data or committed fraud. (*Id.* ¶¶ 295–301.) They had no witnesses to support the claims. (*Id.*) They possessed both direct information and knowledge contradictory to their claims. (*Id.* ¶¶ 302–30.) But the truth did not matter to Bredt and Pitt. They needed to convince people that Cassava was a fraud to drive down the company's stock price. That is what they did.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 440, 570 (2007)). In making this determination, the Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc). There is no probability requirement at the pleading stage; all that is necessary is that the plaintiff plead enough fact "to raise a reasonable expectation that discovery will reveal evidence of" unlawful conduct. *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). The detailed allegations in the FAC satisfy this requirement.

## ARGUMENT

Bredt and Pitt premise their motion on a variety of disputed issues of fact. Bredt and Pitt say their statements were "substantially true," but Cassava alleges the opposite. Bredt and Pitt say they were just providing opinions based on disclosed facts, but Cassava alleges the opposite. Bredt and Pitt say they did not act with actual malice, but Cassava alleges the opposite. Cassava's well-pled allegations trump Bredt and Pitt's counterfactual argument on a motion to dismiss.

**I.     Cassava has adequately pled a claim for defamation *per se* against Bredt and Pitt.**

The elements of a defamation claim are (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault, which (4) either causes special harm or constitutes defamation *per se*. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 716 (S.D.N.Y. 2014). Here, the FAC identifies over 100 false statements published and republished by Bredt and Pitt, it alleges dozens of facts and attaches multiple exhibits

demonstrating actual malice, and the nature of the accusations made by Bredt and Pitt constitute defamation *per se*.[3]

### A. Cassava adequately alleged actionable false statements and implications made by Bredt and Pitt.

The FAC alleges that Bredt and Pitt published and republished over 100 false statements and implications about Cassava. (*See, e.g.*, FAC ¶¶ 160–280; *see also*, Appendix A.) Among other things, Bredt and Pitt stated and implied that Cassava is a fraud, Cassava relied upon fabricated and manipulated foundational research, Cassava fabricated and manipulated its Phase 2a, Phase 2b, and Open Label studies, and Cassava's executives engaged in insider trading. (*Id.*) Just one false statement or implication is sufficient to sustain Cassava's defamation claim against Bredt and Pitt. *See, e.g.*, *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 630 (E.D.N.Y. 2018) (denying motion to dismiss defamation claim, rejecting Defendants' argument "that Plaintiffs challenge a single defamatory statement"). Cassava has pled facts supporting far more than one.

### 1. Bredt and Pitt's statements and implications are false.

A plaintiff can satisfy its obligation to plead falsity in two ways. One, a plaintiff can plead facts showing that the statement published by the defendant was false. To do so, a plaintiff must allege "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). A statement is not substantially true if it would have a different effect on the mind of the reader than the pleaded truth. *Id.* Two, a plaintiff can plead facts showing that the defendant *implied* false facts about plaintiff. Defamation by implication "is premised not on direct statements but on false

---

[3] Bredt and Pitt do not contest that they published the defamatory statements and implications to a third party, nor do they claim they did so under any special privilege or authorization.

suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 649 N.E.2d 825, 829 (1995). A technically true statement can still be considered false by implication where the plaintiff alleges that the defendant failed to provide proper context, provided that context would have resulted in the publication having "a different effect on the mind of the average reader." *See Tannerite*, 864 F.3d at 246–47.

Bredt and Pitt made myriad defamatory statements and implications about Cassava that had a materially different effect on the mind of the readers than the truth would have produced.[4] For instance, in the November 17 and December 8 submissions, Bredt and Pitt stated that:

> Increasingly, evidence suggests that Cassava has ***doctored*** its research and clinical trial results, duped peer-reviewed journals, ***used the tainted science*** to trick the NIH and FDA into approving grants and clinical trials, ***misled*** investors by touting their grants and clinical trials without disclosing their troubling research practices, and ***withheld material information*** about the true nature of its drug from vulnerable Alzheimer's Disease patients. (FAC ¶ 161(yy).)

> \*\*\*

> Since the filing of the Citizen's Petition, publicly and privately, the scientific community has validated many of my clients' concerns and identified countless ***new errors and anomalies*** that are consistent with ***scientific misconduct*** in Cassava Sciences' reports about both preclinical and clinical data. . . . . The nature and extent of these anomalies strongly suggests ***systematic data manipulation and misrepresentations*** because they frequently favor the authors' hypothesis and are ***outside the scientific norm***. (FAC ¶¶ 161(ccc), (ddd).)

> \*\*\*

> As detailed in my Citizen's Petition and subsequent filings, including this one, their major concern relates to the mounting evidence that Cassava Sciences has ***doctored its research and clinical trial*** results to dupe peer-reviewed journals and to trick the FDA into approving its clinical trials. (FAC ¶ 161(fff).)

---

[4] Appendix A lists the defamatory statements published by Bredt and Pitt as well as the paragraphs in the FAC alleging facts demonstrating that each statement is false. Appendix A does not include all the defamatory statements originally published by QCM and the Dot.com Defendants and republished by Bredt and Pitt on November 17. Bredt and Pitt have not challenged liability as re-publishers of those defamatory statements.

Each of these statements is false. (*See* Appendix A; FAC, ¶¶ 144, 154.) The truth, as alleged in the FAC, is that Cassava did *not* doctor research, did *not* doctor results from clinical trials, did *not* have errors or anomalies in its data, did *not* engage in scientific misconduct, did *not* have results outside scientific norms, and did *not* have systematic data manipulation and misrepresentations in its reports. (*Id*.) That is the truth. Bredt and Pitt published the opposite. These qualify as false statements for purposes of defamation.

Beyond that, Cassava has adequately alleged facts demonstrating that Bredt and Pitt falsely implied Cassava is a fraud. (*Id*. ¶ 161.) Bredt and Pitt published their accusations against Cassava in petitions submitted to the FDA in which they asked FDA to launch an investigation into Cassava. (*See, e.g.*, Exs. 3–5, 9, 11.) This context is important. The petitions provided Bredt and Pitt the illusion of being concerned citizens who had identified a company engaged in grave wrongdoing. The message that Bredt and Pitt conveyed with their accusations, and the placement of the accusations, is that Cassava was a fraud because it had to doctor and manipulate data to get approval. (*See* FAC ¶ 160.) That implication is likewise actionable because the truth—Cassava did not manipulate any data to get approved—would have had an opposite effect on the reader. The truth shows Cassava is not a fraud.

Bredt and Pitt's argument for "substantial truth" is factually inaccurate. (MTD at 12–14.) Without addressing the ***111 false statements***, Bredt and Pitt summarily conclude that Cassava "concede[s] the truth of the facts underlying the issues raised in the [citizens petitions]." (*Id.* at 12.) Not so. For every statement at issue, the FAC identifies multiple reasons why the statement is *not true.* (*See* Appendix A.) Cassava does not concede in the FAC or elsewhere, that its data contain "indicia of manipulation." (MTD at 12.) To the contrary, the FAC alleges facts demonstrating that what Bredt and Pitt called "indicia of manipulation" were not. (FAC ¶¶ 175–

178, 300–301, 361.) The Court cannot find statements to be "substantially true" on a motion to dismiss when Cassava has alleged facts showing the statements to be false. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. 462, 468 (S.D.N.Y. 1994) ("As the parties have not yet engaged in discovery at this early stage of the action, the Court declines to examine whether [plaintiff] has raised any triable issue of fact as to the falsity of the factual assertions.").

### 2. Bredt and Pitt's accusations are not protected opinions.

To determine whether a defamatory statement qualifies as non-actionable opinion, courts applying New York law examine: (1) whether the specific language at issue has a precise meaning which is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether either the full context of the publication or the broader social context and surrounding circumstances "signal [to] readers . . . that what is being read . . . is likely to be opinion, not fact." *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (1993). When "criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed." *Trump v. Chicago Trib. Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985).

***Statements Not Opinion.*** The FAC includes 60 paragraphs detailing the reasons why Bredt and Pitt's statements do *not* qualify as non-actionable opinion. (FAC ¶¶ 366–425.) *First,* the language used by Bredt and Pitt has a precise meaning that in each instance is readily understood to be a statement of fact. For example, and as discussed above, Bredt and Pitt repeatedly stated that Cassava had "doctored its research and clinical trial results," engaged in "scientific misconduct," and relied upon research and published results that had "systematic data manipulation and misrepresentation." These accusations are precise. They are readily understood. Bredt and Pitt were stating and implying that Cassava had changed test results to create the

impression that simufilam had potential as a treatment for Alzheimer's Disease.[5] Notably, Bredt and Pitt do not argue that their accusations lacked a precise meaning that was readily understood.

*Second*, Bredt and Pitt likewise concede that their accusations are capable of being proven true or false. That is the whole point. Bredt and Pitt said that the underlying research supporting simufilam had been doctored and manipulated. (*See, e.g.*, FAC ¶¶ 161, 174, 179, 189, 197.) That either happened or not. Cassava will prove it did not happen. (*See* Appendix A; *see also* FAC ¶¶ 121, 126, 129, 144, 154.) Bredt and Pitt said that Cassava doctored and manipulated the test results for simufilam. (*See, e.g.,* FAC ¶ 120, 125, 128, 143, 153.) That either happened or not. Casava will prove it did not happen. (*See* Appendix A; *see also* FAC ¶¶ 161, 205, 210, 215, 227, 231.) Bredt and Pitt said that Cassava "used tainted science," "misled investors," "duped peer-review journals," and "withheld material information" from patients. (FAC ¶ 161(yy).) All those events either happened or not. It is not a matter of opinion. This alone suffices to render Bredt and Pitt's accusations actionable. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. at 467–68 (rejecting defendant's motion to dismiss on the grounds of non-actionable opinion where the alleged defamatory statements were capable of being proven false); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) ("Accusations of criminal or unethical activity . . . are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof.").

*Third,* the context in which Bredt and Pitt published their accusations signaled to the reader that they were making factual assertions about Cassava, its research, and its test results. (A) Bredt

---

[5] To "doctor" means "to adapt or modify for a desired end by alteration or special treatment; to alter deceptively." *Doctor,* Merriam-Webster, https://www.merriam-webster.com/dictionary/doctored (accessed Feb. 8, 2021). "Misconduct" means "intentional wrongdoing." *Misconduct,* Merriam-Webster, https://www.merriam-webster.com/dictionary/misconduct (accessed February 8, 2021). "Manipulate" means to "to change by artful or unfair means so as to serve one's purpose." *Manipulate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/manipulate (accessed February 8, 2021). "Misrepresent" means "to give a false or misleading representation of usually with an intent to deceive or be unfair." *Misrepresentation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/misrepresentation (accessed February 8, 2021).

and Pitt published the accusations in official petitions to the FDA, which is a fact-based science organization of the Federal government. That gave their accusations the allure of seriousness. (B) Bredt and Pitt told readers that their accusations were based on "investigations" and "evidence." (FAC ¶¶ 374–375.) This signaled that their accusations were fact-based, not speculative or conjecture. (C) Bredt and Pitt defended their accusations after Cassava tried to correct the record. (*Id*. ¶ 379.) This suggested that Bredt and Pitt were not offering just a "difference of opinion," but rather one party was factually right and the other factually wrong. (D) Bredt and Pitt repeated their accusation in multiple petitions. (*Id*. ¶ 381.) This repetition indicated that their accusations must be taken seriously. (E) Bredt and Pitt asked the FDA to investigate Cassava based on their accusation. This suggested that the accusations were fact-based, not opinion-based, because investigations would not be launched based on pure opinions. *cf. Restis*, 53 F. Supp. at 721–22 (finding defamatory statements to be actionable where they were "made as part of a sophisticated and coordinated" campaign and drafted by professionals).

Moreover, the reaction that third parties had to Bredt and Pitt's accusations demonstrates that a reasonable reader understood them to be facts. Investors who read the petitions traded Cassava's stock based on the accusations. (*Id*. ¶¶ 369, 434.) Journals and academic institutions launched investigations based on the accusations. (*Id*. ¶¶ 371, 373.) And law firms filed securities fraud claims against Cassava alleging that the information in the Citizen's Petitions constituted "facts" that should have been disclosed by Cassava.[6] (*Id*. ¶ 372.) These third parties reacted the way they did because they reasonably understood Bredt and Pitt to be presenting facts about

---

[6] In the securities fraud case pending against Cassava and certain company officers, the plaintiff is seeking to hold defendants liable for purportedly failing to disclose the data manipulation alleged in the Citizen Petitions. *See In re Cassava Sciences, Inc. Securities Litig*., No. 1:21-cv-00751-DAE (W.D. Tex.). In response, defendants are seeking dismissal, in part, because the allegations set forth in the Citizen Petitions are baseless and unproven accusations, uncorroborated by even a single witness, that were designed to artificially deflate Cassava's stock price. Defendants cannot be held liable under the PSLRA for failing to disclose something that did not happen.

Cassava. (*Id.* ¶ 368); *see, e.g.*, *Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (N.Y. App. Div. 2020) (finding statements actionable where "a reasonable listener would likely understand those statements to imply" the truth of the defamatory message).

In response, Bredt and Pitt ignore the 60 paragraphs in the FAC detailing why their statements were not pure opinion and largely ignore the three-part test used to evaluate whether a statement is non-actionable opinion. Instead, Bredt and Pitt argue that their accusations should be considered pure opinions because they occasionally used "qualifying language." (MTD at 16.) That argument must be rejected as a matter of law. The use of qualifying language does not automatically qualify statements as pure opinion. *See, e.g.*, *Church of Scientology Intern. v. Eli Lilly & Co.*, 778 F. Supp. 661, 668 (S.D.N.Y. 1991) ("although subjective in tone, the commentary purports to be based on actual facts, and to be pointing out their implications, not to be making a personal prediction or hyperbolic characterization"); *Coliniatis*, 848 F. Supp. at 468 (finding defendant's qualifications that its accusations were of "substantial but not absolute reliability" and "plausible, but unproven" did not render them protected opinion); *Gross*, 623 N.E.2d at 1168 (holding statements actionable that "although couched in the language of hypothesis or conclusion" would actually "be understood by the reasonable reader as assertions of fact").

Bredt and Pitt may have occasionally used "qualifying language," but they also (A) made accusations of data manipulation that either happened or not, (B) made accusations of misrepresentation and deception that either happened or not, (C) repeatedly made the accusations in official petitions to a government entity requesting an investigation, (D) told readers that they had conducted an investigation and had evidence to support their accusations, and (E) told readers that third parties had conducted independent investigations that corroborated their accusations. (*See generally* FAC at Exs. 3–5, 9, 11.) And, of course, third parties who read their accusations

reacted as if Bredt and Pitt were stating facts, not opinions, notwithstanding any "qualifying language." (*Id.* ¶¶ 374–376.) For these reasons, the Court cannot find that Bredt and Pitt's statements were pure opinion as a matter of law. There is a disputed issue of fact.

Finally, and dispositively, Bredt and Pitt stated and implied that Cassava was a fraud. The FAC identifies over 100 statements made and republished by Bredt and Pitt to convey to their readers that Cassava was a fraud that used fabricated data and lied to regulators, investors, and patients. (*See generally*, *id.* ¶¶ 160–288.) Courts have long treated these types of accusations differently than other types of defamatory statements. Courts consider statements "tak[ing] the form of accusations of criminal or unethical conduct" as crossing "the borderline between fact and opinion." *Trump*, 616 F.3d at 1435; *see also Nissani*, 115 N.Y.S.3d at 421–22; *Restis*, 53 F. Supp. 3d at 721–22; *Coliniatis*, 848 F. Supp. at 467–68. It is one thing to engage in an honest scientific debate. It is another thing to accuse a company of fraud. Bredt and Pitt did the latter, not the former. Courts do not consider accusations of criminal activity and fraud to be non-actionable opinion. Instead, courts consider such accusation to be defamation *per se. Infra* at Argument Section I.C.[7]

***Actionable Mixed Statements.*** Even if Bredt and Pitt's statements could be considered opinion based on New York's three-part test, their statements are nonetheless actionable because they constitute actionable "mixed opinion." Under New York law, defamatory statements that may otherwise qualify as opinion are considered actionable mixed opinion if (1) the underlying facts in the publication are false or (2) a reader is led to believe that the opinion is based on undisclosed facts. *Restis*, 53 F. Supp. 3d at 723; *Gross*, 623 N.E.2d at 1168. Here, Bredt and Pitt summarily

---

[7] Bredt and Pitt's attempt to analogize themselves to the defendant in *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013) is unavailing. (MTD at 17–18.) Bredt and Pitt did not limit themselves to discussing the potential efficacy of simufilam. Bredt and Pitt accused Cassava of being a fraud, fabricating research and test results, and lying to regulators, investors, and patients. Bredt and Pitt accused Cassava of a crime. That is not what happened in *ONY*.

stated that "facts underlyingly the [Citizen's Petitions] are plainly true" and they disclosed the facts underlying their so-called opinion. (MTD at 15–16.) But, the FAC includes dozens of allegations establishing that (1) the underlying facts in the publications are false and (2) Bredt and Pitt did not disclose material facts in the citizens petitions.[8]

On falsity, Bredt and Pitt ignore that Cassava has alleged facts establishing that nearly everything Bredt and Pitt published was factually inaccurate. The underlying facts in the Citizen's Petitions included a discussion of Cassava's underlying research, safety protocols, testing procedures, testing results, and testing facilities. (*See, e.g.*, FAC ¶¶ 161, 169, 174, 179, 189, 197, 210, 215, 227, 231, 239.) Cassava alleges that much of what Bredt and Pitt said on those subjects was factually inaccurate. (*See* Appendix A; FAC ¶¶ 162–67, 170–73, 175–78, 180–88, 190–96, 198–203, 211, 214, 216–21, 228–30, 232–38.) The underlying facts in the petitions also included discussion of general scientific principles, including the use of Western blots, frozen tissue, and biomarkers. (*See, e.g.*, FAC ¶¶ 174, 179, 189, 197, 215.) Again, Cassava alleges that much of what Bredt and Pitt said on those subject was factually inaccurate. (*See* Appendix A; FAC ¶¶ 175–78, 180–88, 190–96, 198–203, 216–21.) Bredt and Pitt may ultimately try to *prove* that the underlying facts in their publications were true. But that is not what is alleged.

On disclosure, Cassava alleges that Bredt and Pitt failed to disclose dozens of underlying facts that would be material to a reader trying to form his/her own opinion. The FAC includes a section titled "Failure to Disclose Facts," which identifies twenty-eight different material facts that Bredt and Pitt failed to disclose when they published their defamatory statements and republished

---

[8] Bredt and Pitt's discussion of the "mixed opinion" issue is off. Bredt and Pitt start a discussion of "mixed opinion" without first establishing that their statements qualify as opinion based on New York's three-part test. (MTD at 15.) The Court does not perform the "mixed opinion" analysis unless, based on the three-part test, the statements at issue qualify as opinion. Here, as discussed above, the three-part test reveals that the statements are not opinion and, therefore, the Court does not need to address the "mixed opinion" test.

the defamatory statements of the other defendants. (*Id.* ¶¶ 387–417.) Among other things, Bredt and Pitt failed to disclose material facts undermining and contextualizing their statements about Cassava's Western blot data (*id.* ¶¶ 390–394), use of human brain tissue (*id.* ¶¶ 395–398), the Phase 2b study (*id.* ¶¶ 399–403), the Open Label study (*id.* ¶¶ 404–406), and SavaDx (*id.* ¶¶ 407– 409). Bredt and Pitt may claim that they disclosed all material facts. (MTD at 16.) But, again, Cassava alleges the opposite.

### B. Cassava adequately alleged that Bredt and Pitt defamed it with actual malice.

To plead actual malice, a plaintiff must only plead facts showing defendant plausibly acted "with knowledge that [the statements and implications] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986).[9] Reckless disregard means that the defendants "made the false publication[s] with a high degree of awareness of… probable falsity… or must have entertained serious doubts as to the truth of [their] publication[s]." *Prozeralik v. Cap. Cities Commc'ns*, 626 N.E.2d 34, 38 (N.Y. 1993).

Actual malice is usually established "inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987). Publishing false statements "without any basis or source whatsoever" and with "no reliable evidence or information" can establish actual malice. *Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550, 551–52 (N.Y. App. Div. 2020). Knowledge of information that contradicts or undercuts a defamatory statement can also establish actual malice. *Palin v. New York Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019). And even where a defendant has no contradictory evidence,

---

[9] Cassava does not concede that New York Civil Rights Law § 76-a(2) applies, nor that it is a public figure. Nevertheless, Cassava assumes that the actual malice standard applies for purposes of this briefing.

"purposeful avoidance" of such information or the "inherent improbability" of the claim can establish actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Karedes v. Ackerley Grp.*, 423 F.3d 107, 115 (2d Cir. 2005). The FAC alleges seven independent reasons to reasonably expect discovery to show that Bredt and Pitt acted with actual malice.[10] *See Lynch,* 952 F.3d at 75.

   ***No Evidence.*** Cassava alleges that Bredt and Pitt lacked any evidence to support their assertion that Cassava manipulated data and defrauded regulators and investors. (FAC ¶¶ 295–301.) For example, Bredt and Pitt "had no evidence that Cassava fabricated testing results" and "no source with firsthand knowledge indicating that the testing results had been fabricated." (*Id.* ¶ 298.) They also "had no evidence that Cassava relied on fabricated science" and "no source with firsthand knowledge indicating that the underlying science was fraudulent." (*Id.* ¶ 297.) Accusing Cassava of fabricating and manipulating data with no reliable evidence or information amounts to reckless disregard for the truth. *Palin*, 940 F.3d at 808, 813 (denying motion to dismiss where "no evidence ever emerged" to support statement); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 584 (S.D.N.Y. 1984) (defendant "had no support for [its] allegation").

   ***Contradictory Information.*** Cassava alleges that Bredt and Pitt possessed information and knowledge *contradicting* what they published. (FAC ¶¶ 302–330.) Bredt and Pitt concede that they reviewed SEC filings, press releases, and academic articles that included information about Cassava's foundational science and testing that contradicted what they published. (*Id.* ¶¶ 302–15.) And they concede they possessed scientific knowledge to understand the evidence that

---

[10] In addition to the six categories discussed below, Cassava also alleged evidence of inherent improbability to establish that Bredt and Pitt acted with actual malice. As an exemplar, Appendix B also sets forth the defamatory statements published in Bredt and Pitt's November 17 and December 8 submissions to demonstrate how actual malice is pled as to each. Appendix B does not include all the defamatory statements originally published by QCM and the Dot.com Defendants and republished by Bredt and Pitt on November 17. Bredt and Pitt have not challenged liability as re-publishers of those defamatory statements.

contradicted what they published. (*Id.* ¶¶ 316–30.) Bredt and Pitt did not address *any* of the contradictory information in their motion to dismiss. This concession alone establishes reckless disregard for the truth sufficient to overcome a motion to dismiss. *See, e.g.*, *Palin*, 940 F.3d at 813 (actual malice plausible where reporter "reviewed, edited and approved the publication of numerous articles confirming" falsity of defamatory statement).

**Purposeful Avoidance.** The FAC also explains how Bredt and Pitt purposefully avoided the truth. (FAC ¶¶ 331–46.) Bredt and Pitt made no attempt to contact Cassava, Dr. Wang, Dr. Wang's institution, academic journals, an independent Yale researcher who has studied simufilam, Cassava's outside advisors, Cassava's independent board, Cassava's independent research analysts, Cassava's investment bankers, Cassava's institutional investors, Cassava's present or former employees, Cassava's outside counsel, or *any person with firsthand knowledge* regarding their purported concerns. (*Id.*). This is not a mere failure to investigate. This is purposeful avoidance of the truth. Purposeful avoidance of the truth qualifies as actual malice. *Harte-Hanks Commc'ns*, 491 U.S. at 692 (finding actual malice where defendant did not attempt to interview a key witness or review firsthand evidence in its possession).

**Repetition and Republication.** Bredt and Pitt's repetition of their defamatory claims confirms their actual malice. (FAC ¶¶ 359–65.) After their first defamatory publication on August 18, 2021, Cassava issued multiple press releases responding to the allegations and providing corrective information. (*Id.* ¶ 360.) Five separate academic journals then reviewed articles highlighted by Bredt and Pitt and found no evidence of data manipulation. (*Id.* ¶ 361.) Meanwhile, independent scientists debunked Bredt and Pitt's claims and individuals on social media explained that their claims were not defensible. (*Id.* ¶¶ 362–64.) But instead of retracting their false claims, Bredt and Pitt issued more publications and chalked contrary independent findings up to yet more

misconduct, still with zero evidence. (*See, e.g., id.* ¶ 273(h).) Repetition of defamation after it has been demonstrated to the publisher that his statements were false and defamatory evidences actual malice at the time of the original publication. *See, e.g., Celle v. Filipino Reporter Enterprs., Inc.,*209 F.3d 163, 187 (2d Cir. 2000) (quoting Restatement (Second) of Torts § 580A cmt. d).

*Improper Motive.* Finally, although motive to defame alone is insufficient, a "plausible inference of reckless disregard is strengthened" when the defendant "had reason to be personally biased against" the plaintiff. *Palin,* 940 F.3d at 814–15. The FAC also alleges a plausible explanation as to why Bredt and Pitt had motive to defame Cassava: to make money. (FAC ¶¶ 290–94.) By opening short positions in Cassava's publicly traded stock, Bredt and Pitt created a concrete financial interest in seeing its price decline. (*Id.* ¶ 290.) They guaranteed that decline by publishing false statements about Cassava. (*Id.* ¶¶ 291–92.) Bredt and Pitt's financial motive strengthens the already strong plausible inference of reckless disregard for the truth.

## C. Bredt and Pitt's statements were defamatory *per se*.

Defamatory statements tend to subject the plaintiff to "hatred, contempt or aversion, or to induce an evil or unsavory opinion of" it. *Nolan v. State of New York*, 69 N.Y.S.3d 277, 284 (N.Y. App. Div. 2018). A statement is defamatory *per se*—and therefore does not require proof of special damages—if it (1) charges "plaintiff with a serious crime," or (2) tends "to injure the plaintiff in [its] trade, business or profession." *Id.*; *Kleeberg v. Sipser*, 191 N.E. 845, 847 (N.Y. 1934).

Bredt and Pitt's statements about Cassava are prototypical examples of defamation *per se*. They published and republished statements characterizing Cassava as a fraud. (FAC ¶ 161). That characterization necessarily tends to injure a plaintiff in its business. They published and republished statements claiming that Cassava lied to regulators, investors, and patients. (*Id.*) Those are accusations of a serious crime. *See, e.g.*, 18 U.S.C. § 1001 (false statements), § 1348 (securities fraud), § 1349 (conspiracy to commit securities fraud), § 1343 (wire fraud). Bredt and Pitt also

accused Cassava of fabricating data and test results to deceive regulators for approvals and money. (*See, e.g.*, FAC ¶¶ 174, 179, 189, 210, 215, 227, 231, 239.) That too would be a crime if it happened. 18 U.S.C. § 371 (conspiracy to defraud the United States), § 1002 (possession of false papers to defraud the United States). Individually and collectively, the statements made by Bredt and Pitt qualify as defamation *per se*. *See Nolan*, 69 N.Y.S.3d at 284.

Cassava has also pled special damages. The FAC alleges that Cassava's enterprise value declined because of Bredt and Pitt's statements and Cassava incurred specific out-of-pockets expenses and losses because of their statements. (FAC ¶¶ 433–38.) Such diminution in property value (in this case, enterprise value) and out-of-pocket expenses constitute special damages. *Cromarty v. Prentice-Hall, Inc.*, 421 N.Y.S.2d 603, 604–05 (N.Y. App. Div. 1979). Cassava has no obligation to plead that Bredt and Pitt were the only cause of its damages, "for it is fundamental that there may be more than one proximate cause of an injury." *Moore v. M.P. Howlett, Inc.*, 704 F.2d 39, 43 (2d Cir. 1983). At this stage, it is enough to allege that Bredt and Pitt's statements foreseeably—worse, intentionally—caused Cassava to suffer damage. *Cf. In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 450 (S.D.N.Y. 2019).

## II.     Cassava's defamation claim is not barred by the statute of limitations.

New York's statute of limitations for defamation actions is one year. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013). The FAC alleges that Bredt and Pitt published and republished dozens of false and defamatory statements about Cassava on November 17, 2021 and December 8, 2021. (FAC ¶¶ 143, 153; *see also id.* at Exs. 9, 11.) Cassava filed its lawsuit on November 2, 2022. This is well within the one-year statute of limitations.

Further, in their November 17 submission, Bredt and Pitt republished the defamatory publications that had been circulated by the QCM and the Dot.com Defendants. (FAC ¶ 159.) Bredt and Pitt are liable for their republication of these defamatory statements. *Cianci v. New*

*Times Publ'g Co.*, 639 F.2d 54, 60 (2d Cir. 1980) (noting "the black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally"). Bredt and Pitt do not address their liability as re-publishers of the defamatory statements made by the QCM and Dot.com Defendants, do not claim the statements they republished are "substantially true," do not claim the statements they republished are pure opinions, and do not argue that the FAC failed to allege actual malice with respect to those republished statements. For that additional reason, the Court cannot dismiss the claims against Bredt and Pitt based on the statute of limitations defense.

Finally, on November 17, Bredt and Pitt republished their own prior submissions to the FDA. In their November 17 submission, Bredt and Pitt chose to include hyperlinks to the QCM and Dot.com Defendants publications. (Ex. 9, at 3; FAC ¶ 159.) The QCM and Dot.com Defendants' publications, in turn, included hyperlinks to Bredt and Pitt's August and September submissions to the FDA. (Ex. 7 at 5; Ex. 8 at 6.) Bredt and Pitt did not need to include hyperlinks to QCM and Dot.com Defendants' publications. That was an intentional choice they made that has consequences. By including those hyperlinks, Bredt and Pitt republished their August and September submissions to a new audience and with new context. Bredt and Pitt's republication re-triggered the statute of limitations as to the defamatory statements in the August and September submissions. *See Firth v. State*, 98 N.Y.2d 365, 371 (2002) ("Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original…."). [11]

---

[11] The rationale for this rule is that the "subsequent publication is intended to and actually reaches a new audience," triggering a new and greater injury. *Id.*; Restatement (Second) of Torts §577A, comment d. Whether the limitations period is retriggered turns on whether (1) the addition was made with the intent or result of communicating the earlier defamatory information to a new audience; (2) alterations or additions to the publication related to the defamatory content at issue; and (3) a determination that a republication had occurred would discourage the placement of information on the internet or slow the exchange of such information. *See Biro*, 963 F. Supp. 2d at 267–68. These are fact-based questions that are not properly decided on a motion to dismiss. *See Rinaldi v. Viking Penguin, Inc.*, 425 N.Y.S.2d 101, 102 (N.Y. App. Div. 1980) ("Whether a particular event constitutes a reissue or republication so as to give rise to a new cause of action with a new period of limitations is frequently difficult to determine, depending on the facts of each particular case.").

## III. Cassava has adequately pled a civil conspiracy theory of liability.

To establish a claim for civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. *See Ivy Mar Co., Inc. v. C.R. Seasons, Ltd.*, 1998 WL 704112, at *17 (E.D.N.Y. Oct. 7, 1998) (citation omitted). Cassava has pled detailed facts as to each of these elements (*see* FAC ¶¶ 439–459) as well as the underlying tort of defamation. Accordingly, the Court cannot dismiss Cassava's conspiracy claim. *See World Wrestling Fed'n Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001) (permitting claim for civil conspiracy based on underlying primary torts of defamation and trade libel).

Bredt and Pitt do not argue, and therefore concede, that Cassava has adequately alleged facts supporting a civil conspiracy claim. Nonetheless, they argue the claim should be dismissed because (1) "New York does not recognize an independent tort of conspiracy;" and (2) it is "duplicative" of Cassava's defamation claim. (MTD at 23–24.) As to the first point, Bredt and Pitt overstate the law. "If an underlying, actionable tort is established, . . . plaintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme." *Sepenuk v. Marshall*, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000). Cassava has pled the underlying tort of defamation. As to the second point, the claims are not duplicative. "Plaintiffs may plead the existence of a conspiracy in order to connect the actions of the individual Defendants with an actionable, underlying tort, and establish that those actions were a part of a common scheme." *AM Cosms., Inc. v. Solomon*, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999).

## IV. Cassava's First Amended Complaint complies with FRCP Rule 8.

Pursuant to Rule 8(a), "[a] complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Amron v. Morgan Stanley Inv. Advisors,*

*Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (quotation omitted). The FAC complies in all respects with Rule 8. Bredt and Pitt do not and cannot claim that the FAC fails to put them on fair notice of Cassava's claims. (MTD at 24–25.) They do not argue that the FAC is unintelligible or that they do not understand the basis for Cassava's claims. (*Id.*) For those reasons alone, Bredt and Pitt's Rule 8 argument should be rejected. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) (complaint that is "confused, ambiguous," and "vague" will still meet Rule 8 standard if it gives defendants "fair notice of the claims asserted").

Nor does Rule 8 arbitrarily restrict the length of a plaintiff's complaint. *See Shomo v. State of New York*, 374 Fed. App'x 180, 182 (2d Cir. 2010) ("The jurisprudence involving Rule 8 . . . is difficult to apply to the dismissal of a complaint containing too much detail."). The length of the FAC was dictated by the nature of the Bredt and Pitt's misconduct. Bredt and Pitt engaged in a coordinated disinformation campaign over many months to convince the public that Cassava was a fraud because simufilam was predicated on manipulated science and manipulated clinical testing. (FAC ¶¶ 117–159, 439–453, 454–459.) The FAC would have been shorter if Bredt and Pitt had made fewer defamatory statements, if they had republished fewer defamatory statements, and if the evidence showing falsity and actual malice was not so overwhelming.

## CONCLUSION

Bredt and Pitt's arguments for dismissal are predicated on a misrepresentation of the facts alleged. Bredt and Pitt repeatedly claim that Cassava admits the underlying facts discussed in their petitions are true. Not so. Cassava alleges that nearly everything Bredt and Pitt said in their petitions and everything that they republished was factually inaccurate. Bredt and Pitt may ultimately try to prove that their underlying facts were true but that is not what Cassava alleges. For these reasons, and the reasons stated above, Cassava has adequately pled claims for defamation and civil conspiracy against Bredt and Pitt. The motion to dismiss should be denied.

Dated: February 6, 2023

Respectfully submitted,
CASSAVA SCIENCES, INC.

By its attorneys,

/s/ J. Erik Connolly
J. Erik Connolly (*admitted pro hac vice*)
    EConnolly@beneschlaw.com
    Illinois ARDC No. 6269558

Timothy Frey (*admitted pro hac vice*)
    TFrey@beneschlaw.com
    Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
    kwatsonmoss@beneschlaw.com
    Illinois ARDC No. 6321176

Matthew J. Langley
    MLangley@beneschlaw.com
    New York Registration No. 4831749

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

## CERTIFICATE OF SERVICE

I, Erik Connolly, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to David Bredt's and Geoffrey Pitt's Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 6, 2023.

Dated: February 6, 2023                    */s/ J. Erik Connolly*