**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CASSAVA SCIENCES, INC., | ) |
| Plaintiff, | ) Case 1:22-cv-09409-GHW-OTW |
| v. | ) |
|  | ) **ORAL ARGUMENT REQUESTED** |
| DAVID BREDT, GEOFFREY PITT, QUINTESSENTIAL CAPITAL MANAGEMENT LLC, ADRIAN HEILBUT, JESSE BRODKIN, ENEA MILIORIS and PATRICK MARKEY, | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DAVID BREDT'S AND GEOFFREY PITT'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:  (212) 813-8800
Fax:  (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Defendants David Bredt and Geoffrey Pitt*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFF FAILS TO PLEAD A TIMELY CLAIM FOR DEFAMATION. ................ 2

    A. THE CLAIMS ARE BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS. ................................................................................................ 2

    B. THE STATEMENTS OF THE CP DEFENDANTS WERE SUBSTANTIALLY TRUE AND/OR WERE NON-ACTIONABLE OPINION. ................................................................................................................ 2

    C. CASSAVA HAS NOT ALLEGED FACTS TO SHOW ACTUAL MALICE. ................................................................................................................ 5

    D. THE CP WAS NOT DEFAMATORY PER SE AND CASSAVA HAS NOT ALLEGED FACTS TO SUGGEST THAT THE CP CAUSED IT INJURY. ................................................................................................................ 7

II. THE CONSPIRACY CLAIM (COUNT II) MERELY DUPLICATES THE DEFAMATION CLAIM AND IS TIME-BARRED. ........................................................ 9

III. THE FAC VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 8. ...................... 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................3

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................................................................4

*Biro v. Conde Nast*,
   95 N.Y.S.3d 799 (1st Dep't 2019) .............................................................................................2

*BYD Co. Ltd. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973
   (2d Cir. Mar. 1, 2022) .............................................................................................................5, 7

*Carbon Inv. Partners, LLC v. Bressler*,
   2021 WL 3913526 (S.D.N.Y. Sept. 1, 2021) ..........................................................................10

*Cummings v. City of N.Y.*,
   2022 WL 2166585 (2d Cir. June 16, 2022) ..............................................................................4

*Eros Int'l, PLC v. Mangrove Partners*,
   140 N.Y.S.3d 518 (1st Dep't 2021) ...........................................................................................5

*Etheredge-Brown v. Am. Media, Inc.*,
   13 F. Supp. 3d 303 (S.D.N.Y. 2014) .........................................................................................2

*Farber v. Jefferys*,
   2011 WL 5248207 (N.Y. Sup. Ct. Nov. 2, 2011), *aff'd*, 959 N.Y.S.2d 486
   (1st Dep't 2013) .........................................................................................................................7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ...................................................................................................................7

*Hayashi v. Ozawa*,
   2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) ..........................................................................4

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) ................................................................................................................8

*Lindberg v. Dow Jones & Co.*,
   2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ..........................................................................2

*Marom v. Pierot*,
   2020 WL 6572509 (S.D.N.Y. Aug. 30, 2020) ................................................................... 9

*Moritz v. Town of Warick*,
   2017 WL 4785462 (S.D.N.Y. Oct. 19, 2017) ................................................................... 8

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d. Cir. 2013) ........................................................................................... 5

*Palin v N.Y. Times Co.*,
   940 F.3d 804 (2nd Cir. 2019) .......................................................................................... 6

*Schlotthauer v. Sanders*,
   545 N.Y.S.2d 197 (2d Dep't 1989) ............................................................................... 10

*Sharon v. Time, Inc.*,
   599 F. Supp. 538 (S.D.N.Y. 1984) .................................................................................. 6

*Shaw v. Empire Stock Transfer Inc.*,
   381 F. Supp. 3d 286 (S.D.N.Y. 2019) ............................................................................. 9

*Sorvillo v. St. Francis Prep. Sch.*,
   607 F. App'x 22 (2d Cir. 2015) ....................................................................................... 4

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010) ............................................................................. 9

*Van-Go Transp. Co. Inc. v. N.Y.C. Bd. of Educ.*,
   971 F. Supp. 90 (E.D.N.Y. 1997) ................................................................................... 9

**STATUTES, RULES, AND REGULATIONS:**

21 C.F.R. § 10.30(b)(3) ............................................................................................................ 4

Federal Rule of Civil Procedure 8 ......................................................................................... 10

N.Y. CPLR § 215(3) ................................................................................................................ 2

**PRELIMINARY STATEMENT**

The Opposition ("Opp." at 1) tilts at a windmill of Cassava's own making and opens with a falsehood: "Bredt and Pitt spent months calling Cassava Sciences a fraud . . . ." Although even that would not be defamation here, Defendants Bredt and Pitt (the "CP Defendants") did no such thing. They laid out facts in the Citizen Petition ("CP") showing anomalous data in six papers, reproducing what those papers depicted. They then opined in heavily qualified language that those facts were consistent with data manipulation and called for further review. Cassava's First Amended Complaint ("FAC") concedes that data on which Cassava relied contained anomalies and errors and points to no facts casting doubt on the CP Defendants' belief in the CP; Cassava cannot deny that data manipulation is a possible explanation for the aberrations. That ends this case. Cassava's insistence that it committed no fraud may or may not be true, but it is not what the CP said. And the CP Defendants' opinion that the admitted anomalies can suggest misconduct is not denied by Cassava, which argues only that its own self-serving explanations are better. The question raised here is whether scientists may comment on admitted data irregularities and demand further examination for possible manipulation. Doing so is not defamation, but typical back-and-forth about scientific data and interpretation that absolutely <u>demands</u> public scrutiny and discourse.

Cassava's claim is also time-barred because Cassava sued more than one year after the CP was published. Later supplements that Cassava concedes "parroted" the CP (FAC ¶ 143) did not restart the limitations clock under the "rule of first publication." Nor did hyperlinks in those supplements to papers by the other Defendants (Opp. 23), as they are neither alleged in Cassava's complaint, nor are such links or references "republication" under established law.

At bottom, this lawsuit asks whether tort law may punish scientific commentary. The courts have wisely and consistently said no. This case does violence to core First Amendment principles and crucial public health discourse and should be dismissed.

-1-

# ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD A TIMELY CLAIM FOR DEFAMATION.

### A. The Claims Are Barred by the One-Year Statute of Limitations.

Cassava does not dispute that the one-year statute of limitations (CPLR § 215(3)) bars its claims as to the August 18, 2021, CP because the Complaint was not filed until November 2, 2022. Cassava nonetheless argues (Opp. 2) that the CP Defendants' November 17 and December 8, 2021, supplements to the FDA (FAC Exs. 9 & 11) "republished their own prior" statements, but the longstanding "rule of first publication" holds that the limitations period does not refresh upon reiteration.[1] Cassava conceded (FAC ¶ 143) the supplements "parroted" the CP and thus any claim had to be made within one year of the initial CP filing itself.

Cassava tries to retrofit its claims by now contending that the November 17, 2021, supplement included "hyperlinks to the QCM and Dot.com Defendants publications." Opp. 23. Cassava cites FAC ¶ 159, which does not support this new theory of liability; in fact, the FAC identifies no statement republished by the CP Defendants. In any event, "a hyperlink that 'reference[s] . . . an article' but 'does not restate the defamatory material is not a republication of the material.'" *Lindberg v. Dow Jones & Co.*, 2021 WL 3605621, at *5 (S.D.N.Y. Aug. 11, 2021) (citations omitted); *accord Biro*, 95 N.Y.S.3d at 800. Cassava's effort to evade the statute of limitations fails, and the claims are time-barred.

### B. The CP Defendants' Statements Were Substantially True and/or Non-Actionable Opinion.

Cassava's Opposition and Appendices attempt to refashion the CP based upon Cassava's

---

[1] *See, e.g., Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) ("[T]he statute of limitations ordinarily begins to run at the time of the 'first publication'—that is, 'the earliest date on which the work was placed on sale or became generally available to the public.'") (quoting *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)); *Biro v. Condé Nast*, 95 N.Y.S.3d 799, 800 (1st Dep't 2019) (defamation "generally accrues on the date of the first publication").

own self-serving categorization of the "implication" of the CP's statements. The CP did not proclaim "Cassava Sciences is a fraud" or "accuse[] Cassava of a crime." Opp. 1, 9. Rather, the CP may fairly be summarized as containing one overarching assertion of fact—that anomalies existed in the six papers at issue by Drs. Wang and Burns—accompanied by an assertion of opinion or mixed fact and opinion—that those anomalies could suggest data manipulation. Both are true on the face of the FAC and the exhibits it incorporates.

Despite Cassava's repeated conclusory assertion that "nearly everything" the CP Defendants ever said about Cassava was "demonstrably false" (Opp. 1, 17), the FAC itself shows that is not so. For example, Cassava itself concedes "errors in displaying figures" as to certain blood tests. FAC ¶ 221. It admits that Western blots in the cited papers had "problems," including "the use of low-dpi images"; "compression artifacts created by the re-sizing of blot data for use in publications"; "a cropping error"; "tweaks to exposure levels before publication"; and "errors in marking figures." Id. ¶ 363. "[I]ndependent scientists" confirmed "obvious errors that likely occurred during generating figures for publication." Id. ¶ 362. Third parties, including journals that published the papers, conducted investigations, retractions and corrections due to the errors. See, e.g., FAC Ex. 16 at 2;[2] Ex. 17; Opening Brief ("Mot.") 9 n.9. Cassava disclosed to its investors under penalties of perjury "human errors" in one paper and "a duplicated panel" in another. FAC Ex. 20 at 34. The Opposition ignores these admissions and makes no effort to challenge either the existence of the irregularities or how they were reproduced in the CP. Conclusory pronouncements in the Opposition to the contrary,[3] the factual premise of the CP is admitted to be accurate.

The CP also noted, entirely appropriately, that data manipulation is a potential explanation

---

[2] Citations to the FAC's Exhibits use PDF pagination for clarity.
[3] Even if they had been in the FAC, such conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

for the acknowledged data issues. The CP expressed that inference as an opinion, and it was careful to repeatedly qualify it as such, asking for the FDA to investigate these concerns further. *See* Mot. 16-17.[4] Reviewing the CP holistically, no reasonable reader could conclude that the CP Defendants were asserting as fact that Cassava is a fraud, but instead were raising painstakingly-evidenced concerns about data issues suggestive of potential misconduct that warranted further review.[5] The CP Defendants' caveated opinions as to what the admittedly true facts might suggest are beyond the scope of defamation law.[6]

Even if it were a mix of fact and opinion for the CP to opine that data manipulation was a possible cause of the anomalies, no defamation occurred. Mixed statements of fact and opinion cannot be defamatory unless the underlying facts are known to be false (which is not the case here, as discussed below) or the statements imply they are based on undisclosed facts. *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015). The CP confirms that "[a]ll the information detailed herein was obtained from public, non-proprietary sources" which the CP cites extensively. FAC Ex. 3 at 12. The CP certifies, per 21 C.F.R. § 10.30(b)(3), that it "includes all information and views on which the petition relies[.]" The CP cites the challenged papers themselves and lays out in exacting detail all factual bases for the opinions, rendering them nonactionable.[7]

---

[4] Cassava asserts (Opp. 13) that the CP Defendants "said that the underlying research supporting simufilam had been doctored and manipulated." They did not, of course, which is why Cassava offers no citation to the CP. But even if a suspicion of manipulation is "capable of being proven true or false," *id.*, that was the point of the CP—to lay out the facts supporting the inference of potential manipulation and request the FDA to investigate thoroughly.

[5] *See Hayashi v. Ozawa*, 2019 WL 1409389, at *3 (S.D.N.Y. Mar. 28, 2019) (applying a "holistic" approach and examining the "over-all context" to interpret allegedly defamatory statements).

[6] *Cummings v. City of N.Y.*, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022) ("Expressions of opinion . . . are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.").

[7] *See, e.g.*, *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012) ("[W]hen an author fully sets forth the factual basis for a particular view (and that factual basis is not challenged as false), then the author's conclusion constitutes nonactionable opinion."); *Eros Int'l, PLC v. Mangrove Partners*, 140 N.Y.S.3d 518, 519 (1st Dep't 2021) ("[S]tatements . . . accompanied by a recitation of facts on which they were based [are] nonactionable opinion.").

Moreover, nowhere does Cassava offer any allegation or argument that the admitted anomalies could <u>not</u> be created by data manipulation. That is, while Cassava denies any fraud, the CP Defendants' inference of possible manipulation follows logically from the disclosed and correct facts. At most, Cassava's argument is that <u>its</u> opinions are better than those in the CP, but the Second Circuit has held that "as a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d. Cir. 2013).

This case does not present even a close call for defamation. The CP makes true assertions of fact, supported by ample publicly available information, and draws carefully qualified opinions that clearly follow from those fully disclosed facts. That Cassava has a different (or allegedly better) interpretation of the data anomalies is not defamation on the part of the CP Defendants. The CP Defendants were not only within their rights to comment on data problems and offer their opinions, but their exercise of their First Amendment rights served the public good.

**C.     Cassava Has Not Alleged Facts to Show Actual Malice.**

Cassava does not and cannot deny that it is a public company that made public filings in pursuit of a drug it hopes to test on and sell to the public. Thus, Cassava must meet its burden to allege facts showing that the CP Defendants' statements were made with "actual malice"—that is, "knowledge of [their] fals[ity] or with reckless disregard of whether [they] w[ere] false." *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022). Cassava does not come close to meeting this exacting standard, but instead impugns the motives of Defendants as "short sellers" and repeatedly declares that the CP is "demonstrably false," without explaining how or why, much less offering some factual basis to suggest that the

CP Defendants knew the statements to be false or recklessly disregarded whether they were false.[8]

As an initial matter, Cassava's argument that the CP Defendants have "no evidence" to support their claims (Opp. 19) is entirely belied by the face of the CP, as well as the FAC itself, which annexes voluminous documents identifying the CP Defendants' specific scientific concerns, quoting or reproducing the papers' own reported results, and laying out detailed factual bases for why the data is anomalous. Mot. 4-6. The cases Cassava cites (Opp. 19), which involve news stories founded upon unsupported speculation or rumor, are completely inapposite.[9]

In addition, for each source that Cassava claims offers "[c]ontradictory information" to the concerns raised in the CP (Opp. 19), there are other sources incorporated into the FAC that underscore the veracity of the CP Defendants' statements.[10] *See* page 3, *supra.* By Cassava's own allegations, "independent scientists" found "problems," "obvious errors," and "tweaks" in the data. (FAC ¶¶ 362-63.) Scientific journals that had published the papers by Drs. Burns and Wang re-examined the data and also noted errors and concerns, retracting and correcting several. Mot. 8-9. These views support the CP and make it impossible for Cassava to show actual malice because they underscore that the issues at hand are ones of scientific debate. Even if it were true that

---

[8] Cassava's 21-page chart Appendix B, which purports to "demonstrate how actual malice is pled" does nothing of the sort. It excerpts certain statements from the CP; assigns each a self-serving (and inaccurate) "[i]mplication," and then cuts and pastes a virtually identical string of citing references from the FAC. Opp. 19 n.10. Rather than meeting its burden to establish actual malice, this chart simply adds to the morass of paper and circular arguments before this Court, deflecting attention from the straightforward issues to be resolved here.

[9] *Palin v N.Y. Times Co.*, 940 F.3d 804, 813-15 (2nd Cir. 2019) (identifying plausible theory of actual malice where allegedly defamatory news article asserted claim that had already been disproven and plaintiff produced evidence showing defendant knew claim had been disproven); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 581-85 (S.D.N.Y. 1984) (finding disputed material issue of fact where article stated facts allegedly implying that political leader encouraged a massacre and author declined to produce evidence to support his claim that he believed the facts stated were true).

[10] Cassava's claim that "[e]very journal that investigated Defendants' accusations found no evidence (or no compelling evidence) of data manipulation" (FAC ¶ 361) is refuted by the FAC itself and the exhibits thereto. It cannot be disputed that the cited journals issued expressions of concern, made multiple corrections, and retracted articles that were based upon the anomalous data noted in the CP. Mot. at 8-9 & n.9. And even if some "[p]eer-reviewed science publications confirmed that simufilam has a strong scientific foundation to treat Alzheimer's," Opp. 3, that does not prove that the CP Defendants' observations, or the inferences drawn therefrom, were false, let alone defamatory. Instead, it underscores that these are unsettled matters of scientific debate.

Cassava's opinions were more informed or more accurate—they are not—it is not defamation to draw an inference or hold an opinion when others may exist, particularly on matters of public concern. Mot. 19. Cassava's allegations concerning the CP Defendants' "[r]epetition and [r]epublication" of the data (Opp. 20) fail for the same reason.

Cassava bizarrely suggests that the CP Defendants should have interviewed Cassava or others, or expressed Cassava's contrary views, and that not doing so constituted "purposeful avoidance." (Opp. 20.) No such duty exists. Never has any court suggested that a party must exhaustively collect (much less express) all views before offering an opinion, or examine and air every contrary notion before speaking.[11] If that were the law, free speech would die.

Finally, Cassava's continued reliance on the CP Defendants' (fully disclosed) position as short sellers of Cassava stock is misplaced because alleged motive is not malice. Indeed, "even spite, hostility or deliberate intention to harm is insufficient to show malice." *Farber v. Jefferys*, 2011 WL 5248207, at *11 (N.Y. Sup. Ct. Nov. 2, 2011) (internal quotation marks omitted), *aff'd*, 959 N.Y.S.2d 486 (1st Dep't 2013). Cassava had to offer specific facts indicating that the CP Defendants understood the CP to be false or *had obvious reasons to doubt* its accuracy. *BYD Co.*, 531 F. Supp. 3d at 822. No such facts exist.

### D. The CP Was Not Defamatory *Per Se* and Cassava Has Not Alleged Facts to Suggest That the CP Caused it Injury.

Cassava makes no effort to challenge the CP Defendants' argument that the FAC fails to plead that the CP caused Cassava any injury: Cassava's share price rose the week following the

---

[11] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) (cited at Opp. 19-20), does not command a different result. In that case, newspaper reporters were instructed to interview all of the witnesses with personal knowledge of a particular event except for one key witness who would have been able verify or deny the allegedly defamatory claims later reported by the newspaper. The newspaper also inexplicably declined to listen to audio recordings that actually had captured the event in dispute. *Id.* at 682-83. Here, the facts at issue are intrinsic to the six papers themselves, and no allegation is made that relevant factual details from those papers were distorted or ignored. What Cassava is really suggesting is that alternative opinions needed to be gathered and weighed, but no case so holds.

CP and crashed once Cassava publicly decried the concerns the CP raised as "fiction" and made false statements about who analyzed its data. *See* Mot. 21-22; FAC Ex. 3 at 2; FAC Ex. 64. Cassava's alleged losses are a product of its own decision to use data raising serious questions while flippantly trivializing the admitted anomalies, rather than any alleged defamation.

On its face, the FAC makes no effort to plead special damages, and the Opposition doubles down by putting all of Cassava's eggs in the *per se* defamation basket. But even if defamation could have existed here, it would not be *per se*. The CP asserts that two authors published papers with suspicious anomalies. The CP never states that Cassava caused, induced, condoned, or even previously knew of those anomalies. Any embarrassment to Cassava could not have arisen from the CP itself, because the CP makes no comment whatsoever as to the practices or business of Cassava; any issues arose solely from what Cassava did following the publication of the CP.

The *per se* exception is limited to statements so "egregious" that they are "presumed to cause serious harm." *Moritz v. Town of Warick*, 2017 WL 4785462, at *5 n.3 (S.D.N.Y. Oct. 19, 2017) (citation omitted). A statement is defamatory *per se* under New York law only if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman. *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992).

The CP did none of these. It asserts no criminal conduct by Cassava—indeed, the CP contains no allegation that Cassava was complicit in the errors suggestive of manipulation. And the observation that certain papers contain suspicious errors is not itself a comment on Cassava's business generally. The exception for comments that injure a plaintiff's business are "limited to defamation of a kind that is incompatible with the proper conduct of the business, trade, [or] profession." *Id.* at 348 (citation omitted). Science is complex, and many pharmaceutical companies

conduct studies whose data is subject to challenge. Companies respond to questions about data integrity routinely and (usually) attentively, and part of the pharmaceutical business is investigating the many questions that arise about data. There is nothing in the CP's request that the six papers be investigated fully that imputes to Cassava "some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform [its] duties." *Van-Go Transp. Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997).

In fact, there can be no doubt that Cassava's discomfiture arose solely because of its ham-fisted <u>response</u> to the CP. Responsible industry participants would have paused to examine and open to public review the serious issues raised by the CP—indeed, numerous decorated scientists did exactly that, as did the journals that published the papers and the university that employed one of the authors. *See* Mot. 8-9 & n.9. Cassava plowed on, glibly dismissing genuine issues as "fiction" and seeking to "correct the record." Opp. 14. That inexplicable deviation from the expectations of the scientific and investing communities created predictable problems for Cassava. Cassava mischaracterizes the CP as asserting that Cassava is a fraudulent enterprise, but the CP does not say that. It was Cassava's own subsequent conduct that invited outsiders to condemn Cassava as either indifferent to or complicit with serious scientific concerns about improprieties.

Cassava has not alleged and cannot allege that the CP caused it injury or special damages. This, too, mandates the dismissal of the First Amended Complaint.[12]

## II. THE CONSPIRACY CLAIM (COUNT II) MERELY DUPLICATES THE DEFAMATION CLAIM AND IS TIME-BARRED.

There is no independent tort of conspiracy. *Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 292 (S.D.N.Y. 2019). And Cassava has sued both alleged conspirators directly for

---

[12] *See, e.g., Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336 (S.D.N.Y. 2010); *Marom v. Pierot*, 2020 WL 6572509, at *8 n.6 (S.D.N.Y. Aug. 30, 2020) ("Vague injuries such as dignitary harm or mere injury to reputation do not constitute special damages." (citation omitted)) (subsequent history omitted).

the underlying alleged tort, rendering the claim "entirely duplicative." *Carbon Inv. Partners, LLC v. Bressler*, 2021 WL 3913526, at *9 (S.D.N.Y. Sept. 1, 2021). In any event, conspiracy is "time-barred when the substantive tort underlying it is time-barred." *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1989). Cassava's conspiracy claim was not brought within the one-year period required for the defamation claim as discussed above, and thus must be dismissed.

### III.    THE FAC VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 8.

Cassava argues that "nearly everything Bredt and Pitt said in their petitions" was defamatory (Opp. 25), and it inflicted on Defendants and the Court a sprawling 1,598 pages of a complaint with exhibits (now adding 59 pages of Appendices beyond its 25-page Opposition). The FAC is an improper attempt to shift the burden of identifying "defamation" onto Defendants and the Court. Cassava has not given "fair notice" of its claims but instead has sought to mask a legally defective theory with impenetrable verbosity vastly exceeding the length of the CP itself. Opp. 24. The FAC does not meet the fairness-promoting requirements of Rule 8 and should be dismissed.

### CONCLUSION

For these reasons and those in the opening brief, the First Amended Complaint should be dismissed with prejudice.

Dated:  February 21, 2023                           Respectfully submitted,
                                                    DAVID BREDT and GEOFFREY PITT

                                                    By their attorneys,

                                                    */s/ Jeffrey A. Simes*
                                                    Jeffrey A. Simes
                                                    Meghan K. Spillane
                                                    GOODWIN PROCTER LLP
                                                    620 Eighth Avenue
                                                    New York, NY 10018
                                                    Tel.:   (212) 813-8800
                                                    Fax:    (212) 355-3333
                                                    jsimes@goodwinlaw.com
                                                    mspillane@goodwinlaw.com

-11-

## CERTIFICATE OF SERVICE

      I, Jeffrey A. Simes, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of the CP Defendants' Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 21, 2023.

Dated: February 21, 2023                                                       */s/ Jeffrey A. Simes*