**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CASSAVA SCIENCES, INC., | Case No. 1:22-cv-09409-GHW-OTW |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| DAVID BREDT, GEOFFREY PITT, QUINTESSENTIAL CAPITAL MANAGEMENT LLC, ADRIAN HEILBUT, JESSE BRODKIN, ENEA MILIORIS and PATRICK MARKEY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DR. JESSE BRODKIN, DR. ADRIAN HEILBUT, AND DR. ENEA MILIORIS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

CLARICK GUERON REISBAUM LLP

Isaac B. Zaur
David Kumagai
220 Fifth Avenue, 14th Floor
New York, New York 10001
(212) 633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com

LAW OFFICE OF DANIEL F. WACHTELL

Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
(917) 667-6954
dan@danwachtell.com

*Attorneys for Defendants Dr. Jesse Brodkin,*
*Dr. Adrian Heilbut, and Dr. Enea Milioris*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    A. Cassava and Simufilam ............................................................................................... 2

    B. Disputed Research and Appearance of Data Manipulation .......................................... 3

    C. Dot.com Defendants' Allegedly Defamatory Statements ............................................. 8

ARGUMENT ............................................................................................................................ 10

I.  THE CLAIMS AGAINST DRS. BRODKIN AND MILIORIS SHOULD
    BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ...................................... 10

    A. Legal Standard ............................................................................................................ 10

    B. Cassava Does Not and Cannot Establish Personal Jurisdiction Over
       Drs. Brodkin and Milioris ........................................................................................... 10

II.  THE DEFAMATION CLAIMS AGAINST DRS. BRODKIN, HEILBUT,
    AND MILIORIS FAIL AS A MATTER OF LAW ......................................................... 14

    A. Legal Standard ............................................................................................................ 14

    B. Cassava Does Not and Cannot Plead "Falsity" ........................................................... 14

    C. The Challenged Statements Are Non-Actionable Expressions of Opinion ................... 16

    D. Cassava Does Not and Cannot Plead "Actual Malice" ................................................ 22

III. THE CONSPIRACY CLAIM FAILS AS A MATTER OF LAW ....................................... 25

IV. THE FAC SHOULD BE DISMISSED BECAUSE IT VIOLATES RULE 8 ...................... 25

CONCLUSION ......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 14, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 14, 20

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ................................................................................................. 12

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................................................................. 22

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ................................................................................................. 20

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  137 S. Ct. 1773 (2017) ................................................................................................. 13

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973
  (2d Cir. Mar. 1, 2022) ................................................................................................. 23

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ................................................................................................. 22, 23

*Copp v. Ramirez*,
  62 A.D.3d 23 (1st Dep't 2009) ................................................................................................. 12, 13

*Croce v. Sanders*,
  843 F. App'x 710 (6th Cir. 2021) ................................................................................................. 16

*Cummings v. City of N.Y.*,
  No. 21-1380, 2022 WL 2166585 (2d Cir. June 16, 2022) ......................................... 14, 16, 19

*Davis v. Boeheim*,
  24 N.Y.3d 262 (2014) ................................................................................................. 16, 18

*Deer Consumer Prod., Inc. v. Little*,
  938 N.Y.S.2d 767 (N.Y. Sup. Ct. N.Y. County 2012) ................................................................. 11

*Dobies v. Brefka*,
  694 N.Y.S.2d 499 (3d Dep't 1999) ................................................................................................. 25

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013) ........................................................................... 24

*Eros Intern. PLC v. Mangrove Partners*,
   No. 653096/2017, 2019 WL 1129196 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2019) ... 16, 19, 21

*Fedak v. YIMBY, Inc.*,
   No. 17-cv-8825, 2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018) ............................................. 20

*Gilman v. Spitzer*,
   902 F. Supp. 2d 389 (S.D.N.Y. 2012), *aff'd,* 538 F. App'x 45 (2d Cir. 2013) ........................ 22

*Hodges v. Lutwin*,
   595 F. Supp. 3d 12 (S.D.N.Y. 2022) ...................................................................... 24

*In Re Cassava Sciences, Inc. Securities Litigation*,
   No. 21-cv-00751-DAE (W.D. Tex.) ...................................................................... 6

*Jacob v. Lorenz*,
   No. 21-cv-6807, 2022 WL 4096701 (S.D.N.Y. Sept. 7, 2022) ............................................. 24

*Khalil v. Fox Corp.*,
   No. 21-cv-10248, 2022 WL 3370826 (S.D.N.Y. Aug. 16, 2022) .................................... 11, 12

*Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*,
   205 A.D.3d 467 (1st Dep't 2022) ........................................................................ 11

*Kipper v. NYP Holdings Co.*,
   12 N.Y.3d 348 (2009) ................................................................................... 24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) ........................................................................... 10

*Lindberg v. Dow Jones & Co., Inc.*,
   No. 20-cv-8231 (LAK), 2021 WL 5450617 (S.D.N.Y. Nov. 22, 2021) ................................... 22

*Live Face on Web, LLC, v. Five Boro Mold Specialist, Inc.*,
   No. 15-cv-4779, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016) ............................................. 21

*McGill v. Parker*,
   582 N.Y.S.2d 91 (1st Dep't 1992) ...................................................................... 25

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
   No. 17-cv-7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) ................................. 20, 23, 24

*Nanoviricides, Inc. v. Seeking Alpha, Inc.*,
  No. 151908/2014, 2014 WL 2930753 (N.Y. Sup. Ct. N.Y. County June 26, 2014) .............. 19

*Nunes v. NBCUniversal Media, LLC*,
  No. 22-cv-1633, 2022 WL 17251981 (S.D.N.Y. Nov. 28, 2022) ...................................... 14, 16

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) ....................................................................................... 17

*Prince v. Intercept*,
  No. 21-cv-10075, 2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022) .............................................. 24

*Rapaport v. Barstool Sports, Inc.*,
  No. 18-cv-8783, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) ............................................. 21

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
  925 N.Y.S.2d 407 (1st Dep't 2011) .............................................................................. 19

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
  No. 150374/2011, 36 Misc. 3d 1231(a), 2012 WL 3569952
  (Sup. Ct. N.Y. County Aug. 16, 2012) ....................................................................... 19, 20

*Smartmatic USA Corp. v. Fox Corp.*,
  No. 151136/2021, 2022 WL 685407 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2022) ................. 12

*Sorvillo v. St. Francis Preparatory Sch.*,
  607 F. App'x 22 (2d Cir. 2015) ................................................................................... 19

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
  No. 18-cv-4921, 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) ............................................ 12

*Steinhilber v. Alphonse*,
  68 N.Y.2d 283 (1986) ................................................................................................. 16

*Suber v. VVP Servs., LLC*,
  No. 21-2649, 2023 WL 115631 (2d Cir. Jan. 10, 2023) ...................................................... 10

*Symmetra Pty Ltd. v. Hum. Facets, LLC*,
  No. 12-cv-8857, 2013 WL 2896876 (S.D.N.Y. June 13, 2013) ............................................ 10

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ................................................................................... 14, 20

*Treppel v. Biovail Corp.*,
  No. 03-cv-3002, 2005 WL 427538 (S.D.N.Y. Feb. 22, 2005) ............................................. 12

*Valley Elecs. AG v. Polis*,
    No. 21-cv-2108, 2022 WL 893674 (2d Cir. Mar. 28, 2022)...................................................... 17

*Watson v. NY Doe 1*,
    439 F. Supp. 3d 152 (S.D.N.Y. 2020) ..................................................................................... 25

*Zagami et al v. Barbier et al*,
    No. 21-cv-00998-DAE (W.D. Tex.) ......................................................................................... 6

## **Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................................................. 13

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 14

N.Y. C.P.L.R. § 301 ..................................................................................................................... 10

N.Y. C.P.L.R. § 302 ................................................................................................................ 11, 13

N.Y. Civ. Rights Law § 76-a(2)................................................................................................... 22

## PRELIMINARY STATEMENT

Cassava filed this defamation action to suppress criticism of its experimental Alzheimer's drug, simufilam.  It is meritless.  The public statements that Cassava attacks all arise from simufilam's irregular results in clinical trials and the appearance of data manipulation in Cassava's underlying research papers.  As a result of these issues:  (i) Cassava has admitted errors in its clinical studies and research; (ii) seven peer-reviewed scientific journals have retracted or corrected 13 articles; (iii) the City University of New York has initiated an investigation into simufilam's principal researcher; (iv) investors have filed securities fraud and shareholder derivative actions against Cassava's officers and directors; and (v) government agencies, including the SEC, DOJ, and NIH, have opened investigations or inquiries. Defendants Jesse Brodkin, Adrian Heilbut, and Enea Milioris are three scientists who studied Cassava's extraordinary claims, publicly questioned the seemingly manipulated data underlying those claims, and shorted Cassava's stock based on their opinion that simufilam would fail. Cassava's lawsuit is a transparent bid to silence Defendants and scare other would-be critics and witnesses, while the company contends with a declining valuation caused by its own failure to credibly defend its incongruous scientific claims.  The case should be dismissed with prejudice.

**_Lack of personal jurisdiction._**  The claims against Drs. Brodkin and Milioris should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  Dr. Brodkin is a resident of New Jersey, Dr. Milioris is a resident of England, and Plaintiff Cassava is a Delaware company based in Texas.  Cassava offers no basis for this Court to exercise jurisdiction over these out-of-state Defendants for statements that allegedly harmed this out-of-state Plaintiff.  (_Infra_ Section I.)

**_Failure to state a claim._**  Cassava fails to state a plausible defamation claim for three independent reasons.  _First,_ Cassava does not plead falsity.  Cassava cannot contest that the factual predicate for all of the allegedly defamatory statements is substantially true:  the research

1

papers underlying simufilam and simufilam's clinical research studies included errors or indicia of data manipulation that were signs of possible fraud.  (*Infra* Section II.B.)  *Second*, the allegedly defamatory statements are non-actionable expressions of opinion concerning unsettled matters of scientific debate.  The statements are absolutely protected because they either included a recitation of facts, or lacked any implication that they were based on undisclosed facts.  (*Infra* Section II.C.)  *Third,* Cassava fails to plead "actual malice".  Cassava's undifferentiated group allegations are conclusory and insufficient to survive a motion to dismiss.  None of Cassava's generalized allegations supports an inference that Defendants had "subjective knowledge" of falsity.  Nor is there any allegation sufficient to render the challenged statements "so inherently improbable that only a reckless person" would have made them.  (*Infra* Section II.D.)

Finally, Cassava's conspiracy claim should be dismissed as derivative of its defective defamation claims and because Cassava fails to plead an agreement.  (*Infra* Section III.)

## BACKGROUND[1]

### A.  Cassava and Simufilam

Cassava is a publicly traded pharmaceutical company based in Texas and incorporated in Delaware.  (FAC ¶¶ 11-12.)  Cassava is currently sponsoring clinical studies of an experimental new drug—simufilam—to treat patients with Alzheimer's disease.  (*Id.* ¶¶ 36-37.)  According to Cassava, simufilam can improve brain health by targeting a protein (*i.e.*, filamin A) in the brain of Alzheimer's patients and reverting the protein to its "native, healthy conformation."  (*Id.* ¶¶ 38-39.)  In 2017, Cassava filed an Investigational New Drug ("IND") application with the FDA and then proceeded to conduct "Phase 1", "Phase 2a", and "Phase 2b" studies over the next three years.  (*Id.* ¶¶ 64-71.)  In October 2021, Cassava announced the initiation of its first Phase 3 trial,

---

[1] Citations herein to the "FAC" and "Ex." refer to the First Am. Compl. (Dkt. 30) and Exhibits thereto (Dkts. 30-1 to 39-6), and page number citations refer to the docket-stamped page numbers.

a 52-week study of 750 patients (*id.* ¶¶ 92-93); and in November 2021, Cassava announced the

initiation of its second Phase 3 trial, a 76-week study of 1,000 patients (*id.* ¶¶ 93-94).

### B.  Disputed Research and Appearance of Data Manipulation

Cassava's claims about simufilam are based primarily on research by Dr. Hoau-Yan

Wang, a professor at CUNY, and Dr. Lindsay Burns, Cassava's SVP of Neuroscience and the

spouse of Cassava's CEO, Remi Barbier.  (*Id.*, Ex. 3 at 10-29.)

#### 1.   Contested Findings from Simufilam's Phase 2b Trial

In May 2020, Cassava disclosed negative findings from its "Phase 2b" clinical trials of

simufilam.  (*Id.* ¶ 73.)  Specifically, Cassava announced that the Phase 2b study "did not meet its

primary endpoint" of a "statistically significant effect" on certain biomarkers.  (*Id.*)[2]  In August

2020, Cassava sought to dismiss the study's findings as "anomalous and highly improbable," and

Cassava's CEO said the Company was conducting a "comprehensive analysis" of the results,

which he described as a "re-do."  (*Id.* ¶ 73; Ex. 39 at 2.)  In September 2020, Cassava reported

that its "re-do" had found positive evidence of simufilam's "effects on biomarkers."  (*Id.*, Ex. 39

at 2.)  However, Cassava later acknowledged that the "re-do" had been conducted by Dr. Wang,

the Company's long-time consultant and collaborator.[3]

#### 2.   The Citizen Petition and Cassava's Admission of Errors

In August 2021, Dr. David Bredt, a neuroscientist and former executive at Eli Lilly and

Johnson & Johnson, and Dr. Geoffrey Pitt, a cardiologist at Weill Cornell Medicine, submitted a

Citizen Petition to the FDA.  (*Id.* ¶¶ 13-14, 120, Ex. 3.)  The Citizen Petition described "grave

---

[2] Press Release, "Top-line Results from a Phase 2b Study of PTI-125 in Alzheimer's Disease Does Not Meet Primary Endpoint," *Cassava Sciences* (May 15, 2020), https://www.cassavasciences.com/news-releases/news-release-details/top-line-results-phase-2b-study-pti-125-alzheimers-disease-does

[3] Dave Michaels and Joseph Walker, "SEC Investigating Cassava Sciences, Developer of Experimental Alzheimer's Drug," *The Wall Street Journal* (Nov. 17, 2021), https://www.wsj.com/articles/cassava-sciences-alzheimers-sec-investigation-11637154199

concerns about the quality and integrity of the laboratory-based studies surrounding [simufilam] and supporting the claims for its efficacy." (FAC, Ex. 3 at 3.) The Citizen Petition asked the FDA to "halt the clinical studies" of simufilam "pending a thorough audit of the publications and data relied on by Cassava." (*Id*.)[4]

In response to the Citizen Petition, on September 3, 2021, Cassava's CEO admitted to certain "errors" in the research papers concerning simufilam but described them as "visual errors," "not material errors". (FAC, Ex. 104 at 8.) He also said "[t]here may be more [errors] to come, I just don't know" and claimed that "the data analysis is correct," even though "the visual display of the data is not correct." (*Id.*)

### 3. Scientific Journals Investigate Allegations of Data Manipulation

Around the same time, peer-reviewed scientific journals that had published papers by Drs. Burns and Wang initiated investigations into the allegations of data manipulation. (FAC, ¶¶ 301-302.) To date, three scientific journals (*PLoS One*,[5] *Alzheimer's Research & Therapy*,[6] and *Molecular Neurodegeneration*[7]) have retracted seven research papers co-authored by Drs. Burns

---

[4] Drs. Bredt and Pitt made four supplemental submissions to the FDA. (*Id*., Exs. 4, 5, 9, and 11.) On February 10, 2022, the FDA denied the Citizen Petition's requests "solely on the grounds that [the] requests are not the appropriate subject of a citizen petition." (*Id*., Ex. 15 at 3-4.)

[5] *PLoS One*, "Retraction: High-Affinity Naloxone Binding to Filamin A Prevents Mu Opioid Receptor–Gs Coupling Underlying Opioid Tolerance and Dependence [2008]" (Mar. 30, 2022), https://doi.org/10.1371/journal.pone.0266627; Adam Marcus, "Five studies linked to Cassava Sciences retracted," *Retraction Watch* (Mar. 30, 2022), https://retractionwatch.com/2022/03/30/five-studies-linked-to-cassava-biosciences-retracted/#more-124589

[6] *Alz Res Therapy*, "Retraction Note: Increased Aβ42-α7-like nicotinic acetylcholine receptor complex level in lymphocytes is associated with apolipoprotein E4-driven Alzheimer's disease pathogenesis [2017]" (June 1, 2022), https://doi.org/10.1186/s13195-022-01024-5

[7] *Mol Neurodegener* "Retraction Note: Calcium-dependent cytosolic phospholipase A2 activation is implicated in neuroinflammation and oxidative stress associated with ApoE4 [2021]" (Feb. 4, 2022), https://doi.org/10.1186/s13024-021-00438-3

or Wang; and four other scientific journals (*Neuroscience*,[8] *Journal of Neuroscience*,[9]

*Neurobiology of Aging*,[10] and *Physiology & Behavior*[11]) have issued Expressions of Concern or

corrections concerning six research papers co-authored by Drs. Wang or Burns.  (*See also,* FAC,

Exs. 16-19.)  Three are particularly relevant.

 *First,* on November 4, 2021, Cassava announced that the *Journal of Neuroscience* had

"requested raw data" concerning a 2012 article by Drs. Burns and Wang and "determined that

there was one duplicated panel . . . and a Corrigendum was requested and will be printed," but

"[n]o evidence of data manipulation was found."  (*Id.*, Ex. 16 at 2.)  However, on January 19,

2022, the *Journal of Neuroscience* issued a follow-up "Expression of Concern" regarding the

same 2012 article, due to "concerns about Western blots . . . including those published with the

article's erratum," and stated that the journal "will await the outcome of [CUNY's] investigation

before taking further action."[12]

---

[8] *Neuroscience*, "Editorial note: Ultra-low-dose naloxone suppresses opioid tolerance, dependence, associated changes in mu opioid receptor [2005]" (Feb. 1, 2022), https://doi.org/10.1016/j.neuroscience.2021.11.019; *Neuroscience*, "Corrigendum to: Stress Diminishes BDNF-stimulated TrkB Signaling, TrkB-NMDA Receptor Linkage and Neuronal Activity in the Rat Brain [2021]" (May 10, 2022), https://doi.org/10.1016/j.neuroscience.2022.03.027

[9] *JNeurosci*, "Expression of Concern: Wang et al., 'Reducing Amyloid-Related Alzheimer's Disease Pathogenesis by a Small Molecule Targeting Filamin A' [2012]" (Jan. 19, 2022), https://doi.org/10.1523/JNEUROSCI.2306-21.2021; *JNeurosci*, "Expression of Concern: Wang et al., 'Dissociating β-Amyloid from α7 Nicotinic Acetylcholine Receptor by a Novel Therapeutic Agent, S 24795, Normalizes α7 Nicotinic Acetylcholine and NMDA Receptor Function in Alzheimer's Disease Brain' [2009]" (Jan. 19, 2022)*,* https://doi.org/10.1523/JNEUROSCI.2307-21.2021

[10] *Neurobiology of Aging*, "Expression of Concern: Wang et al., (2017) PTI-125 binds and reverses an altered conformation of filamin A to reduce Alzheimer's disease pathogenesis. Neurobiol. Aging, 55:99-114" (May 2022), https://doi.org/10.1016/j.neurobiolaging.2022.03.012

[11] *Physiology & Behavior*, "Corrigendum to: A model of negative emotional contagion between male-female rat dyads: Effects of voluntary exercise on stress-induced behavior and BDNF-TrkB signaling [2021]" (May 2022), https://doi.org/10.1016/j.physbeh.2022.113759

[12] *JNeurosci*, "Expression of Concern: Wang et al., 'Reducing Amyloid-Related Alzheimer's Disease Pathogenesis by a Small Molecule Targeting Filamin A' [2012]" (Jan. 19, 2022), https://doi.org/10.1523/JNEUROSCI.2306-21.2021

*Second*, in March 2022, the journal *PLoS One* retracted a 2008 article by Drs. Burns and Wang, after concluding that "[t]he data and comments provided did not resolve the concerns about the integrity and reliability of data presented in [the] article."[13]  This 2008 paper, claiming high affinity binding between Naloxone and Filamin-A, was foundational to Cassava's claims in publications and patents about the discovery and mechanism of simufilam—namely, its purported ability to bind Filamin-A in competition with Naloxone.  (FAC, Ex. 6 at 2-3.)[14]

*Third*, in May 2022, the journal *Neurobiology of Aging* issued an "Expression of Concern" regarding a 2017 paper by Drs. Burns and Wang.  (FAC, ¶ 300.c., Ex. 18.)[15]  The editors noted that although they "did not find compelling evidence of data manipulation intended to misrepresent the results," the editors nevertheless found at least eight errors, and stated that the journal would make "a final decision as to appropriate corrective action" after the conclusion of CUNY's investigation of Dr. Wang.  (*Id.*)  Notably, the Expression of Concern revealed that "the authors," including Drs. Burns and Wang, had accepted the errors and "requested a corrigendum to correct these issues."  (*Id.*)  Like the retracted 2008 article, these errors concerned the data underlying Cassava's central claim that simufilam could bind to a protein in the brain.  That claim has been a primary focus of the criticism directed at Cassava, including by Defendants.  (*See, e.g.,* FAC, Ex. 6 at 3.)

---

[13] *PLoS One*, "Retraction: High-Affinity Naloxone Binding to Filamin A Prevents Mu Opioid Receptor–Gs Coupling Underlying Opioid Tolerance and Dependence [2008]" (Mar. 30, 2022), https://doi.org/10.1371/journal.pone.0266627

[14] *See* Burns, L., Wang, H-Y., Lin, N-H., Blasko, A., (2014), *Filamin A Binding Anti-Inflammatory and Analgesic*, (U.S. Patent No. 8,653,068 B2) U.S. Patent and Trademark Office. https://patents.google.com/patent/US8653068B2/en

[15] *Neurobiology of Aging*, "Expression of Concern: Wang et al., (2017) PTI-125 binds and reverses an altered conformation of filamin A to reduce Alzheimer's disease pathogenesis. Neurobiol. Aging, 55:99-114" (May 2022), https://doi.org/10.1016/j.neurobiolaging.2022.03.012

4.  <u>Investor Lawsuits and Government Investigations</u>

Beginning in August 2021, several investors filed class actions against Cassava asserting securities fraud claims in connection with the development of simufilam.  *See In Re Cassava Sciences, Inc. Securities Litigation*, No. 21-cv-00751-DAE (W.D. Tex.).  Shareholder derivative actions followed.  *See Zagami et al v. Barbier et al*, No. 21-cv-00998-DAE (W.D. Tex.).

In November 2021, Cassava disclosed that "certain government agencies" had sought "corporate information and documents."[16]  Later that month, the Wall Street Journal reported that the SEC was investigating allegations that Cassava had "manipulated research results of its experimental Alzheimer's drug," and Cassava's CEO confirmed that the allegations had also prompted inquiries by the NIH and CUNY.  (FAC ¶¶ 146-48.)[17]  In July 2022, Reuters reported that Cassava was under criminal investigation by the DOJ relating to whether Cassava "manipulated research results" for simufilam.[18]  Indeed, the media has covered extensively the allegations concerning Cassava and simufilam,[19] as well as other controversies involving Alzheimer's treatments.[20]

---

[16] Cassava Sciences, Inc., Form 10-Q (Nov. 15, 2021) at 34, https://www.cassavasciences.com/static-files/b5c598fa-994d-4b13-b0ae-cb526bd9fc8a

[17] Dave Michaels and Joseph Walker, "SEC Investigating Cassava Sciences, Developer of Experimental Alzheimer's Drug," *The Wall Street Journal* (Nov. 17, 2021), https://www.wsj.com/articles/cassava-sciences-alzheimers-sec-investigation-11637154199

[18] Marisa Taylor and Mike Spector, "Cassava Sciences faces U.S. criminal probe tied to Alzheimer's drug, sources say," *Reuters* (July 27, 2022), https://www.reuters.com/business/healthcare-pharmaceuticals/exclusive-cassava-sciences-faces-us-criminal-probe-tied-alzheimers-drug-sources-2022-07-27/

[19] *See, e.g.*, Apoorva Mandavilli, "Scientists Question Data Behind an Experimental Alzheimer's Drug," *The New York Times* (Apr. 18, 2022), https://nyti.ms/3vEFVED (reporting that the paper had "contacted nine prominent experts for comment about the scientific underpinnings of Cassava's trials. All said they did not trust the company's methods, results or even the premise underlying the drug's supposed effectiveness"); Charles Piller, "BLOTS ON A FIELD? A neuroscience image sleuth finds signs of fabrication in scores of Alzheimer's articles, threatening a reigning theory of the disease," *Science* (July 21, 2022), https://www.science.org/content/article/potential-fabrication-research-images-threatens-key-theory-alzheimers-disease

[20] *See, e.g.,* Pam Belluck, "Congressional Inquiry into Alzheimer's Drug Faults Its Maker and F.D.A.," *The New York Times* (Dec. 29, 2022), https://www.nytimes.com/2022/12/29/health/alzheimers-drug-aduhelm-biogen.html;

### C.  Dot.com Defendants' Allegedly Defamatory Statements

It is within this context that Drs. Brodkin, Heilbut, and Milioris (the "Dot.com

Defendants") made the statements that Cassava attacks as defamatory.  (*See* FAC ¶¶ 133-158,

Exs. 6, 7, 10, 12, Appendix A.)[21]

*First,* on November 2, 2021, following the publication of the Citizen Petition in August

2021, the Dot.com Defendants sent a letter to the FDA to express "grave concerns regarding

Cassava" based on "an assessment" of its simufilam studies "made available for public scrutiny."

(*Id.* ¶¶ 133-35, Ex. 6 at 2.)  The letter stated that the Dot.com Defendants "support the

allegations made" in the Citizen Petition (*id.*); described the "methods by which, we allege,

Cassava Sciences has either obfuscated or fabricated data during" clinical trials (*id.*); stated that

"there is a material concern regarding the sponsor's credibility and very real risk of exposing

thousands of patients to a compound with unknown risk" (*id.*); and provided a list of "questions

that should be answered before trials continue" (*id.* at 5).  The letter concluded that "[g]iven the

obfuscation of clinical benefit outlined in this document . . . there is no justification for large-

scale exposure to this drug" (*id.* at 23), "only the conduct of a full, thorough investigation of the

data, investigators, sponsor, and collaborators can provide reassurance" (*id.* at 24), and asked that

the simufilam program "be reviewed" by the FDA (*id.*).

*Second,* on November 3, 2021, the day after sending the letter to the FDA, the Dot.com

Defendants published a "36-page report titled 'Cassava Sciences: A Shambolic Charade'."  (*Id.*

¶¶ 136-38, Ex. 7).  In the report, the Dot.com Defendants noted that they held "stock and options

---

Robert Langreth "The Alzheimer's Drug Approval Mess Has Left Millions of People in Limbo," *Bloomberg* (Sept. 12, 2022), https://www.bloomberg.com/news/features/2022-09-12/aduhelm-drug-approval-saga-has-alzheimer-s-patients-in-limbo

[21] Defendant Patrick Markey, PhD, is also identified in the FAC as a "Dot.com Defendant" (FAC ¶ 21), but Dr. Markey has not been served.  (*See* Dkt. 82, 26(f) Report, at 9.)

positions that may benefit from a decline in Cassava Sciences' stock price" (*id.* Ex. 7 at 3); and explained that their "analysis is entirely based on publicly available information and visible for everyone to see and challenge" (*id.* at 4).  As summarized on the report's overview slide (*id.* at 6), the report repeated the "key issues and questions" raised in the letter to the FDA (*id.*); described "Cassava's suspicious history and the obvious scientific misconduct pervading all of Cassava's preclinical science" (*id.*); presented "the egregious data anomalies and manipulation of both the biomarker and cognitive measurements from Cassava's Phase 2 trials" (*id.*); and presented an "honest account of what Cassava did, and theory of why they did so" (*id.*)— described on a slide titled "[o]ur version of events" (*id.* at 35); and, finally, repeated the assertion that "only the conduct of a full, thorough investigation of the data, investigators, sponsor, and collaborators can provide reassurance" (*id.* at 36).

*Third,* on November 29, 2021, the Dot.com Defendants posted a "17-page report named 'SavaDx_Theranos2.0.pdf' and titled 'SavaDx Exposed'." (*Id.*, ¶¶ 149-52, Ex. 10.)  The report examined "SavaDx", Cassava's "investigational diagnostic to detect Alzheimer's disease" (*id.,* Ex. 10 at 3) with the subtitle:  "a revolutionary diagnostic for Alzheimer's Disease or a scam of scientifically illiterate investors?" (*id.* at 2).  The report questioned the research underlying SavaDx (*id.* at 5-8) and summarized data and email correspondence the Dot.com Defendants had obtained through public records requests (*id.* at 9-16).  The report also included links to websites containing the cited materials.  (*Id.* at 17, 28.)

*Fourth*, in December 2021, the Dot.com Defendants posted a "9-page report titled 'Cassava and the Wang Lab: Seeing Through the Blind'." (*Id.* ¶¶ 156-58, Ex. 12).  The report raised concerns about Cassava and Dr. Wang based on additional email correspondence obtained through public records requests.  (*Id.* at 9.)  Specifically, the report stated that "[b]ased on the

obtained emails" the Dot.com Defendants "conclude" there is "a risk of biomarker data manipulation" and "previous assurances of data integrity are suspect." (*Id.*)  Again, the report included links to websites containing the cited materials. (*Id.*)

In response to these statements, on November 2, 2022, Cassava commenced this action, asserting two claims against the Dot.Com Defendants for defamation (*id.*, Count 4, ¶¶ 475-89) and conspiracy to defame (*id.*, Count 5, ¶¶ 490-95).

## ARGUMENT

### I. THE CLAIMS AGAINST DRS. BRODKIN AND MILIORIS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### A. Legal Standard

To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a prima facie showing that jurisdiction exists." *Suber v. VVP Servs., LLC*, No. 21-2649, 2023 WL 115631, at *2 (2d Cir. Jan. 10, 2023).  When considering a Rule 12(b)(2) motion, the court must "construe the pleadings and supporting materials in the light most favorable to the plaintiff." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).  Courts generally undertake a two-part analysis by first examining whether personal jurisdiction has been established under the law of the forum state, and if so, examining whether the exercise of jurisdiction would violate the defendant's due process rights.  *See Symmetra Pty Ltd. v. Hum. Facets, LLC*, No. 12-cv-8857, 2013 WL 2896876, at *4 (S.D.N.Y. June 13, 2013).

#### B. Cassava Does Not and Cannot Establish Personal Jurisdiction Over Drs. Brodkin and Milioris

##### 1. Cassava Fails to Satisfy New York's Long-Arm Statute

Dr. Brodkin is a resident of New Jersey, and Dr. Milioris is a resident of England.  (FAC ¶¶ 19-20, 24.)  Accordingly, the FAC does not and cannot establish *general* personal jurisdiction under C.P.L.R. section 301.  Instead, the FAC purports to provide "four reasons" for this Court's

exercise of *specific* personal jurisdiction under New York's long-arm statute, which allows courts to exercise jurisdiction over a defamation claim "arising from" a defendant's "transact[ion] of business within the state."  N.Y. C.P.L.R. § 302(a)(1).

None of Cassava's four "reasons" supports a finding of jurisdiction.  (*See* FAC ¶¶ 30-31.)

*First,* Cassava alleges that Drs. Brodkin and Milioris "transacted business" in New York by (i) trading Cassava stock on an exchange in New York and (ii) posting allegedly defamatory statements about Cassava on websites available in New York.  (*Id.* ¶ 30.)  Neither supports jurisdiction.  Trading stock on the NASDAQ does not constitute a "business transaction" under section 302(a)(1).  *See Deer Consumer Prod., Inc. v. Little*, 938 N.Y.S.2d 767, 779 (N.Y. Sup. Ct. N.Y. County 2012) (defendant's transactions "on NASDAQ, the computerized stock quotation system headquartered in New York, does not support CPLR 302(a)(1) jurisdiction.").  Likewise, a defendant's activity on a website available in New York does not constitute a business transaction in New York.  *See, e.g., Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*, 205 A.D.3d 467, 467 (1st Dep't 2022) (defendant's posting of "allegedly defamatory content on the internet . . . does not constitute the transaction of business in New York.").

*Second*, Cassava purports to plead a conspiracy theory of jurisdiction.  (FAC, ¶¶ 30-31.)  The FAC alleges that this Court has jurisdiction over Drs. Brodkin and Milioris because their purported co-conspirator, Dr. Heilbut, is a resident of New York; he allegedly made defamatory statements "in furtherance" of their "conspiracy" from New York; and he allegedly made such statements to New Yorkers.  (*Id.*)  However, this "conspiracy theory of jurisdiction is not available" for defamation claims under New York's long-arm statute.  *See, e.g., Khalil v. Fox Corp.*, No. 21-cv-10248 (LLS), 2022 WL 3370826, at *1 (S.D.N.Y. Aug. 16, 2022); *Smartmatic*

*USA Corp. v. Fox Corp.*, No. 151136/2021, 2022 WL 685407, at *27 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2022).

*Third*, Cassava attempts to establish jurisdiction by alleging that Drs. Brodkin and Milioris participated in the "drafting and publishing of factually inaccurate and defamatory statements about [Dr. Wang], a professor at a New York-based university (CUNY)."  (FAC ¶ 30.)  This "reason" also fails.  To establish long-arm jurisdiction, there must be a sufficiently close "nexus" between a defendant's alleged contacts with New York and the plaintiff's alleged injuries.  *See Copp v. Ramirez*, 62 A.D.3d 23, 29 (1st Dep't 2009).  Any purported injuries suffered by non-party Dr. Wang arising from statements about him are too attenuated to support jurisdiction over claims brought by Cassava concerning alleged injuries it suffered.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 245-46 (2d Cir. 2007) ("Under New York law, when a person utters a defamatory statement without the state that causes injury *to the plaintiff within the state*, jurisdiction may be acquired under section 302(a)(1).") (emphasis added).

*Fourth*, Cassava attempts to establish jurisdiction by alleging that Drs. Brodkin and Milioris "[t]ransmitted communications to Heilbut in New York and received communications from Heilbut from New York as part of their coordination and execution of the conspiracy." (FAC ¶ 30.)  However, this purportedly "fourth" reason is indistinguishable from Cassava's conspiracy theory of jurisdiction and fails for the same reasons.  *See Khalil*, 2022 WL 3370826, at *1; *see also Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.,* No. 18-cv-4921, 2019 WL 1434719, at *12 (S.D.N.Y. Mar. 31, 2019) (finding allegations insufficient to establish personal jurisdiction absent evidence of an "actionable New York business transaction" by each co-conspirator); *Treppel v. Biovail Corp.*, No. 03-cv-3002, 2005 WL 427538 (S.D.N.Y. Feb. 22, 2005) (recognizing limited scope of long-arm statute for defamation claims).

None of Cassava's "four reasons" supports the exercise of personal jurisdiction over Drs. Brodkin and Milioris under C.P.L.R. § 302.  Because Cassava cannot establish jurisdiction under New York's long-arm statute, the Court can dismiss the claims against Drs. Brodkin and Milioris without reaching the due process prong of the analysis.

2.  <u>Exercising Jurisdiction Would Violate Due Process</u>

Even if Cassava could satisfy New York's long-arm statute (and it cannot), the claims against Drs. Brodkin and Milioris should be dismissed because the exercise of jurisdiction would violate due process.

An out-of-state defendant making statements about an out-of-state plaintiff would not reasonably expect to be sued in New York.  *See Copp*, 62 A.D.3d at 31 (subjecting out-of-state defendants to jurisdiction in New York "would be unreasonable" where even "plaintiffs are not residents of New York"); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1782 (2017) (holding that California courts could not exercise jurisdiction over certain class action claims by out-of-state plaintiffs against out-of-state defendants).  None of Dr. Brodkin, Dr. Milioris, or Cassava is a resident of New York.  Nor is there any allegation that Drs. Brodkin or Milioris ever set foot in New York in connection with the allegedly defamatory statements.  Accordingly, Drs. Brodkin and Milioris could not reasonably have expected to be sued in New York, and this Court's exercise of jurisdiction would violate due process.

For these reasons, the claims against Drs. Brodkin and Milioris should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

## II.  THE DEFAMATION CLAIMS AGAINST DRS. BRODKIN, HEILBUT, AND MILIORIS FAIL AS A MATTER OF LAW

### A.  Legal Standard

Under New York law, a defamation claim requires "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Cummings v. City of N.Y.*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must draw all reasonable inferences in favor of plaintiff; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The FAC fails to state a plausible defamation claim against the Dot.com Defendants for three independent reasons. *First,* the FAC does not plead falsity.  *Second*, the challenged statements are non-actionable expressions of pure opinion.  *Third,* the FAC does not plead actual malice.

### B.  Cassava Does Not and Cannot Plead "Falsity"

Falsity is an essential element of defamation, and truth is an absolute defense.  *See Tannerite Sports, LLC v. NBCUniversal News Grp.,* 864 F.3d 236, 247 (2d Cir. 2017). Accordingly, a plaintiff must plead facts sufficient to "establish that the defendant's statements were not substantially true." *Id.* "Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion." *Nunes v. NBCUniversal Media, LLC*, No. 22-CV-1633 (PKC), 2022 WL 17251981, at *4 (S.D.N.Y. Nov. 28, 2022).

14

Here, the crux of Cassava's claim is that the Dot.com Defendants defamed Cassava by accusing the company of relying on manipulated or fabricated data and concluding that Cassava was therefore a "fraud." (*See, e.g.,* FAC ¶ 476.)  However, Cassava cannot deny that the research and clinical studies underlying simufilam did, in fact, contain indicia of possible manipulation or fabrication—that is, errors and irregularities.

For instance, Cassava's CEO publicly admitted the existence of certain errors in the research papers underlying simufilam and merely sought to characterize such errors as "visual errors" and "honest" mistakes, rather than signs of fraud, while conceding "there may be more [errors ] to come." (*See, e.g.,* FAC, Ex. 104 at 8.)  The FAC alleges that the errors can be "caused by adjusting and/or compressing the digital image for publication or an unintentional error" (FAC ¶ 187), but Cassava does not dispute that such errors existed.  Nor can Cassava dispute that seven scientific journals have issued corrections or retractions concerning thirteen research papers by Drs. Burns or Wang due to the same concerns over manipulated or fabricated data raised in the Dot.com Defendants' statements. (*Supra* pp. 4-6.)  Most notably, Dr. Wang's retracted 2008 article and the errors conceded by Drs. Burns and Wang in their 2017 article both concern simufilam's purported ability to bind to a protein in the brain.  That extraordinary (and now debunked) claim was the central basis of Cassava's patents for simufilam.  And it has been the central focus of the Dot.com Defendants' statements challenging simufilam. (*See, e.g.,* FAC, Ex. 6 at 3; Ex. 7 at 15, 19.)  The admission of errors in the research relied on to support that claim are fatal to Cassava's "falsity" allegations.

Moreover, Cassava admits that, in May 2020, an analysis of simufilam's Phase 2b clinical trials showed that the drug failed to "meet its primary endpoint"—namely, a "statistically

significant effect" on certain biomarkers.  (*Id.* ¶ 73; Ex. 39 at 2.) [22]  Although Cassava sought to

dismiss that conclusion by having Dr. Wang "re-do" the analysis, Cassava cannot dispute the fact

that initial analysis of the Phase 2b results reached a negative conclusion.  (*Id.*)

These irrefutable facts, pled explicitly in the FAC or incorporated by reference, show that

the premise of all the allegedly defamatory statements is substantially true.  That is, simufilam's

Phase 2b clinical trials produced irregular results and the research papers underlying simufilam

contained errors and indicia of data manipulation or fabrication—signs of possible fraud.  The

defamation claims fail for this reason alone.  *See Eros Int'l. PLC v. Mangrove Partners*, No.

653096/2017, 2019 WL 1129196, at \*8 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2019) (dismissing

claims where plaintiff could "not dispute the underlying facts" or "the existence of the source

material"); *Nunes*, 2022 WL 17251981, at \*6 (dismissing claims as substantially true where "the

complained of language" would not have a different effect on the mind of the reader as the

"alleged truth"); s*ee also Croce v. Sanders*, 843 F. App'x 710, 717 (6th Cir. 2021) (relying on

corrections in scientific journals in finding underlying accusation "that people in [plaintiff's] lab

have violated scientific norms" to be "substantially true").

### C.  The Challenged Statements Are Non-Actionable Expressions of Opinion

Expressions of opinion "cannot be the subject of an action for defamation."  *Cummings*,

2022 WL 2166585, at \*3 (citation omitted).  A "pure" opinion "may take one of two forms":  (i)

"a statement of opinion which is accompanied by a recitation of the facts upon which it is

based," or (ii) "it may be an opinion not accompanied by such a factual recitation so long as it

---

[22] Press Release, "Top-line Results from a Phase 2b Study of PTI-125 in Alzheimer's Disease Does Not Meet
Primary Endpoint," *Cassava Sciences* (May 15, 2020), https://www.cassavasciences.com/news-releases/news-
release-details/top-line-results-phase-2b-study-pti-125-alzheimers-disease-does

does not imply that it is based upon undisclosed facts." *Davis v. Boeheim*, 24 N.Y.3d 262, 269

(2014) (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)).

The "dispositive inquiry in distinguishing actionable assertions of fact from protected

expressions of opinion is whether a reasonable reader could have concluded that the publications

were conveying facts" about the plaintiff. *Valley Elecs. AG v. Polis*, No. 21-2108-CV, 2022 WL

893674, at *1 (2d Cir. Mar. 28, 2022). Critically, instead of "sifting through a communication

for the purpose of isolating and identifying assertions of fact," courts "consider the broader

written and social contexts of the alleged statements, which are often the key consideration[s] in

categorizing a statement as fact or opinion." *Id.*

1.  <u>The Challenged Statements Clearly Were Made in the Broader Context of
    Intense Public Debate Concerning Alzheimer's Research</u>

Where, as is the case here, the context involves scientific discourse about a "novel area of

research," the Second Circuit has held that "courts are ill-equipped to undertake to referee such

controversies." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496-97 (2d Cir.

2013) (affirming dismissal of defamation claims). Indeed, in *ONY*, the Second Circuit

recognized the limits of the "fact-opinion paradigm of First Amendment jurisprudence" given

that the "premise of the scientific enterprise" is that "it engages with empirically verifiable

facts," while "at the same time," the "essence of the scientific method [is] that the conclusions of

empirical research are tentative and subject to revision." *Id.*

The Dot.com Defendants' challenged statements began in November 2021, after the

Citizen Petition was disclosed in August 2021 and after Cassava responded in September 2021.

(*Infra* pp. 8-10.) Moreover, the challenged statements were made amidst a broader public debate

concerning Alzheimer's research and the efficacy of other recent treatments, extensively covered

in the media. (*Infra* pp. 2-7.) It was in this context—of an already intense public debate over

Alzheimer's research in general and simufilam research in particular—that the Dot.com

Defendants began publishing their own views and disputing Cassava's extraordinary claims.

Accordingly, this is precisely the type of dispute concerning a "novel area of research" that

courts are "ill-equipped to undertake to referee." *ONY*, 720 F.3d at 496-97.

> 2. The Challenged Statements Convey to Reasonable Readers that the Dot.Com
> Defendants Were Expressing Opinions

Expressions of opinion are constitutionally protected, so long as they (i) are followed by

a recitation of the facts upon which they are based, or (ii) if not accompanied by a recitation of

facts, do not imply they are based on undisclosed facts. *See Davis*, 24 N.Y.3d at 269.  Each of

the Dot.com Defendants' challenged statements meets this standard.  For instance:

- The November 2, 2021 letter to the FDA expressed "grave concerns regarding
  Cassava" based on "an assessment" of Cassava's simufilam studies "made available
  for public scrutiny" (FAC, Ex. 6 at 1); stated that the Dot.com Defendants "allege"
  that "Cassava Sciences has either obfuscated or fabricated data during" the clinical
  trials of simufilam; (*id.*); listed "many questions that should be answered before trials
  continue" (*id.* at 5); and called for "a full, thorough investigation of the data,
  investigators, sponsor, and collaborators can provide reassurance" (*id.* at 24).

- The November 3, 2021 report titled "Cassava Sciences: A Shambolic Charade" stated
  "our analysis is entirely based on publicly available information and visible for
  everyone to see and challenge" (*id.,* Ex. 7 at 4); presented the Dot.com Defendants'
  account of "what Cassava did, and theory of why they did so" (*id.*) titled "[o]ur
  version of events" (*id.* at 35); and repeated the conclusion that "only the conduct of a
  full, thorough investigation of the data, investigators, sponsor, and collaborators can
  provide reassurance" (*id.* at 36).

- The November 29, 2021 report titled "SavaDx Exposed" summarized documents,
  data, and email correspondence the Dot.com Defendants had obtained through public
  records requests (*id.,* Ex. 10 at 9-16); and disclosed the report's factual sources,
  including by providing hyperlinks to a publicly accessible website where the cited
  materials could be freely downloaded by readers (*id.* at 17, 28).

- The December 2021 report titled "Cassava and the Wang Lab: Seeing Through the
  Blind" similarly raised concerns based on email correspondence obtained through
  public records requests (*id.*, Ex. 12 at 9); stated that "[b]ased on the obtained emails"
  the Dot.com Defendants "conclude" that there is "a risk of biomarker data
  manipulation", and "previous assurances of data integrity are suspect" (*id.*); and
  disclosed the report's factual sources, including by providing hyperlinks to a publicly

18

accessible website where the cited materials could be freely downloaded by readers (*id.* ("All relevant CUNY FOIA material available here.")).

In sum, the Dot.com Defendants recited the facts upon which their opinions were based, disclosed their factual sources, never implied that their opinions were based on undisclosed facts, and repeatedly used opinion-like language. The statements are all thus non-actionable opinions. *See Eros*, 2019 WL 1129196, at *7-8 (finding short-sellers' challenged statements were non-actionable opinions where the statements were "accompanied by a recitation of the facts" on which they were based, "signaling to the reasonable reader through a mix of key words and context that the statements were not based upon undisclosed facts" and used "opinion-like language" throughout); *see also Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 25 (2d Cir. 2015) (affirming dismissal where none of the challenged statements "indicated that [defendant] had any additional facts upon which his opinions were based"); *Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 WL 2930753, at *5 (N.Y. Sup. Ct. N.Y. County June 26, 2014) (dismissing defamation claim against anonymous short-seller where the challenged statements were "either followed by a recitation of 'facts' uncovered from [] publicly available material [] linked to in the article itself, or no implication is given that they are based on undisclosed facts").

For these reasons, the Dot.com Defendants' statements are pure opinions and are immune from suit, "no matter how offensive" Cassava may find them. *See Cummings*, 2022 WL 2166585, at *3. For example, the Dot.com Defendants' statements purportedly imputing "fraud" were conveyed as "*allegations* to be investigated rather than as *facts*." *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414 (1st Dep't 2011). The Dot.com Defendants repeatedly called on others, including the FDA and CUNY, to investigate their meticulously sourced allegations (*see, e.g.*, FAC, Ex. 6 at 24, Ex. 7 at 36)—signaling to reasonable readers that they

19

were expressing opinions.  *See Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, No. 150374/2011,

2012 WL 3569952, at *2 (Sup. Ct. N.Y. County Aug. 16, 2012) (assertions of "fraud" were non-

actionable opinions, particularly where the statements "explicitly sought an independent

investigation by the government regulator and the other sophisticated, professional readers"); *see*

*also Brian v. Richardson*, 87 N.Y.2d 46, 54 (1995) (dismissing defamation claims where the

context made clear that the "specific charges about plaintiff were allegations"); *Fedak v. YIMBY,*

*Inc.*, No. 17-cv-8825, 2018 WL 6697963, at *6 (S.D.N.Y. Dec. 20, 2018) (same).

Finally, the Dot.com Defendants' disclosure of their short positions (FAC, Ex. 7 at 3)

further conveyed to readers that they were expressing opinions.  *See, e.g., Silvercorp*, 2012 WL

3569952 (noting that the defendant's disclosure of short positions showed that "readers knew

that the writer had a financial interest, and this disclosed motive indicates that the author is

expressing his opinion").  Courts recognize that statements about public companies by short-

sellers and market analysts are readily understood as opinions.  *See, e.g., MiMedx Grp., Inc. v.*

*Sparrow Fund Mgmt. LP*, No. 17-cv-07568, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018)

(finding that short-seller's statements accusing plaintiff of "revenue fraud" and predicting that

employees would be "dragged away in handcuffs" were non-actionable opinions) (collecting

cases).

    3.  <u>The Social Media Posts Are Not Actionable for the Additional Reasons that</u>
<u>Cassava Relies on Blanket Allegations and Reasonable Readers Recognize the</u>
<u>'Hyperbolic' Nature of Social Media Discourse</u>

The FAC does not discuss any specific social media posts by the Dot.com Defendants but

instead attaches an Appendix purporting to compile "over 840 false and defamatory statements

about Cassava" by Defendant QCM and the Dot.com Defendants.  (FAC ¶¶ 7, 287, Appendix

A.)  The FAC relies on a blanket assertion that all 840+ "social media postings" were defamatory

because they "reinforced" the "essential message" that "Cassava is a fraud."  (*Id.* ¶ 287.)  This

type of conclusory and generalized pleading is precisely the type disallowed by *Iqbal* and *Twombly*.  "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim."  *Tannerite*, 864 F.3d at 251 (finding insufficient a complaint's reference "generally" to an article with "a scattershot collection of nearly a dozen objections to [defendant's] publications").  Cassava's attempt to plead defamation based on a "scattershot" collection of social media postings must fail.

Even if the allegedly defamatory social media posts had been pled with any degree of specificity in the FAC, the defamation claims would nevertheless fail for the same reasons applicable to the Dot.com Defendants' reports.  They would fail for the additional reason that reasonable readers recognize the "loose" and "hyperbolic" nature of discourse on Twitter.  *See Eros*, 2019 WL 1129196, at *10 (finding tweets by short sellers to be "exactly the type of loose, figurative or hyperbolic statements, [that], even if deprecating the plaintiff, are not actionable."); *Rapaport v. Barstool Sports, Inc.*, No. 18-cv-8783 (NRB), 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) (collecting cases recognizing Twitter and social media as contexts where reasonable readers recognize assertions as opinions); *Live Face on Web, LLC, v. Five Boro Mold Specialist, Inc.,* No. 15-cv-4779, 2016 WL 1717218, at *4 (S.D.N.Y. Apr. 28, 2016) (finding that the use of social media to disseminate information is an indication to readers that the statements "contain opinions, not facts").

### 4. Dr. Heilbut's October 2022 Testimony Is Not Actionable for the Additional Reason that It Was Not "Of and Concerning" Cassava

The FAC includes a cursory reference to Dr. Heilbut's testimony at a public hearing held by CUNY in October 2022 (FAC ¶ 31); but the FAC does not explain how that testimony could plausibly give rise to a claim for defamation.  Notably, the testimony is mentioned in the

jurisdiction section of the FAC but absent from the sections purporting to compile "Defendants' Factually Inaccurate and Defamatory Statements."  (FAC, § V.B.)

In fact, although Dr. Heilbut's October 2022 testimony included strongly worded allegations against non-parties Dr. Wang and CUNY, the testimony did not mention Cassava whatsoever.  (*Id.*, Ex. 2 at 22-24.)  It is well-established that a plaintiff cannot ground a claim for defamation in statements that are not "of and concerning" the plaintiff.  *See Gilman v. Spitzer*, 902 F. Supp. 2d 389, 396 (S.D.N.Y. 2012) (dismissing claim based on statements about plaintiff's employer and unspecified employees but not plaintiff specifically), *aff'd*, 538 F. App'x 45 (2d Cir. 2013).  Moreover, even if Dr. Heilbut's testimony could properly be described as "of and concerning" Cassava, the statements would be protected opinions for the same reasons as the Dot.com Defendants' other statements are protected.

### D.  Cassava Does Not and Cannot Plead "Actual Malice"

To plead actual malice, Cassava must allege with sufficient factual detail that each challenged statement "was made with knowledge of its falsity or with reckless disregard of whether it was false."  N.Y. Civ. Rights Law § 76-a(2); *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015).  The actual malice standard "does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001).  "If it cannot be shown that the defendant knew that the statements were false, a plaintiff must demonstrate that the defendant made the statements with reckless disregard of whether they were true or false." *Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231 (LAK), 2021 WL 5450617, at *3 (S.D.N.Y. Nov. 22, 2021).

Cassava attempts to plead actual malice by alleging generally that all seven Defendants had an improper profit motive as short sellers (FAC ¶¶ 290-294); "lacked evidence" to support

their statements (*id.* ¶¶ 295-301); knew about "information that contradicted" their statements (*id.* ¶¶ 302-315); made statements "inconsistent with information, concepts, and practices considered common knowledge in the scientific community" (*id.* ¶¶ 316-330); engaged in activity that showed an "intentional and purposeful avoidance of the truth" (*id.* ¶¶ 331-346); knew their statements were "inherently improbable," demonstrating a "reckless disregard for the truth" (*id.* ¶¶ 347-358); and "repeated the false and defamatory statements in their original publication after learning they were factually inaccurate" (*id.* ¶¶ 359-365).

These allegations fail for at least three independent reasons.

*First,* Cassava's allegations of actual malice fail because it has conceded the "substantial truth" of the factual premise underlying all of the challenged statements.  (*Supra* Section II.B.)

*Second*, the undifferentiated group allegations against all seven Defendants are conclusory and insufficient to survive a motion to dismiss.  Courts regularly reject efforts by plaintiffs to lump statements together under generalized allegations of "actual malice."  *See, e.g., BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 825 (S.D.N.Y. 2021) (finding allegations of "actual malice" insufficient where the complaint had "no allegations specific to the individuals responsible for the allegedly defamatory statements"), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-7568, 2018 WL 4735717, at *10 (S.D.N.Y. Sept. 29, 2018) (dismissing defamation claims and noting that "[w]ithout clarity on whether [Defendant's] statements were a repetition of [] previous allegations, were drawn from other sources, or were made up out of whole cloth, Plaintiffs have not plausibly pled actual malice").

*Third*, none of Cassava's generalized allegations support an inference that the Dot.com Defendants had "subjective knowledge" of falsity.  Nor is there any allegation sufficient to

render the challenged statements "so inherently improbable that only a reckless person would have put them in circulation." *Church of Scientology*, 238 F.3d at 174.

For instance, the Dot.com Defendants' alleged profit motive does not support a finding of actual malice. *See MiMedx*, 2018 WL 4735717, at *12 (finding that short seller's "purported financial motive—standing alone—does not support a finding of actual malice"); *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 356 (2009) (recognizing that a "defendant's profit motive in publishing allegedly false and defamatory material does not suffice to prove actual malice"); *see also Hodges v. Lutwin*, 595 F. Supp. 3d 12, 18, 21 (S.D.N.Y. 2022) (no actual malice despite allegations that defendants "sought to destroy the Plaintiffs' reputations").

Nor can Cassava rely on allegations that the Defendants failed to investigate other possible explanations for Cassava's anomalous research data. *See Prince v. Intercept,* No. 21-CV-10075 (LAP), 2022 WL 5243417, at *16 (S.D.N.Y. Oct. 6, 2022) (finding allegations insufficient to show actual malice and noting that a "[f]ailure to investigate does not in itself establish bad faith") *see also Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) ("[A] publisher who does not already have obvious reasons to doubt the accuracy of a story is not required to initiate an investigation that might plant such doubt.").

Moreover, Cassava's allegations that Defendants "knew" information that "contradicted" their statements are insufficient to infer either subjective knowledge of falsity or recklessness. *See Jacob v. Lorenz*, No. 21-cv-6807, 2022 WL 4096701, at *12 (S.D.N.Y. Sept. 7, 2022) (general allegations that defendant "knew" of contradictory information are insufficient). For example, Cassava claims that Defendants ignored contrary SEC filings and press releases (FAC ¶¶ 302-315), but Defendants had no obligation to give credence to Cassava's denials and alternative explanations. *See MiMedx*, 2018 WL 4735717, at *9 (noting that "allegations that a

speaker knew of a plaintiff's denials of wrongdoing are insufficient to establish actual malice because any other rule would allow public figures to stifle criticism merely by denying accusations"); *Prince*, 2022 WL 5243417, at *17 (same).

For these reasons, Cassava's defamation claims should be dismissed with prejudice.[23]

### III.  THE CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

New York law does not recognize an independent tort of conspiracy, and courts specifically reject the notion of a tort of conspiracy to defame.  *Dobies v. Brefka,* N.Y.S.2d 499, 501 (3d Dep't 1999).  The conspiracy claim fails because Cassava has not pled an actionable wrong by any of the Dot.com Defendants and thus cannot rely on a theory of civil conspiracy to connect any others to that wrong.  *See id.; see also McGill v. Parker*, 582 N.Y.S.2d 91, 95 (1st Dep't 1992) (noting that "the allegation of conspiracy is allowed only to connect a defendant to an otherwise cognizable tort").  The conspiracy claim fails for the additional reason that the FAC does not adequately allege an agreement among the Dot.com Defendants to defame Cassava as to any (let alone each) specific challenged statement.  *See Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 167 (S.D.N.Y. 2020).

### IV. THE FAC SHOULD BE DISMISSED BECAUSE IT VIOLATES RULE 8.

The Dot.com Defendants hereby incorporate by reference the arguments made by Drs. Bredt and Pitt concerning Cassava's violation of Rule 8.  (Dkt. 74-1 at 31-32.)

### <u>CONCLUSION</u>

For the foregoing reasons, Drs. Brodkin, Heilbut, and Milioris respectfully submit that the FAC should be dismissed with prejudice.

---

[23] To the extent Cassava seeks to hold the Dot.com Defendants liable for purportedly "republishing" allegedly defamatory statements by the co-Defendants, the Dot.com Defendants join and incorporate by reference the arguments made in the co-Defendants' motions to dismiss.

Dated:  March 9, 2023
       New York, New York

CLARICK GUERON REISBAUM LLP

By:  /s/ Isaac B. Zaur
Isaac B. Zaur
David Kumagai
220 Fifth Avenue, 14th Floor
New York, New York 10001
(212) 633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com

LAW OFFICE OF DANIEL F. WACHTELL

By: /s/ Daniel F. Wachtell
Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
(917) 667-6954
dan@danwachtell.com

*Attorneys for Defendants Dr. Jesse Brodkin, Dr. Adrian Heilbut, and Dr. Enea Milioris*