**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASSAVA SCIENCES, INC.,

       Plaintiff,

v.

DAVID BREDT; GEOFFREY PITT;
QUINTESSENTIAL CAPITAL
MANAGEMENT LLC; ADRIAN HEILBUT;
JESSE BRODKIN; ENEA MILIORIS; and
PATRICK MARKEY,

       Defendants.

Civil Action No. 22-cv-9409-GHW-OTW

## PLAINTIFF CASSAVA SCIENCES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO QUINTESSENTIAL CAPITAL MANAGEMENT LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

J. Erik Connolly (*admitted pro hac vice*)
Matthew J. Langley
Timothy Frey (*admitted pro hac vice*)
Kate Watson Moss (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

OVERVIEW OF ARGUMENTS ............................................................................... 2

BRIEF STATEMENT OF FACTS............................................................................ 3

LEGAL STANDARD................................................................................................ 4

ARGUMENT ............................................................................................................ 4

I.     CASSAVA HAS ADEQUATELY PLED A CLAIM FOR DEFAMATION *PER SE* AGAINST QCM.......................................................................................................... 4

    A.    The FAC adequately alleges that QCM published false and defamatory statements and implications about Cassava. .................................................................. 4

        1.    QCM published false and defamatory statements about Cassava. ............. 5

        2.    QCM published false and defamatory implications about Cassava........... 7

    B.    QCM's defamatory statements and implications are not protected opinions. ...... 10

        1.    QCM's defamatory statements and implications constitute assertions of fact pursuant to New York's three-part test. ............................................. 10

            a.    QCM's language has a precise meaning, and the statements are capable of being proven false. ...................................................... 11

            b.    The context of the QCM Report told readers that QCM was conveying facts. .......................................................................... 13

            c.    The Court should not create special rules to protect a short seller who intentionally defames a biotechnology company.................. 14

        2.    QCM's defamatory statements and implications are, at least, actionable mixed opinion. ........................................................................................ 16

            a.    The QCM Report relies upon undisclosed facts. .......................... 17

            b.    The "facts" QCM disclosed as a basis for its so-called "opinions" are factually inaccurate and misleading. ....................................... 18

    C.    The FAC adequately alleges that QCM published its defamatory statements and implications with actual malice. ........................................................................... 19

    D.    QCM's statements and implications were defamatory *per se*. ............................ 23

II.     QCM REPUBLISHED THE DEFAMATORY STATEMENTS MADE BY
        DEFENDANTS BREDT & PITT..................................................................................... 23

III.    QCM IS ACCOUNTABLE FOR THE STATEMENTS OF ITS FOUNDER AND SOLE
        MEMBER. ................................................................................................................... 24

CONCLUSION......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amira Nature Foods, LTD. v. Prescience Point LLC*,
  No. 15-cv-9655 (S.D.N.Y. Oct. 7, 2016) ........................................................................14, 15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................................................19

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009) (en banc) ................................................................................4

*Armstrong v. Simon & Schuster, Inc.*,
  649 N.E.2d 825 (N.Y. 1995) ................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................4

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ..........................................................................18, 20

*Celle v. Filipino Rep. Enters., Inc.*,
  209 F.3d 163 (2d Cir. 2000) ..............................................................................................22

*Coliniatis v. Dimas*,
  848 F. Supp. 462 (S.D.N.Y. 1994) ...............................................................................11, 12

*Cromarty v. Prentice-Hall, Inc.*,
  421 N.Y.S.2d 603 (N.Y. App. Div. 1979) ..........................................................................23

*Curtis Pub. Co. v. Butts*,
  388 U.S. 130 (1967) ............................................................................................................20

*Dalbec v. Gentleman's Companion, Inc.*,
  828 F.2d 921 (2d Cir. 1987) ..............................................................................................20

*Davis v. Boeheim*,
  24 N.Y.3d 262 (N.Y. 2014) ................................................................................................12

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016) ....................................................................13, 18, 24

*Eros Int'l, PLC v. Mangrove Partners*,
  140 N.Y.S.3d 518 (N.Y. App. Div. 2021) ..........................................................................17

*Eros Int'l PLC v. Mangrove Partners*,
　2019 WL 1129196 (N.Y. Sup. Ct. Mar. 8, 2019) ...........................................15, 16

*Flamm v. Am. Ass'n of Univ. Women*,
　201 F.3d 144 (2d Cir. 2000)................................................................................12

*Geraci v. Probst*,
　938 N.E.2d 917 (N.Y. 2010)...............................................................................24

*Giffuni v. Feingold*,
　749 N.Y.S.2d 716 (N.Y. App. Div. 2002) ...........................................................11

*Gottwald v. Sebert*,
　148 N.Y.S.3d 37 (N.Y. App. Div. 2021) .............................................................25

*Gross v. N.Y. Times Co.*,
　82 N.Y.2d 146 (N.Y. 1993) ...........................................................10, 11, 13, 14, 17

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
　491 U.S. 657 (1989)........................................................................................21, 22

*Held v. Pokorny*,
　583 F. Supp. 1038 (S.D.N.Y. 1984)....................................................................11

*Herbert v. Lando*,
　781 F.2d 298 (2d Cir. 1986)..................................................................................8

*Jewell v. NYP Holdings, Inc.*,
　23 F. Supp. 2d 348 (S.D.N.Y. 1998)...................................................................19

*Karedes v. Ackerley Grp., Inc.*,
　423 F.3d 107 (2d Cir. 2005).................................................................................21

*Kelly v. Schmidberger*,
　806 F.2d 44 (2d Cir. 1986)..................................................................................11

*Levy v. Nissani*,
　115 N.Y.S.3d 418 (N.Y. App. Div. 2020) .......................................................11, 14

*LifeMD, Inc. v. Lamarco*,
　607 F. Supp. 3d 576 (W.D. Penn. 2022).............................................................17

*LoanStreet, Inc. v. Troia*,
　2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022).....................................................11

*Lynch v. City of N.Y.*,
　952 F.3d 67 (2d Cir. 2020)....................................................................................4

*MiMedx Grp., Inc. v. Sparrow Fund Mgm't LP*,
 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ...................................................16

*Nolan v. State*,
 69 N.Y.S.3d 277 (N.Y. App. Div. 2018) ......................................................23

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*,
 2022 WL 900604 (E.D.N.Y. Mar. 28, 2022).............................14, 15, 18, 22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
 720 F.3d 490 (2d Cir. 2013)...........................................................................16

*Palin v. N.Y. Times Co.*,
 940 F.3d 804 (2d Cir. 2019)......................................................................20, 21

*Prozeralik v. Cap. Cities Commc'ns, Inc.*,
 626 N.E.2d 34 (N.Y. 1993)..............................................................................19

*Pub. Rels. Soc'y of Am., Inc. v. Rd. Runner High Speed Online*,
 799 N.Y.S.2d 847 (N.Y Sup. Ct. 2005) .......................................................18

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
 53 F. Supp. 3d 705 (S.D.N.Y. 2014)...........................................4, 11, 17, 18

*Sharon v. Time, Inc.*,
 599 F. Supp. 538 (S.D.N.Y. 1984).................................................................20

*Silsdorf v. Levine*,
 59 N.Y.2d 8 (N.Y. 1983) ................................................................................11

*Silvercorp Metals, Inc. v. Athion Mgm't LLC*,
 2012 WL 3569952 (N.Y. Sup. Ct. Aug. 16, 2012) ......................................16

*Suarez v. Angelet*,
 935 N.Y.S.2d 599 (N.Y. App. Div. 2011) ....................................................11

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
 864 F.3d 236 (2d Cir. 2017)........................................................................5, 8

*Trump v. Chi. Tribune Co.*,
 616 F. Supp. 1434 (S.D.N.Y. 1985)...............................................................11

*Yangtze River Port & Logistics Ltd. v. Hindenburg Rsch.*,
 2020 WL 905770 (N.Y. Sup. Ct. Feb. 25, 2020)..........................................16

*Zuckerbrot v. Lande*,
 167 N.Y.S.3d 313 (N.Y. Sup. Ct. 2022) .......................................................24

**Statutes**

18 U.S.C. §§ 1001, 1343, 1348, 1349 ............................................................23

New York Civil Rights Law § 76-a(2) ...........................................................20

**Other Authorities**

OXFORD CONCISE ENGLISH DICTIONARY (10th ed. 1999) .........................................11

# **INTRODUCTION**[1]

On November 3, 2021, Quintessential Management LLC ("QCM") published a Report that accused Cassava Sciences of engaging in fraudulent and criminal activity. It began its analysis:

> *We are an American hedge fund based in New York City. Our main activity consists* **in identifying, investigating and exposing fraud and criminal conduct** *in public companies around the world. We use* **state-of-the-art investigative techniques** *and* **only act after acquiring overwhelming evidence to substantiate our claims**. *Since 2015, we have completed over ten short activist campaigns exposing various dishonest companies* **with a 100% success rate**. (QCM Report[2] at 6.)

In this way, QCM presented its Report as an exposé compiled after months of research and investigation. QCM presented itself as an investment advisor, committed to uncovering fraud, and doing so with a 100% success rate. QCM went on to say that it has "rarely come across a more blatant and costlier exercise in deception than Cassava." Courts in New York and across the country consider that type of accusation to be defamation *per se*. No one is immune from liability when accusing a company of being a fraud.

This case is not about science. QCM did not publish its Report in a scientific or peer-reviewed journal. QCM published its Report on its website. QCM did not publish its Report to foster scientific debate about Cassava's new drug. QCM published its Report to make money on its short position in Cassava's stock. It is one thing to engage in a *genuine* scientific debate based on *disclosed, honest, and accurate underlying* facts. It is another thing to *intentionally lie* about a company being a fraud and committing a crime based on false and misleading assertions for the sole purpose of making money. Cassava alleges QCM did the latter, and the latter is actionable as defamation *per se.*

---

[1] Emphasis has been added throughout to quotations and internal citations have been omitted.

[2] *See* First Am. Compl. (ECF No. 30) ("FAC") at Ex. 8 (ECF No. 30-10) ("QCM Report" or "Ex. 8"). Because the QCM Report, as published, does not contain page numbers, Cassava cites the Report's ECF pagination herein.

## <u>OVERVIEW OF ARGUMENTS</u>

The Court cannot grant QCM's motion to dismiss based on Cassava's allegations, which the Court must accept as true. *First*, the FAC adequately alleges that QCM published dozens of false statements and implications about Cassava. QCM stated that Cassava is a fraud, fabricated and manipulated its Phase 2b study, and fabricated and manipulated its open label study. QCM also implied that Cassava is a fraud by claiming that people involved in testing simufilam are criminals, Cassava's management previously committed fraud, and Cassava's management had a motive to artificially inflate the company's stock price. The FAC alleges facts demonstrating that nearly everything QCM stated and implied is demonstrably false.

*Second*, the FAC adequately alleges that QCM's false statements and implications constitute actionable defamation. Under New York's three-part test, none of the false statements or implications qualify as opinion because (a) each statement had a precise meaning, (b) each statement is capable of being proven true or false, and (c) the statements were made in the context of a lengthy "investigative" report, published by a registered investment advisor, and distributed to federal agencies. In these ways and others, QCM conveyed to a reasonable reader that its Report and accusations were matters of fact. QCM agrees. Before the lawsuit was filed, ***QCM publicly stated that everything it had said about Cassava was fact***, not opinion.

*Third*, the FAC adequately alleges that QCM acted with actual malice. QCM's improper motive is just the tip of the iceberg. QCM published its defamatory statements and implications about Cassava to drive down its stock price so that QCM could profit from its short position. That is bad enough. But QCM's actual malice is further demonstrated by the fact that (a) QCM knowingly fabricated accusations about Cassava, (b) QCM knew its statements about Cassava were contradicted by information that it reviewed before publishing its Report, and (c) QCM

purposefully avoided learning the truth about Cassava by refusing to contact Cassava or anyone with firsthand knowledge before publishing its Report. That is sufficient to plead actual malice.

## BRIEF STATEMENT OF FACTS

Cassava is a biotechnology company focused on R&D for Alzheimer's disease. (FAC ¶ 36.) Cassava's main product, simufilam, is a drug candidate that targets an altered form of the protein filamin A ("FLNA") in the brain. (*Id.* ¶¶ 37–38.) Altered FLNA has been linked to neuronal dysfunction, degeneration, and inflammation in the brains of patients with Alzheimer's disease. (*Id.* ¶ 38.) Peer-reviewed studies and early trial results show that simufilam has a strong scientific foundation, may counter the toxic effects of altered FLNA, and appears to be safe for human consumption. (*Id.* ¶¶ 38–46, 63–64, 74, 98, 100, 104.) Accordingly, following a review of research and test results for simufilam, the FDA approved simufilam's advancement to Phase 3 clinical trials—the last step before seeking drug approval. (*Id.* ¶¶ 88–91.)

QCM is an investment advisor and hedge fund controlled by its sole member, Gabriele Grego. (FAC ¶ 16.) Mr. Grego is not a scientist, nor does QCM employ scientists. On November 3, 2021, QCM published its Report, titled "Cassava Sciences (SAVA): Game over! A warning for the US healthcare system" to its website. (Ex. 8 at 2.) QCM began its Report by touting that it only publishes reports "after acquiring overwhelming evidence to substantiate [its] claims" and that it has "a 100% success rate . . . [i]n virtually all cases our theses have been confirmed by official inquiries." (*Id.* at 6, n.2.) QCM then described Cassava as a "pump & dump" scheme that "deceive[d] investors about the effectiveness" of simufilam, a "worthless compound." (*Id.* at 4.) According to QCM, Cassava achieved this deception through the "manipulation of data, of which [QCM has] plenty of disturbing evidence." (*Id.*) Nearly everything that QCM stated and implied about Cassava was factually inaccurate. *See infra* Part I.A.

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept the facts alleged in the FAC as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc). The Court's role is limited to determining whether the FAC contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Iqbal*, 556 U.S. at 678. The Court does not assess whether it is "probable" that Cassava will prevail, only whether Cassava's allegations state a claim that is plausible. *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

**ARGUMENT**

The elements of a defamation claim are (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault, which (4) either causes special harm or constitutes defamation *per se*. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 716 (S.D.N.Y. 2014). The FAC alleges dozens of facts establishing each element.[3]

**I.      Cassava has adequately pled a claim for defamation *per se* against QCM.**

**A.      The FAC adequately alleges that QCM published false and defamatory statements and implications about Cassava.**

Cassava's claim against QCM does not focus on a scientific debate over the effectiveness of simufilam. Cassava's claim focuses on QCM stating and implying that Cassava is a fraud that committed a criminal act of fabricating data. That is defamation *per* se, not scientific debate.

---

[3] Appendix A lists the defamatory statements published by QCM as well as the paragraphs in the FAC alleging facts demonstrating that each statement is false (factually inaccurate) and was made with actual malice.

### 1. QCM published false and defamatory statements about Cassava.

To satisfy the "false statement" element of a defamation claim, Cassava need only plead "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). A statement is not substantially true if it would have a different effect on the mind of the reader than the pleaded truth. *Id.* Here, QCM published dozens of statements that would have had a different effect on the mind of the reader than the pleaded truth would have produced.

First, Cassava alleges that QCM falsely stated and implied that Cassava is a fraud. (FAC ¶ 161(nn)–(ww).) For example, QCM stated:

> In our opinion, simufilam is a worthless compound, and any touted benefit is likely the result of a combination of forgery, "cherry picking" of patients and statistical manipulation of data, of which we have plenty of disturbing evidence.
>
> ***
>
> In several years of fraud-busting we have rarely come across a more blatant and costlier exercise in deception than Cassava.
>
> ***
>
> Based on the extensive evidence we reviewed, we fear that Cassava has been corrupting the entire drug development process to temporarily inflate Cassava's stock to the market capitalization required for management to maximize its bonuses.

(*Id*. (emphases removed).) QCM's statements and implications about Cassava being a fraud are false. Cassava has not relied on manipulated research, has not fabricated or manipulated its test results, its underlying research does not contain material errors, it has not made any knowing misrepresentations to the FDA or investors, and its management has not received any payments tied to stock performance. (*Id.* ¶¶ 162–166.) Put simply, Cassava is not a fraud. (*Id.* ¶ 167.)

Second, Cassava alleges that QCM falsely stated and implied that Cassava knowingly jeopardized patient health. (*Id.* ¶ 168(n).) For example, QCM stated:

> Cassava's initial research has received extensive funding from the federal government through the NIH: those funds could have been directed toward other ventures with a real chance to provide relief for this terrible diseases. Similarly, hundreds of patients are being unnecessarily led into the simufilam study, ***being exposed to potentially dangerous chemicals***, when they could have participated in studies with real chances of success.

(*Id.*) QCM's statement is false. Cassava has conducted legitimate clinical trials relating to simufilam pursuant to an Investigational New Drug submission to the FDA. (*Id.* ¶¶ 64–67.) Cassava's Phase 1 and Phase 2 studies did not reveal any drug-related serious adverse health effects. (*Id.* ¶ 173.) To the contrary, the studies led to FDA entering a Special Protocol Assessment agreement with Cassava regarding the design of Phase 3 trials for simufilam. (*Id.* ¶ 90.)

Third, Cassava alleges that QCM falsely stated and implied that Cassava relies on fabricated and manipulated foundational research. (*Id.* ¶ 174.) QCM made this accusation, primarily, through republication of the defamatory statements contained in the Citizen Petition. (*Id.* ¶¶ 179(a)–(t), 189(a)–(f), 197(a)–(o).) QCM also made the accusation directly:

> According to our thesis, Cassava may have initially relied on ***fraudulent background research*** generated by its main author Dr. Wang [who authored reports] concerning simufilam's mechanism of action and apparent effects.

(*Id.* ¶ 174(j).) QCM's statement about Cassava's foundational research is false. Cassava's foundational research was not fabricated or manipulated, the foundational research does not contain material errors, the foundational research demonstrates that filamin A links to Alzheimer's disease and simufilam binds to altered filamin A, and those links have been corroborated by scientists unrelated to Cassava in the U.S. and elsewhere. (*Id.* ¶¶ 175–178.)

Fourth, Cassava alleges that QCM falsely stated and implied that Cassava fabricated and manipulated its Phase 2b study by including or excluding patients based on whether Cassava believed the patients would generate favorable results. (*Id.* ¶ 205.) For example, QCM stated:

> With such inadequate enrollment criteria, it is almost certain that there will be patients in the study who do not have Alzheimer's disease . . .

***

> We believe that Cassava excluded patients to create artificially promising report on the efficacy of the drug . . .

***

> We deduce that patients may have been excluded "strategically" to fabricate false efficacy of the drug . . .

(*Id.*) QCM's statements and implications about Cassava's Phase 2b study are false. Cassava did not include or exclude any patients for the purpose of achieving favorable results. (*Id.* ¶ 208.) Its Phase 2b study complied with federal regulations and the study's written protocol. (*Id.*) And it is common and widely accepted to exclude patients for the reasons they were excluded from the Phase 2b study, something that was known to QCM but omitted from its Report. (*Id.* ¶ 209.)

Fifth, Cassava alleges that QCM falsely stated and implied that Cassava fabricated and manipulated its open label study results. (*Id.* ¶ 239(i)–(k).) For example, QCM stated:

> We believe there is convincing statistical evidence suggesting that in this study Cassava again deliberately excluded patients of Simufilam's effectiveness [sic.].

***

> This can only mean one thing: Cassava didn't choose replacement patients at random (or from the same pool): it is reasonable to assume that they were deliberately selected to alter the sample's composition of the study to flatter the performance of the drug.

(*Id.*) QCM's statements and implications are false. Cassava did not fabricate or manipulate the results of its open label study and it did not include or exclude patients for the purpose of achieving favorable results. (*Id.* ¶¶ 240, 242.) Once again, QCM knowingly failed to disclose that the reasons Cassava excluded patients from the study were common and accepted reasons. (*Id.* ¶ 243.)

### 2. QCM published false and defamatory implications about Cassava.

Defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon &*

*Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. 1995). Under this doctrine, defamation may occur "where a combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff." *Herbert v. Lando*, 781 F.2d 298, 307 (2d Cir. 1986). When alleging defamation by implication, a plaintiff need not show that the statements made by the defendant were false, but that the overall effect of those statements on the mind of the reader differed from the truth. *See Tannerite*, 864 F.3d at 246–47.

Here, the overall impression created by the Report was that Cassava is a fraud. QCM conveyed that impression in five ways. First, as discussed above, QCM furthered that impression by directly making the accusation throughout the Report. (FAC ¶ 161). According to QCM, Cassava could be a "scheme orchestrated by management to enrich itself," Cassava's drug is based on "allegedly forged scientific research" and is "worthless," and Cassava has been "corrupting the entire drug development process." (*Id.* ¶ 161(nn)-(vv).) Indeed, according to QCM, it had "***rarely come across a more blatant and costlier exercise in deception than Cassava***." (*Id.* ¶ 161(qq).)

Second, QCM furthered that impression by stating that the research underlying simufilam had been fabricated and Cassava had fabricated the test results for simufilam. As discussed above, QCM stated and implied that Cassava had not tested simufilam for safety (*id.* ¶ 168(n)), Cassava's foundational research had been manipulated (*id.* ¶ 174(j)), Cassava had fabricated and manipulated its Phase 2b study (*id.* ¶ 205(a)–(c)), and Cassava had fabricated and manipulated its open label study (*id.* ¶ 239(i)–(k)). Even if the Court considered each of QCM's statements to be true—they are not—the statements would lead a reasonable reader to conclude that Cassava is a fraud.

Third, QCM furthered the impression by stating and implying that Cassava knowingly used individuals with criminal records to conduct its studies. (*Id.* ¶ 258(g)–(n).) QCM detailed alleged

criminal records for multiple individuals at one of the testing sites used by Cassava. (*Id.*) With this background, QCM stated:

> [Cassava's] alleged exercise in deception has taken place with the involvement of an astounding number of questionable characters.
>
> ***
>
> [O]ur proprietary due diligence discovered that many key actors involved in the testing of this drug have highly questionable past (e.g., former felons, fraudsters, drug addicts) and may have been in conflict of interest.

(*Id.* ¶ 258(g), (n).) QCM's recitation of the alleged criminal records of the individuals at one of the test sites was false and misleading for a variety of reasons. (*Id.* ¶¶ 259–265.) But, for present purposes, the key fact is that QCM discussed their alleged criminal records to further the implication that Cassava is a fraud.

Fourth, QCM furthered the impression that Cassava is a fraud by stating and implying that Cassava's executives and board members have a history of fraudulent behavior. (*Id.* ¶ 266(a)–(i).) For example, QCM stated:

> Cassava's CEO and CMO have been caught making allegedly fraudulent statements about simufilam's predecessor Remoxy, which duly failed, devastating shareholders. Cassava's recent board addition, Richard Barry, has been involved with multiple frauds.
>
> ***
>
> Indeed, we have never detected a higher concentration of felon, fraudsters, and generally incompetent people around any public company, let alone a healthcare one.

(*Id.* ¶ 266(a), (b).) Again, QCM's discussion of Cassava's executives and board members was false and misleading for a variety of reasons. (*Id.* ¶¶ 267–272.) But regardless of whether the individual statements are true, these accusations would contribute to a reasonable reader concluding that Cassava is a fraud based on the context of the Report.

Fifth, QCM furthered the impression that Cassava is a fraud by stating and implying that Cassava's executives were engaged in insider trading. (*Id.* ¶ 273(a)–(e).) Among other things, QCM stated that Cassava's management had a "powerful incentive" to "possibly commit misconduct" and management "would get rich [by] temporarily inflating Cassava's stock price." (*Id.*) QCM's discussion of the compensation system for Cassava's management was factually inaccurate and misleading. (*Id.* ¶¶ 274–280.) But, even if true, the implication of QCM's statements is obvious. QCM discussed management's alleged incentives to further the impression that management was lying about simufilam (to artificially drive up the stock price) and that Cassava was a fraud.

### B. QCM's defamatory statements and implications are not protected opinions.

QCM's defamatory statements and implications do not constitute protected opinion for two reasons. First, pursuant to New York's three-factor test, the statements and implications are false assertions of fact because they use precise language, are verifiably true or false, and were published in a context that signaled factual information was being presented. Second, even if some of QCM's statements may be phrased as opinions, the Report implies the existence of undisclosed facts and relies on "facts" that are false, which means that QCM's statements are actionable mixed opinions.

#### 1. QCM's defamatory statements and implications constitute assertions of fact pursuant to New York's three-part test.

To determine whether a defamatory statement qualifies as non-actionable opinion, courts applying New York law examine: (1) whether the specific language at issue has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the full context of the publication or the broader social context and surrounding circumstances "signal [to] readers . . . that what is being read . . . is likely to be opinion, not fact." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (N.Y. 1993). In considering these factors, "the

overarching inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff." *LoanStreet, Inc. v. Troia*, 2022 WL 3544170, *4 (S.D.N.Y. Aug. 17, 2022).

### a. QCM's language has a precise meaning, and the statements are capable of being proven false.

The defamatory statements published by QCM were precise and capable of being proven true or false. First, as discussed above, QCM stated and implied that Cassava is a fraud. *See supra* Part I.A.2. Fraud means "wrongful or criminal deception intended to result in financial or personal gain." (FAC ¶¶ 167, 280.)[4] Cassava can prove that it did not engage in any wrongful or criminal deception. (*Id.*) Indeed, New York federal and state courts have long recognized that accusing a company of criminal conduct, like fraud, *crosses the line* from protected opinion to actionable defamation. *Trump v. Chi. Tribune Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985) (statements "tak[ing] the form of accusations of criminal or unethical conduct" cross "the borderline between fact and opinion").[5]

---

[4] *See also* OXFORD CONCISE ENGLISH DICTIONARY at 562 (10th ed. 1999) (defining "fraud" as "wrongful or criminal deception intended to result in financial or personal gain").

[5] *See also Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (N.Y. App. Div. 2020) (statements implying counter-plaintiff "swindled [counter-defendant] out of money" actionable); *Restis*, 53 F. Supp. 3d at 720–22 (finding statements that plaintiff engaged in illegal and fraudulent conduct to be actionable where capable of being proven true or false); *Silsdorf v. Levine*, 59 N.Y.2d 8, 16 (N.Y. 1983) (statements "implying that plaintiff engaged in criminal behavior" actionable as false statement of fact); *Suarez v. Angelet*, 935 N.Y.S.2d 599, 601 (N.Y. App. Div. 2011) (statement that plaintiff is a "thief" constitutes actionable libel); *Gross*, 82 N.Y.2d at 154 ("[C]harges that plaintiff engaged in cover-ups, directed the creation of 'misleading' autopsy reports and was guilty of 'possibly illegal' conduct … although couched in the language of hypothesis or conclusion, actually would be understood by the reasonable reader as assertions of fact."); *Kelly v. Schmidberger*, 806 F.2d 44, 48 (2d Cir. 1986) (finding statement that plaintiff priests placed church property "in their own names" to be factual and imputing corrupt and possibly criminal conduct); *Coliniatis v. Dimas*, 848 F. Supp. 462, 466–67 (S.D.N.Y. 1994) (determining that letter making accusation on "information of substantial but not absolute reliability" that company executive was engaged in a kick-back scheme could be factually verified and did not contain loose, figurative, or hyperbolic language that would negate the impression that the writer was asserting a statement of fact); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) (noting that while rhetorical hyperbole and vigorous epithets are expressions of opinion, "[a]ccusations of criminal or unethical activity . . . are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof"); *Giffuni v. Feingold*, 749 N.Y.S.2d 716, 716 (N.Y. App. Div. 2002) (finding that certain statements were not loose, figurative, or hyperbolic, "especially since" they alleged criminal conduct).

Second, as discussed above, QCM stated and implied that Cassava fabricated and manipulated the test results for its Phase 2b and open label study. *See supra* Part I.A.1. Cassava either fabricated and manipulated its test results or it did not. It is a historical event. Cassava has alleged, and can prove, that it did not. *Id*. The fact that Cassava can prove whether the historical event—fabrication and manipulation—took place means that QCM's statements cannot be considered non-actionable opinion. *See Coliniatis*, 848 F. Supp. at 467–68 (rejecting defendant's motion to dismiss on the grounds of non-actionable opinion where the alleged defamatory statements were capable of being proven false); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150–51 (2d Cir. 2000) (same); *Davis v. Boeheim*, 24 N.Y.3d 262, 271 (N.Y. 2014) (same).

Third, as discussed below, QCM republished the Citizen Petition. *See infra* Part II. The Petition includes a variety of false assertions regarding (a) the integrity of Cassava's testing, (b) the Western blot tests published in some of the foundational studies relied upon by Cassava, and (c) the use of human brain tissue for testing. (FAC ¶¶ 168(a), 174(a)–(b), 179(a)–(t), 189, 197.) The Petition also claimed that Cassava is a fraud. (*Id.* ¶ 161(a)–(l).) The assertions made in the Citizen Petition, which QCM endorsed as "highly credible" and republished, are all demonstrably false per the allegations made in the FAC. (*Id.* ¶¶ 162–67, 169–73, 175–78, 180–88, 190–96, 198–203.)

Unable to address the specific statements and implications made in its Report, QCM maintains that its statements constitute "broad and general concepts, rather than specific allegations of wrongdoing by Cassava," such that its defamatory statements are not actionable. (Mem. of Law in Support of QCM's Mot. to Dismiss the FAC ("MTD") at 15–16.) Not so. QCM is precise with its accusations, and those accusations are presented as facts, not opinions. Indeed, before the lawsuit was filed, QCM publicly stated: "If you bother reading the report (rather than

the contrived allegations of the bulls) you will see that ***it is factual and matter of fact***." (FAC App. A at 120 (Sept. 12, 2022 Tweet by Gabriele Grego).) Cassava agrees: QCM's assertions were presented as "factual and matter of fact." They also happen to be demonstrably false facts.

> **b.** **The context of the QCM Report told readers that QCM was conveying facts.**

QCM's attempt to re-characterize its accusations against Cassava as non-actionable opinions is hypocritical. QCM presented its Report and its accusations about Cassava as being based on an extensive, fact-based investigation. QCM stated:

> We are an American hedge fund based in New York City. Our main activity consists in identifying, investigating and exposing fraud and criminal conduct in public companies around the world. We use state-of-the-art investigative techniques and only act after acquiring overwhelming evidence to substantiate our claims. Since 2015, we have completed over ten short activist campaigns exposing various dishonest companies with a 100% success rate. (Ex. 8 at 6.)

It is impossible to conclude that, as a matter of law, QCM was only providing non-actionable opinions when QCM describes its investigation of Cassava as being predicated on "state-of-the-art investigative techniques" that allow it to acquire "overwhelming evidence to substantiate [its claims]" with a "100% success rate." (*Id.*; *see also* FAC ¶ 258, Ex. 14 at 4 (citing QCM's "proprietary due diligence").)

Beyond the introduction, the Report is littered with references to QCM's "in-depth study" and "thorough investigation" of Cassava (*see, e.g.*, Ex. 8 at 4), the "extensive" and "disturbing evidence" it had accumulated (*see, e.g., id.* at 4, 21), and the numerous scientists and experts who agreed with its conclusions (*see, e.g., id.* at 7, 8, 12, 22, 32). QCM touted the six different steps it took to confirm the accuracy of its Report. (*Id.* at 8.) This implied that its conclusions were not "a mere rhetorical flourish or the speculative accusation of an angry but ill-informed citizen," but were made only after "what purported to be a thorough investigation." *Gross*, 82 N.Y.2d at 155–56; *see also Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 286

(S.D.N.Y. 2016) ("The manner of [defendant's] written presentation—one using footnotes and citations—conveyed further that his advice was based on an 'investigation' of verifiable facts.").

Moreover, the broader social context in which the QCM Report was published also informed readers that it was presenting facts. QCM, a registered investment advisor, published its Report on its website, stated that it had hired experts and consultants to review and verify the accusations against Cassava, touted its 100% accuracy in all prior investigations, and emphasized that it had sent its Report to federal regulators. (Ex. 8 at 5, 39.) These are not the actions of a publisher who is providing pure opinions and conjecture. These are the actions of a publisher whom a reasonable reader would believe is providing factual assertions about a target. *See, e.g.*, *Nissani*, 115 N.Y.S.3d at 421–22 (finding statements actionable where a "reasonable listener would likely understand those statements to imply" the truth of the defamatory message).

> ### c. The Court should not create special rules to protect a short seller who intentionally defames a biotechnology company.

QCM ignores the three-part test required by New York law and asks the Court to create special rules that protect it. The Court should not do so.

First, QCM wants special protection because it occasionally used the words "our opinion" and "allegedly" in the Report. (MTD at 13–15.) But courts have long rejected the notion that use of qualifying language automatically qualifies a defamatory publication as pure opinion. *See NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, 2022 WL 900604, *5 (E.D.N.Y. Mar. 28, 2022) ("[B]road disclaimers on their own are insufficient to cloak the entire Report in the protections afforded opinions."); Tr. of Proceedings re: Conf. Held on Oct. 7, 2016 in *Amira Nature Foods, LTD. v. Prescience Point LLC*, No. 15-cv-9655 (S.D.N.Y. Oct. 7, 2016) (ECF No. 66) ("*Amira* Proceedings") at 59–60 ("Defendants [short sellers] cannot avoid liability simply by including a legal disclaimer or sprinkling their reports with words that they believe connote opinion."); *Gross*,

623 N.E.2d at 1168 (holding statements actionable that "although couched in the language of hypothesis or conclusion," would actually "be understood by the reasonable reader as assertions of fact"). The effect of any "qualifying" language used by QCM is directly undercut by its trumpeting of its "state-of-the-art investigative techniques" and assertion that it "only act[s] after acquiring **overwhelming evidence** to substantiate [its] claims." (Ex. 8 at 6.)

Second, QCM wants special protection because it acknowledged in the Report that it was a short seller. But courts have not adopted a short seller immunity rule. For example, in *Eros International*, the court noted that its ruling "should not be read to suggest that a 'short and distort' scheme can *never* give rise to a viable claim of defamation simply because the alleged distortion is cloaked in the form of an opinion." *Eros Int'l PLC v. Mangrove Partners*, 2019 WL 1129196, *11, n.7 (N.Y. Sup. Ct. Mar. 8, 2019); *see also NOVAGOLD*, 2022 WL 900604 at *5, n.4 ("To be sure, Defendant is not absolved from defamation liability simply by virtue of being a short-seller or by the inclusion of a blanket disclosure that its Report is an opinion."); *Amira* Proceedings at 59–60 (finding that short seller made assertions of fact, and that "the short seller cases that defendants cite . . . do not convince me otherwise"). Defamatory content published by a short seller is subject to the same three-part test as defamatory content published by anyone else.

None of the cases cited by QCM compels a finding that QCM's statements and implications were "pure opinion." The facts in those cases are very different than those in this one. Here, QCM repeatedly told its readers that it used "state-of the art investigative techniques" and had collected considerable evidence to support its claims. (Ex. 8 at 6.) QCM told readers that it has a "100% success" rate and that Cassava was the most "blatant" example of fraud it had ever seen. (*Id.* at 5, 6.) QCM told readers that it had verified its claims with experts and that its claims were supported by others who had investigated Cassava. (*Id.* at 4, 8, 22, 29, 32, 33.) These are unique attributes of

the Report and preclude a finding that the Report is pure opinion under the three-part test. Equally important, as discussed below, is that at most, the Report qualifies as mixed opinion under New York law because Cassava alleges that many of the underlying facts included in the Report are factually inaccurate and that the Report fails to disclose critical information. None of the cases cited by QCM involved allegations establishing that the statements were mixed opinion.[6]

Third, QCM's reliance on *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013) for the proposition that matters of "scientific debate" are protected from defamation liability is misplaced. (MTD at 11.) In *ONY*, the Second Circuit considered whether **scientific research** published in a **peer-reviewed journal** could constitute a defamatory assertion of fact when "presented in publications **directed to the relevant scientific community**." *ONY*, 720 F.3d at 492. That is not what happened here. QCM did not publish its Report in a peer-reviewed scientific journal, direct its Report to members of the relevant scientific community, or present scientific research findings or experimental data. QCM stated and implied, *inter alia*, that Cassava is a fraud (FAC ¶ 161(nn)–(ww)), that its executives have a history of fraudulent activity (*id.* ¶ 266(a), (b)), and that Cassava intentionally fabricated its clinical trial results (*id.* ¶¶ 205, 239(i)–(k)). It published its Report to investors and the general public and told them that QCM has a 100% success rate in rooting out fraud. This is not a case of scientific discourse or scientific debate.

    **2.**    **QCM's defamatory statements and implications are, at least, actionable mixed opinion.**

Even if QCM's accusations about Cassava could be considered opinion (they cannot), they would nonetheless be actionable as "mixed opinion." Under New York law, defamatory statements

---

[6] *See, e.g.*, *Eros Int'l*, 2019 WL 1129196, ¶ 13 ("[T]he allegedly defamatory articles and reports clearly disclose the underlying facts from which their conclusions are drawn."); *Silvercorp Metals, Inc. v. Athion Mgm't LLC*, 2012 WL 3569952, *2, *4, *10 (N.Y. Sup. Ct. Aug. 16, 2012) (discussing publisher's full disclosure of supporting information); *Yangtze River Port & Logistics Ltd. v. Hindenburg Rsch.*, 2020 WL 905770, * 8 (N.Y. Sup. Ct. Feb. 25, 2020) (same); *MiMedx Grp., Inc. v. Sparrow Fund Mgm't LP*, 2018 WL 847014, *7 (S.D.N.Y. Jan. 12, 2018) (same).

that may otherwise qualify as opinion are considered actionable mixed opinion if (1) a reader is led to believe that the opinion is based on undisclosed facts, or (2) the underlying facts in the publication are false. *Restis*, 53 F. Supp. 3d at 723; *Gross*, 82 N.Y.2d at 153; *see also LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 594 (W.D. Penn. 2022) ("[T]he pure opinion rule does not apply unless all of the supporting factual materials are disclosed and none are incorrect or have been misinterpreted."). Both exceptions apply here.

### a. The QCM Report relies upon undisclosed facts.

An expression of opinion is capable of a defamatory meaning where "it implies that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader." *Restis*, 53 F. Supp. 3d at 723. This is because "a reasonable listener or reader would infer that the speaker or writer 'knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed.'" *Id.* A statement that otherwise would be considered opinion is treated as actionable mixed opinion when the publisher implies the existence of undisclosed facts or sources because the reader cannot make his or her own independent conclusion based on the disclosed facts. *See Eros Int'l, PLC v. Mangrove Partners*, 140 N.Y.S.3d 518, 521 (N.Y. App. Div. 2021) (finding that the "facts behind the opinion are disclosed" such that the readers could "interpret as they see fit.").

Here, the QCM Report explicitly relies on a variety of undisclosed sources and documents, which means that readers must take QCM's word for it when it comes to its conclusion that Cassava is a fraud. For example:

- QCM repeatedly referred to the "multiple expert opinions" it claims to have obtained from "industry leaders" and "consultants hired by QCM," upon which it is basing its conclusions. (Ex. 8 at 4, 8, 22, 29, 32, 33.) But QCM only named two purported "experts" as sources for its statements. The others are undisclosed.

- QCM relied upon an "anonymous post" from an individual who purportedly is a "professional well versed in statistical analysis of clinical trials" (Ex. 8 at 27), an

unnamed "former employee" (*id.* at 30), and unnamed "former employees" and "research centers" (*id.* at 30). All of them are undisclosed.

- When accusing Cassava of improper patient selection procedures, QCM referred to "other studies we reviewed," without disclosing the identity of those studies or providing the reader with links to those studies. (*Id.* at 25.)

- Many of the QCM Report's "citations" are to screenshots of its own internal presentation, the sources for which are not identified. (*Id.* at 10, 15, 23, 24, 31, 33, 34.)

When, like here, an expression of opinion expressly relies upon unidentified sources, it implies knowledge of facts unknown to the reader and therefore constitutes actionable mixed opinion. *NOVAGOLD*, 2022 WL 900604 at *6; *see also, e.g.*, *Pub. Rels. Soc'y of Am., Inc. v. Rd. Runner High Speed Online*, 799 N.Y.S.2d 847, 854 (N.Y Sup. Ct. 2005) (finding actionable mixed opinion based on undisclosed facts where author implied that unnamed and unidentified individuals shared its view); *Restis*, 53 F. Supp. 3d at 723 (denying motion to dismiss defamation claim as predicated on "pure opinion" because documents relied upon by defendants were not made public).

      b.      **The "facts" QCM disclosed as a basis for its so-called "opinions" are factually inaccurate and misleading.**

An expression of opinion is also actionable where the disclosed facts purporting to support the opinion are false. *Restis*, 53 F. Supp. 3d at 723; *Enigma*, 194 F. Supp. 3d at 287 (the pure opinion rule "does not apply where the disclosed facts are themselves false"); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 476 (S.D.N.Y. 2012) ("If this defamatory implication arose entirely from unchallenged facts, it would be protected as an expression of the author's opinion. But that is not the case."). As set forth above, Cassava alleges that nearly everything QCM published and republished in its Report is factually inaccurate:

- "Facts" indicating that Cassava is a fraud are inaccurate and misleading (FAC ¶¶ 162–167)

- "Facts" indicating Cassava has not tested for safety are inaccurate and misleading (*id.* ¶¶ 169–173)

- "Facts" indicating Cassava fabricated its foundational research are inaccurate and misleading (*id.* ¶¶ 175–178, 180–188, 190–196, 198–203)

- "Facts" indicating Cassava fabricated its Phase 2b study results are inaccurate and misleading (*id.* ¶¶ 206–09, 211–14, 216–21, 223–26, 228–230)

- "Facts" indicating Cassava fabricated its Phase 2a study results are inaccurate and misleading (*id.* ¶¶ 232–238)

- "Facts" indicating that Cassava fabricated its open label study are inaccurate and misleading (*id.* ¶¶ 240–245)

- "Facts" indicating that Cassava used individuals with criminal records and affiliations to test simufilam are inaccurate and misleading (*id.* ¶¶ 259–265)

- "Facts" indicating that Cassava's executives and board members have a history of fraudulent behavior are inaccurate and misleading (*id.* ¶¶ 267–272)

- "Facts" indicating that Cassava's executives and board members have a financial interest to artificially inflate the company's stock price are inaccurate and misleading (*id.* ¶¶ 274–280)

As a matter of law, the Court must treat QCM's statements as actionable mixed opinion because Cassava has alleged facts demonstrating that the underlying facts disclosed by QCM are inaccurate and/or misleading. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ("[W]here the plaintiff alleges that both the opinions and the facts are false, a motion to dismiss should not be granted[.]").

## C.  The FAC adequately alleges that QCM published its defamatory statements and implications with actual malice.

To plead actual malice, a plaintiff need only plead facts showing defendant plausibly acted "with knowledge that [the statements and implications] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986). Reckless disregard means that the defendants "made the false publication[s] with a high degree of awareness of… probable falsity… or must have entertained serious doubts as to the truth of [their] publication[s]." *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 626 N.E.2d 34, 38 (N.Y. 1993). Actual

malice is usually established "inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987). The FAC includes 77 paragraphs and 92 exhibits setting forth "facts showing defendant plausibly acted" with actual malice.[7]

*Improper Motive*. The U.S. Supreme Court and this Court have universally recognized that the defendant's motive is circumstantial evidence probative of actual malice. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 158 (1967); *Biro*, 963 F. Supp. 2d at 277–78. That is particularly true here. The only reason QCM published the Report was to drive down Cassava's stock price so that QCM could make money. (FAC ¶¶ 290–294.) QCM could not drive down Cassava's stock price by publishing the truth. QCM could drive down Cassava's stock price only by publishing false and defamatory accusations about the company. (*Id.*) That is what QCM did.

*Lack of Evidence.* While failure to investigate alone is not sufficient to establish actual malice, allegations that the defendant published knowingly fabricated claims is sufficient. *Palin v. N.Y. Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019) (denying motion to dismiss where "no evidence ever emerged" to support statement); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 584 (S.D.N.Y. 1984) (defendant "had no support for [its] allegation"). That is what we have here. At the time of publication, QCM knew that it lacked evidence showing that Cassava relied on fabricated research or fabricated its testing results. (FAC ¶¶ 297–298.)[8] QCM also knew that there were non-fraudulent explanations for every alleged "red flag" and "anomaly" discussed in the Report. (*Id.* ¶¶ 299–301.)

---

[7] Cassava does not concede that New York Civil Rights Law § 76-a(2) applies, nor that it is a public figure. Nevertheless, Cassava assumes that the actual malice standard applies for purposes of this briefing.

[8] Indeed, despite stating and implying that Cassava fabricated its clinical trial results and committed fraud, QCM cites no single insider who witnessed fraud or fabrication of data at Cassava.

Put simply, QCM knew that it lacked evidence establishing that Cassava and its management were perpetrating a fraud but stated and implied so nonetheless. (*Id.* ¶ 296.)

**Contradictory Information.** Actual malice is also adequately pled by allegations that the defendant, at the time of publication, possessed or reviewed information that contradicted or undercut its defamatory statements. *See, e.g.*, *Palin*, 940 F.3d at 813 (actual malice plausible where reporter "reviewed, edited and approved the publication of numerous articles confirming" falsity of defamatory statement). The FAC alleges that prior to publishing the Report, QCM and/or its undisclosed experts reviewed Cassava's SEC filings (FAC ¶¶ 302–304), Cassava's press releases discussing its underlying research and studies (*id.* ¶¶ 305–307), journal articles discussing and supporting the foundational research for simufilam (*id.* ¶¶ 308–312), and journal articles supporting the testing protocols used by Cassava to test simufilam (*id.* ¶¶ 313–315). Each of these sources contradicted QCM's claims that Cassava is a fraud, relied on fabricated research, and fabricated its test results. (*Id.* ¶¶ 304, 307, 309, 312, 315.) QCM does not deny reviewing these sources prior to publication or that each source contradicts what it published.[9]

**Inherently Improbable.** The "inherent improbability" of a defendant's defamatory statement is also evidence of actual malice—it shows that the defendant likely knew his or her statement was false because it was "inherently improbable." *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 115 (2d Cir. 2005). Here, Cassava alleges facts showing that QCM knew that its accusations were "inherently improbable" because the accusations were inconsistent with common knowledge in the scientific community. (FAC ¶¶ 316–330.) In its Report, QCM stated that it consulted with a

---

[9] In its motion, QCM did not engage with any of the sources that Cassava identifies in the FAC as contradicting the defamatory statements and implications. Accordingly, Cassava has not, with this opposition, matched specific defamatory statements and implications made by QCM with correct information included in the sources. Cassava can do so at the Court's request.

variety of named and unnamed scientific experts. (Ex. 8 at 4, 8, 22, 29, 32, 33.) If QCM actually consulted those experts, QCM would have known that its accusations about Cassava relying on fabricated research and fabricating its test results were inconsistent with common knowledge in the scientific community. (FAC ¶¶ 316–330.)[10]

*Purposeful avoidance.* The U.S. Supreme Court and this Court have recognized that a defendant's "purposeful avoidance" of the truth constitutes reckless disregard for the truth. *Harte-Hanks*, 491 U.S. at 692 (finding actual malice where defendant did not attempt to interview a key witness or review firsthand evidence in its possession); *NOVAGOLD*, 2022 WL 900604 at *9 (finding actual malice pled where defendant short seller did not inquire with plaintiff about perceived improprieties before publishing a defamatory article). That is certainly true here. Cassava alleges that QCM purposefully avoided the truth by failing to consult anyone with firsthand knowledge of Cassava, its foundational research, or its testing of simufilam. (FAC ¶¶ 331–346). Among others, QCM purposefully avoided discussing its accusations with the scientists who performed Cassava's foundational research, the scientists who analyzed the tests of simufilam, Cassava's management, and Cassava's independent board members. (*Id.*)

*Repetition and republication.* Repetition of defamation after being informed of a corrective statement evidences actual malice at the time of the original publication. *See, e.g.*, *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 187 (2d Cir. 2000). Before QCM published its Report, Cassava published information correcting the false and defamatory statements made in the Citizen Petition and its supplements. (FAC ¶ 360.) Likewise, on social media, scientists and others responded to the disinformation published by QCM and others with corrective information. (*Id.* ¶¶

---

[10] QCM's overall message—that Cassava is a fraud—is also inherently improbable based on the fact that Cassava publicly shared its findings in peer-reviewed journals, received multiple grants from federal agencies following a vetting process, and raised significant funds from sophisticated investors following a due diligence process. (FAC ¶¶ 347–358.)

362–364.) QCM was aware of this corrective information (*id.* ¶ 365) but nonetheless subsequently published its Report repeating the same false statements and implications made in the Citizen Petition and continued to defame Cassava on social media after its Report was published. (*See* FAC App. A.) QCM's disregard for corrective information suggests that it acted with actual malice at the time of publication.

### D. QCM's statements and implications were defamatory *per se*.

Defamatory statements tend to subject plaintiff to "hatred, contempt or aversion, or to induce an evil or unsavory opinion of" it. *Nolan v. State*, 69 N.Y.S.3d 277, 284 (N.Y. App. Div. 2018). A statement is defamatory *per se*—and therefore does not require proof of special damages—if it (1) charges "plaintiff with a serious crime" or (2) tends "to injure the plaintiff in [its] trade, business or profession." *Id.* QCM's statements about Cassava are prototypical examples of defamation *per se*. QCM published and republished statements that Cassava intentionally fabricated its clinical research results, defrauded investors, and engaged in criminal conduct. *See supra* Part I.A. Such characterizations not only would necessarily injure Cassava in its business, but they are also accusations of serious crimes. *See, e.g.*, 18 U.S.C. §§ 1001 (false statements), 1348 (securities fraud), 1349 (conspiracy to commit securities fraud), 1343 (wire fraud). Individually and collectively, the statements made by QCM qualify as defamation *per se*. *See Nolan*, 69 N.Y.S.3d at 284.[11]

## II. QCM republished the defamatory statements made by Defendants Bredt & Pitt.

Under New York's long-established republication theory, QCM is liable for republishing defamatory statements made by Bredt and Pitt because it discussed and linked to the Citizen

---

[11] Cassava has also pled special damages. The FAC alleges that Cassava's enterprise value declined because of QCM's statements and Cassava incurred specific out-of-pockets expenses and losses because of their statements. (FAC ¶¶ 433–438.) Such diminution in property value (in this case, enterprise value) and out-of-pocket expenses constitute special damages. *Cromarty v. Prentice-Hall, Inc.*, 421 N.Y.S.2d 603, 604–05 (N.Y. App. Div. 1979).

Petition in its Report. (*See* Ex. 8 at 22–24, 27.) "[New York's] republication liability standard has been consistent for more than one hundred years." *Geraci v. Probst*, 938 N.E.2d 917, 921 (N.Y. 2010). "[U]nder New York law, [a] speaker who repeats another's defamatory statements is not made immune from liability for defamation merely because another person previously made the same demeaning claim." *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 334 (N.Y. Sup. Ct. 2022).

QCM's decision to include a link to the Citizen Petition in its Report—a voluntary choice on the part of QCM—renders it liable for the defamatory statements and implications in the Citizen Petition as a republisher.[12] The only argument QCM raises regarding the Citizen Petition is predicated on a misstatement of the law and facts. QCM argues that it should not be held accountable as republisher of the Citizen Petition because it merely included a hyperlink. (MTD at 18.) But QCM did far more than merely hyperlink to the petition. One, QCM built upon the republished Citizen Petition statements by adding additional defamatory material. *See supra* Part I.A.2. Two, QCM endorsed the Citizen Petition, stating it has been "well researched" and "systematically reviewed" and confirmed by its undisclosed consultants. (FAC ¶¶ 161(ss), (uu), 179(aa).) And three, QCM republished the Citizen Petition to a new audience that was reviewing it for the first time in the context of the Report and QCM's endorsement. (*Id.* ¶179(uu).) This is sufficient to constitute republication. *See Enigma*, 194 F. Supp. 3d at 276–79 (new posts that "go beyond merely hyperlinking" to include new defamatory material are deemed republications).

## III.    QCM is accountable for the statements of its founder and sole member.

QCM's attempt to distance itself from the statements of its founder and sole member, Gabriel Grego, is without merit. (MTD at 18–19.) The FAC alleges an agency relationship between

---

[12] In its motion, QCM does not attempt to defend any of the defamatory statements and implications made in the Citizen Petition, but merely incorporates Defendants Bredt and Pitt's Motion to Dismiss the First Amended Complaint by reference. The statements and implications made in the Citizens Petitions are false and defamatory for the reasons stated in Cassava's Opposition to Defendants Bredt and Pitt's Motion to Dismiss (ECF No. 80).

Gabriel Grego and QCM. As pled in the FAC and Exhibit 14 thereto, Grego is the sole member of QCM, and acts as its agent. (*See* FAC ¶¶ 16, 161(ggg).) Therefore, Grego's statements— particularly insofar as they were made to advance QCM's defamatory campaign against Cassava— are attributable to QCM. *See, e.g.*, *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 46 (N.Y. App. Div. 2021) (finding that defamatory statements made by defendant's lawyer and press agent were actionable where they were authorized to disseminate information to the public and made the relevant statements as part of that work). When Grego commented on Cassava, whether in press releases or interviews, or on his Twitter account, he did so on behalf of QCM. It is difficult to imagine who speaks or acts on behalf of QCM if not its founder and sole member.

## CONCLUSION

Short sellers are now being investigated by the DOJ for their nefarious exploitation of the stock market and seeking to get rich by publishing disinformation.[13] While waiting for the DOJ and others to act, civil lawsuits for defamation are all that victims have available to them when they are targeted by these bad actors. QCM is one such bad actor. In a detailed and well-sourced complaint, Cassava has pled facts supporting a claim for defamation against QCM. QCM's motion to dismiss should be denied. Discovery will reveal the full scope of QCM's misconduct.

Dated: March 10, 2023         Respectfully submitted,
CASSAVA SCIENCES, INC.

By its attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
   EConnolly@beneschlaw.com
   Illinois ARDC No. 6269558

---

[13] *See* Katia Porzecanski & Tom Schoenberg, *Vast DOJ Probe Looks at Almost 30 Short-Selling Firms and Allies*, BLOOMBERG (Feb. 4, 2022, 10:34 A.M.), https://www.bloomberg.com/news/articles/2022-02-04/vast-doj-probe-looks-at-almost-30-short-selling-firms-and-allies.

Timothy Frey (*admitted pro hac vice*)
　　TFrey@beneschlaw.com
　　Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
　　kwatsonmoss@beneschlaw.com
　　Illinois ARDC No. 6321176

Matthew J. Langley
　　MLangley@beneschlaw.com
　　New York Registration No. 4831749

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

**CERTIFICATE OF SERVICE**

I, Erik Connolly, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Quintessential Capital Management LLC's Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 10, 2023.


Dated: March 10, 2023                                    */s/ J. Erik Connolly*