UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CASSAVA SCIENCES, INC., | : |
|                       Plaintiffs, | :    Case No. 22-cv-9409-GHW-OTW |
| - against - | :    **ORAL ARGUMENT REQUESTED** |
| DAVID BREDT; GEOFFREY PITT; QUINTESSENTIAL CAPITAL MANAGEMENT LLC; ADRIAN HEILBUT; JESSE BRODKIN; ENEA MILIORIS; and PATRICK MARKEY, | : |
|                       Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
QUINTESSENTIAL CAPITAL MANAGEMENT LLC'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
500 Fifth Avenue
New York, New York  10110
Telephone:  (212) 986-6000
Facsimile:  (212) 986-8866

*Attorneys for Defendant Quintessential Capital Management LLC*

12358044

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ....................................................................................................................................2

    I.     THE QCM STATEMENTS ARE SUBSTANTIALLY TRUE ...............................2

    II.    THE QCM STATEMENTS ARE NONACTIONABLE OPINION .......................3

    III.   CASSAVA HAS FAILED TO ALLEGE ACTUAL MALICE .............................7

CONCLUSION.................................................................................................................................10

i

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Baez* v. *Anne Fontaine USA, Inc.*,
    2017 WL 57858 (S.D.N.Y. Jan. 5, 2017) ................................................................................3

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................................3

*Brimelow v. N.Y. Times Co.*,
    2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022) ....................9

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014).....................................................................................................2

*Chau v. Lewis*,
    935 F. Supp. 2d 644 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) ..............................6

*Celle v. Filipino Reporter Enterprises, Inc.*,
    209 F.3d 163 (2d Cir. 2000).....................................................................................................9

*Coliniatis v. Dimas*,
    848 F. Supp. 462 (S.D.N.Y. 1994) ..........................................................................................6

*Flamm v. Am. Ass'n of Univ. Women*,
    201 F.3d 144 (2d Cir. 2000).....................................................................................................6

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146 (N.Y. 1993) .....................................................................................................6

*Ifill* v. *N.Y. State Court Officers Ass'n*,
    655 F. Supp. 2d 382 (S.D.N.Y. 2009)......................................................................................3

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986).......................................................................................................6

*Levy v. Nissani*,
    179 A.D.3d 656 (N.Y. App. Div. 2020) ..................................................................................5

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ............................................................................8

*Novagold Resources, Inc. v. J Capital Research USA LLC*,
    2022 WL 900604 (E.D.N.Y. Mar. 28, 2022)...........................................................................4

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d Cir. 2013)..................................................................................................3, 9

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019)..................................................................................................9

*Prince v. The Intercept*,
   2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022) .......................................................................9, 10

*Rivera v. Balter Sales Co.*,
   2014 WL 6784384 (S.D.N.Y. Dec. 1, 2014) .......................................................................7, 10

*Silsdorf v. Levine*,
   59 N.Y.2d 8 (N.Y. 1983) .......................................................................................................5

*Sorvillo v. St. Francis Preparatory Sch.*,
   607 F. App'x 22 (2d Cir. 2015) .............................................................................................6

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (N.Y. App. Div. 2014) ..................................................................................3

*Suarez v. Angelet*,
   90 A.D.3d 906 (N.Y. App. Div. 2011) ..................................................................................6

*Tannerite Sports, LLC v. NBCUniversal News Group*,
   864 F.3d 236 (2d Cir. 2017)..................................................................................................2

*Trump v. Chicago Tribune Co.*,
   616 F. Supp. 1434 (S.D.N.Y. 1985).....................................................................................4, 5

*Valley Elecs. AG v. Polis*,
   2022 WL 893674 (2d Cir. Mar. 28, 2022) ............................................................................5

**Statutes and Rules**

Fed R. Civ. P. 8........................................................................................................................1

New York Civil Rights Law § 76-a .........................................................................................7

12358044

**PRELIMINARY STATEMENT**

Cassava's[1] Opposition ("Opp.") is merely a continuation of its abusive campaign to suppress the exercise of First Amendment freedoms in a scientific debate of significant public concern. Cassava makes no serious effort to address the overwhelming precedent supporting dismissal of its Complaint, seeking instead to burden this Court with hundreds of pages of poorly pleaded allegations and exhibits, all in a futile effort to obscure the fact that the QCM Statements are not actionable for a variety of reasons.

Unable to effectively dispute that each of the QCM Statements is substantially true, Cassava now argues that the "implication" of the QCM Statements is nevertheless false. Yet Cassava falls far short of meeting its burden of pleading a claim for "defamation by implication." In any event, the overall gist of the QCM Statements, to the extent they are factual at all, is substantially true: QCM identified irregularities in the scientific research and clinical trials for simufilam and additional factors supporting QCM's conclusions (including the well-documented histories of misconduct by various persons affiliated with Cassava). Cassava's disagreement with QCM's opinions regarding those facts is understandable, but not actionable.

Cassava offers only a halfhearted response to QCM's argument that it failed to plausibly allege actual malice; and can muster only a footnote in response to QCM's argument that it failed to allege special damages (or any cognizable theory of damages at all).[2]

For the reasons set forth below and in the Moving Brief, the Complaint should be dismissed with prejudice.

---

[1] Capitalized terms used and not defined herein have the meaning ascribed in QCM's Moving Brief (the "Moving Brief" OR "QCM Br.") [ECF No. 78].

[2] Cassava also ignores QCM's argument that the 185-page, 495-paragraph Complaint violates Rule 8 by failing to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2).

12358044

**ARGUMENT**

**I.   THE QCM STATEMENTS ARE SUBSTANTIALLY TRUE**

The QCM Statements satisfy the standard of "substantial truth."  Cassava cites *Tannerite Sports, LLC v. NBCUniversal News Group* in asserting that a statement is "substantially true" if it "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," but omits that the Court must consider "[t]he entire publication, as well as the circumstances of its issuance . . . in terms of its effect upon the ordinary reader."  864 F.3d 236, 242-43 (2d Cir. 2017).  The statement "need not be *completely* true" if "the overall 'gist or substance of the challenged statement' is true."  *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

In a futile effort to demonstrate falsity, Cassava isolates excerpts from the QCM Report purportedly showing that QCM was "stating and implying" that Cassava is a fraud, "knowingly" jeopardized patient health, relied on "fabricated and manipulated" foundational research, and "fabricated and manipulated" its Phase 2b study and open label study results.  But Cassava misquotes and mischaracterizes the QCM Statements at every turn, ignoring that their factual essence is substantially true: QCM addressed irregularities in Cassava's research (most of which already had been identified by third parties) and identified circumstances that might explain those irregularities.  QCM Br. at 7-10; FAC, App. A and Ex. 8.[3]  Cassava merely repeats that it is "not a fraud" and points to conclusory allegations in its Complaint.  Opp. at 5-10 and App. A.

Recognizing that the QCM Statements are substantially true, Cassava relies on outdated authority in arguing that Cassava was defamed "by implication," "based not on any alleged falsity of the statements themselves, but on an alleged defamatory implication that could be derived from

---

[3] Cassava's appendix of "allegations of falsity" [ECF No. 88-1] repeatedly cites to the same handful of conclusory allegations.  QCM already addressed these allegations and identified examples of Cassava *conceding* the truth of various facts set forth in the QCM Statements, to which Cassava offers no response.  *See* QCM Br. at 8-10.

the unchallenged facts." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012).[4] The Complaint states no claim against any defendant for "defamation by implication", and Cassava cannot now "amend [its] complaint to add new claims by raising them for the first time in [its] motion papers." *Ifill* v. *N.Y. State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009); *Baez* v. *Anne Fontaine USA, Inc.*, 2017 WL 57858, at *6 (S.D.N.Y. Jan. 5, 2017). Regardless, even if Cassava had asserted a claim for defamation "by implication," Cassava cannot make the "especially rigorous showing that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *Biro*, 883 F. Supp. 2d at 466. No such allegations are pleaded in the Complaint, nor does Cassava attempt to explain how the (substantially true) QCM Statements impart any false innuendo about Cassava, other than the conclusory and vague assertion that Cassava "is a fraud" – assuming innuendo to that effect can be considered factual at all (*see* Section II below).

## II.    THE QCM STATEMENTS ARE NONACTIONABLE OPINION

The QCM Statements are nonactionable opinion about unsettled matters of scientific debate, which cannot, as a matter of law, give rise to liability for damages sounding in defamation. QCM Br. at 10-18; *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013).[5]

---

[4] The cases cited by Cassava predate the decisions in *Biro* and *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28 (N.Y. App. Div. 2014), in which courts in New York recognized defamation by implication as an independent cause of action and set forth the applicable standard.

[5] Cassava argues that *ONY* is inapplicable where the statements are "not publish[ed] . . . in a peer-reviewed scientific journal," directed solely "to members of the relevant scientific community," and do not "present scientific research findings or experimental data." Opp. at 16. But *ONY* contains no exception for situations in which, as here, a non-scientist wades into an ongoing scientific debate. Rather, the Second Circuit expressed its view that "while statements about contested and contestable scientific hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,' for purposes of the First Amendment and the laws relating to fair competition and defamation, they are more closely akin to matters of opinion." 720 F.3d at 497. The QCM Statements clearly fit within this concept and are not actionable regardless of who asserts them and the forum in which they were asserted.

3

Moreover, while Cassava seeks to minimize QCM's use of disclaimers and cautionary language, QCM's use of both broad and specific disclaimers and cautionary language was *extensive*.[6]  QCM Br. at 13-15 and Ex. A.  Nor does QCM expect any "special" treatment" because it was a short seller (Opp. At 15).  Cassava all but ignores the ample authority to the effect that market analyst reports and investment advice, *including* by short sellers, are nonactionable opinion (QCM Br. at 11-12, 14).  Other than mischaracterizing QCM's argument as a request for "special protection," Cassava musters only a half-hearted attempt to distinguish those cases in a vague footnote asserting that the QCM Statements were not pure opinions (*see* Opp. at 16 n.6).[7]

Further, many of the QCM Statements are hyperbolic or equivocal and carry no precise meaning as used.  *See* QCM Br. at 15-16 and Ex. A.  Cassava seeks to sidestep the many instances in which QCM used such language and instead relies on a nearly forty-year-old decision for the proposition that "when criticism takes the form of accusations of criminal or unethical conduct . . . the borderline between fact and opinion has been crossed."  *Trump v. Chicago Tribune Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985).  That decision actually supports a finding that the QCM Statements constitute protected opinion.  In *Trump*, the Court held that the context of the publication—the "Design" column—and the identification of the author as the Tribune's "Architecture Critic," "inform[ed] the reader that the article embodies commentary," and the language used "convey[ed] to the reader the highly personal and subjective nature of the judgments expressed."  *Id.* at 1436.  Here, the QCM Statements were published in the context of a public

---

[6] The cases cited by Cassava are therefore inapposite.  For example, in *Novagold Resources, Inc. v. J Capital Research USA LLC*, the Court distinguished the very authorities relied on by QCM, in which the Court found that the documents at issue (like the QCM Statements) "were pregnant with signals to the reader that the statements made therein were opinion," from the report at issue in *Novagold*, in which the defendant "point[ed] to its general website disclaimer and terms of service, but nothing else."  2022 WL 900604, at *5 (E.D.N.Y. Mar. 28, 2022).

[7] Cassava argues that the extensive research and investigation underlying the QCM Report somehow demonstrates that the QCM Report's conclusions are not pure opinion.  Not only is that argument wrong, but as set forth *infra* Section III, it is this very same research and investigation that undercuts Cassava's allegations of actual malice.

4

12358044

debate concerning simufilam and Cassava, and QCM's Twitter posts were published on a social media site that is "typically regarded by the public as . . . [a] vehicle[] for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter." *Valley Elecs. AG v. Polis*, 2022 WL 893674 (2d Cir. Mar. 28, 2022). This, along with the extensive use of rhetoric and epithets and the disclosure that QCM was short Cassava's stock, "convey[ed] to the reader the highly personal and subjective nature of the judgments expressed" and leaves "no doubt that the statements . . . are expressions of opinion." *Trump*, 616 F. Supp. at 1435-36; QCM Br. at 15-16. Given that QCM *never* stated unequivocally that Cassava committed criminal or intentional misconduct, the QCM Statements do not come within the ambit of the *Trump* holding.

While Cassava urges the Court to consider "the full context of the publication or the broader social context and surrounding circumstances," (Opp. at 10-11), the Opposition instead repeatedly attempts to divorce the QCM Statements from their context and to have this Court consider each in isolation.[8] However, the cases cited by Cassava make clear that context is a *critical* consideration. For example, in *Levy v. Nissani*, the counterclaim-defendant arose during Sabbath prayers at the parties' synagogue, pointed to the counterclaim-plaintiffs, called them the Hebrew word for "scammers or con artists," as well as "thieves." 179 A.D.3d 656, 657 (N.Y. App. Div. 2020). The Court observed that "*[v]iewed in the context in which the allegedly defamatory statements were made*, a reasonable listener would likely understand those statements to imply that the Nissanis swindled the plaintiff out of money." *Id.* at 659 (emphasis added).[9]

---

[8] Indeed, even considered in isolation, some of the QCM Statements are virtually meaningless, further emphasizing that Cassava's claims lack merit. *See, e.g.*, FAC App. A at 20 ("The bull is still puffing and charging, but it's wound is deadly and it's demise is now near. $sava"); *id.* at 24 ("All of this is going to the SEC"); *id.* at 26 ("These are the highly professional-looking clinical teams testing $SAVA 'game changing' drug Simufilam. This is not a joke…"); *id.* ("After reading this exchange it finally hit me why Cassava stock price is behaving the way it is!").

[9] The other cases cited by Cassava on this point are similarly inapposite, as most involve statements made in a context suggesting they were factual in nature. *See, e.g.*, *Silsdorf v. Levine*, 59 N.Y.2d 8 (N.Y. 1983) (open letter regarding former mayor setting forth examples of misconduct and corruption that was signed by four former village trustees and

5

In a futile effort to recharacterize all of QCM's opinions as facts, Cassava quotes a Twitter post by Gabriel Grego, the sole member of QCM, in which he stated, "If you bother reading the report . . . you will see that it is factual and matter of fact." *See* FAC App. A at 120; QCM Br., Ex. A at 39.  Cassava misleadingly omits that this Twitter post is the last in a five-day exchange referring to specific statements in the QCM Report about the criminal history of Aimee Cabo, co-owner of IMIC. *See* FAC, Ex. 8 at 14; https://twitter.com/GabrielGrego14/status/1569357959360122881.  Nowhere does Cassava claim that statements regarding Ms. Cabo were false, and in this fuller context, Mr. Grego's Twitter post did not in fact state that the QCM Report was entirely "factual" (much less state a legal conclusion that is dispositive of the Motion, as Cassava contends).

Even if the QCM Statements were classified as mixed opinion and fact, they would be actionable only if they implied that they were based upon undisclosed facts (*Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015)), or if Cassava challenged both the opinions *and* the facts (*see Chau v. Lewis*, 935 F. Supp. 2d 644, 659 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014)).  As set forth *supra* Section I, Cassava does not actually challenge the facts underlying Cassava's opinions, so its defamation claim could survive only if QCM failed to disclose the facts upon which its opinions were based.  Despite Cassava's hunt through the QCM Report for "undisclosed" facts, it remains clear that QCM consistently and repeatedly disclosed

---

circulated to residents); *Suarez v. Angelet*, 90 A.D.3d 906 (N.Y. App. Div. 2011) ( "straightforward and declaratory" email stating that plaintiff was a thief); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 154 (N.Y. 1993) (newspaper articles charging former Chief Medical Examiner with mishandling cases and using authority to protect police officers and city officials from suspicion); *Kelly v. Schmidberger*, 806 F.2d 44 (2d Cir. 1986) (letter from priest to parishioners alleging that plaintiffs placed church property in their own names, thereby accusing them of criminal conduct); *Coliniatis v. Dimas*, 848 F. Supp. 462 (S.D.N.Y. 1994) (letter to Director General of Olympic Airways from its attorney stating that the attorney felt professionally obligated to inform him that an employee was involved in an illegal kickback scheme); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000) (statement describing plaintiff as an "ambulance chaser" in an otherwise fact-laden directory could imply that he engaged in unethical solicitation of clients).

the publicly-available bases for its statements. See QCM Br. at 12-13. For example, Cassava cites QCM's references to "*multiple* expert opinions" and offers the strained argument that "QCM only named *two* purported 'experts' as sources for its statements." Opp. at 17 (emphasis added). As readers of the QCM Report surely are aware, "multiple" means "more than one," and "two" falls comfortably within that definition.[10] Cassava next cites QCM's description of an "anonymous" post in the comments section of the Citizen Petition on the FDA's website, despite the fact that QCM included a hyperlink taking readers directly to the post itself. Cassava's concern with QCM referring to "research centers" is possibly the most perplexing, since QCM not only named those research centers but included photographs of them. *See* FAC, Ex. 8 at 31.[11]

### III. CASSAVA HAS FAILED TO ALLEGE ACTUAL MALICE

There is no question that Cassava is a public figure. In a footnote, Cassava states that it "does not concede that New York Civil Rights Law § 76-a(2) applies, nor that it is a public figure." *See* Opp. at 20 n.7. However, its failure to offer any substantive response is nothing less than a concession. *See, e.g., Rivera v. Balter Sales Co.*, 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims."). Moreover, the unalterable fact remains that Cassava cannot satisfy the rigorous requirements of the intentionally exacting "actual malice" standard in its Complaint, and its defamation claim must fail for this reason alone. QCM Br. at 19-23.[12]

---

[10] *See* "Multiple," Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/multiple.

[11] Cassava also takes issue with QCM referring to a former Cassava employee without specifically naming the individual, despite the fact that QCM clearly had identified its source, as well as QCM's reference to "other studies" without linking directly to them despite their immateriality to the point being made (*i.e.*, that Cassava's study of Alzheimer's Disease patients included patients without Alzheimer's Disease). Cassava's contention that screenshots of QCM's "internal presentation" omitted sources is nonsensical, since in each instance the source is indicated conspicuously in the image itself.

[12] Again, Cassava's appendix of "allegations of actual malice" [ECF No. 88-1] does no more than repeatedly refer the Court to the same handful of deficient allegations already addressed by QCM in its Moving Brief. *See* QCM Br. at 20-23. None of these allegations suggest, as required, that QCM had subjective doubts about the truth of its statements.

First, "allegations of a defendant's bias or 'hostility fail plausibly to establish . . . actual malice.'" *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 847014, at *8 (S.D.N.Y. Jan. 12, 2018) (finding that short seller did not have actual malice in publishing article about shorted company); *see also* QCM Br. at 21.  Cassava does not attempt to distinguish the authorities cited by QCM, instead relying entirely on conclusory and unsupportable allegations that QCM published its Report "so that QCM could make money."  Opp. at 20.  QCM's potential benefit from a decrease in the price of Cassava's stock (which did not actually occur) does not indicate that it held actual, subjective doubts about the truth of its statements.

Cassava's arguments based on QCM's supposed "lack of evidence," possession of "contradictory information" and "inherent improbability" also are conclusory and implausible.  Cassava makes much of QCM's in-depth study and thorough investigation of Cassava elsewhere in the Opposition (*see* Opp. at 1, 13-14), yet strangely ignores these facts in the section where it is most relevant.  Cassava is correct:  QCM performed an extensive "in-depth study into Cassava" prior to publishing the QCM Statements, "including infiltration of undercover investigators into [Cassava's] clinical research centers, surveillance of its research facilities, background checks on the actors involved, and multiple expert opinions from industry leaders," and the QCM Statements are replete with citations to this research. *See* FAC, Ex. 8 at 4, 6-8; QCM Br. at 21-23.  Under the circumstances, Cassava cannot plausibly allege that QCM failed to investigate its statements before making them, or that QCM's statements lacked a clearly disclosed factual basis.

Cassava doubles down on its argument that QCM had knowledge of falsity because it had access to Cassava's own SEC filings and press releases and to journal articles published by Doctors Burns and Wang (FAC ¶¶ 302-09).  However, its position squarely contradicts well-settled law that a defamation plaintiff's "denials without more do not support a plausible claim of actual

8

malice." *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022). This case is quite different from *Palin v. New York Times Co.*, cited by Cassava, in which the defendant published an editorial claiming that the plaintiff was connected to a shooting *after* having been responsible for "review[ing], edit[ing] and approv[ing] the publication of numerous articles confirming there was not link between Mrs. Palin and [the] shooting." 940 F.3d 804, 813-14 (2d Cir. 2019). Here, the existence of publications and research that *might* support the science behind simufilam, or that offer competing explanations, does not constitute "corrective information"[13] or render competing interpretations false. *See ONY, Inc.*, 720 F.3d at 497 ("In a sufficiently novel area of research, propositions of empirical 'fact' advanced in the literature may be highly controversial and subject to rigorous debate by qualified experts. Needless to say, courts are ill-equipped to undertake to referee such controversies."). Additionally, QCM did not "purposefully avoid the truth" by declining to consult with the scientists who performed the research underlying simufilam and analyzed the tests of simufilam, or Cassava's management and board members (FAC ¶¶ 331-46). The law does not require that QCM interview each individual who may have personal knowledge prior to publication, and the cases cited by Cassava are not to the contrary. Indeed, Cassava's argument continues to ignore facts in the Complaint concerning the public debate already ongoing at the time the QCM Statements were published, which reflected an *abundance* of scientific opinions evidencing the significant irregularities in Cassava's methodology identified by QCM. None of the conclusory allegations cited by Cassava as demonstrating the "inherent improbability" of the QCM Statements" make it

---

[13] Cassava cites *Celle v. Filipino Reporter Enterprises, Inc.*, for the proposition that "[r]petition of defamation after being informed of a corrective statement evidences actual malice at the time of the original publication." 209 F.3d 163, 187 (2d Cir. 2000). *Celle* is readily distinguishable, as it involved a finding of actual malice where the defendant had admitted understanding at the time of publication that the statement at issue was false. *Id.* at 186-87.

"a contradiction for [QCM's] allegations to be true." *Prince v. The Intercept*, 2022 WL 5243417, at *17 (S.D.N.Y. Oct. 6, 2022).[14]

## CONCLUSION

For the reasons set forth *supra* and in its Moving Brief, QCM respectfully requests an Order dismissing the Complaint with prejudice, and any other relief the Court deems just and proper.

Dated: March 24, 2023

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: ⎯⎯⎯⎯⎯*/s/ David M. Levy*⎯⎯⎯⎯⎯
David M. Levy
Joshua K. Bromberg
Alisa Benintendi

500 Fifth Avenue
New York, New York  10110
Telephone:  (212) 986-6000
Facsimile:  (212) 986-8866

Attorneys for Defendant **QUINTESSENTIAL CAPITAL MANAGEMENT LLC**

---

[14] The QCM Statements are not defamatory *per se* and Cassava was required to plead special damages with particularity. QCM Br. at 23-25. Cassava failed to plead *any* facts demonstrating how it was damaged by QCM. Cassava does not respond to the argument that the price of Cassava stock *increased* in the days following publication of the QCM Report, and any decrease in the stock price would not represent economic damage to Cassava, as opposed to its shareholders, precluding any claim of damages as a matter of law. *See Rivera*, 2014 WL 6784384, at *3. Cassava's conclusory claims that "Defendants' statements," taken together, were a "substantial cause" of (unquantified) out-of-pocket expenses and damage to Cassava's "enterprise value" (FAC ¶¶ 423-38; Opp. at 23 & n.11) does not satisfy the requirement that Cassava plead special damages flowing directly from an injury caused *specifically* by the QCM Statements, as opposed to statements by other persons or a multitude of other factors that might affect Cassava's enterprise value.

10

12358044

## CERTIFICATE OF SERVICE

**I, DAVID M. LEVY**, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Quintessential Capital Management LLC's Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 24, 2023.

Dated: March 24, 2023

*/s/ David M. Levy*
David M. Levy

12358044