UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASSAVA SCIENCES, INC.,

      Plaintiff,

v.

DAVID BREDT; GEOFFREY PITT;
QUINTESSENTIAL CAPITAL
MANAGEMENT LLC; ADRIAN HEILBUT;
JESSE BRODKIN; ENEA MILIORIS; and
PATRICK MARKEY,

      Defendants.

Civil Action No. 22-cv-9409-GHW-OTW

**PLAINTIFF CASSAVA SCIENCES, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS DR. JESSE BRODKIN, DR. ADRIAN
HEILBUT, AND DR. ENEA MILIORIS'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

J. Erik Connolly (*admitted pro hac vice*)
Matthew J. Langley
Timothy Frey (*admitted pro hac vice*)
Kate Watson Moss (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

OVERVIEW OF ARGUMENTS ....................................................................................... 1

BRIEF STATEMENT OF FACTS ..................................................................................... 2

LEGAL STANDARDS ...................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      CASSAVA HAS ADEQUATELY PLED A CLAIM FOR DEFAMATION *PER SE* AGAINST THE DOT.COM DEFENDANTS ................................................................ 5

        A.      The FAC adequately alleges that the Dot.com Defendants published false and defamatory statements and implications about Cassava. ........................................ 5

                1.      The Dot.com Defendants published false and defamatory statements and implications about Cassava. ........................................................................ 6

                2.      The Dot.com Defendants' argument for "substantial truth" ignores the actual statements and implications at issue. ................................................ 7

        B.      The Dot.com Defendants' defamatory statements and implications constitute assertions of fact pursuant to New York's three-part test. ..................................... 9

                1.      The Dot.com Defendants' language has a precise meaning, and the statements are capable of being proven false. .............................................. 9

                2.      The context of the Dot.com Defendants' publications told readers that the Dot.com Defendants were conveying facts. ............................................. 10

                3.      The Dot.com Defendants' reliance on cases involving "scientific debate" is factually misplaced. .................................................................................. 12

                4.      The Dot.com Defendants' defamatory statements and implications are, at least, actionable mixed opinion. ................................................................. 14

        C.      The FAC adequately alleges that the Dot.com Defendants published the defamatory statements and implications with actual malice. ................................ 15

II.     THIS COURT HAS PERSONAL JURISDICTION OVER BRODKIN AND MILIORIS. ................................................................................................................... 19

        A.      Brodkin and Milioris transacted business in New York and their tortious conduct arises from those transactions. ............................................................................. 19

        1.      Brodkin and Milioris shorted Cassava's stock on NASDAQ. .................. 20

        2.      Brodkin and Milioris requested, obtained, and used documents obtained via New York's Freedom of Information Law. ........................................ 21

        3.      Brodkin and Milioris specifically targeted individuals and entities in New York. ..................................................................................................... 22

        4.      Brodkin and Milioris conducted business in New York through their agent, Heilbut. ........................................................................................ 24

    B.    The Court's exercise of personal jurisdiction over Brodkin and Milioris comports with due process................................................................................................ 25

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................15

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009).......................................................................4

*Arch Specialty Ins. Co. v. Ent. Specialty Ins. Servs.*,
    2005 WL 696897 (S.D.N.Y. 2005)...........................................................22

*Armstrong v. Simon & Schuster*,
    649 N.E.2d 825 (N.Y. 1995).......................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................4

*Bass v. United Dev. Funding, L.P.*,
    2019 WL 3940976 (Tex. Ct. App. Aug. 21, 2019)...................................16

*Biro v. Conde Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013).......................................................15

*Biro v. Nast*,
    2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012)....................................20, 21

*Brian v. Richardson*,
    660 N.E. 2d 1126 (N.Y. 1995)..................................................................12

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................24

*BYD Co. Ltd. v. VICE Media LLC*,
    531 F. Supp. 3d 810 (S.D.N.Y. 2021).......................................................18

*Church of Scientology Int'l v. Time Warner, Inc.*,
    806 F. Supp. 1157 (S.D.N.Y. 1992)...........................................................7

*Coliniatis v. Dimas*,
    848 F. Supp. 462 (S.D.N.Y. 1994) .......................................................8, 10

*Crime Victims Ctr., Inc. v. Logue*,
    119 N.Y.S.3d 550 (App. Div. 2020) .........................................................12

*Curtis Publ'g Co. v. Butts,*
    388 U.S. 130 (1967)..................................................................................15

*Dalbec v. Gentleman's Companion, Inc.,*
    828 F.2d 921 (2d Cir. 1987)......................................................................15

*Davis v. Boeheim,*
    24 N.Y.3d 262 (N.Y. 2014) ................................................................10, 14

*Deer Consumer Products, Inc. v. Little,*
    938 N.Y.S.2d 767 (Sup. Ct. 2012).............................................................21

*DeLuca v. Accessit Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)...........................................................8

*Derensis v. Coopers & Lybrand Chartered Accts.,*
    930 F. Supp. 1003 (D.N.J. 1996) ..............................................................24

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,*
    850 N.E.2d 1140 (N.Y. 2006).............................................................19, 20

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001)........................................................................19

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
    722 F.3d 81 (2d Cir. 2013)..........................................................................5

*Eastman Chem. Co. v. Plastipure, Inc.,*
    775 F.3d 230 (5th Cir. 2014) ....................................................................13

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC,*
    194 F. Supp. 3d 263 (S.D.N.Y. 2016).......................................................11

*Farmland Partners Inc. v. Forunae,*
    2021 WL 1978739 (D. Colo. May 18, 2021)............................................16

*Fedak v. Yimby, Inc.,*
    No. 17-cv-8825, 2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018) ................12

*Fischer v. Stiglitz,*
    2016 WL 3223627 (S.D.N.Y. June 8, 2016) ............................................19

*Flamm v. Am. Ass'n of Univ. Women,*
    201 F.3d 144 (2d Cir. 2000)...............................................................10, 11

*Geisler v. Petrocelli,*
    616 F.2d 636 (2d Cir. 1980)........................................................................8

*Gross v. N.Y. Times Co.*,
82 N.Y.2d 146 (N.Y. 1993) ...................................................................9, 11, 14

*GTP Leisure Prods., Inc. v. B-W Footwear Co., Inc.*,
391 N.Y.S.2d 489 (App. Div. 1977) .......................................................21

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)..........................................................................17, 18

*Herbert v. Lando*,
441 U.S. 153 (1979)..................................................................................18

*James v. iFinex, Inc.*,
127 N.Y.S.3d 456 (App. Div. 2020) .......................................................25

*Karedes v. Ackerley Grp., Inc.*,
423 F.3d 107 (2d Cir. 2005) ....................................................................17

*Kingstown Capital Management LP v. CPI Property Group, SA*,
167 N.Y.S.3d 92 (Sup. Ct. 2012) ............................................................21

*Kreutter v. McFadden Oil Corp.*,
522 N.E.2d 40 (N.Y. 1988)......................................................................24

*Krusen v. Moss*,
105 N.Y.S. 3d 607 (App. Div. 2019) .......................................................12

*Legros v. Irving*,
327 N.Y.S.2d 371 (N.Y. App. Div. 1971) ..........................................20, 21

*LoanStreet, Inc. v. Troia*,
2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022) ...........................................9

*McKee Elec. Co. v. Rauland-Borg Corp.*,
229 N.E.2d 604 (N.Y. 1967)....................................................................19

*Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*,
2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017) ......................13

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt., LP*,
No. 17-cv-7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) .............18

*Modica v. Westchester Rockland Newspapers, Inc.*,
283 N.Y.S.2d 939 (Sup. Ct. 1967)..........................................................23

*Montgomery v. Minarcin*,
693 N.Y.S.2d 293 (App. Div. 1999) .......................................................21

*Moraes v. White*,
    571 F. Supp. 3d 77 (S.D.N.Y. 2021)......................................................................................12

*NOVAGOLD Resources, Inc. v. J Capital Research USA LLC*,
    2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ...................................................................16, 18

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490,496–97 (2d Cir. 2013) ................................................................................13

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019)...............................................................................16, 17, 18

*Prozeralik v. Cap. Cities Commc'ns, Inc.*,
    626 N.E.2d 34 (N.Y. 1993)...............................................................................................15

*Realuyo v. Villa Abrille*,
    2003 WL 21537754 (S.D.N.Y. July 08, 2003) .................................................................23

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)........................................................................ *passim*

*Al Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (App. Div. 2016)..........................................................................................25

*S. New Eng. Tel. Co. v. Glob. NAPS Inc.*,
    624 F.3d 123 (2d Cir. 2010)...............................................................................................5

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*,
    749 F. Supp. 2d 104 (S.D.N.Y. 2010)..............................................................................21

*Sandals Resorts International Ltd. v. Google, Inc.*,
    925 N.Y.S.2d 407 (N.Y. App. Div. 2011) .......................................................................12

*Sharon v. Time, Inc.*,
    599 F. Supp. 538 (S.D.N.Y. 1984) ...................................................................................17

*Silvercorp Metals, Inc. v. Anthion Mgmt, LLC*,
    2012 WL 3569952 (N.Y. App. Div. Aug. 16, 2012) ........................................................12

*Solys Med., LLC v. Organogensis, Inc.*
    2018 WL 10579659 (E.D. Va. Dec. 12, 2018) .................................................................13

*Sovik v. Healing Network*,
    665 N.Y.S.2d 997 (N.Y. App. Div. 1997) .............................................................20, 23, 24

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)...........................................................................................6, 7

*Trabucco v. Intesa Sanpaolo, S.p.A.*,
    695 F. Supp. 2d 98 (S.D.N.Y. 2010)......................................................................21

*Trump v. Chi. Tribune Co.*,
    616 F. Supp. 1434 (S.D.N.Y. 1985)......................................................................9

*U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*,
    554 F. Supp. 2d 523 (S.D.N.Y. 2008)....................................................................21

*Watson v. NY Doe 1*,
    439 F. Supp. 3d 152 (S.D.N.Y. 2020)............................................................12, 24

*World Wrestling Fed'n Ent., Inc. v. Bozell*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001)....................................................................19

**Statutes**

N.Y. Pub. Off. Law §§ 84–90..................................................................................22

21 CFR 312..............................................................................................................11

CPLR § 302(a)(1) ..............................................................................................19, 20

# INTRODUCTION[1]

Defendants Drs. Brodkin, Milioris, and Heilbut (the "Dot.com Defendants") are scientists. As such, they know better than to accuse a company of engaging in wide-ranging scientific fraud without actual evidence. But that is what they did. Over the course of the past 19 months, the Dot.com Defendants embarked on a relentless campaign to discredit, disparage, and defame Cassava. The Dot.com Defendants use their cloak as scientists to trick readers into believing they are providing facts and evidence, when in reality they are merely trying to make money. That is because in addition to being scientists, the Dot.com Defendants are short sellers. They make money when Cassava's stock drops. So, rather than engage in genuine scientific debate, the Dot.com Defendants used their credentials to accuse Cassava of fraud. The Court should hold the Dot.com Defendants accountable for what they have done: defame Cassava.

## OVERVIEW OF ARGUMENTS

The Court cannot grant the Dot.com Defendants' motion to dismiss based on Cassava's allegations, which the Court must accept as true. *First*, the First Amended Complaint ("FAC") adequately alleges that the Dot.com Defendants published nearly 100 false statements and implications about Cassava in four different publications, as well as over 770 false and defamatory Tweets. The Dot.com Defendants stated that Cassava is a fraud, that Cassava fabricated and manipulated its foundational research, Phase 2b studies, and Open Label studies, and that Cassava lied to the FDA. The FAC alleges facts demonstrating that nearly everything the Dot.com Defendants stated and implied is demonstrably false.

*Second*, the FAC adequately alleges that the Dot.com Defendants' false statements and implications constitute actionable defamation. Under New York's three-part test, none of the false

---

[1] Emphasis has been added to quotations throughout, and internal citations have been omitted.

statements or implications qualify as opinion because (a) each had a precise meaning, (b) each is capable of being proven true or false, and (c) the Dot.com Defendants presented their publications as evidence of fraud as determined by qualified scientists requiring action on the part of journals, academic institutions, and regulators. In these ways and others, the Dot.com Defendants conveyed to a reasonable reader that their publications and accusations were matters of fact.

*Third*, the FAC adequately alleges that the Dot.com Defendants acted with actual malice. The Dot.com Defendants published their defamatory statements and implications about Cassava to drive down its stock price so that the Dot.com Defendants could profit from their short positions. That is bad enough. But the Dot.com Defendants' actual malice is further demonstrated by the fact that (a) they knew their statements about Cassava were contradicted by information that they reviewed before publishing their publications, (b) they knew that they lacked support for their statements prior to publication, and (c) they purposefully avoided learning the truth about Cassava by refusing to contact Cassava or anyone with firsthand knowledge before publishing.

Finally, this Court has jurisdiction over Defendants Brodkin and Milioris because they transacted business in New York and Cassava's claims arise from those transactions. Brodkin and Milioris purposefully availed themselves of the privilege of conducting business in New York by (a) shorting Cassava's stock on the NASDAQ market in connection with their defamation campaign, (b) requesting, obtaining, and using documents created in New York and gathered under New York's Freedom of Information Law in connection with their defamation campaign, (c) specifically targeting individuals and entities in New York with their defamatory messages, and (d) working in concert with a New York resident to publish their defamatory statements.

## **BRIEF STATEMENT OF FACTS**

Cassava is a biotechnology company focused on R&D for people with Alzheimer's disease. (FAC ¶ 36.) Cassava's main product, simufilam, is a drug candidate that targets an altered form of

the protein filamin A ("FLNA") in the brain. (*Id.* ¶¶ 37–38.) FLNA has been linked to disease by numerous independent third party researchers. (*Id.* ¶ 38.) Peer-reviewed studies and early trial results show that simufilam has a strong scientific foundation, may counter the toxic effects of altered FLNA, and appears to be safe for human consumption. (*Id.* ¶¶ 38–46, 63–64, 74, 98, 100, 104.) Accordingly, following a review of research and test results for simufilam, the FDA allowed for simufilam's advancement to Phase 3 clinical trials—the last step before seeking drug approval. (*Id.* ¶¶ 88–91.)

Cassava's stock price rose following the announcement of its test results, creating an opportunity for manipulative short selling. (FAC ¶¶ 108–109.) Two short sellers—Bredt and Pitt—did exactly that, working with New York-based lawyer Jordan Thomas to submit a series of "Citizen Petitions" beginning in August of 2021. (*Id.* ¶¶ 119–120, 125, 128, 143, 149; Ex. 3–5, 9, 11.) But the Citizen Petition Defendants were not alone in their campaign against Cassava. Four scientists—Jesse Brodkin, Adrian Heilbut, Patrick Markey, and Enea Milioris —also took out short positions in Cassava stock before publishing statements accusing Cassava of fraud.

The Dot.com Defendants identify themselves as "scientists" (Mem. of Law in Support of Dot.Com Defendants' MTD ("MTD") at 1), yet what they actually do is target biotechnology companies in order to make money on the stock market.[2] That is what they did here. All four defendants authored defamatory statements accusing Cassava of fraud on the websites "cassavafraud.com" and "simuflimflam.com," both of which were registered on October 31, 2021. (FAC ¶ 131.)

---

[2] For instance, in their tweets defaming Cassava, the Dot.com Defendants have also attacked Athira Pharma ($atha) (FAC App'x A at 101, 104, 105, 125), Anavex Life Sciences Corp. ($avxl) (*id.*), and Design Therapeutics ($dsgn) (*id.* at 125).

On November 2, 2021, a few days after registering the "Cassava Fraud" and "Simuflimflam" website domains, the Dot.com Defendants posted a personal letter addressed to FDA officials on both domains, repeating the accusations from the Citizen Petitions and stating that Cassava's science is based on manipulation, that Cassava had fabricated its testing results, and that Cassava is a fraud. (FAC ¶¶ 133–135.) The next day, they posted a presentation containing substantially the same accusations as the FDA letter, this time providing a link to the Citizen Petitions with their statements. (*Id.* ¶¶ 136–138; Ex. 7.) They would go on to publish two additional reports in the months to come: a report comparing Cassava to Theranos, a company notorious for its allegedly fraudulent and illegal misconduct (*id.* ¶¶ 149–152; Ex. 10), and a report accusing Cassava of conspiring with researcher Dr. Hoau-Yan Wang to manipulate testing data (*id.* ¶¶ 156–158; Ex. 12).[3] Throughout this time and through the present, the Dot.com Defendants have continued to promote their publications and publish additional false and defamatory statements about Cassava on Twitter and other social media platforms. (*Id.* ¶¶ 7, 287, Appendix A.)

## LEGAL STANDARDS

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept the facts alleged as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). The Court's role is limited to determining whether the FAC contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Iqbal*, 556 U.S. at 678.

---

[3] Additionally, since this case was filed, the Dot.com Defendants have added two additional defamatory publications to their websites. The first, a "poster" titled "Rigor and Replication in Alzheimer's Therapeutic Development: A Case Study" appears to have been published on or around December 6, 2022. The second, an email from Jesse Brodkin on behalf of the Dot.com Defendants to various "Editors and Publishers" dated July 1, 2022 with the subject "Hoau-Yan Wang Fraud: New Evidence of Serial Deceit and Editorial Failures," appears to have been published on or around January 20, 2023. Cassava reserves the right to amend its complaint to add claims based on these publications.

4

To survive a motion to dismiss pursuant to Rule 12(b)(2), Cassava need only make a *prima facie* showing that personal jurisdiction exists. *See S. New Eng. Tel. Co. v. Glob. NAPS Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). "[A] plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013). Cassava's factual allegations are taken to be true, and "pleadings and affidavits [are construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* at 85.

## ARGUMENT

The elements of a defamation claim are (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault, which (4) either causes special harm or constitutes defamation *per se*. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 716 (S.D.N.Y. 2014). The FAC alleges dozens of facts establishing each element.[4]

I.    **Cassava has adequately pled a claim for defamation *per se* against the Dot.com Defendants.**

   A.    **The FAC adequately alleges that the Dot.com Defendants published false and defamatory statements and implications about Cassava.**

Cassava's claim against the Dot.com Defendants does not arise out of their purported identification of "errors" or "irregularities" in Cassava's pre-clinical and clinical research. Cassava's claim concerns the Dot.com Defendants' explicit statements and implications that Cassava *intentionally* fabricated and manipulated data in order to dupe patients, investors, and the government. (*See* FAC ¶ 168(j) (Cassava "makes a mockery of scientific standards, clinical trial conduct, and . . .regulators") ¶ 252(c) (Cassava is a "scam of scientifically illiterate investors.").)

---

[4] Appendix 1 lists the defamatory statements published by the Dot.com Defendants as well as the paragraphs in the FAC alleging facts demonstrating that each statement is false (factually inaccurate) and was made with actual malice.

That is, the Dot.com Defendants accused Cassava of being a fraud that committed a criminal act of fabricating research and clinical data. That is not scientific debate. That is defamation *per se*.

## 1. The Dot.com Defendants published false and defamatory statements and implications about Cassava.

A plaintiff can satisfy its obligation to plead falsity in two ways. One, a plaintiff can plead facts showing that the statement published by the defendant was false. To do so, a plaintiff must allege "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). Two, a plaintiff can plead facts showing that the defendant *implied* false facts about plaintiff. Defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 649 N.E.2d 825, 829 (N.Y. 1995). A technically true statement can still be considered false by implication where the plaintiff alleges that the defendant failed to provide proper context, if that context would have resulted in the publication having "a different effect on the mind of the average reader." *See Tannerite*, 864 F.3d at 246–47.

Cassava alleges that the Dot.com Defendants falsely stated and implied that Cassava is a fraud (FAC ¶ 161(q)–(ll), (eee)), Cassava knowingly jeopardized patient health (*id.* ¶ 168(c)-(l)), Cassava knowingly relies on fabricated and manipulated foundational research (*id.* ¶¶ 174(c)-(i), 179(x)-(z)), Cassava intentionally fabricated and manipulated its Phase 2b study (*id.* ¶¶ 210(g)-(n), 215 (d)-(s), 222(a)-(f)), Cassava intentionally fabricated and manipulated its Open Label study results (*id.* ¶ 239(a)-(g), (n)-(q)), and Cassava lied to the FDA to proceed with its Phase 3 studies (*id.* ¶ 246(b)-(c)). For instance, the Dot.com Defendants:

- Stated that Cassava coordinated an elaborate scheme of lies to gain approval for their drug candidate. (*See, e.g.*, *id.* ¶ 161(s) ("[W]e reveal a pattern of **deliberate, coordinated misconduct** involving both Cassava Sciences and their academic

collaborator at CUNY [The City University of New York], Dr. Hoau-Yan Wang.")[5] (emphasis added));

- Stated that Cassava is endangering the health of patients. (*See, e.g.*, *id.* ¶ 168(h) ("Cassava Sciences, through **persistent obfuscation and exaggeration** of the effects of Simufilam, **have exposed study participants to incalculable risk with unknown consequences for their health** and misled investigators and patients into choices that affect their well being." (emphases added));

- Stated that Cassava lied about its foundational research. (*See, e.g. id.* ¶ 174(g) ("We first review Cassava's **suspicious history and the obvious scientific misconduct** pervading all of Cassava's pre clinical science underlying the 'discovery' of Simufilam." (emphasis added)); and

- Stated that Cassava intentionally manipulated its Phase 2 trial results to mislead others. (*See, e.g., id.* ¶ 222(b) ("These obvious violations of the data treatment plan **are clearly designed to skew the data** in a favorable direction **and obscure** the lack of benefit of Simufilam on cognition." (emphases added)).

As to each of these categories of statements, Cassava has alleged facts demonstrating that what the Dot.com Defendants stated was factually inaccurate. Cassava is not a fraud, did not intentionally fabricate or manipulate its pre-clinical or clinical studies, and did not intentionally mislead patients, investors, or the FDA. (*Id.* ¶¶ 162-167, 173, 175-178, 211-214, 216-221, 223-226, 240-242, 249-250.) In other words, Cassava has pled that Defendants' statements were <u>not</u> "substantially true." *Tannerite*, 864 F.3d at 247.

### 2. The Dot.com Defendants' argument for "substantial truth" ignores the actual statements and implications at issue.

The Dot.com Defendants ignore the allegations in the FAC and their own publications accusing Cassava of being a "sham," an "unprecedented scientific charade," and of engaging in "obvious scientific misconduct" to assert that they only pointed out "errors and irregularities" that

---

[5] Throughout the Dot.com Defendants' publications, they inextricably link Dr. Wang and his research to Cassava. (*See* FAC ¶¶ 161(f), (w), (s), (ff), (gg), (jj); 174(d), (f), (i); 179(x), (z); 210(i)-(n); 215(e)-(g), (k), (n), (p); 222(e); 239(n)-(q).) As such, the Dot.com Defendants' statements attacking Dr. Wang's research and credibility would be understood by those who know Cassava as attacking its research and credibility as well, thereby satisfying the "of and concerning" requirement. *See Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992).

are "indicia" of fraud and that Cassava "cannot deny that the research and clinical studies . . . did in fact contain indicia of possible manipulation or fabrication." (MTD at 14–16.) (*Id*. at 15.) Not so. For every statement at issue, the FAC identifies multiple reasons why the statement is not true. (See Appendix 1.) Cassava does not concede, in the FAC or elsewhere, that its data contain "indicia of manipulation." (MTD at 15.) To the contrary, the FAC alleges facts demonstrating that what the Dot.com Defendants called "indicia of manipulation" were not. (FAC ¶¶ 175–178, 300–301, 361.) The Court cannot find statements to be "substantially true" on a motion to dismiss when Cassava has alleged facts showing the statements to be false. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. 462, 468 (S.D.N.Y. 1994) ("As the parties have not yet engaged in discovery . . . , the Court declines to examine whether [plaintiff] has raised any triable issue of fact as to the falsity of the factual assertions.").

The Dot.com Defendants' arguments are also premature. Defendants repeatedly cite to "evidence" that their factual critiques of Cassava's science are true. (MTD at 3-8, 14-16.) But the task of a court in ruling on a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)*.* Documents that are neither attached to the FAC, incorporated in the FAC by reference, or "integral" to the FAC may not be considered. *DeLuca v. Accessit Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). Defendant's extrinsic factual allegations should be ignored and any argument based on them should be disregarded. *Id.*

Regardless, the Dot.com Defendants' argument for "substantial truth" entirely misconstrues the nature of Cassava's defamation claim. This case is not about a debate over the interpretation of Cassava's clinical data or whether a particular western blot image shows an anomaly or not. That is pure fiction. This case is about the Dot.com Defendants calling Cassava a

8

fraud and a criminal operation. That is what the Dot.com Defendants did in their publications, and what Cassava has alleged, and will prove, to be false. The Dot.com Defendants' motion to dismiss based on "substantial truth" should be denied.

## B. The Dot.com Defendants' defamatory statements and implications constitute assertions of fact pursuant to New York's three-part test.

To determine whether a defamatory statement qualifies as non-actionable opinion, courts applying New York law examine: (1) whether the specific language at issue has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the full context of the publication or the broader social context and surrounding circumstances "signal[s] [to] readers . . . that what is being read . . . is likely to be opinion, not fact." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (N.Y. 1993). "[T]he overarching inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff." *LoanStreet, Inc. v. Troia*, 2022 WL 3544170, *4 (S.D.N.Y. Aug. 17, 2022).

### 1. The Dot.com Defendants' language has a precise meaning, and the statements are capable of being proven false.

The defamatory statements published by the Dot.com Defendants are precise and capable of being proven true or false. First, as discussed above, the Dot.com Defendants stated and implied that Cassava is a fraud. *See supra* Part I.A.1. Fraud means "wrongful or criminal deception intended to result in financial or personal gain." (FAC ¶¶ 167, 280.) Cassava can prove that it did not engage in any wrongful or criminal deception. (*Id.*) New York federal and state courts have long recognized that accusing a company of criminal conduct, like fraud, ***crosses the line*** from protected opinion to actionable defamation. *See, e.g.*, *Trump v. Chi. Tribune Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985) (statements "tak[ing] the form of accusations of criminal or unethical conduct" cross "the borderline between fact and opinion"); *Restis*, 53 F. Supp. 3d at 720–22

(finding statements that plaintiff engaged in illegal and fraudulent conduct to be actionable where capable of being proven true or false).

Second, as discussed above, the Dot.com Defendants stated and implied that Cassava (1) did not test simufilam for safety, (2) fabricated and manipulated its foundational research; (3) fabricated and manipulated the test results for its Phase 2b studies; (4) fabricated and manipulated the test results for its Open Label studies; and (5) lied to the FDA to get green-lighted for Phase 3 studies. *See supra* Part I.A.1. Cassava either did these things, or it did not. These are historical events. Cassava has alleged, and can prove, that it did none of these things. *Id*. As such, the Dot.com Defendants' statements are not non-actionable opinion. *See Coliniatis*, 848 F. Supp. at 467–68 (rejecting motion to dismiss where defamatory statements were capable of being proven false); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150–51 (2d Cir. 2000) (same); *Davis v. Boeheim*, 24 N.Y.3d 262, 271 (N.Y. 2014) (same).

## 2.     The context of the Dot.com Defendants' publications told readers that the Dot.com Defendants were conveying facts.

First, the Dot.com Defendants repeatedly asserted that they had performed a rigorous review and conclusively shown that Cassava was a fraud. (*See, e.g.*, FAC ¶161(r) ("We show, using publicly available evidence, that Cassava Sciences has not fulfilled the responsibilities that [the FDA] requires of sponsors in the conduct of clinical studies and monitoring of patient's safety"); *id.* ¶ 161(z) ("we have presented a series of evidence that directly challenge the integrity of research findings reported by Cassava Sciences during its entire clinical program.").)[6] Where a publication purports to be based on a "thorough investigation," the reasonable reader is

---

[6] The Dot.com Defendants continued this messaging on Twitter. *See* FAC App'x A at 26 ("Given the evidence here, it is 100% clear that Dr. Wang is a fraud who has been fabricating data for 20 years. It may not be nice to say, but every one of you can see it. $SAVA."); 75 ("We have explained in great detail the specific reasons that Simufilam does not and cannot work, and why we know the evidence that it 'might work' was made up by Wang and $SAVA [links to 11/2 and 11/3 publications]").

"encouraged to be less skeptical and more willing to conclude that [it] state[s] or impl[ies] facts." *Gross*, 82 N.Y.2d at 156; *see also Flamm*, 201 F.3d at 152 (finding "fact-laden" context of publication would lead a reasonable reader to understand defamatory accusation as a fact).

Second, the Dot.com Defendants presented themselves as scientists engaged in a scientific exercise, which would lend credibility to their defamatory assertions about Cassava. Individuals who read the Dot.com Defendants' publications were led to believe that the Dot.com Defendants were providing facts because a scientist is "someone who systematically gathers and uses research and evidence to make hypotheses and test them," not as someone who engages in conjecture and speculation. (FAC ¶ 377.) The Dot.com Defendants did not present their publications as "heat of the moment" accusations spouted by an ill-informed citizen. *Gross*, 82 N.Y.2d at 155–56. They told readers, including FDA officials, they were professionals making conclusive findings based on their investigation. This undoubtedly signals to the reader that they are conveying assertions of fact. *See Restis*, 53 F. Supp. at 721–22 (finding defamatory statements to be actionable where they were "made as part of a sophisticated and coordinated" campaign and drafted by professionals); *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 286 (S.D.N.Y. 2016) ("The manner of [defendant's] written presentation—one using footnotes and citations—conveyed further that his advice was based on an 'investigation' of verifiable facts.").

Third, the Dot.com Defendants told readers that they were asking government agencies, journals, and academic institutions to take action against Cassava based on their findings. (*See* FAC ¶ 161(ll) ("Cassava Sciences has failed in its responsibilities, and their egregious behavior meets multiple specific criteria that justify imposing a Clinical Hold under 21 CFR 312"); *see also infra*, Part II.A.3.) This too encouraged readers to believe their statements were factual because a scientist does not rely on conjecture and opinion to call for action. The cases cited by the Dot.com

Defendants for the proposition that calls for third party investigations signal expressions of opinion are not to the contrary. In *Sandals Resorts International Ltd. v. Google, Inc.*, the allegedly defamatory publication was an email "replete with rhetorical questions," the tone of which "indicate[d] that the writer is expressing his or her personal views." 925 N.Y.S.2d 407, 414–15 (N.Y. App. Div. 2011). Here, the Dot.com Defendants only asked "questions" after claiming that they had "revealed a pattern of deliberate, coordinated misconduct," such that Cassava's clinical trials should be shut down. (FAC ¶ 161(r), (s).)[7]

Fourth, the Dot.com Defendants' entire scheme was predicated on convincing readers that they were presenting <u>facts</u>, not opinions. The Dot.com Defendants needed the readers to understand their accusations as factual in order to encourage them to sell Cassava's stock so that they could profit from their short positions. (FAC ¶¶ 114–15.) Investors do not make trading decisions based on conjecture or speculation. They make trading decisions based on facts. The Dot.com Defendants' legal argument to escape liability is completely at odds with the scheme they undertook to tank Cassava's stock price.[8]

### 3. The Dot.com Defendants' reliance on cases involving "scientific debate" is factually misplaced.

In their motion, the Dot.com Defendants again ignore the actual allegations of the FAC to argue that context would have told readers that they were offering opinions. (MTD at 17-18.) They

---

[7] The courts in the other cases cited by the Dot.com Defendants likewise did not find presenting defamatory statements as "allegations to be investigated" to be dispositive, but merely one factor of many to be considered. *Silvercorp Metals, Inc. v. Anthion Mgmt, LLC*, 2012 WL 3569952 (N.Y. App. Div. Aug. 16, 2012); *Brian v. Richardson*, 660 N.E. 2d 1126 (N.Y. 1995); *Fedak v. Yimby, Inc.*, No. 17-cv-8825, 2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018).

[8] That the publications were posted online does not change the conclusion that they were factual in nature. Numerous New York courts have found publications posted online to be actionable where the context and language of the posts suggest that they are asserting facts, not opinions. *See Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550, 557 (App. Div. 2020) (social media postings and blog entries did not constitute statements on matters of opinion); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 161–62 (S.D.N.Y. 2020) (social media posts found to be actionable); *Moraes v. White*, 571 F. Supp. 3d 77, 95 (S.D.N.Y. 2021) (same); *Krusen v. Moss*, 105 N.Y.S. 3d 607, 610–11 (App. Div. 2019) (same).

do this by asserting that they simply entered into a debate about science. (*Id.*) This is simply not true. As pled throughout the FAC and discussed above, the Dot.com Defendants' publications are defamatory not because they debated science, *but because they accused Cassava of intentionally faking the science.* (*See* FAC ¶161(q) ("We find serious deficiencies in **the scientific integrity of . . . Cassava** Sciences, who exhibits signs of **misleading** behavior.") (emphases added).) This is a crucial distinction and one that takes this case outside the realm of the Second Circuit's direction for courts to avoid refereeing scientific disputes. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490,496–97 (2d Cir. 2013). This is not a case concerning scientific debate in which conflicting interpretations of data were presented in peer-reviewed journals. The Dot.com Defendants' statements accusing Cassava of intentional manipulation and fraud were not published in "traditional" scientific forums—they were published on websites and social media, tagged with the "$SAVA" hashtag to ensure that investors would see it. (FAC ¶¶ 7, 287, Appendix A.)

Unlike *ONY*, this is a case of a short seller attempting to profit by telling investors that a company is a fraud. Courts do not allow persons to defame with free license, simply because the subject of their attacks is engaged in a scientific endeavor. *See Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014) (defamatory statements were not protected where they were not made in a peer-reviewed journal and were directed to consumers, not scientists); *Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*, 2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017) (same); *Solys Med., LLC v. Organogensis, Inc.* 2018 WL 10579659, *5 (E.D. Va. Dec. 12, 2018) (same).[9] The Dot.com Defendants cannot escape liability simply because they are scientists.

---

[9] Nor does the Dot.com Defendants' disclaimer that they were a short seller of Cassava's stock save them from being found liable for defaming Cassava. As discussed in depth in Cassava' response to QCM's Motion to Dismiss (QCM MTD Opp. [Dkt. 88] at 15-16), a short-seller disclaimer does not make a defamatory publication immune from liability.

### 4. The Dot.com Defendants' defamatory statements and implications are, at least, actionable mixed opinion.

The Dot.com Defendants do not engage with the three-part test under New York law, they simply assume that their defamatory accusations would be understood as opinions and argue that they were not actionable mixed opinion. (MTD at 16-20.) But, the Court must first determine whether, based on the three-part test, a reader would understand a defamatory accusation to be one of fact or opinion. In other words, if the Court finds the statement be factual, it need never get to this second step. *See Gross*, 82 N.Y.2d at 154 (reversing dismissal of complaint where defamatory publications "contain[ed] many assertions of objective fact that, if proven false, could form the predicate for a maintainable libel action").

To the extent the Court does find it necessary to engage in this second step, the Dot.com Defendants' accusations about Cassava would also be actionable as "mixed opinion." A statement of opinion *may nonetheless still be actionable* if it implies to the reader that it is based on undisclosed facts, or the underlying facts are false. *See Davis*, 24 N.Y.3d at 269; *Restis*, 53 F. Supp. 3d at 723. Here, the FAC includes dozens of allegations establishing both of these exceptions. On falsity, the Dot.com Defendants ignore that Cassava has alleged facts establishing that nearly everything they published was factually inaccurate. The underlying facts in the Dot.com Defendants' publications included a discussion of Cassava's underlying research, safety protocols, testing procedures, and testing results. (*See, e.g.*, FAC ¶¶ 161, 168, 174, 179, 210, 215, 222, 231, 239, 246, 252, 258.) Cassava alleges that much of what the Dot.com Defendants said on those subjects was factually inaccurate. (*See* Appendix 1; FAC ¶¶ 162–67, 170–73, 175–78, 180–88, 211, 214, 216–21, 223–26, 232–38.) The Dot.com Defendants may try to prove that the underlying facts in their publications were true. But that is not what is alleged.

On disclosure, Cassava alleges that the Dot.com Defendants failed to disclose dozens of underlying facts that would be material to a reader trying to form his/her own opinion. Among other things, the Dot.com Defendants failed to disclose material facts undermining and contextualizing their statements about Cassava's Western blot data (*id.* ¶¶ 390–394), the Phase 2b study (*id.* ¶¶ 399–403), the Open Label study (*id.* ¶¶ 404–406), and SavaDx (*id.* ¶¶ 407–409). The Dot.com Defendants may claim that they disclosed all material facts. (MTD at 18.) But, again, Cassava alleges the opposite.

### C. The FAC adequately alleges that the Dot.com Defendants published the defamatory statements and implications with actual malice.

To plead actual malice, a plaintiff need only plead facts showing defendant plausibly acted "with knowledge that [the statements and implications] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986). Reckless disregard means that the defendants "made the false publication[s] with a high degree of awareness of… probable falsity… or must have entertained serious doubts as to the truth of [their] publication[s]." *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 626 N.E.2d 34, 38 (N.Y. 1993). Actual malice is usually established "inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987). Here, The FAC includes 77 paragraphs and 92 exhibits setting forth "facts showing defendant plausibly acted" with actual malice.

***Improper Motive***. The U.S. Supreme Court and this Court have universally recognized that the defendant's motive is circumstantial evidence probative of actual malice. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 158 (1967); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 277–78 (S.D.N.Y. 2013). That is particularly true here. The only reason the Dot.com Defendants published their

statements was to drive down Cassava's stock price so that they could make money. (FAC ¶¶ 290–291, 294.) That motive provides context to everything published by the Dot.com Defendants and is indicative of actual malice. *See Farmland Partners Inc. v. Forunae*, 2021 WL 1978739, *1 (D. Colo. May 18, 2021) (denying motion for summary judgment and finding evidence of defendants' financial motives to defame "could support an inference of actual malice"); *Bass v. United Dev. Funding, L.P.*, 2019 WL 3940976, *21 (Tex. Ct. App. Aug. 21, 2019) (affirming denial of motion to dismiss and finding profit motive to be a relevant factor to be considered in determination of actual malice).

***Contradictory Information.*** Actual malice is adequately pled by allegations that the defendant, at the time of publication, possessed or reviewed information that contradicted or undercut its defamatory statements. *See, e.g.*, *Palin v. N.Y. Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019) (actual malice plausible where reporter "reviewed, edited and approved the publication of numerous articles confirming" falsity of defamatory statement). For example, in *NOVAGOLD Resources, Inc. v. J Capital Research USA LLC*, the Eastern District of New York found that plaintiff had alleged actual malice with respect to a defendant short seller where the plaintiff alleged that the defendant "had access to truthful facts contradicting the statements in the Report which it chose to ignore or blatantly represent" which demonstrated a "plausible picture of [d]efendants' willful disregard for the truth." 2022 WL 900604, *9 (E.D.N.Y. Mar. 28, 2022).

So too here, prior to publishing their statements, the FAC alleges that the Dot.com Defendants reviewed numerous sources contradicting their defamatory assertions. The Dot.com Defendants argue that Cassava's own contradictory statements are insufficient to prove actual malice (MTD at 24-25), but completely ignore the allegations that they also reviewed journal articles discussing and supporting the foundational research for simufilam (FAC ¶¶ 308–312) and

journal articles supporting the testing protocols used by Cassava to test simufilam (*id.* ¶¶ 313–315). Each of these sources contradicted the Dot.com Defendant's claims that Cassava is a fraud, relied on fabricated research, and fabricated its test results. (*Id.* ¶¶ 304, 307, 309, 312, 315.) Indeed, even the journals relied upon by the Dot.com Defendants to argue "substantial truth" concluded that there was no "compelling evidence of data manipulation intended to misrepresent the results." (MTD at 6.) Yet the Dot.com Defendants accused Cassava of precisely that—intentional fraud.

***Lack of Evidence.*** While failure to investigate alone is not sufficient to establish actual malice, allegations that the defendant published knowingly fabricated claims are sufficient. *Palin*, 940 F.3d at 813 (denying motion to dismiss where "no evidence ever emerged" to support statement); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 584 (S.D.N.Y. 1984) (defendant "had no support for [its] allegation"). That is what we have here. At the time of publication, the Dot.com Defendants knew that they lacked evidence showing that Cassava fabricated or manipulated its research or testing results, or that simufilam was not safe for patients. (FAC ¶¶ 297–298.) After publishing that Cassava had "exposed study participants to ***incalculable risk*** with ***unknown consequences for their health***," (*id.* ¶ 168(h)) the Dot.com Defendants admitted that there was no support for their accusation: "***I'll give you that we don't know that it isn't safe***." (App'x A at 44.)

***Inherently Improbable.*** The "inherent improbability" of a defendant's defamatory statement is also evidence of actual malice—it shows that the defendant likely knew his or her statement was false because it was "inherently improbable." *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 115 (2d Cir. 2005). Here, Cassava alleges facts showing that the Dot.com Defendants knew that their accusations were "inherently improbable" because the accusations were inconsistent with common knowledge in the scientific community. (FAC ¶¶ 316–330.) And, even if the Dot.com Defendants

had identified a few human errors in research papers relied on by Cassava, the jump from mere identification of errors to an accusation that Cassava intentionally manipulated all of its research and clinical data and is nothing but a "charade" and "scam" is inherently improbable based on the facts that Cassava publicly shared its findings in peer-reviewed journals, received multiple grants from federal agencies following a vetting process, and raised significant funds from sophisticated investors following a due diligence process. (FAC ¶¶ 347–358.)

*Purposeful avoidance.* The U.S. Supreme Court and this Court have recognized that a defendant's "purposeful avoidance" of the truth constitutes reckless disregard for the truth. *Harte-Hanks*, 491 U.S. at 692 (finding actual malice where defendant did not attempt to interview a key witness or review firsthand evidence in its possession); *NOVAGOLD*, 2022 WL 900604 at *9 (finding actual malice pled where defendant short seller did not inquire with plaintiff before publishing a defamatory article). That is certainly true here. Cassava alleges that the Dot.com Defendants purposefully avoided the truth by failing to consult *anyone* with firsthand knowledge of Cassava, its foundational research, or its testing of simufilam. (FAC ¶¶ 331–346).

The Dot.com Defendants do not dispute any of the factual allegations pled by Cassava. Instead they argue that a handful of the allegations are insufficient to plead actual malice as a matter of law. (MTD at 23-24.) But, even if the Dot.com Defendants were correct (they are not), the allegations of actual malice cannot be read in isolation.[10] The Court must consider the totality of the allegations and whether they give rise to a plausible inference of actual malice. *See Palin*,

---

[10] The FAC's allegations relate to each of the Dot.com Defendants and, contrary to the Dot.com Defendants' argument (MTD at 23), there is no requirement that Cassava separately state its actual malice allegations as to each individual. The cases cited by the Dot.com Defendants state no such requirement. In *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 825 (S.D.N.Y. 2021), the court held that plaintiff had failed to plead actual malice because it did not identify any individuals within a media organization that knew the publisher's statements were false or recklessly disregarded the truth of those statements. Here, Cassava has alleged that each of the individual Dot.com Defendants both knew of the falsity of their statements, or otherwise recklessly disregarded whether they were false or not. *MiMedx Grp., Inc. v. Sparrow Fund Mgmt., LP*, No. 17-cv-7568, 2018 WL 4735717, *10 (S.D.N.Y. Sept. 29, 2018) did not even address this issue.

940 F.3d at 815; *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) ("As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown . . ."). For the reasons set forth above, the totality of the allegations in the FAC meet this burden.

## II. This Court has personal jurisdiction over Brodkin and Milioris.

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits[.]" *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). In evaluating personal jurisdiction, the court must first assess whether personal jurisdiction is authorized by the New York long-arm statute, and then determine whether the exercise of personal jurisdiction comports with constitutional due process principles. *Fischer v. Stiglitz*, 2016 WL 3223627, *3 (S.D.N.Y. June 8, 2016).

### A. Brodkin and Milioris transacted business in New York and their tortious conduct arises from those transactions.

In defamation cases, there is personal jurisdiction over a non-resident under New York's long-arm statute if "the defamation complained of arises from or is connected with the transaction of business within the state." *World Wrestling Fed'n Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 515 (S.D.N.Y. 2001); *accord* CPLR § 302(a)(1). Under CPLR § 302(a)(1), the Court must determine whether Cassava has alleged facts showing that Brodkin and Milioris "transact[ed] any business" in New York. *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142–43 (N.Y. 2006). All that is necessary to make such a showing is "some act by which the defendant[s] purposefully availed [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967) (citation omitted).

"Where purposeful transactions of business have taken place in New York, it may not be said that subjecting the defendant to this State's jurisdiction is an unnecessary inhibition on freedom of speech." *Legros v. Irving*, 327 N.Y.S.2d 371, 373 (N.Y. App. Div. 1971). Additionally, "[c]ourts have typically found long-arm jurisdiction over defamation claims where the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work." *Biro v. Nast*, 2012 WL 3262770 at *10 (S.D.N.Y. Aug. 10, 2012); *Sovik v. Healing Network*, 665 N.Y.S.2d 997, 999 (N.Y. App. Div. 1997) (personal jurisdiction where defendants drafted defamatory letter and authorized its distribution in New York).

Cassava has alleged facts showing that Brodkin and Milioris took short positions in Cassava stock, which is traded on NASDAQ, a New York-based stock exchange. (FAC ¶¶ 30, 32.) They then banded together with the other Dot.com Defendants, including New York-resident Heilbut, to launch an extensive defamation campaign against Cassava. In the course of that campaign, they requested documents from a public New York university via New York's Freedom of Information Law ("FOIL"). (*See, e.g.*, Ex. 10 at 9, 11, 15, 16, 17; Ex. 12 at 4–6, 8–9.)  They would go on to use those documents in their defamation campaign, citing excerpts from them in their defamatory statements. (*Id.*) They then specifically sought out individuals and entities based in New York and directly sent them their defamatory statements to ensure that they would see and react to them. (*See, e.g.*, Ex. 10 at 9, 11, 15, 16, 17; Ex. 12 at 4–6, 8–9.) These purposeful activities in New York, taken in connection with the Dot.com Defendant's defamation campaign, constitute business transactions under CPLR § 302(a)(1). Jurisdiction in New York is appropriate.

### 1. Brodkin and Milioris shorted Cassava's stock on NASDAQ.

New York courts have found that an out-of-state investor purposefully avails himself of New York law by "using electronic and telephonic means to project themselves into New York to conduct business transactions." *Deutsche Bank*, 850 N.E.2d at 1143. Moreover, "[w]hen a non-

domiciliary engages in a purposeful business transaction in New York and makes a defamatory statement outside of New York about that specific transaction, New York courts may exercise jurisdiction over his person for a cause of action based upon the defamatory statement." *GTP Leisure Prods., Inc. v. B-W Footwear Co., Inc.*, 391 N.Y.S.2d 489, 490 (App. Div. 1977).

Brodkin and Milioris purposefully availed themselves of the privilege of doing business in New York by entering into transactions executed through NASDAQ and then making statements that would have the effect of manipulating the market. (FAC ¶ 32.) In so doing, they subjected themselves to this court's jurisdiction because their scheme was dependent on manipulating the price of a New York-based stock. *See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 554 F. Supp. 2d 523, 530 (S.D.N.Y. 2008) (non-resident "transacted business" by personally placing orders on New York exchange before engaging in market manipulation); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 118 (S.D.N.Y. 2010) (same).[11]

## 2. Brodkin and Milioris requested, obtained, and used documents obtained via New York's Freedom of Information Law.

Courts have found jurisdiction over a defamation defendant where the "creation of the allegedly defamatory work" was "directly related" to some purposeful activity within New York. *Biro*, 2012 WL 3262770 at \*10; *see also Legros*, 327 N.Y.S.2d at 372–74 (defamatory statements were researched in New York); *Montgomery v. Minarcin*, 693 N.Y.S.2d 293, 296 (App. Div. 1999) (defamatory news report was "researched, written, produced[,] and reported" in New York).

---

[11] Defendants' authority is not to the contrary. While the court in *Deer Consumer Products, Inc. v. Little* held there was no jurisdiction over a foreign short-seller defendant, it noted that there was "no evidence or even an allegation that [he] directed his alleged defamatory statements to anyone in New York," nor did he directly communicate with anyone in New York in connection with his tortious conduct. 938 N.Y.S.2d 767, 779–80 (Sup. Ct. 2012). Brodkin and Milioris did. Likewise, in *Kingstown Capital Management LP v. CPI Property Group, SA*, the court found there was no jurisdiction over a foreign defendant in a defamation claim because the publication at issue consisted of a single press release distributed by a German newswire service. 167 N.Y.S.3d 92, 94 (Sup. Ct. 2012). Here, Brodkin and Milioris intentionally sent their defamatory publications to New York residents and entities directly.

Moreover, courts regularly extend personal jurisdiction over defendants who have *literally* invoked the protections of New York law. *See, e.g.*, *Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F. Supp. 2d 98, 104–105 (S.D.N.Y. 2010) (foreign defendant who entered into contract with New York resident, communicated with New York resident, and performed trading activities supported jurisdiction); *Arch Specialty Ins. Co. v. Ent. Specialty Ins. Servs.*, 2005 WL 696897, *6 (S.D.N.Y. 2005) (retention of New York broker to obtain insurance policy supported jurisdiction).

The facts show that the Dot.com Defendants' defamatory statements were created in New York, most directly because Brodkin and Milioris invoked the protections of New York law in the course of "researching," producing, and distributing the statements. They did so by utilizing New York's FOIL, which provides public access to records maintained by government agencies. *See* N.Y. Pub. Off. Law §§ 84–90. The Dot.com Defendants admit that they requested and received documents from CUNY pursuant to FOIL in the course of creating the defamatory statements. Their November 29 Report references emails they obtained via FOIL. (FAC, Ex. 10 at 9, 11, 15, 16 ("Stay tuned, more FIOA [sic] emails by Christmas!"), 17.) Similar references appear in their December 10 Report. (Ex 12 at 4–6, 8–9.) In fact, Brodkin admits that ***he personally*** submitted one such FOIL request. (FAC, Appendix A at 114 ("I FOIA's the NYCHD for evidence. . .").) Milioris also acknowledged his involvement in receiving and reviewing "CUNY FOIed emails." (*Id.* at 35.) By using FOIL to gather information they would go on to use (and distort) in their defamation campaign, Brodkin and Milioris literally invoked the benefits and protections of New York while creating the defamatory statements. This fact alone is sufficient to find jurisdiction.

### 3. Brodkin and Milioris specifically targeted individuals and entities in New York.

Brodkin and Milioris used their defamation campaign to encourage investors—including investors based in New York—to sell their Cassava stock. (FAC ¶¶ 30, 32–33.) They published

their defamatory statements on their two websites, on Twitter, and in emails. (FAC ¶¶ 131-142, 149-152, 156-159.) They then used Twitter and email to distribute their statements to specific individuals and entities in New York to ensure that they reached those whose reactions would drive down Cassava's stock price. By directly targeting an audience in New York, they have subjected themselves to jurisdiction here. *See Realuyo v. Villa Abrille*, 2003 WL 21537754, *10 (S.D.N.Y. July 08, 2003) (applying audience-targeting test); *Sovick*, 665 N.Y.S.2d at 997 (intentional distribution of defamatory letter to New Yorkers); *Modica v. Westchester Rockland Newspapers, Inc.*, 283 N.Y.S.2d 939 (Sup. Ct. 1967) (addressing defamatory statements to New York residents).

**Journal Editors and Publishers**. The Dot.com Defendants intentionally sent their defamatory statements to journal editors in the hopes of convincing them to retract publications or issue expressions of concern about Cassava, simufilam, and/or Dr. Wang. For example, on July 1, 2022, the Dot.Com Defendants sent an email[12] to "editors and publishers" associated with various journals and scientific publications (including CUNY). Some of those organizations, such as the Cancer Research Institute and Nature, are based in New York.

**CUNY**. Brodkin and Milioris also sent their defamatory statements directly to CUNY. For example, on October 27, 2022, Brodkin tweeted, "Research misconduct leads to NIH taking PI off grant . . . Similar to Wang at @CUNY $sava?" (FAC, Appendix A at 138.) Brodkin sent a similar tweet to @CSOM_Official, the official account for the CUNY School of Medicine, and Vincent Boudreau, President of CUNY's City College of New York. (*Id.* at 137.) The reason the Dot.com Defendants contacted CUNY directly is best explained by Brodkin himself: "People are short [sic] this fraud **because [CUNY] could decapitate this stock any day now**. http://cassavafraud.com."

---

[12] *See* July 1, 2022 email with subject "Hoau-Yan Wang Fraud: New Evidence of Serial Deceit and Editorial Failures," published at https://www.cassavafraud.com/docs/July2022_LetterToEditorsReWang_emailsRedacted.pdf. This email was published after this lawsuit was filed but is incorporated by reference as an additional defamatory statement in the Complaint. (FAC ¶ 491.)

(*Id.* at 91 (emphasis added).) By directing their defamatory statements at CUNY, Brodkin and Milioris subjected themselves to personal jurisdiction in New York. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985); *Sovick*, 665 N.Y.S.2d at 999.

*Investors*. The Dot.com Defendants also targeted Cassava stockholders. Twitter allows users to tag publicly traded companies ("$"). This allows investors to review all tweets about a stock in one place. In their disparaging tweets, the Dot.com Defendants tagged Cassava's stock— "$SAVA"—to ensure that Cassava stockholders would read them and sell.[13] This intentional manipulation of a New York stock exchange puts Brodkin and Milioris squarely within this court's jurisdiction. *See Derensis v. Coopers & Lybrand Chartered Accts.*, 930 F. Supp. 1003, 1014 (D.N.J. 1996) (finding personal jurisdiction over foreign defendants who approved and disseminated financial statements they knew would influence securities traded on NASDAQ).[14]

### 4. Brodkin and Milioris conducted business in New York through their agent, Heilbut.

Cassava has alleged that the Dot.com Defendants reached an agreement to defame Cassava through each of their defamatory publications and tweets. (*See* FAC ¶ 22.) Beyond that, the Dot.com Defendants published their four main publications jointly and therefore necessarily entered into an agreement to make the statements and had prior knowledge that they would be made. *See Watson*, 439 F. Supp. 3d at 167.[15] Because Heilbut—a New York resident—made statements on behalf of the Dot.com Defendants *collectively* in New York, his statements can be

---

[13] *See* FAC at Appendix A (in which "$SAVA" appears 497 times).

[14] Brodkin and Milioris also sent their defamatory statements directly to New York-based reporters. For example, Brodkin tagged New York Times reporter Apoorva Mandavilli ("@apoorva_nyc") in an April 19, 2022 tweet accusing "$sava" of fraud. (FAC, Appendix A at 84.) This is only one example; there are others. (*See, e.g., id*. at 95, 82.)

[15] The Dot.com Defendants briefly argue for dismissal of the conspiracy claim, and that the FAC violates FRCP 8. (MTD at 25.) These arguments are the same as those raised by Bredt and Pitt, and Cassava incorporates by reference its opposition to that motion. (CP MTD Opp. [Dkt. 80] at 24-25.)

imputed to Brodkin and Milioris for jurisdictional purposes. *See Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988) (finding personal jurisdiction over non-domiciliary defendants because their New York associate engaged in purposeful activities in New York related to the tortious conduct with the knowledge and consent of the out-of-state defendants).

**B.     The Court's exercise of personal jurisdiction over Brodkin and Milioris comports with due process.**

"Exercise of personal jurisdiction under the long-arm statute must comport with federal constitutional due process requirements." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 7 (App. Div. 2016). "It is rare for personal jurisdiction to be permitted under the long-arm statute and prohibited by due process considerations." *James v. iFinex, Inc.*, 127 N.Y.S.3d 456, 462 (App. Div. 2020). Here, the contacts discussed above establishing personal jurisdiction under the long-arm statute are more than sufficient to meet the due process requirements. Because Brodkin and Milioris (a) shorted and then manipulated the price of a stock traded on a New York stock exchange, (b) created the publications at issue in New York, including using New York's FOIL, and (c) specifically and intentionally directed the publications to New York residents and entities, they cannot credibly argue that jurisdiction over them offends notions of fair play and substantial justice here.

## CONCLUSION

The Dot.com Defendants—like all of the Defendants—attempt to hide behind the veil of "scientific debate" to escape liability for accusing Cassava of engaging in fraudulent misconduct and intentionally misleading patients, regulators, and investors. But the overall tenor and message conveyed by these Defendants was not that they disagreed with Cassava's science, or that they had discovered "inconsistencies" in Cassava's data. The overall tenor and message—the reason Cassava has brought this lawsuit—was that Cassava engaged in intentional wrongdoing. That is defamation. The Court should allow Cassava's case to move forward.

Dated: April 14, 2023

Respectfully submitted,
CASSAVA SCIENCES, INC.

By its attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
    EConnolly@beneschlaw.com
    Illinois ARDC No. 6269558

Timothy Frey (*admitted pro hac vice*)
    TFrey@beneschlaw.com
    Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
    kwatsonmoss@beneschlaw.com
    Illinois ARDC No. 6321176

Matthew J. Langley
    MLangley@beneschlaw.com
    New York Registration No. 4831749

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

**CERTIFICATE OF SERVICE**

I, Erik Connolly, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Defendants Dr. Jesse Brodkin, Dr. Adrian Heilbut, and Dr. Enea Milioris's Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 14, 2023.

Dated: April 14, 2023                    /s/ J. Erik Connolly