# Exhibit B



October 18, 2023

Derek Davis, Esq.  
General Counsel  
The City University of New York  
Office of the General Counsel  
205 East 42nd Street  
New York, New York 10017  
derek.davis@cuny.edu

Vincent Boudreau, PhD  
President, City College of New York  
Wille Administration Building  
Room 300  
160 Convent Avenue  
New York, New York 10031  
president@ccny.cuny.edu

Re: <u>Leaked Internal Report of CUNY Investigative Committee</u>

Dear Mr. Davis and Dr. Boudreau,

Cassava Sciences is a clinical-stage biopharmaceutical company. Our drug candidate, simufilam, is a pill that is designed to interrupt a toxic signaling pathway in the brains of Alzheimer's disease patients. Since 2004, Cassava has sponsored preclinical and clinical trial research through the Research Foundation of City University of New York (CUNY). Hoau-Yan Wang, PhD, a tenured professor at CUNY School of Medicine, has been the principal investigator for that research.

**Introduction**

On October 12, 2023, *Science* magazine published what purports to be a leaked copy of an internal investigation report prepared by a committee of four CUNY professors tasked with evaluating allegations of research misconduct against Dr. Wang. This internal investigation was initiated by CUNY in September 2021 and was predicated on a public campaign to discredit Dr. Wang's and Cassava's research. This campaign was waged by financially conflicted individuals and entities, including short sellers who, according to *Bloomberg*, profited handsomely from a subsequent drop in Cassava's stock price.[1] The allegations included accusations that Dr. Wang improperly manipulated images of Western blots published in scientific articles over the last twenty years. Some of these articles relate to research sponsored by Cassava.

As set forth in detail below, this unlawfully leaked report describes an irretrievably flawed investigation that ignores CUNY's legal obligations and written policies. Although filled with inflammatory language, the report fails to provide a legitimate factual basis for the committee's

---

[1] Cassava Short Sellers Reap $100 Million in August Stock Rout, Cristin Flanagan, Bloomberg, Aug. 31, 2021, available at: https://www.bloomberg.com/news/articles/2021-08-31/cassava-short-sellers-reap-100-million-in-august-stock-rout#xj4y7vzkg

conclusions. Incredibly, the investigation was led by Orie Shafer, PhD, even though Dr. Shafer appears to have prejudged the outcome of the inquiry in a February 2022 conversation on Twitter with an admitted short seller of Cassava stock.

Accordingly, Cassava demands that CUNY immediately and publicly reject the conclusions of this report, which we understand was never authorized for public release. We further demand that CUNY promptly initiate an appropriate, fair investigation of the allegations of research misconduct made against Dr. Wang, and that the university investigate fully the leak of this report.

**The Numerous Flaws in the Investigation Described by the Leaked Report**

Cassava has clearly stated its desire that CUNY investigate all allegations properly. In a letter to CUNY dated March 8, 2023, Cassava demanded that the university's investigation "be conducted meticulously, transparently, fairly, and in accordance with the due process rights of Dr. Wang and Cassava" and that "each allegation of misconduct . . . be evaluated by a trained expert in the relevant scientific field who has no conflicts of interest." The leaked report suggests that CUNY ignored Cassava's reasonable demand.

CUNY has steadfastly refused to provide Cassava any information at all about the investigation despite repeated requests, including several unanswered letters to the Office of the General Counsel. This silence violates CUNY policy, which requires the university to "report and respond to" research sponsors such as Cassava with regard to allegations of research misconduct. *CUNY Policy Regarding The Disposition Of Allegations Of Research Misconduct* (Policy) § 9.

The internal investigation report leaked to *Science*, if authentic, demonstrates that CUNY violated university policy and federal regulations and utterly failed to provide due process. The shortcomings and failings in the CUNY investigation include the following:

**The committee makes no finding of data manipulation or other research misconduct as defined by law.** CUNY authorized and directed the committee to determine whether or not Dr. Wang engaged in research misconduct as that concept is defined in federal regulations and CUNY policy. The committee improperly failed to do so.

The federal regulations governing CUNY's investigation define research misconduct to mean "fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results." 42 CFR §93.103. "Fabrication" is defined as "making up data or results and recording or reporting them." *Id.* "Falsification" is defined as "manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research records." *Id.*

The report does not find that Dr. Wang engaged in data manipulation or other research misconduct. Instead, "[t]he committee conclude[d] that Dr. Wang's inability or unwillingness to provide primary research materials to this investigation represents egregious misconduct." This purported finding on its face does not comport with the definition of research misconduct that the

committee was authorized to examine.  The use of the term "egregious misconduct" to describe alleged recordkeeping failures is particularly troubling, as it appears to be an expedient solution to the lack of evidence to support a finding of actual research misconduct as defined by law.

**Dr. Wang produced extensive research records and the committee improperly refused to examine that evidence.**  The report inaccurately and misleadingly asserts that Dr. Wang was unable or unwilling "to provide even a single datum" of evidence.  We understand that Dr. Wang in fact submitted all of the data and records in his possession, including high-resolution images to address each allegation.[2]

The committee refused to consider the research records provided by Dr. Wang because they were not, in the committee's words, "original, uncropped blots (images that included clear film/blot edges and molecular weight markers)."  The committee provided no source or citation to support this definition, nor have we been able to find any support for the assertion that this definition "is shared by ORI [the Office of Research Integrity]" as the report asserts.  Instead of considering Dr. Wang's high-resolution images, the committee relied exclusively on published, low-resolution images.  This refusal to consider the evidence submitted by Dr. Wang was clearly unlawful, particularly as it is based on the committee's newly coined definition of "original" data.  42 CFR § 93.310(e); Policy § 7.4.  Only by ignoring the evidence produced by Dr. Wang was the committee able to reach its most salacious conclusions.

**The committee conducted no substantive interview of Dr. Wang.**  We understand that when the committee interviewed Dr. Wang, they refrained from asking him questions about the substance of the allegations made against him.  Instead, the committee asked Dr. Wang questions concerning his recordkeeping practices.  We further understand that the committee has not retained a record of this interview.  Failure to ask the subject of the investigation to respond to the allegations against him violates the most basic notions of due process and is inconsistent with the rules governing research misconduct investigations.  42 CFR § 93.310; Policy § 7.5.

**The committee failed to advise Dr. Wang of all 31 allegations against him before reaching conclusions and preparing a draft report.**  The committee initially demanded that Dr. Wang respond to only ten of the 31 allegations lodged against him and did not notify him that the remaining 21 allegations also were under review, as required by law.  42 CFR § 93.310(c); Policy § 6.3.  The committee then purported to use Dr. Wang's alleged failure to respond as a basis for finding against him on those 21 allegations.

**The committee did not utilize the assistance of an expert and refused to consider the expert analyses provided by Dr. Wang.**  The committee initially retained an expert to support its analysis.  When that expert resigned, however, the committee did not retain another.  By contrast, Dr. Wang submitted a report from Charles Spruck, PhD, an expert in Western blotting.  The committee chose not to interview Dr. Spruck and refused to consider his analysis because "it is

---

[2] The report suggests without evidence that Dr. Wang maliciously destroyed records.  Such an accusation should not be made without convincing proof.  The report provides none.

based on images that are clearly not original data," as defined by the committee. This violates the committee's obligation to examine "all research records and evidence relevant to reaching a decision on the merits of the allegations." 42 CFR § 93.310(e); Policy § 7.4.

**The committee ignored applicable document retention policies.** The committee's responsibility encompassed research and publications spanning more than twenty years. Records of research performed pursuant to National Institutes of Health (NIH) grants must be kept for three years. 45 CFR § 75.361. CUNY's *Records Retention and Disposition Schedule* likewise requires that research records be maintained for three years. The committee improperly faulted Dr. Wang for not retaining records substantially beyond these periods of time. All but six of the 31 allegations relate to research conducted more than three years prior to September 2021.

Moreover, recordkeeping is not exclusively the responsibility of Dr. Wang. Cassava and NIH have paid significant overhead fees to CUNY over the last twenty years, in part to ensure that Dr. Wang had access to proper IT infrastructure, including storage capacity and memory backup for large image files. The report notes Dr. Wang's outdated equipment and the destruction of at least one hard drive by CUNY IT. Rather than consider the responsibility of the university itself for failing to provide sufficient IT infrastructure, the committee instead faults Dr. Wang for his "repeated pattern of blaming CCNY for the lack of data management."

**The committee did not interview all relevant witnesses and instead selectively chose to interview witnesses who supported its conclusions.** Federal regulations require that a research misconduct investigation must include an interview of the "respondent [*i.e.,* Dr. Wang], complainant, and any other available person who has reasonably been identified as having information regarding any relevant aspects of the investigation, including witnesses identified by the respondent." 42 CFR § 93.210(g). As already noted, the committee did not interview Dr. Spruck, did not substantively interview Dr. Wang, and did not even request to interview anyone from Cassava.

The committee chose to interview an editor from *PLOS One,* a journal that retracted Dr. Wang's publications. The committee did not, however, interview the editors of numerous other journals that did *not* retract Dr. Wang's papers. The committee did not even interview editors who explicitly rejected allegations of image manipulation based on a review of the same evidence as Dr. Wang submitted to the committee.

**The leak of the report was itself unlawful.** Federal law and CUNY policy require the university to maintain the confidentiality of its investigation, including specifically Dr. Wang's identity. 42 CFR § 93.108; Policy § 5. Yet someone at CUNY leaked a copy of the committee's report to *Science.* Shockingly, Kevin Gardner, PhD, a CUNY professor involved in an earlier stage of the investigation, was quoted in *Science* as calling the committee's findings "embarrassing beyond words" and labelling Dr. Wang's research record "abhorrent." Such behavior blatantly violates the confidentiality requirements applicable to research misconduct investigations and significantly undermines the integrity of the investigation.

**The committee chair appears to have prejudged the outcome of the investigation before it began.** The committee reportedly was chaired by CUNY professor Orie Shafer, PhD. On February 5, 2022, Cassava critic Adrian Heilbut[3] mockingly asked on Twitter whether Dr. Shafer would invite Dr. Wang to speak at a "Research Ethics seminar." Heilbut then suggested that Elisabeth Bik, another prominent Cassava critic, be invited to speak as well. Dr. Shafer responded: "Am planning an ethics discussion on the recent AD [Alzheimer's disease] drug fiascos in the news. Would love to discuss if you have time." This exchange strongly suggests that Dr. Shafer had already reached a conclusion about the allegations against Dr. Wang, which he appears to describe as just one more of the "AD drug fiascos in the news." Putting Dr. Shafer in charge of the committee to investigate Dr. Wang after Dr. Shafer had publicly expressed an opinion about the case to someone with a financial interest in the matter is indefensible.[4]

**Conclusion**

Cassava demands that CUNY reject the flawed findings of this leaked committee report. **Cassava repeats its demand for a meticulous, transparent, and fair investigation conducted in accordance with due process, the university's internal policies, and applicable law.** To be fair and credible, that investigation must: (1) be supported by a trained expert in the relevant scientific field who has no conflicts of interest; (2) evaluate *all* of the relevant evidence and interview *all* available witnesses; (3) make evidence-based findings as to each allegation of misconduct; and (4) be conducted expeditiously by an independent law firm or other outside organization with access to the necessary experience and resources.

Finally, Cassava demands that CUNY investigate thoroughly the source of the leaked report and take appropriate action against any individual(s) responsible for breaching the confidentiality of the investigation in violation of CUNY policy and federal law.

Sincerely,

R. Christopher Cook
SVP and General Counsel
Cassava Sciences, Inc.

---

[3] Heilbut is an admitted short seller of Cassava stock. He is also a defendant in a defamation action brought by Cassava relating to public statements made in connection with his short selling activity.

[4] The report itself does not state whether the committee members and its erstwhile expert have any personal, professional, or financial conflicts of interest. 42 CFR § 93.310(f). Given the connections noted between Dr. Shafer and a short seller of Cassava, the lack of such a representation is particularly notable.