**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASSAVA SCIENCES, INC.,

     Plaintiff,

v.

DAVID BREDT; GEOFFREY PITT;
QUINTESSENTIAL CAPITAL
MANAGEMENT LLC; ADRIAN HEILBUT;
JESSE BRODKIN; ENEA MILIORIS; and
PATRICK MARKEY,

     Defendants.

Civil Action No. 22-cv-9409-GHW-OTW

**PLAINTIFF CASSAVA SCIENCES, INC.'S OBJECTIONS TO MAGISTRATE JUDGE
WANG'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS
BREDT AND PITT'S MOTION TO DISMISS (ECF NO. 104)**

Michael Vatis, NY Reg. No. 2258655
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP 1155 Avenue of the Americas
26th Floor
New York, NY 10036

J. Erik Connolly (*admitted pro hac vice*)
Timothy Frey (*admitted pro hac vice*)
Kate Watson Moss (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

OVERVIEW OF ARGUMENTS ........................................................................ 1

RELEVANT BACKGROUND .......................................................................... 5

LEGAL STANDARDS ....................................................................................... 7

OBJECTIONS ..................................................................................................... 8

I.      The R&R improperly ignores the allegations made in the FAC, assumes the allegations are not true, and does not draw any reasonable inferences in Cassava's favor. ................ 8

II.     The R&R wrongly concludes that it was permissible for Bredt and Pitt to state and imply that Cassava is a fraud and has engaged in fraudulent practices. ....................................... 9

III.    The R&R wrongly concludes that Cassava cannot state a claim without addressing all of the defamatory statements and implications that Cassava identified............................... 12

IV.     The R&R wrongly concludes that everything Bredt and Pitt published was opinion without engaging in the proper analysis. ........................................................... 14

V.      The R&R improperly expands *ONY* to create new law and new immunity for attacks on companies engaged in science. ........................................................... 17

VI.     Even if the R&R correctly finds Bredt and Pitt's accusations to be opinion, it errs by applying the wrong standard on a motion to dismiss to conclude that they are not actionable mixed opinion. ................................................................ 19

VII.    The R&R fails to address any of Cassava's allegations or arguments concerning actual malice. .................................................................................... 21

VIII.   The R&R fails to address any of Cassava's allegations or arguments concerning causation. ................................................................................. 22

IX.     The R&R wrongly concludes, in an unprecedented manner, that the FAC did not satisfy Rule 8. .................................................................................... 23

CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009) (en banc)........................................................................8, 10, 21

*Aschcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................8

*Bell Atlantic v. Twombly,*
    550 U.S. 440 (2007) ........................................................................................................8

*Biro v. Conde Nast,*
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)............................................................................12

*In re Cassava Sciences, Inc. Securities Litig.,*
    No. 1:21-cv-00751-DAE (W.D. Tex.) ...........................................................................17

*Catania v. United Fed. of Teachers,*
    No. 1:21-cv.1257-GHW, 2022 WL 767107 (S.D.N.Y. Mar. 12, 2022) ..................................7

*Cromarty v. Prentice-Hall, Inc.,*
    421 N.Y.S.2d 603 (N.Y. App. Div. 1979) ......................................................................23

*Coliniatis v. Dimas,*
    848 F. Supp. 462 (S.D.N.Y. 1994) ...........................................................................11, 15

*Daytree at Cortland Square, Inc. v. Walsh,*
    332 F. Supp. 3d 610 (E.D.N.Y. 2018) ............................................................................12

*Eastman Chem. Co. v. Plastipure, Inc.,*
    775 F.3d 230 (5th Cir. 2014) ..........................................................................................19

*Flynn v. Cable News Network, Inc.,*
    1:21-cv-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021)..............................8, 9, 11

*Georgia High School Association v. Waddell,*
    248 Ga. 542 (1981) ........................................................................................................25

*Germain v. M&T Bank Corp.,*
    111 F. Supp. 3d 506 (S.D.N.Y. 2015)..............................................................................13

*Glob. Network Commc'ns, Inc. v. City of New York,*
    458 F.3d 150 (2d Cir. 2006) ............................................................................................8

*Greenberg v. Spitzer*,
    132 N.Y.S.3d 601 (N.Y. Sup. Ct. 2020) ..................................................................12

*Gross v. New York Times Co.*,
    623 N.E.2d 1163 (1993).................................................................................12, 15, 20

*Held v. Pokorny*,
    583 F. Supp. 1038 (S.D.N.Y. 1984)....................................................................15

*Kleeberg v. Sipser*,
    191 N.E. 845 (N.Y. 1934).....................................................................................11

*Levy v. Nissani*,
    115 N.Y.S.3d 418 (N.Y. App. Div. 2020) ............................................................11

*Milkovich v. Lorain Journal*,
    497 U.S. 1 (1990)....................................................................................................15

*Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*,
    2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017) ....................................19

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..............................................................................................21

*Nolan v. State of New York*,
    69 N.Y.S.3d 277 (N.Y. App. Div. 2018) ........................................................11, 23

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013).................................................................................18

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019).............................................................................21, 22

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)................................................................11, 20

*Shomo v. State of New York*,
    374 Fed. App'x 180 (2d Cir. 2010)........................................................................25

*Solstein v. Mirra*,
    488 F. Supp. 3d 86 (S.D.N.Y. 2020)....................................................................13

*Solys Med., LLC v. Organogensis, Inc.*
    No. 4:18cv30, 2018 WL 10579659 (E.D. Va. Dec. 12, 2018) ...............................19

*United States v. International Longshoremen's Association*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................................25

**Statutes**

21 CFR § 10.30(b)(3) ...................................................................................................17

28 U.S.C. § 636(b)(1)(C) ..............................................................................................7

Fed. R. Civ. P. 72(b)(3)…………………………………………………………………7

Private Securities Litigation Reform Act, 15 U.S. Code § 78u–4………………………………17

Plaintiff, Cassava Sciences, Inc. ("Cassava"), by counsel, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, files the following written objections to the Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 104) to grant Defendants David Bredt and Geoffrey Pitt's motion to dismiss.

## INTRODUCTION[1]

As set forth in Cassava's First Amended Complaint ("FAC") (ECF No. 30), Defendants Bredt and Pitt spent months calling Cassava a fraud and telling people Cassava relied on fabricated research and test results in order to "short" positions in Cassava's stock. As a result of Bredt and Pitt's repeated public accusations, investors sold their stock in Cassava, regulators began to question Cassava, and securities law firms filed lawsuits against Cassava. In order to protect itself and its reputation, Cassava brought this lawsuit against Bredt and Pitt and other short sellers of its stock who were actively defaming it.

Now, more than a year after this case was filed—and without the benefit of a single piece of discovery—the Magistrate Judge has invoked the mantra of "scientific debate" to bar Cassava from the courthouse door. But Cassava is not seeking redress for scientific debate. Cassava is seeking redress for being outright called a fraud, a scam, and a criminal enterprise—for being accused of "not getting the Theranos memo." (Ex. 3 to FAC, 8/18/21 Dunn Letter at 1.) These are defamatory statements of fact. New York law does not allow a defendant to state and imply the plaintiff committed a crime, even if the defendants are scientists.

## OVERVIEW OF ARGUMENTS

Cassava respectfully requests that this Court reject the Report & Recommendation and deny Bredt and Pitt's motion to dismiss. The R&R makes at least ***nine material factual and legal***

---

[1] Emphasis has been added throughout to quotations and internal citations have been omitted.

*errors* thereby depriving Cassava of a proper evaluation of its legal claims and theories. *First*, contrary to the well-established standards by which a Court is to evaluate a Rule 12(b)(6) motion to dismiss, the R&R improperly ignores the allegations made in the FAC, assumes the allegations are not true, and does not draw any reasonable inferences in Cassava's favor. The R&R wholly supplants Cassava's allegations with the Magistrate Judge's own analysis of the facts and Bredt and Pitt's version of events. This is improper and permeates every aspect of the recommendation. Indeed, the Magistrate Judge not only violated the standard of review for a Rule 12(b)(6) motion, by drawing inferences and weighing allegations *against* Cassava, the R&R violated the standard of review that would be used at summary judgment.

     *Second*, the R&R fails to address Cassava's theory of liability against Bredt and Pitt. Cassava makes clear in the FAC and its Opposition that its claims against the defendants are predicated on their statements and implications that Cassava is a fraud engaged in criminal behavior. The Magistrate Judge does not address that theory of liability. Instead, the R&R characterizes Cassava's claims as being about "scientific debate" because that fits into the Magistrate Judge's conclusion that statements made during a "scientific debate" are not actionable, which is *not* the law. But, the merits of Cassava's claims must be evaluated based on the plaintiff's theory of liability, not one manufactured by the defendants or the Magistrate Judge.

     *Third*, the R&R fails to analyze any single statement or category of statements as pled by Cassava. The FAC identified over 100 defamatory statements and implications made by Bredt and Pitt. (*See, e.g.*, FAC 30 ¶¶ 160–280; *see also*, Appendix A to ECF No. 80 (Cassava's Opposition to Bredt and Pitt's Motion to Dismiss ("Opp'n to MTD").) The R&R's failure to evaluate the statements and implications – standing alone – eliminates any merit of the R&R. The FAC cannot be dismissed without evaluating each of the defamatory statements and implications. Cassava

suspects that the reason the Magistrate Judge did not evaluate the defamatory statements and implications *alleged in the FAC* is because they do not fit neatly into this "scientific debate" umbrella the R&R uses as its lynchpin.

*Fourth,* the R&R does not apply the test for determining whether the statements were assertions of fact. The R&R recognizes that the proper test for evaluating whether a statement is "pure opinion" originates with the *Milkovich* decision, which asks whether the statement can be demonstrated to be true or false. But the R&R never applies that test to any, let alone each, of the defamatory statements. As explained in the FAC, and in Cassava's Opposition, each of the defamatory statements and implications was demonstrably false and was made in a manner intended to lead the reader to conclude that it was an assertion of fact. Indeed, Bredt and Pitt attested that they were making factual statements when they submitted their publications to FDA.

*Fifth*, the R&R erroneously seeks to avoid employing the proper test for evaluating whether statements are "pure opinions" by over-extending a Second Circuit opinion finding that statements made in the course of "scientific debate" are not actionable. But, Bredt and Pitt did not make their statements in the course of "scientific debate." They made their statements in anonymous whistleblower submissions to FDA to manipulate Cassava's stock price and profit from it. The R&R ignores this allegation completely. Moreover, Cassava's claims against Bredt and Pitt are not based on anything they said that could be considered "scientific debate." The claims are predicated on Bredt and Pitt stating and implying Cassava is a fraud that engaged in fraudulent behavior. The R&R ignores this critical distinction.

*Sixth*, the R&R fails to engage in any analysis whatsoever with respect to whether Bredt and Pitt's statements constitute actionable mixed opinion. The Magistrate Judge does not cite the test for mixed opinion much less engage in that analysis. Even a statement of "opinion" is

3

actionable if (1) the defendant failed to disclose certain material facts or (2) the facts disclosed by the defendant are alleged to be false. Here, the FAC includes more than 85 paragraphs identifying (1) the material facts that Bredt and Pitt failed to disclose and (2) the facts disclosed by Bredt and Pitt that are false.

*Seventh*, the R&R fails to address any of Cassava's allegations or arguments with respect to actual malice. The R&R concludes in a short footnote that Cassava failed to allege facts supporting actual malice because short-selling stock is not sufficient. But that is not what Cassava alleged in the FAC or argued in Opposition. Far from it. The FAC includes 77 paragraphs and 92 exhibits establishing that Bredt and Pitt knew what they said about Cassava was factually inaccurate or they acted with reckless disregard for the truth. The R&R does not address any of those allegations or the evidence.

*Eighth,* the R&R also fails to address any of Cassava' allegations or arguments with respect to causation. Again, the R&R relegates its analysis of Cassava's causation allegations to a short footnote. It does not address either Cassava's allegations that the statements made by Bredt and Pitt were defamatory *per se*, nor does it address Cassava's allegations regarding the special damages it incurred as a result.

*Finally*, the R&R wrongly concludes that the FAC does not comply with Federal Rule of Civil Procedure 8 because it is too long. This is an unprecedented finding; and, of course, the Magistrate Judge cites no case from any court in the country that supports the conclusion. The FAC identifies each of the defamatory statements and implications at issue. The FAC identifies, for each statement and implication, why it is factually inaccurate. The FAC then identifies the allegations and evidence establishing that Bredt and Pitt acted with actual malice. And then, finally, the FAC alleges the harm that flows from their defamation. The FAC is the length it needs

to be to plead each element of Cassava's claims against the defendants, especially in light of the breadth and scope of the many defamatory statements that they published.

## RELEVANT BACKGROUND

On November 4, 2022, Cassava filed a detailed, comprehensive FAC alleging over 100 specific false and defamatory statements by Bredt and Pitt. (*See* FAC.) Cassava grouped these defamatory statements into nine overall defamatory implications. (FAC at ¶¶ 60-123.) Cassava supported its FAC with exhibits and appendices, both of which it incorporated by reference, to describe with detail the months-long campaign led by Bredt and Pitt, a neuroscientist and cardiologist[2] who held short positions in Cassava's stock. (*Id.*) The pertinent facts are laid out in the FAC and Cassava's Opposition to Bredt and Pitt's motion to dismiss. (*See* FAC and Opp'n to MTD.)

The FAC and Cassava's Opposition make clear that Bredt and Pitt were not engaged in "scientific debate" but were using defamation to drive down the price of Cassava's stock so they could profit from their short positions. The gist of their defamatory statements was that Cassava was a fraud, guilty of doctoring clinical data and lying to investors. For example, Bredt and Pitt said:

> This letter details a ***long-standing pattern of seemingly intentional data manipulation and misrepresentation in scientific papers and corporate disclosures*** authored primarily by Drs. Hoau-Yan Wang, Associate Medical Professor, City University of New York, and Lindsay A Burns, Sr. Vice President of Neuroscience at Cassava Sciences. … These ***apparent falsifications*** have helped garner [over] $5,000,000 in NIH grants for preclinical/clinical studies, attract [over] $250,000,000 in public fundraising by Cassava Sciences ***and misdirect therapeutic studies for patients suffering from Alzheimer's Disease***. In the interest of the safety of patients with Alzheimer's disease enrolled in Cassava Sciences' ongoing clinical trials, as well as the NIH and other stakeholders, the biomedical and

---

[2] Geoffrey Pitt is a cardiologist at Weill Cornell medicine, and not a neuroscientist. This fact was alleged in the FAC and was not challenged by Defendant Pitt in his Motion To Dismiss. (*See* FAC ¶13.) That the R&R refers to Bredt and Pitt as the "Neuroscientist Defendants" is a clear example of its eschewing of the rules applied to deciding motions to dismiss. *See infra* Part I.

financial communities must be made aware of these ***apparent falsehoods***. (Ex. 3 to FAC, 8/18/21 Citizen Petition Report ("CPR") at 3–4.)

***

Cassava Science apparently didn't get the ***Theranos*** memo. Their desire to do groundbreaking scientific research doesn't give the company and its executives a ***get out of jail free card*** from regulators, patients or investors. (Ex. 3 to FAC, 8/18/21 Dunn Letter at 1.)

***

Accordingly, my ***whistleblower*** clients would like to report to you their numerous concerns about the ***accuracy and integrity of clinical and preclinical data*** supporting the FDA's ongoing evaluation of Simufilam. The attached report demonstrates an unmistakable pattern of errors and anomalies that consistently favor Cassava's hypotheses and is of a sufficient frequency and magnitude to strongly suggest ***serious scientific misconduct***. (Ex. 4 to FAC, 8/30/21 CPR Attachment.)

Bredt and Pitt did not publish their statements in a scientific journal, subject to peer review, or during a scientific conference. Bredt and Pitt published their letters in a manner designed to get the attention of investors and drive down the stock price.

Unfortunately, Cassava has not been allowed to pursue its claims for more than a year. On March 2, 2023, the Defendants sent a letter to Magistrate Judge Wang requesting to stay all discovery. (ECF No. 83.) Cassava voiced its Opposition to that request in a three-page letter filed on March 6, 2023. (ECF No. 84.) Two days later, during an initial conference, the Magistrate Judge remarked that she did not "really want to have a full-blown argument" on the matter, then stated that she was "not going to rule except to temporarily stay any other discovery other than the meet and confer on [] preservation notices until [she] actually issue[d] a written order." (ECF No. 89 at 23, 36.) She further remarked that "discovery [was] currently stayed for a short time until [she] formally rule[d] on the discovery stay…" (*Id*. at 37.)

But a written order *never* came. The Magistrate Judge took the remarkable step of staying discovery for nearly a year without ever applying the test required to assess whether discovery

6

should be stayed or issuing a written order. This was a "pocket veto" of Cassava's right to pursue discovery, even when a motion to dismiss is pending. The absence of an order also deprived Cassava of its right to challenge any recommendation made to this Court. Making matters worse, Cassava would not hear anything more from the Magistrate Judge for 10 months.

On January 3, 2024, the Magistrate Judge issued a Report and Recommendation that Bredt and Pitt's motion to dismiss be granted in full. (R&R.) In the R&R, the Magistrate Judge determined, without discussing any of the statements giving rise to the claims at issue, that Cassava had failed to allege any actionable statements against Bredt and Pitt. (*Id*. at 21.) Likewise, the Magistrate Judge, in a single footnote, opined that Cassava had failed to allege actual malice or causation. (*Id.* at n. 28.) Last, the Magistrate Judge held that the FAC violates Federal Rule of Civil Procedure 8 due to its length and the volume of evidence attached to it. (*Id*. at 22-3.)

## LEGAL STANDARDS

Pursuant to F.R.C.P. Rule 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), parties have the right to object to a magistrate judge's recommendation within the allotted fourteen (14) days. Cassava has timely filed this objection to the R&R.

When a party makes timely objections to a magistrate judge's report and recommendation on a dispositive motion, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); *Catania v. United Fed. of Teachers*, No. 1:21-cv.1257-GHW, 2022 WL 767107, at *1 (S.D.N.Y. Mar. 12, 2022) (citing 28 U.S.C. § 636 (b)(1)(C)). A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

Here, the R&R recommends dismissing Cassava's FAC against Bredt and Pitt. (R&R at 22-23.) The recommendation is based upon an improper standard of review, does not properly apply the framework for determining whether an alleged defamatory statement constitutes fact or opinion, fails to engage with either case law or allegations as they relate to actual malice and causation, and improperly uses FRCP 8 to punish Cassava for filing a long complaint. After *de novo* review, this Court should deny Bredt and Pitt's Motion to Dismiss and allow Cassava to pursue its claims against them.

## OBJECTIONS

**I.      The R&R improperly ignores the allegations made in the FAC, assumes the allegations are not true, and does not draw any reasonable inferences in Cassava's favor.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 440, 570 (2007). In making this determination, the Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Flynn v. Cable News Network, Inc.*, 1:21-cv-2587-GHW, 2021 WL 5964129, at *2 (S.D.N.Y. Dec. 16, 2021) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). Factual issues cannot be resolved on a motion to dismiss under Rule 12(b)(6). Discovery and evidence is needed.

Although the R&R states the correct standard for ruling on a Rule 12(b)(6) motion to dismiss (R&R at 16), it does not apply that standard. Instead, the R&R accepts as true almost none of the allegations stated in the FAC, but rather weighs evidence and makes the Magistrate Judge

the ultimate arbiter of the facts. Indeed, the R&R concludes: "I have reviewed all of the Neuroscientist Defendants' statements and find that their factual statements are accurate restatements of representations made and data presented by Cassava or its scientists in press releases and peer-reviewed scientific papers. . ." (R&R at 22.) This is wholly improper in ruling on a motion to dismiss. *See Flynn*, 2021 WL 5964129, at *4 (finding that a Report & Recommendation that found facts contrary to allegations was in error; "Even though the tweets . . . are evidence . . . the Court cannot weigh evidence in deciding a motion to dismiss.").

This error underlies nearly every determination made by the Magistrate Judge in her R&R. As discussed below, the R&R fails to assume the pleaded  facts as true in connection with: (1) determining the meaning and implication of the defamatory statements (*see infra,* Section II); (2) determining whether the statements constitute fact or opinion (*see infra,* Section IV); (3) determining whether the disclosed "facts" stated by Bredt and Pitt were accurate (*see infra,* Section VI); (4) determining whether Cassava has pled actual malice (*see infra,* Section VII); and (5) determining whether Cassava has pled causation (*see infra,* Section VIII). As this error strikes at the heart of a Court's duty in ruling on a 12(b)(6) motion, this Court should reject the R&R and review the pleadings and motion papers *de novo*.

## II.    The R&R wrongly concludes that it was permissible for Bredt and Pitt to state and imply that Cassava is a fraud and has engaged in fraudulent practices.

Cassava's FAC expressly alleged that the overall message conveyed by Bredt and Pitt in their statements was that Cassava is a fraud. (*See, e.g.*, FAC ¶¶ 7–8.) The FAC contains over 100 examples of Bredt and Pitt conveying the message that Cassava is a fraud. (*Id.* at ¶¶ 160–288.) Likewise, in the FAC, Cassava specifically alleges that the company is ***not*** a fraud, including by alleging facts that lack any indicia of wrongdoing or manipulation. (*Id.* at ¶¶ 145–178, 300–301, 361.) At this stage in the case, the Court cannot discredit these factual allegations and must draw

all reasonable inferences in Cassava's favor. *Arar*, 585 F.3d at 567. Rather than taking the allegations in the FAC as true and evaluating each allegedly defamatory statement (or set of statements) to determine whether it is actionable, the Magistrate Judge appears to have done her own research into the underlying scientific studies and data, then made a collective judgment call on **all one hundred** statements at once.

The R&R simply ignores the FAC's allegations. The Magistrate Judge makes the conclusory remark that Bredt and Pitt did not state that Cassava is a fraud (R&R at 19–20) as if those precise words needed to be voiced. But what Bredt and Pitt did say included the following:

> Increasingly, evidence suggests that **Cassava has doctored** its research and clinical trial results, **duped peer-reviewed journals, used the tainted science to trick the NIH and** FDA into approving grants and clinical trials, **misled investors** by touting their grants and clinical trials without disclosing their troubling research practices, and **withheld material information** about the true nature of its drug from vulnerable Alzheimer's Disease patients. (Ex. 9 to FAC, 11/17/21 CPL at 1.)
>
> ***
>
> As detailed in my Citizen's Petition and in subsequent filings, including this one, their major concern relates to the **mounting evidence that Cassava Sciences has doctored its research and clinical trial results to dupe peer-reviewed journals and to trick the FDA into approving its clinical trials.** (Ex. 9 to FAC, 12/8/21 CPL at 1.)

These statements, along with the *100 other defamatory statements* alleged by Cassava, *imply* that Cassava is a fraud engaged in fraudulent activity. Fraud is the only conclusion to be drawn from a comparison to "Theranos" and an accusation of "doctor[ing] research results."[3] The R&R improperly ignored the implication created by Defendant Bredt and Pitt's statements and Cassava's allegations showing that their statements and implications were factually inaccurate,

---

[3] Theranos was a blood testing company based in California. Its executives were indicted in 2018 for wire fraud and conspiracy to commit wire fraud due to misleading investors about the capabilities of its product. *See* https://www.justice.gov/usao-ndca/pr/elizabeth-holmes-sentenced-more-11-years-defrauding-theranos-investors-hundreds.

*See Flynn*, 2021 WL 5964129, at *4 (rejecting portion of report and recommendation that weighed the evidence in assessing falsity).

The R&R also ignores that there is a long history of legal precedent holding that statements falsely accusing a plaintiff of fraud or fraudulent activity are actionable.[4] Indeed, the legal concept of defamation *per se* rests on the idea that statements that falsely charge a plaintiff with a "serious crime," or that tend to "injure the plaintiff in [its] trade, business or profession," are so inherently harmful that injury can be presumed. *See Nolan v. State of New York*, 69 N.Y.S.3d 277, 284 (N.Y. App. Div. 2018); *Kleeberg v. Sipser*, 191 N.E. 845, 847 (N.Y. 1934). Here, Bredt and Pitt have accused Cassava of manipulating research data, "trick[ing] the FDA," engaging in "scientific misconduct," and making "false and misleading statements" to the public and investors. (*See, e.g.*, FAC ¶¶ 179(a), 189(a), 161(k), 210(f), 246(a).) The R&R does not meaningfully address the obvious implication created by these specific statements. Nor does it cite any cases in which accusations of this nature are held not to be defamatory. The Court should review the pleadings *de novo* and find that Cassava adequately pled that Bredt and Pitt stated and implied that Cassava is a fraud and engaged in fraudulent practices.

---

[4] *See Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (N.Y. App. Div. 2020) (Lender's statements that borrowers were "thieves" and "con artists," viewed in context in which statements were made, could readily be understood to have precise meaning capable of being proven true or false, and thus statements constituted assertions of fact, as necessary for statements to be actionable as subject of defamation action; reasonable listener would likely have understood statements, which were made before entire synagogue congregation, as implying that borrowers swindled lenders out of money in connection with their business.); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721–22 (S.D.N.Y. 2014) (Defamatory statements published on Facebook and Twitter, as well as statements made in press releases, calling for action to stop not-for-profit shipping company from alleged scheme could indeed be actionable in defamation suits); *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (Letter written by law firm to its client was not "opinion" under First Amendment and thus was not exempt from state libel law, since letter addressed area of public concern by discussing possibility that client's employee was engaging in illegal scheme to defraud client.).

**III.    The R&R wrongly concludes that Cassava cannot state a claim without addressing all of the defamatory statements and implications that Cassava identified.**

The law requires only a single false statement or implication to sustain a defamation claim. *See, e.g.*, *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 630 (E.D.N.Y. 2018) (denying motion to dismiss defamation claim, rejecting Defendants' argument "that Plaintiffs challenge a single defamatory statement"). Here, Cassava has identified ***over 100 statements*** by Bredt and Pitt that are defamatory, organizing them into nine overarching categories based on the defamatory implication the statements convey. (*See* FAC ¶¶ 160–280; *see also* Appendix A to Opp'n to MTD, ECF No. 80-1.) Those implications include that Cassava is a fraud, that Cassava engaged in scientific misconduct, and that Cassava "doctored" its research. (*Id*; *see also* Opp'n to MTD at 9–12.) Because of the sheer number of statements at issue in this case, Cassava was careful not only to identify the specific defamatory statements at issue in the FAC, but also to categorize and analyze those statements using appendices attached to its opposition papers. (*See* Appendices to Opp'n to MTD, ECF Nos. 80-1, 80-2.) Cassava also provided the Court with specific examples of statements made by Bredt and Pitt that were demonstrative of their other statements and overarching narrative. (*See* Opp'n to MTD at 4-8, 10.)

Indeed, Cassava went to great lengths to address the Defendants' defamatory statements in this case because assessing a defamation claim requires a close, statement-by-statement analysis. Courts deciding whether a statement is capable of defamatory meaning are tasked with analyzing statements by examining both the specific language used and the broader context in which they are made. *See Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (1993); *Greenberg v. Spitzer*, 132 N.Y.S.3d 601, at *17-18 (N.Y. Sup. Ct. 2020). Put differently, a Court hearing a motion to dismiss a defamation claim is required to meaningfully engage with and analyze the statements giving rise to that claim. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) ("Thus,

as courts typically do in such cases, the Court will evaluate each allegedly defamatory statement (or set of statements) and determine whether it is actionable, granting dismissal of claims based on nonactionable statements and denying dismissal with respect to claims based on actionable statements."); *Solstein v. Mirra*, 488 F. Supp. 3d 86, 95 (S.D.N.Y. 2020) (same); *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 534 (S.D.N.Y. 2015) (same).

The R&R, however, does not engage with ***any*** of the Defendants' statements in determining that Cassava has failed to state a claim. It does not address a single category of statements, let alone all of them. This alone undermines the merit of the R&R. The core function of the court when addressing defamation claims is to evaluate each of the alleged defamatory statements to determine if the complaint includes allegations supporting a claim based on the defamatory statement. If so, even for just one statement, the motion to dismiss is denied. And, then, after evaluating the individual statements, the court must evaluate whether the statements support a defamatory implication and whether the complaint includes allegations support a claim based on the defamatory implication. If so, even for just one implication, the motion to dismiss is denied. Here, the R&R did not perform any of this analysis so Cassava's claims must be reviewed *de novo* by this Court.

Instead of performing the required statement-by-statement analysis, the Magistrate Judge offers her own interpretation of the statements as a whole that is inconsistent with the implications they actually conveyed and inconsistent with the theory of liability alleged by Cassava. The R&R characterizes the Defendants' statements as a "***measured and nuanced*** series of inferences . . . namely, that the research ***may*** be unreliable." (R&R at 19–20 (emphases added).) But a review of the actual underlying statements shows that there is nothing "measured and nuanced" about them, and that they were expressing certainty, not possibility. For example:

13

> Our recent re-inspection of the Methods section for this crucial experiment shows seemingly ***irrefutable evidence of data manipulation/fabrication***. (FAC ¶ 174(l).)

***

> The methodology allegedly used in these experiments defies logic, and the data presented again have ***hallmarks of manipulation.*** (FAC ¶ 189(a).)

***

> As detailed in my Citizen's Petition and in subsequent filings, including this one, their major concern relates to the mounting evidence that Cassava Sciences has ***doctored its research and clinical trial results to dupe peer-reviewed journals and to trick the FDA into approving its clinical trials***. (FAC ¶ 161(fff).)

***

> [T]he scientific community has identified countless red flags that call into question the accuracy and integrity of Wang's research. In fact, some scientific integrity experts (see below) have suggested that most of his published research has data that appears to be "***deliberately falsified or fabricated.***" (FAC ¶ 227(b).)

These are just a few examples. The point is not simply that these examples undermine the Magistrate Judge's attempt to provide an innocent gloss to Bredt and Pitt's actions. The point is that these are a few examples of the defamatory statements that the Magistrate Judge failed to individually analyze as required.

## IV.   The R&R wrongly concludes that everything Bredt and Pitt published was opinion without engaging in the proper analysis.

The R&R finds in broad strokes that Bredt and Pitt's statements are "statements of opinion, specifically inferences drawn from facts and data presented by Cassava." (R&R at 21.) Based on this *factual conclusion,* which is inconsistent with the allegations in the FAC and represents the Magistrate Judge's improper opinion on a *disputed* issue of fact, the Magistrate Judge recommends that Cassava's case against Bredt and Pitt be dismissed in its entirety. (*Id.* at 22.) The Magistrate Judge does so even though the FAC includes over 100 different defamatory statements, made at different times, and in different publications. The Magistrate Judge's approach is, of course,

14

wrong. Although the R&R states the correct test for examining whether a statement is one of opinion, the Magistrate Judge failed to apply that test to the facts as alleged in the FAC.

To start, and before addressing the legal framework that should have been applied, the R&R is predicated on a disputed issue of fact that the Magistrate Judge resolved in favor of Bredt and Pitt. The Magistrate Judge concluded that the Bredt and Pitt's statements were "inferences drawn from facts and data presented by Cassava." (R&R at 21.) That is *not* what Cassava alleges. Cassava alleges that the statements made by Bredt and Pitt were *not* reasonable inferences from the facts and data presented by Cassava. (FAC ¶¶ 175-178.) The Magistrate Judge ignored Cassava's allegations and resolved this disputed issue of fact against Cassava —thereby serving as the ultimate finder of fact even though this is a motion to dismiss and discovery had not taken place. This error alone requires a *de novo* review of Cassava's claim.

Now, turning to the legal error, the traditional test, as stated by the Supreme Court in *Milkovich v. Lorain Journal*, 497 U.S. 1, 11–14 (1990) looks at four factors: "(1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared." R&R at 18, *quoting Milkovich*, 497 U.S. at 9 (internal quotations omitted).[5] The critical factor here is whether the statements are verifiable. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (rejecting motion to dismiss on the grounds of non-actionable opinion where the alleged statements were capable of being proven false); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) ("Accusations of

---

[5] This test is substantively identical to the one articulated by the New York Supreme Court in *Gross v. New York Times, Co.*, 623 N.E.2d 1163, 1167 (1993) which requires courts applying New York law to examine: (1) whether the specific language at issue has a precise meaning which is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether either the full context of the publication or the broader social context and surrounding circumstances "signal [to] readers . . . that what is being read . . . is likely to be opinion, not fact."

criminal or unethical activity . . . are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof.").

The R&R never evaluates whether the statements and implications made by Bredt and Pitt are actionable based on these four factors, thereby failing to engage in the analysis set forth by the U.S. Supreme Court and New York Supreme Court. First, the R&R never addresses the "specific language" used in the defamatory publication. The "specific language" used by Bredt and Pitt supports a finding that the defamatory statements are actionable because Defendants repeatedly stated and implied that Cassava is a criminal enterprise committing fraudulent behavior. Cassava made this point in its Opposition, but the Magistrate Judge does not address the analysis at all.

Second, the R&R never addresses whether the defamatory statements are "verifiable." If the Court engages in the proper analysis and looks at each statement to determine whether or not it is verifiable, the statements' proper treatment as fact becomes clear. As explained in Cassava's Opposition, Bredt and Pitt stated and implied that Cassava's underlying research had been doctored and manipulated. (*See, e.g.*, Opp'n to MTD at 13; FAC ¶¶ 161, 174, 179, 189, 197.) That either happened, or it did not. The statements are either verifiably true, or not. Cassava should be permitted to prove that this fraud and manipulation did not occur.

Third, the R&R only briefly addresses the "context" in which Bredt and Pitt made the defamatory statements—and that analysis again supplants the Magistrate Judge's interpretation of the facts for the facts that were pled. Bredt and Pitt made these statements in a context that would tell a reasonable reader that they were making factual assertions about Cassava. As pled in the FAC and set forth in Cassava's Opposition, Bredt and Pitt published their accusations in official petitions to the FDA, told readers that their accusations were based on "investigations" and "evidence," defended their accusations after Cassava attempted to correct the record, repeated their

16

accusations in multiple petitions, and asked FDA to investigate Cassava based on the accusations. (Opp'n to MTD at 13-14, citing FAC ¶¶ 374–37, 379, 381.)[6] The R&R does not engage with any of these allegations in determining whether Bredt and Pitt's statements should be treated as fact. That was error.

Finally, Cassava pled and pointed out in its Opposition that readers' reactions to Bredt and Pitt's accusations provided evidence that they were understood as fact, not opinion. (*See* Opp'n to MTD at 14–15.) Investors who read the accusations traded stock based on them, journals and academic institutions began investigations based on them, and law firms filed securities fraud claims against Cassava citing to Bredt and Pitt's accusations as "facts" that should have been disclosed. (*Id.* citing FAC ¶¶ 369, 371-373, 434.)[7] Again, the R&R does not accept these allegations as true (as it must), nor does it factor them into its analysis of whether Bredt and Pitt's accusations should be treated as fact, rather than opinion. A *de novo* review of the allegations, utilizing the proper framework, will show that the accusations were not protected opinions, but were factual accusations that constitute defamation *per se*.

## V.   The R&R improperly expands *ONY* to create new law and new immunity for attacks on companies engaged in science.

Rather than engage in each aspect of the test required by *Milkovich*, the R&R relies principally on the Second Circuit case of *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d

---

[6] Indeed, in making their submission to the FDA, Bredt and Pitt attested, per 21 CFR § 10.30, that they were providing a statement of the "***factual*** and legal grounds" on which they relied. *See* 21 CFR § 10.30(b)(3), requiring "A full statement, in a well-organized format, of the factual and legal grounds on which the petitioner relies, including all relevant information and views on which the petitioner relies, as well as representative information known to the petitioner which is unfavorable to the petitioner's position."

[7] At least one district court judge understood Bredt and Pitt to be making statements of fact. In the securities fraud litigation, *In re Cassava Sciences, Inc. Securities Litig.*, No. 1:21-cv-00751-DAE (W.D. Tex.), the Court found that the accusations by Bredt and Pitt, at least at the motion to dismiss stage, constituted allegations of fact sufficient to satisfy the heightened pleading standards of the PSLRA. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, dated May 11, 2023, *In re Cassava Sciences, In. Securities Litig.* (R&R).

490 (2d Cir. 2013), to find that because Bredt and Pitt's statements related to scientific data, they are necessarily non-actionable opinion. (R&R at 18–19.) But *ONY* did not replace a century of defamation law to create *carte blanche* immunity for publishers who attack others engaged in a scientific endeavor. Rather, the exception to the traditional fact/opinion analysis set forth in *ONY* is very narrow. At issue in *ONY* was "when a statement in a scientific article reporting research results" could be actionable.  720 F.3d at 492. The Court thus found only that "***statements of scientific conclusions*** about unsettled matters of scientific debate"—in that case whether one drug was more efficacious than another—would be protected when presented in publications directed to the relevant scientific community. *Id.* (emphasis added).

The Second Circuit's rationale for this holding underscores its limited reach. It was concerned that "[m]ost conclusions contained in a scientific journal article are, in principle, capable of verification or refutation by means of objective proof," yet "it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision" such that treating "inferences about the nature of reality" (which are in theory verifiable) as statements of fact would lead courts into refereeing scientific controversies. *Id* at 496–97 (citation and quotations omitted). Tellingly, the Second Circuit noted that such statements "are presented in publications directed to the relevant scientific community, ideally in peer-reviewed academic journals that warrant that research approved for publication demonstrates at least some degree of basic scientific competence." *Id.*

The Second Circuit's justification for its holding demonstrates that *ONY* has no relevance here, and it was error for the R&R to rely on it. The defamatory statements were not made in a peer-reviewed academic journal to advance scientific debate, they were made by short sellers in anonymous whistleblower submissions to FDA and included re-publications of accusations made

by other defendants posted on Twitter and the internet. Nor were they inferences about the

scientific conclusions to be drawn from the analysis of experimental data. Rather, the statements

at issue impugn the motives and integrity of Cassava and accuse it of intentional wrongdoing. The

cover letter to the initial Citizen's Petition makes this distinction plain:

> Cassava Science apparently didn't get the Theranos memo. Their desire to do
> groundbreaking scientific research doesn't give the company and its executives a
> get out of jail free card from regulators, patients or investors.

(FAC Ex. 3 at 1; *see also* FAC ¶ 161(bbb) (stating Cassava had "***fabricated*** pre-clinical and

clinical evidence across the entire simufilam program, ***provided inadequate and unreliable***

safety studies for simufilam, and ***engaged in serious misconduct*** in the analysis of and reporting

of clinical trial data.").) This is not a scientific hypothesis that must be refereed by the scientific

community, nor is it a "debate" about scientific data. This is an accusation of criminal

wrongdoing. Cassava denies it. The Court is capable of determining whether or not it is true.[8] It

would be reversible error to allow the R&R's conclusion that *ONY* grants "opinion" immunity to

any publisher who attacks a plaintiff engaged in a scientific endeavor to stand.

## VI.   Even if the R&R correctly finds Bredt and Pitt's accusations to be opinion, it errs by applying the wrong standard on a motion to dismiss to conclude that they are not actionable mixed opinion.

Even if Bredt and Pitt's statements could be considered opinion, their statements would

nonetheless be actionable because they constitute actionable "mixed opinion." Under New York

law, defamatory statements that may otherwise qualify as opinion are considered actionable if (1)

the underlying facts in the publication are false or (2) a reader is led to believe that the opinion is

based on undisclosed facts. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705,

---

[8] Other courts examining *ONY* have likewise found it distinguishable outside of its narrow bounds. *See, e.g.*, *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014) (defamatory statements were not protected where they were not made in a peer-reviewed journal and were directed to consumers, not scientists); *Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*, 2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017)(same); *Solys Med., LLC v. Organogensis, Inc.*, No. 4:18cv30, 2018 WL 10579659, at *5 (E.D. Va. Dec. 12, 2018) (same).

723 (S.D.N.Y. 2014); *Gross*, 623 N.E.2d at 1168. Here, the FAC contains dozens of allegations establishing that (1) the underlying facts in the publication are false and (2) Bredt and Pitt did not disclose material facts in the citizens petitions. These allegations are laid out in detail in Cassava's Opposition (Opp'n to MTD at 16-18).

The R&R did not engage in the analysis necessary to determine whether one or more of the defamatory statements and implications were actionable as "mixed opinion." First, the R&R ignores the allegations showing that Bredt and Pitt failed to disclose material facts in their publications. The FAC includes a section titled "Failure to Disclose Facts," which  identifies twenty-eight different material facts that Bredt and Pitt failed to disclose when they published their defamatory statements and republished the defamatory statements of the other defendants. (FAC ¶¶ 387–417.) The R&R does not, because it cannot, identify any instance of Bredt and Pitt disclosing the material facts that Cassava alleged were not disclosed. Even if Defendants' statements were considered "opinion," which they were not as a matter of law, they are still actionable "mixed opinion" because Defendants failed to disclose other material facts. (*See id*.)

Second, in a recurring theme, the Magistrate Judge overruled Cassava's allegations that the underlying facts disclosed by Bredt and Pitt were false. In the R&R, the Magistrate Judge concludes that she has "reviewed all of [Bredt and Pitt]'s statements and find that their factual statements are accurate." (R&R at 22-23.)[9] This is wholly improper, and remarkably so. The FAC includes detailed allegations explaining why the statements made by Bredt and Pitt were *not* accurate. (FAC ¶¶ 160–280.). In ruling on a 12(b)(6) motion to dismiss, the Court must accept the pleaded facts as true and draw every reasonable inference in favor of the plaintiff. *Arar*, 585 F.3d

---

[9] The R&R does not cite to the principle of "mixed opinion," making it unclear whether the Magistrate Judge considered it. To the extent the test was not even considered, that, too, was error.

at 567. The R&R does the exact opposite—replacing Cassava's allegations with the Magistrate Judge's interpretation of the facts.

## VII.   The R&R fails to address any of Cassava's allegations or arguments concerning actual malice.

Cassava recognizes the legal significance of the holding in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964)—that actual malice is necessary for pleading defamation of a public figure— which is why it spent no less than thirty-one pages of its FAC, as well as numerous exhibits incorporated therein, illustrating how the Defendants, including Bredt and Pitt, acted with actual malice in their defamation campaigns against Cassava.

Puzzlingly, the Magistrate Judge relegated the element of actual malice to a single footnote containing no substantive legal analysis. (*See* R&R at n. 28.) The footnote states matter-of-factly (albeit, inaccurately) that "[p]leading that the Neuroscientist Defendants are short sellers is insufficient to plead that the Neuroscientist Defendants knew that the CP and its follow up letters were false or made with reckless disregard for their falsity." Although motive to defame alone is insufficient, a "plausible inference of reckless disregard is strengthened" when the defendant "had reason to be personally biased against" the plaintiff. *Palin v. New York Times Co*., 940 F.3d 804, 814–15 (2d Cir. 2019). And yet, Cassava pled far more than mere short-selling. In reality, as Cassava stated in its Opposition to Bredt and Pitt's Motion to Dismiss, "improper motive—to deflate Cassava's stock price—is just the tip of the iceberg." (Opp'n to MTD at 7.)

The FAC describes seven separate categories of examples of Defendants acting with actual malice, including: (i) improper motive (inclusive of Defendants' short positions on Cassava's stock), (ii) lack of evidence to support their false inferences and statements, (iii) knowledge of information that contradicted their false inferences and statements, (iv) common knowledge in the scientific community, (v) purposeful avoidance of the truth, (vi) that their false inferences and

statements were inherently improbable, and (vii) the repetition and republication of their false inferences and statements. (FAC ¶¶ 289-365.) The R&R did not engage with any of these grounds and instead noted that one subsection of one of them (namely short-selling, included under improper motive) equated to failure to plead. The R&R's failure even to acknowledge Cassava's allegations of actual malice—much less engage with them—means the Court should review the issue *de novo*; and, in doing so, the Court will find the allegations sufficient by any measure.

For example, knowledge of information that contradicts or undercuts a defamatory statement is sufficient to establish actual malice. *Palin*, 940 F.3d at 813. Bredt and Pitt published their defamatory statements in five factual submissions made to the FDA. After the first defamatory publication on August 18, 2021, Cassava issued multiple press releases responding to the allegations and providing corrective information. Five separate academic journals then reviewed articles highlighted by Bredt and Pitt and found no evidence of data manipulation. Still, Bredt and Pitt continued their defamatory campaign. This alone establishes reckless disregard for the truth sufficient to overcome a motion to dismiss. *See id.* (actual malice plausible where reporter "reviewed, edited and approved the publication of numerous articles confirming" falsity of defamatory statement). The R&R does not address this analysis, or any of the actual malice analysis, at all.

## VIII.   The R&R fails to address any of Cassava's allegations or arguments concerning causation.

Similar to its treatment of Cassava's actual malice allegations, the R&R relegates its discussion of causation to a footnote, finding that "the [F]AC's conclusory assertions of causation are also insufficient." (R&R at 21–22, n. 28.) But, as set forth in Cassava's Opposition (Opp'n to MTD) the FAC's assertions of causation are not conclusory.

22

First, the FAC pleads that Bredt and Pitt's statements were defamatory *per se*. A statement is defamatory *per se*—and does not require proof of special damages—if it (1) charges "plaintiff with a serious crime," or (2) tends "to injure the plaintiff in [its] trade, business, or profession." *Nolan*, 69 N.Y.S.3d at 284. As alleged in the FAC, and explained in the Opposition, the statements made by Bredt and Pitt clearly fit this bill. The R&R does not engage with this analysis because, as discussed above, it disregards Cassava's allegations and does not assume them to be true. (*See infra* Section I.) This error is fatal not only to the R&R's recommendation regarding whether the statements were defamatory, but also its recommendation as to causation.

Second, even if the statements were not defamatory *per se* (they are), the R&R does not address the special damages alleged by Cassava in its FAC. The FAC alleges that Cassava's enterprise value declined because of Bredt and Pitt's statements and Cassava incurred specific out-of-pocket expenses and losses because of their statements. (FAC ¶¶ 433–38.) The Opposition contains case law setting forth that such diminution in property value constitutes special damages. (Opp'n to MTD at 22, citing *Cromarty v. Prentice-Hall, Inc.*, 421 N.Y.S.2d 603, 604–05 (N.Y. App. Div. 1979).) Again, the R&R fails to engage with these allegations and argument. This is an error and should be reviewed *de novo* by this Court.

## IX.   The R&R wrongly concludes, in an unprecedented manner, that the FAC did not satisfy Rule 8.

Respectfully, as signaled by the Magistrate Judge's pocket veto of Cassava's right to engage in discovery, Cassava is concerned that the R&R was written to reach a preordained outcome as opposed to evaluating its allegations using the proper standard and legal tests. The R&R ignores the allegations made in the FAC about falsity and replaces them with the Magistrate Judge's personal interpretation of Cassava's research and data. The R&R does not evaluate Cassava's theory of liability or the defamatory statements made by Bredt and Pitt, but instead

recharacterizes the totality of Cassava's FAC as being about a "scientific debate." The R&R does not apply the legal tests for evaluating whether a statement is "pure opinion" or "mixed opinion," but instead extends *ONY* beyond recognition. The R&R ignores dozens of allegations about actual malice and causation and relegates these important issues to a dismissive footnote. The R&R reads as if Cassava is being punished for having the audacity to defend its reputation after Bredt and Pitt called it a fraud who did not get the "Theranos memo."

The R&R's final conclusion, on Rule 8, reinforces Cassava's concern. First, the Magistrate Judge's conclusion is a gross distortion of the FAC. The Magistrate Judge says the FAC merely concludes that "nearly everything Bredt and Pit said" is inaccurate. That is not a fair, objective, or remotely accurate description of the FAC. The first section of the FAC identifies with particularity the defamatory statements by category and then explains with factual allegations why each is false. (FAC ¶¶ 160–280.) This section is long because there are many false statements and many reasons as to why they are factually inaccurate. The second section identifies with particularity why each defendant acted with actual malice. (*Id.* at ¶¶ 289–365.) Here the FAC discusses the categories of actual malice, including allegations supporting the categories and citations to the exhibits that support each conclusion. The third section describes why Defendants' statements were not protected opinions, but rather defamatory statements of fact which would be understood as such by the reasonable reader. (*Id.* at ¶¶ 366–422). Finally, the FAC sets forth the damages Cassava incurred as a result of the defamatory statements. (*Id.* at ¶¶ 423–38.)

Not only does the FAC provide a clear roadmap to Cassava's claim, but Cassava's Opposition also separately broke down these statements, using appendices to show where in the FAC to find the allegations that show falsity and actual malice for each. (*See* Appendices to Opp'n to MTD.) Cassava provided the appendices to make it easier for the Court to evaluate the merits

of the defamatory statements and Cassava's allegations supporting a claim for each of the defamatory statements. The FAC is long because Defendants' defamation was so prolific and because Cassava has multiple grounds to support each claim. But, length and volume is not improper. Rule 8 does not arbitrarily restrict the length of a plaintiff's complaint. *See Shomo v. State of New York*, 374 Fed. App'x 180, 182 (2d Cir. 2010) ("The jurisprudence involving Rule 8 . . . is difficult to apply to the dismissal of a complaint containing too much detail.").

Second, the only "precedent" cited by the Magistrate Judge for criticizing Cassava's FAC is irrelevant. The R&R cites *United States v. International Longshoremen's Association*, 518 F. Supp. 2d 422, 464 (E.D.N.Y. 2007) ("*ILA*") to support a contention that "simply pointing to [a] complaint and attached documents without identification of which allegations apply to which person and for what reason does not provide the type of notice required." (*Id.* at 22, n 31.) In that case, the court was concerned not with length, but with how the defendant would answer the complaint because it incorporated "voluminous factual allegations" from outside complaints and indictments. That problem is not present here because Cassava does not cite or incorporate by reference allegations made in other cases. Instead, the FAC carefully details the defamatory statements made by each of the defendants.[10]

## CONCLUSION

For the foregoing reasons, Plaintiff Cassava Sciences, Inc. respectfully requests that the Court reject the R&R and deny Defendants Bredt and Pitt's Motion to Dismiss.

---

[10] The R&R also cites *Georgia High School Association v. Waddell*, 248 Ga. 542, 542 (1981), to support the conclusion that Cassava did something wrong by filing a lengthy complaint. This citation makes no sense. That case was about staying a trial court's order cancelling a high school football game. It had nothing to do with FRCP 8 (or a state equivalent), nor what should be included in a complaint alleging defamation. This citation shows the Magistrate Judge stretching to find any support for the R&R's conclusion against Cassava.

Dated: January 17, 2024

Respectfully submitted,
CASSAVA SCIENCES, INC.

By its attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
    EConnolly@beneschlaw.com
    Illinois ARDC No. 6269558

Timothy Frey (*admitted pro hac vice*)
    TFrey@beneschlaw.com
    Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
    kwatsonmoss@beneschlaw.com
    Illinois ARDC No. 6321176

**BENESCH,   FRIEDLANDER,   COPLAN   &
ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949


Michael Vatis
    mvatis@beneschlaw.com
    NY Reg. No. 2258655

**BENESCH,   FRIEDLANDER,   COPLAN   &
ARONOFF LLP**
1155 Avenue of the Americas
26th Floor
New York, NY 10036

## <u>CERTIFICATE OF SERVICE</u>

I, Erik Connolly, hereby certify that a copy of the foregoing Objections to Magistrate Judge Wang's Report & Recommendation (ECF No. 104), filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 17, 2024.


Dated: January 17, 2024                                   _/s/ J. Erik Connolly_____