**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| CASSAVA SCIENCES, INC., | |
| Plaintiff, | Civil Action No. 22-cv-9409-GHW-OTW |
| v. | |
| DAVID BREDT; GEOFFREY PITT; QUINTESSENTIAL CAPITAL MANAGEMENT LLC; ADRIAN HEILBUT; JESSE BRODKIN; ENEA MILIORIS; and PATRICK MARKEY, | |
| Defendants. | |

**PLAINTIFF CASSAVA SCIENCES, INC.'S OBJECTIONS TO MAGISTRATE JUDGE WANG'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS HEILBUT, BRODKIN, AND MILIORIS' MOTION TO DISMISS (ECF NO. 105)**

Michael Vatis (NY Reg. No. 2258655)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
1155 Avenue of the Americas
26th Floor
New York, NY 10036

J. Erik Connolly (*admitted pro hac vice*)
Timothy Frey (*admitted pro hac vice*)
Kate Watson Moss (*admitted pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

OVERVIEW OF ARGUMENTS ......................................................................................... 2

RELEVANT BACKGROUND ............................................................................................. 5

LEGAL STANDARDS ........................................................................................................ 7

OBJECTIONS....................................................................................................................... 7

I.      THE R&R IMPROPERLY IGNORES THE ALLEGATIONS MADE IN THE FAC, ASSUMES THE ALLEGATIONS ARE FALSE, AND DOES NOT DRAW ANY REASONABLE INFERENCES IN CASSAVA'S FAVOR. ............................................ 7

II.     THE R&R WRONGLY CONCLUDES THAT IT WAS PERMISSIBLE FOR THE DOT.COM DEFENDANTS TO STATE AND IMPLY THAT CASSAVA IS A FRAUD AND HAS ENGAGED IN FRAUDULENT PRACTICES. ................................................ 9

III.    THE R&R WRONGLY CONCLUDES THAT CASSAVA CANNOT STATE A CLAIM WITHOUT ADDRESSING ALL OF THE DEFAMATORY STATEMENTS AND IMPLICATIONS THAT CASSAVA IDENTIFIED........................................................ 11

IV.    THE R&R WRONGLY CONCLUDES THAT THE DOT.COM DEFENDANTS' "SCIENCE-BASED" STATEMENTS ARE OPINION WITHOUT ENGAGING IN THE PROPER ANALYSIS................................................................................................... 14

V.     THE R&R IMPROPERLY EXPANDS *ONY* TO CREATE NEW LAW AND NEW IMMUNITY FOR ATTACKS ON COMPANIES ENGAGED IN SCIENCE. ............. 17

VI.    THE R&R WRONGLY CONCLUDES THAT THE DOT.COM DEFENDANTS' STATEMENTS ARE NON-ACTIONABLE MIXED OPINION. ................................. 20

VII.   THE R&R WRONGLY CONCLUDES THAT THE DOT.COM DEFENDANTS' STATEMENTS ARE NON-ACTIONABLE BECAUSE THEY ARE POSTED ON WEBSITES, INCLUDING TWITTER. ........................................................................ 22

VIII.  THE R&R FAILS TO ADDRESS ANY OF CASSAVA'S ALLEGATIONS OR ARGUMENTS CONCERNING ACTUAL MALICE OR CAUSATION. .................... 24

IX.    THE R&R WRONGLY CONCLUDES, IN AN UNPRECEDENTED MANNER, THAT THE FAC DID NOT SATISFY RULE 8. ....................................................................... 25

CONCLUSION................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) (en banc)................................. 8, 9, 10, 22

*Aschcroft v. Iqbal*, 556 U.S. 662 ...........................................................................7-8

*Bell Atlantic v. Twombly*, 550 U.S. 440 (2007) ......................................................7-8

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012).......................................... 12

*Catania v. United Fed. of Teachers*, No. 21 Civ. 1257-GHW, 2022 WL 767107
    (S.D.N.Y. Mar. 12, 2022) ............................................................................ 7

*Coliniatis v. Dimas*, 848 F. Supp. 462 (S.D.N.Y. 1994)...................................... 10, 15

*Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550 (N.Y. App. Div. 2020) ........................... 22

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610 (E.D.N.Y. 2018)............... 11

*Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230 (5th Cir. 2014)........................... 19

*Flynn v. Cable News Network, Inc.*, 1:21-cv-2587-GHW, 2021 WL 5965129 (S.D.N.Y.
    Dec. 16, 2021)............................................................................................. 8, 10

*Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506 (S.D.N.Y. 2015) ........................... 12

*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)..................... 8

*Goldman v. Barrett*, No. 15-CV-9223 (PGG), 2016 WL 5942529 (S.D.N.Y. Aug. 24,
    2016) .................................................................................................... 23, 24

*Gottwald v. Sebert*, 48 N.Y.S.3d 37 (2021) ......................................................... 20

*Greenberg v. Spitzer*, 132 N.Y.S.3d 601 (N.Y. Sup. Ct. 2020)................................... 12

*Gross v. New York Times Co.*, 623 N.E.2d 1163 (1993) ........................................ 12, 20

*Hayashi v. Ozawa*, 2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019).................................. 20

*Held v. Pokorny*, 583 F. Supp. 1038 (S.D.N.Y. 1984) ............................................ 15

*In re Advance Watch Co., Ltd.*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018) ......................... 1

*Kleeberg v. Sipser*, 191 N.E. 845 (N.Y. 1934) ...................................................... 11

iii

*Krusen v. Moss*, 105 N.Y.S.3d 607 (N.Y. App. Div. 2019) ........................................................ 22

*Levy v. Nissani*, 115 N.Y.S.3d 418 (N.Y. App. Div. 2020) ........................................................ 10

*Milkovich v. Lorain Journal*, 497 U.S. 1 (1990) ........................................................ 15

*Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*, 2017 U.S. Dist. LEXIS 114105
    (S.D.N.Y. July 21, 2017) ........................................................ 19

*Moraes v. White*, 571 F. Supp. 3d 77 (S.D.N.Y. 2021) ........................................................ 22

*Nolan v. State of New York*, 69 N.Y.S.3d 277 (N.Y. App. Div. 2018) ........................................................ 11

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013) .................... 17, 18, 19

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705 (S.D.N.Y. 2014) .......... 10, 20

*Shomo v. State of New York*, 374 Fed. App'x 180 (2d Cir. 2010) ........................................................ 25

*Solstein v. Mirra*, 488 F. Supp. 3d 86 (S.D.N.Y. 2020) ........................................................ 12

*Solys Med., LLC v. Organogensis, Inc.* 2018 WL 10579659 (E.D. Va. Dec. 12, 2018) ............. 19

*Thomas H. v. Paul B.*, 18 N.Y.3d 580 (2012) ........................................................ 20

*Watson v. NY Doe 1*, 439 F. Supp. 3d 152 (S.D.N.Y. 2020) ........................................................ 22

**Statutes**

28 U.S.C. § 636(b)(1)(C) ........................................................ 7, 9

Fed. R. Civ. P. 72(b)(3) ........................................................ 7

Plaintiff, Cassava Sciences, Inc. ("Cassava"), by counsel, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, files the following written objections to the Magistrate Judge's Report and Recommendation (ECF No. 105 ("R&R")) to grant Defendants Heilbut, Brodkin, and Milirois' (the "Dot.com Defendants'")[1] motion to dismiss.

## **INTRODUCTION[2]**

As set forth in Cassava's First Amended Complaint ("FAC"), since November 2022, the Dot.com Defendants have been calling Cassava Sciences a fraud that is peddling a completely fake pharmaceutical product, and is guilty of both fabricating clinical data and lying to investors, patients, and the government. In order to protect itself and its reputation, Cassava brought this lawsuit against the Dot.com Defendants and other short sellers of its stock who were actively defaming it—defamation resulting in real harm to Cassava's trade reputation and finances and its ability to develop a drug for people with Alzheimer's disease.

Now, more than a year after this case was filed—and without the benefit of a single piece of discovery—the Magistrate Judge invoked the mantra of "scientific debate" to bar Cassava from the courthouse door. But in the same R&R in which she finds that the Dot.com Defendants were engaged in "scientific debate," she also finds that their statements were so hyperbolic that they would not be believed to be factual. Both cannot be true. What the Magistrate Judge tries to avoid

---

[1] In the R&R, the Magistrate Judge states that "it does not appear" that Defendant Patrick Markey "was ever served with the FAC." (R&R at 1–2, n. 3.) That is not the case. Rather, though Defendant Markey was served, he has not filed any response to the FAC. Defendant Markey is a German resident. (FAC ¶ 21.) For that reason, Cassava served Defendant Markey in conformity with Articles 5 and 6 of the Hague Convention, which permits service to be effectuated by the Central Authority of the State of the signatory country by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory. Hague Convention Art. 5(a). The German Central Authority then returned a signed and sealed certificate attesting that Defendant Markey was served on June 23, 2023, at Almbachstraße 5, 81379 München, Germany. *See* ECF No. 98 at 1. Thus, service upon Defendant Markey is proper. *See, e.g.*, *In re Advance Watch Co., Ltd.*, 587 B.R. 598, 603-04 (Bankr. S.D.N.Y. 2018) (finding service under Article 5(a) of the Hague Convention is proper and sufficient under Fed. R. Civ. P. 4). The Magistrate Judge had no authority to dismiss Cassava's claims against Defendant Markey as he did not file a motion to dismiss or otherwise answer the FAC.

[2] Emphasis has been added throughout to quotations and internal citations have been omitted.

is the simple allegations of Cassava's complaint—the Dot.com Defendants defamed it by telling the world, as a matter of fact, that Cassava is nothing but a sham that has been intentionally lying to investors, patients, and the government. New York law does not allow a defendant to state and imply the plaintiff committed a crime, even if the plaintiff is involved in a scientific endeavor.

## <u>OVERVIEW OF ARGUMENTS</u>

Cassava respectfully requests that this Court reject the R&R and deny the Dot.com Defendants' motion to dismiss. As a whole, the R&R is completely nebulous as to what basis is being invoked to dismiss Cassava's claims, and on what basis each statement is being dismissed. However, at minimum, where the R&R's rationale can be gleaned, it makes at least ***ten material factual and legal errors*** thereby depriving Cassava of a proper evaluation of its claims.

*First*, contrary to the well-established standards by which a Court is to evaluate a Rule 12(b)(6) motion, the R&R improperly refuses to credit the allegations made in the FAC, assumes those allegations are false, and does not draw any reasonable inferences in Cassava's favor. The R&R wholly supplants Cassava's allegations with the Magistrate Judge's own analysis of the facts. This is improper and permeates every aspect of the recommendation. The R&R not only violated the standard of review for a Rule 12(b)(6) motion by drawing inferences and weighing allegations *against* Cassava, it also violated the standard of review that would be used at summary judgment.

*Second*, the R&R fails to address Cassava's theory of liability against the Dot.com Defendants. Cassava makes clear in the FAC and its opposition that its claims are predicated on Defendants' statements and implications that Cassava is a fraud engaged in criminal behavior. The Magistrate Judge does not address that theory of liability. Instead, the R&R characterizes Cassava's claims as being about "scientific debate" because that fits into the Magistrate Judge's conclusion that statements made during a "scientific debate" are not actionable, which is *not* the

2

law. But, the merits of Cassava's claims must be evaluated based on the plaintiff's theory of liability, not one manufactured by the defendants or the Magistrate Judge.

*Third*, the R&R fails to analyze any single statement or category of statements as pled by Cassava. The Complaint identified hundreds of defamatory statements and implications made by the Dot.com Defendants. (*See, e.g.*, FAC (ECF No. 30) ¶¶ 160–280; *see also*, Appendix A to Cassava's Memorandum of Law in Opposition to Motion to Dismiss, "Opp'n Memo" (ECF No. 95-1).) The R&R's failure to evaluate the statements and implications, standing alone, eliminates any merit of the R&R. The FAC cannot be dismissed without evaluating each of the defamatory statements and implications.

*Fourth,* the R&R does not apply the test for determining whether the statements were assertions of fact. The R&R never applies the tests set forth by the U.S. and New York Supreme Courts to analyze any, let alone each, of the defamatory statements. As explained in the FAC and Cassava's Opposition, each of the defamatory statements and implications was demonstrably false and was made in a manner intended to lead the reader to conclude that it was an assertion of fact.

*Fifth*, the R&R erroneously seeks to avoid employing the proper test for evaluating whether statements are "pure opinions" by widening a Second Circuit opinion finding that statements made in the course of "scientific debate" are not actionable to such a degree that it threatens to preclude defamation lawsuits from being filed by any person or entity engaged in a scientific endeavor. Ironically, the R&R concludes that the Dot.com Defendants' statements were either a part of rigorous scientific debate, or so hyperbolic that they would not be believed as fact. Both cannot be true in the same publication. The Dot.com Defendants did not make their statements in the course of "scientific debate." They published their statements on the websites simuflimflam.com and cassavafraud.com to reach reporters, the general public and investors and to manipulate Cassava's

stock price so that they could profit. The R&R ignores this completely. Moreover, Cassava's claims against the Dot.com Defendants are not based on any engagement with the Company or its scientists, nor any scientific journals or other academics. Cassava's claims are predicated on the Dot.com Defendants stating and implying Cassava is a fraud that engaged in fraudulent behavior, *without* the benefit of scientific discourse. The R&R ignores this critical distinction.

*Sixth*, the R&R fails to engage in any analysis whatsoever with respect to whether the Dot.com Defendants' statements constitute actionable mixed opinion. Although the Magistrate Judge recognizes the concept of mixed opinion, the R&R engages in no analysis to determine whether the *allegations* in the FAC, assumed to be true, establish that one or more of the Dot.com Defendants' statements constituted actionable mixed opinion. Instead, it assumes, contrary to the allegations in the FAC, that the disclosed facts in the Dot.com Defendant's accusations were true and that all material facts were disclosed. In fact, the FAC allegations establish the opposite, and those allegations must be accepted as *true* for purposes of the motion to dismiss.

*Seventh*, the R&R wrongly concludes that the Dot.com Defendants' statements are non-actionable because they are hyperbolic and posted on websites, including Twitter. New York courts have found publications posted online to be actionable where the context and language of the posts suggest that they are asserting facts, not opinions. Here, the Dot.com Defendants published defamatory statements, including on Twitter, stating matter-of-factly that Cassava is a fraud, which peddles a completely fake pharmaceutical product, is guilty of fabricating clinical data and lies to investors, patients, and the government.

*Eighth and ninth*, the R&R fails to address any of Cassava's allegations or arguments with respect to actual malice and causation. The R&R cross-references a prior recommendation to hold Cassava has not adequately pled those elements, but that prior recommendation itself was bereft

of any analysis. As set forth in Cassava's prior Objections to Magistrate Judge Wang's R&R regarding Defendants Bredt and Pitt's Motion to Dismiss (ECF No. 108 "B&P Objections"), the FAC adequately pleads not only that the Dot.com Defendants had an improper motive to defame it—personal profit—but also that they were in possession of contradictory information, knew they lacked evidence to support their accusations, and knew their statements were inherently improbable. The FAC also pleads both defamation *per se* and special damages arising from the defamation campaign. The R&R improperly ignores all of these allegations.

*Finally*, the R&R wrongly concludes that the FAC does not comply with Federal Rule of Civil Procedure 8 because it is too long. This is an unprecedented finding; and, of course, the Magistrate Judge cites no case from any court in the country that supports the conclusion. The FAC identifies each of the defamatory statements and implications at issue. The FAC identifies, for each statement and implication, why they are factually inaccurate. The FAC then identifies the allegations and evidence establishing that Dot.com Defendants acted with actual malice. And then, finally, the FAC alleges the harm that flows from their defamation. The FAC is the length it needs to be to plead each element of Cassava's claims against the defendants, especially in light of the breadth and scope of the many defamatory statements that they published.

## RELEVANT BACKGROUND

On November 4, 2022, Cassava filed a detailed, comprehensive complaint alleging hundreds of specific false and defamatory statements by the Dot.com Defendants. (*See* FAC ¶¶ 160–280; Appendix A.) Cassava grouped these defamatory statements into eleven overall defamatory implications. (FAC ¶¶ 60-123.) Cassava supported its FAC with exhibits and appendices, both of which it incorporated by reference, to describe in detail the months-long campaign led by the Dot.com Defendants, who held short positions in Cassava's stock. (*Id.*) The

pertinent facts are laid out in the FAC and Cassava's Opposition to the Dot.com Defendants' motion to dismiss. (*See generally*, FAC and Opp'n Memo.)

The FAC and Cassava's Opposition make clear that the Dot.com Defendants were not engaged in "scientific debate" but were using defamation to drive down Cassava's stock price so they could profit from short positions. The defamatory statements asserted that Cassava is a fraud, which peddled a completely fake pharmaceutical product, is guilty of fabricating clinical data and lies to investors, patients, and the government. For example, the Dot.com Defendants said:

> Be careful with this line of thinking. They ***HAVE been fabricating results, & the justification for the Ph3 was a charade***. They're ***breaking critical scientific and ethical norms that enable human clinial (sic) research, as well as regulations***. It's ***100% made up scientific fraud***. (*See* Appendix A to FAC ["FAC App. A"] at 127.)

> \*\*\*

> Sketchy is putting it mildly. ***$sava is Theranos level BS with fraudulent data in NIH grants, SEC filings and FDA documentation***. http://cassavafraud.com (*See* FAC App. A at 126.)

> \*\*\*

> it is not about shortcomings or a questionable track record or chance of success. ***The drug is a 100% fraud***. (*See* FAC App. A at 124.)

The Dot.com Defendants did not publish their statements in a scientific journal, subject to peer review, or during a scientific conference. The Dot.com Defendants published their defamatory statements on the websites simuflimflam.com and cassavafraud.com, as well as an abundance of tweets, in a manner designed to get the attention of reporters, the general public, and investors.

Unfortunately, Cassava has not been allowed to pursue its claims for more than a year. As set forth in detail in Cassava's B&P Objections, the Magistrate Judge has stayed discovery since March 2023 without issuing a formal ruling and only two weeks ago ruled on two of the three pending motions to dismiss. (ECF No. 108 at 6-7.)

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), parties have the right to object to a magistrate judge's recommendation within the allotted fourteen (14) days. Cassava has timely filed this objection to the R&R.

When a party makes timely objections to a magistrate judge's report and recommendation on a dispositive motion, a district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); *Catania v. United Fed. of Teachers*, No. 21 Civ. 1257-GHW, 2022 WL 767107, at *1 (S.D.N.Y. Mar. 12, 2022) (citing 28 U.S.C. § 636(b)(1)(C)). A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Here, the R&R recommends dismissing Cassava's FAC against the Dot.com Defendants (R&R at 12.) The recommendation is based upon an improper standard of review, does not properly apply the framework for determining whether an alleged defamatory statement constitutes fact or opinion, fails to engage with either case law or allegations as they relate to actual malice and causation, and improperly uses FRCP 8 to punish Cassava for filing a long complaint. After *de novo* review, this Court should deny the Dot.com Defendants' Motion to Dismiss.

## OBJECTIONS

I.   **The R&R improperly ignores the allegations made in the FAC, assumes the allegations are false, and does not draw any reasonable inferences in Cassava's favor.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 440, 570

(2007)). In making this determination, the Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Flynn v. Cable News Network, Inc.*, 1:21-cv-2587-GHW, 2021 WL 5965129, at *2 (S.D.N.Y. Dec. 16, 2021) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). Factual issues cannot be resolved on a motion to dismiss under Rule 12(b)(6). Discovery and evidence is needed.

While the R&R states the correct standard on a motion to dismiss (R&R at 7–8), it does not apply it. The R&R does not accept the FAC's allegations as true, opting to weigh the evidence instead. Indeed, the Magistrate Judge choses to "frame" the Dot.com Defendants' statements in a way that renders them "non-actionable." (*See* R&R at 9 ("Framed one way, the Dot.com Defendants . . . . When framed that way, [their statements] . . . [are] non-actionable.").) If an allegation can be framed one way, it can necessarily be framed some other way. And in this case, the allegation should have been framed in a way that is most favorable to Cassava. *Arar*, 585 F.3d at 567. The "framing" used by the R&R is improper when deciding a motion to dismiss. *See Flynn*, 2021 WL 5965129, at *4 ("Even though the tweets . . . are evidence . . . the Court cannot weigh evidence in deciding a motion to dismiss.").

This error underlies nearly every determination in the R&R. As discussed below, the R&R fails to assume the pleaded as facts as true in connection with: (1) determining the meaning and implication of the defamatory statements (*see infra* Section II); (2) determining whether the statements constitute fact or opinion (*see infra* Section IV); (3) determining whether the disclosed "facts" stated by the Dot.com Defendants were accurate (*see infra* Section VI); and (4) determining

whether Cassava has pled actual malice or causation (*see infra* Section VIII). As this error strikes at the heart of a Court's duty in ruling on a 12(b)(6) motion, this Court should reject the R&R and review the pleadings and motion papers *de novo*. 28 U.S.C. § 636(b)(1)(C).

## II. The R&R wrongly concludes that it was permissible for the Dot.com Defendants to state and imply that Cassava is a fraud and has engaged in fraudulent practices.

Cassava's FAC specifically alleged that the Dot.com Defendants expressly and implicitly accused Cassava of being a fraud. (*See, e.g.*, FAC ¶¶ 7–8.) The FAC contains nearly 100 examples of the Dot.com Defendants conveying the message that Cassava is a fraud. (*Id.* at ¶¶ 160–288.) Likewise, in the FAC, Cassava specifically alleges that the company is ***not*** a fraud, and alleges facts that lack any indicia of wrongdoing or manipulation. (*Id.* at ¶¶ 145–178, 300–301, 361.) At this stage, the Court cannot discredit these well-pled factual allegations and must draw all reasonable inferences in Cassava's favor. *Arar*, 585 F.3d at 567. Rather than taking the allegations in the FAC as true and evaluating each allegedly defamatory statement (or set of statements) to determine whether it is actionable, the Magistrate Judge appears to have done her own research into the underlying scientific studies and data, then made a collective judgment call on ***all of the*** statements at once.

The R&R simply ignores the FAC's allegations. The Magistrate Judge makes the conclusory remark that an ordinary reader would understand the Dot.com Defendants' statements as hyperbole and "pure opinion" without addressing what they actually said. The Magistrate Judge avoided what the Dot.com Defendants actually said because what they actually said was not hyperbolic or opinion, nor was it scientific debate. The Dot.com Defendants clearly and repeatedly stated, as a matter of fact, that Cassava engaged in fraudulent activities:

> Cassava Sciences, through ***persistent obfuscation and exaggeration*** of the effects of Simufilam, ***have exposed study participants to incalculable risk with unknown consequences for their health*** and ***misled investigators and patients*** into choices that affect their well being. (FAC ¶ 168(h).)

***

[W]e **reveal** a pattern of **deliberate, coordinated misconduct** involving both Cassava Sciences and their academic collaborator at CUNY [The City University of New York], Dr. Hoau-Yan Wang. (FAC ¶ 161(s).)

***

These obvious violations of the data treatment plan **are clearly designed to skew the data** in a favorable direction **and obscure** the lack of benefit of Simufilam on cognition. (FAC ¶ 222(b).)

These statements, along with the *nearly 100 other defamatory statements* and *more than 770 defamatory tweets* set forth in the FAC, clearly *imply* that Cassava is a fraud engaged in fraudulent activity. Fraud is the only conclusion to be drawn from accusations of "persistent obfuscation" and "deliberate, coordinated misconduct." (*See also* FAC ¶ 252(c) (Cassava is a "scam of scientifically illiterate investors.").) The R&R improperly ignored the implication created by the Dot.com Defendants and Cassava's allegations showing that their statements and implications were factually inaccurate. *See Flynn*, 2021 WL 5964129, at *4 (rejecting portion of report and recommendation that weighed the evidence in assessing falsity).

The R&R also ignores that there is a long history of legal precedent holding that statements falsely accusing a plaintiff of fraud or fraudulent activity are actionable.[3] Indeed, the legal concept of defamation *per se* rests on the idea that statements that falsely charge a plaintiff with a "serious crime," or that tend to "injure the plaintiff in [its] trade, business or profession," are so inherently

---

[3] *See Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (N.Y. App. Div. 2020) (Lender's statements that borrowers were "thieves" and "con artists," viewed in context in which statements were made, could readily be understood to have precise meaning capable of being proven true or false, and thus statements constituted assertions of fact, as necessary for statements to be actionable as subject of defamation action; reasonable listener would likely have understood statements, which were made before entire synagogue congregation, as implying that borrowers swindled lenders out of money in connection with their business.); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721–22 (S.D.N.Y. 2014) (Defamatory statements published on Facebook and Twitter, as well as statements made in press releases, calling for action to stop not-for-profit shipping company from alleged scheme could indeed be actionable in defamation suits); *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (Letter written by law firm to its client was not "opinion" under First Amendment and thus was not exempt from state libel law, since letter addressed area of public concern by discussing possibility that client's employee was engaging in illegal scheme to defraud client.).

harmful that injury can be presumed. *See Nolan v. State of New York*, 69 N.Y.S.3d 277, 284 (N.Y. App. Div. 2018); *Kleeberg v. Sipser*, 191 N.E. 845, 847 (N.Y. 1934). Here, the Dot.com Defendants have accused Cassava of engaging in "misleading behavior," "deliberate, coordinated misconduct," "fabrication of pre-clinical and clinical evidence," and "clumsy data fabrication." (FAC ¶¶ 161(q), 161(s), 161(t), 215(h); *see also* ¶ 239(a) (referring to "fraudulent data").) The Dot.com Defendants' defamatory tweets echo the same sentiment. *See, e.g.*, FAC App. A at 122 ("The science is fraudulent and the drug is fake."); *id.* ("as with everything about $SAVA, IT'S ALL MADE UP™"); *id.* at 124 ("The drug is a 100% fraud."); *id.* at 126 ("$sava is Theranos level BS with fraudulent data in NIH grants, SEC filings and FDA documentation.").

At the motion to dismiss stage, indeed even at the summary judgment stage, the Magistrate Judge is not allowed to draw inferences in favor of the Dot.com Defendants and *assume* a non-defamatory meaning of their statements. The Dot.com Defendants called Cassava a fraud. Under New York law, calling a plaintiff a fraud is not only actionable as defamation, it is *per se* defamatory. It is impossible to reconcile the R&R's treatment of the Dot.com Defendants statements, which stated and implied that Cassava is a fraud, with the century-old rule in New York that such statements constitute defamation *per se.* The R&R stretched to find a way to ignore the clear implication of the Dot.com Defendants' statements – the exact opposite of what is supposed to be done on a motion to dismiss.

## III.    The R&R wrongly concludes that Cassava cannot state a claim without addressing all of the defamatory statements and implications that Cassava identified.

The law requires only a single false statement or implication to sustain a defamation claim. *See, e.g.*, *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 630 (E.D.N.Y. 2018). Here, Cassava has identified ***more than 870 statements and tweets*** by the Dot.com Defendants that are defamatory, organizing them into eleven overarching categories based on the defamatory

implication the statements convey. (*See* FAC ¶¶ 160–280; *see also* Appendix 1 to Opp'n Memo.) Those implications include that Cassava is a fraud, that Cassava engaged in scientific misconduct, and that Cassava "doctored" its research. (*Id*; *see also* Opp'n Memo at 5–9.) Because of the sheer number of statements at issue in this case, Cassava was careful not only to identify the specific defamatory statements at issue in the FAC, but also to categorize and analyze those statements using an appendix attached to its opposition papers. (*See* Appendix 1 to Opp'n Memo.) Cassava also provided the Court with specific examples of the Dot.com Defendants' statements that were demonstrative of their other statements and overarching narrative. (*See* Opp'n Memo. at 6–7.)

Indeed, Cassava went to great lengths to address the Defendants' defamatory statements in this case because assessing a defamation claim requires a close, statement-by-statement analysis. Courts deciding whether a statement is capable of defamatory meaning are tasked with analyzing statements by examining both the specific language used and the broader context in which they are made. *See Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (1993); *Greenberg v. Spitzer*, 132 N.Y.S.3d 601, at *17-18 (N.Y. Sup. Ct. 2020). Put differently, a Court hearing a motion to dismiss a defamation claim must meaningfully engage with and analyze each statement giving rise to that claim. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) ("Thus, as courts typically do in such cases, the Court will evaluate each allegedly defamatory statement (or set of statements) and determine whether it is actionable, granting dismissal of claims based on nonactionable statements and denying dismissal with respect to claims based on actionable statements."); *Solstein v. Mirra*, 488 F. Supp. 3d 86 (S.D.N.Y. 2020) (same); *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506 (S.D.N.Y. 2015) (same).

The R&R, however, does not engage with ***any*** of the Defendants' statements in determining that Cassava has failed to state a claim. This alone undermines the merit of the R&R.

Instead of performing the required statement-by-statement analysis, the Magistrate Judge offers her own umbrella characterization of the statements that is inconsistent with the implications they actually conveyed and inconsistent with the theory of liability alleged by Cassava. The R&R divides all 870+ statements into two categories: (1) "science-based," which she characterizes as "rais[ing] the same questions about the integrity of the research underlying Cassava's development of simufilam as were raised by the Neuroscientist Defendants" (R&R at 9); and (2) "other statements" posted on the Dot.com Defendants websites (R&R at 10). However, the R&R does not explain which statements fall into which of the Magistrate Judge's invented categories, nor review any of the actual statements themselves.

A review of the actual underlying statements shows that the Dot.com Defendants were not raising "questions," but asserting conclusions. For example:

> Cassava Sciences, through **persistent obfuscation and exaggeration** of the effects of Simufilam have exposed study participants to **incalculable risk with unknown consequences** for their health and **misled investigators and patients** into choices that affect their well-being. (FAC ¶ 133.)
>
> ***
>
> **Sketchy is putting it mildly**. $sava is **Theranos level BS** with **fraudulent data** in NIH grants, SEC filings and FDA documentation. (FAC App. A at 126.)
>
> ***
>
> **It's 100% made up scientific fraud**. (FAC App. A at 127.)
>
> ***
>
> **[W]e are trying to save the world and there is lots of new $sava fraud in the letter we sent to the FDA**. (FAC App. A at 4.)

These are just a few examples. The point is not simply that these examples undermine the Magistrate Judge's attempt to provide an innocent gloss to the Dot.com Defendants' actions. The point is that these are a few examples of the defamatory statements that the Magistrate Judge failed to individually analyze as required.

The gravity of the Magistrate Judge's violation of Cassava's rights in this respect cannot be overstated. First, the Magistrate Judge did not evaluate each of the individuals statements as required. Second, the Magistrate Judge did not evaluate the implications and categories that Cassava alleged in the FAC as *its theory of liability.* Third, the Magistrate Judge did not provide Cassava, this Court, or an appellate court, a roadmap detailing which of the two invented categories each defamatory statement allegedly falls. Essentially, Cassava did not have its allegations evaluated to determine if the FAC states a cause of action with respect to any of the alleged defamatory statements. The Magistrate Judge short-circuited Cassava's rights, ignored the facts in the FAC, and judged Cassava's case based on an invented characterization of the Dot.com Defendants' statements.

IV.     **The R&R wrongly concludes that the Dot.com Defendants' "science-based" statements are opinion without engaging in the proper analysis.**

As set forth above, the R&R breaks the Dot.com Defendants' defamatory statements into two categories: (1) "science-based," and (2) "other." The R&R then wrongly concludes that neither category is actionable. To start, and before addressing the legal framework that should have been applied, the R&R is predicated on a disputed issue of fact that the Magistrate Judge resolved in favor of the Dot.com Defendants. The Magistrate Judge concluded that the Dot.com Defendants' statements "summarize the publicly available data . . . and offer their opinion that the data, taken at face value, does not support Cassava's claims." (*Id.*) That is ***not*** what Cassava alleges. Cassava alleges, with detailed evidence and examples, that the statements made by the Dot.com Defendants were *not* reasonable inferences from the facts and data presented by Cassava. (*See, e.g.*, FAC ¶¶ 175–78, 180–88, 190–96.) The Magistrate Judge ignored Cassava's allegations and resolved this disputed issue of fact against Cassava—thereby serving as the ultimate finder of fact even though

this is a motion to dismiss and discovery has not taken place. This error alone requires a *de novo* consideration of Cassava's Opposition to the Dot.com Defendants' Motion to Dismiss.

Now, turning to the legal error, the traditional test, as stated by the Supreme Court in *Milkovich v. Lorain Journal*, 497 U.S. 1, 11–14 (1990), looks at four factors: "(1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared."[4] The critical factor here is whether the statements are verifiable. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (rejecting motion to dismiss on the grounds of non-actionable opinion where the alleged statements were capable of being proven false); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) ("Accusations of criminal or unethical activity . . . are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof.").

The R&R never evaluates whether the statements and implications made by the Dot.com Defendants are actionable based on these four factors, thereby failing to engage in the analysis set forth by the U.S. and New York Supreme Courts. First, the R&R never addresses the "specific language" used in the defamatory publication. The "specific language" used by the Dot.com Defendants supports a finding that the defamatory statements are actionable because Defendants repeatedly stated and implied that Cassava is a criminal enterprise committing fraudulent behavior. Cassava made this point in its Opposition (Opp'n Memo. at 9-10), but the Magistrate Judge does not address the analysis at all.

Second, the R&R never addresses whether the defamatory statements are "verifiable." If the Court engages in the proper analysis and looks at each statement to determine whether or not

---

[4] While the Magistrate Judge's R&R regarding Defendants' Bredt and Pitt's Motion to Dismiss (ECF No. 104) cited to this standard from *Milkovitch* (albeit failing to engage with the standard in any meaningful way), the Magistrate Judge does not so much as include the standard in the instant R&R.

it is verifiable, the statements' proper treatment as fact becomes clear. As explained in Cassava's Opposition, the Dot.com Defendants stated and implied that Cassava's underlying research had been doctored and manipulated. (*See, e.g.*, Opp'n Memo. at 6, 10, 17-18; FAC ¶¶ 174(c)-(i), 179(x)-(z).) For example:

> Given the incongruous and apparently manipulated clinical and preclinical data, the Simufilam IND does not contain sufficient information to properly asset the risks to subjects. (FAC ¶¶ 168.g.; Ex. 6 to FAC, at 22.)
>
> ***
>
> If you put a doctored / made up western blot into an NIH grant application, could that cause any issues with @HHS_ORI or lead to a False Claims case? $SAVA (FAC App. A at 5.)
>
> ***
>
> Yes, I agree that my main concern is not safety, but fraud (fraud about safety is still possible). Can we agree that the company and trial should be stopped if it is found that all of their efficacy data is doctored? (FAC App. A at 28.)

Each of these statements relates to something that either happened or did not happen. The statements are either verifiably true or not. Cassava should be permitted to prove that that what the Dot.com Defendants said happened did not happen.

Third, the R&R nowhere addresses the "context" in which the Dot.com Defendants made the defamatory statements. The Dot.com Defendants made these statements in a context that would tell a reasonable reader that they were making factual assertions about Cassava. As pled in the FAC and set forth in Cassava's Opposition, the Dot.com Defendants repeatedly asserted that they had performed a rigorous review and conclusively shown that Cassava was a fraud, presented themselves as scientists engaged in a scientific exercise, told readers that they were asking government agencies, journals, and academic institutions to take action against Cassava based on their findings, and urged readers to make trading decisions based upon the facts they had presented.

(Opp'n Memo. at 11–12, *citing* FAC ¶¶ 114–15, 161, 377.) The R&R does not engage with any of these allegations.

A *de novo* review of the allegations, utilizing the proper framework, will show that the accusations were not protected opinions, but were factual accusations that constitute defamation *per se*. This is not a close call. The Dot.com Defendants did not characterize their statements as conjecture, guesses, or opinions. The Dot.com Defendants characterized their statements as facts about Cassava—telling people that Cassava fabricated data and made up test results. That either happened or did not happen. Cassava alleged it did not happen and is prepared to prove (verify) that it did not happen. Cassava's allegations must be assumed to be true. If the Dot.com Defendants want to try to prove what they said was true, that will be an issue to address at summary judgment, not on a motion to dismiss.

**V.      The R&R improperly expands *ONY* to create new law and new immunity for attacks on companies engaged in science.**

Rather than engage in each aspect of the test required by *Milkovich* (*see supra* Section IV), the R&R relies principally on the Second Circuit case of *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), to find that because "most" of the Dot.com Defendants statements related to scientific data, they necessarily constitute non-actionable opinion. (R&R at 9.) But, *ONY* did not replace a century of defamation law to create *carte blanche* immunity for publishers who attack others engaged in a scientific endeavor. Rather, the exception to the traditional fact/opinion analysis set forth in *ONY* is very narrow. At issue in *ONY* was "when a statement in a scientific article reporting research results" could be actionable. *ONY*, 720 F.3d at 492. The Court thus found only that "***statements of scientific conclusions*** about unsettled matters of scientific debate"—in that case whether one drug was more efficacious than another—would be protected. *Id.* (emphasis added).

The Second Circuit's rationale for this holding underscores its limited reach. It was concerned that "most conclusions contained in a scientific journal article are, in principle, capable of verification or refutation by means of objective proof," yet "it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision" such that treating "inferences about the nature of reality" (which are in theory verifiable) as statements of fact would lead courts into refereeing scientific controversies. *Id* at 496–97. Tellingly, the Second Circuit noted that such statements "are presented in publications directed to the relevant scientific community, ideally in peer-reviewed academic journals that warrant that research approved for publication demonstrates at least some degree of basic scientific competence." *Id.*

*ONY* has no relevance here, and it was error for the R&R to rely on it. The defamatory statements were not made in a peer-reviewed academic journal to advance scientific debate—they were made by short sellers in tweets and on websites titled "simuflimlam.com" and "cassavafraud.com." Nor were they inferences about the scientific conclusions to be drawn from the analysis of experimental data. Defendants do not claim to have conducted any experiments of their own. Rather, the statements at issue accuse Cassava of intentional wrongdoing and criminal activity. The statements themselves belie any conclusion that the Dot.com Defendants' statements were somehow a "debate" about scientific data:

> We first review Cassava's **suspicious history and the obvious scientific misconduct** pervading **all of** Cassava's pre clinical science underlying the 'discovery' of Simufilam. (FAC ¶ 174(g))
>
> ***
>
> Cassava Sciences, **through persistent obfuscation and exaggeration** of the effects of Simufilam, **have exposed study participants to incalculable risk** . . . and **misled investigators and patients** into choices that affect their wellbeing. ***This presents a clear and ongoing harm to the public***. (*Id.* ¶ 168(h))
>
> ***

18

> Cassava's **ongoing clinical charade makes a mockery** of scientific standards, clinical trial conduct, and the regulators who are entrusted to protect the integrity of the medical research system and rights of patients. (*id.* ¶ 168(j)

This is not a scientific hypothesis that must be refereed by the scientific community. This is an accusation of criminal wrongdoing. Cassava denies it. (FAC ¶¶ 167, 260-65, 280.) The judicial process is capable of determining whether or not it is true.[5] The R&R should be rejected to the extent that it uses *ONY* to grant "opinion" immunity to any publisher who attacks a plaintiff engaged in a scientific endeavor.

Curiously, with respect to the Dot.com Defendants, the Magistrate Judge finds that the statements are *either* (a) serious scientific debate about the nature of reality which must be refereed by the scientific community, *or* (b) so hyperbolic that a reader would not understand them to be making an accusation of fact. (R&R at 10–11). But the statements were made **in the same publications**. It cannot be the case that the Second Circuit intended to protect as "scientific debate" publications so full of hyperbole and accusation that no one would believe them to be factual. The publications posted on simuflimflam.com and cassavafraud.com surely do not fit the bill of "conclusions reached by experiments [that] are presented alongside an accurate description of the data taken into account and the methods used," such that "the validity of the authors' conclusions may be assessed on their face by other members of the relevant discipline or specialty." *ONY*, 720 F.3d at 497–98. Indeed, the postings were not even directed to the relevant scientific community. Extending *ONY* to protect the Dot.com Defendants' accusations would set a dangerous precedent, constitutes reversible error and should be rejected by this Court.

---

[5] Other courts examining *ONY* have likewise found it distinguishable outside of its narrow bounds. *See, e.g.*, *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235 (5th Cir. 2014) (defamatory statements were not protected where they were not made in a peer-reviewed journal and were directed to consumers, not scientists); *Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*, 2017 U.S. Dist. LEXIS 114105 (S.D.N.Y. July 21, 2017) (same); *Solys Med., LLC v. Organogensis, Inc.* 2018 WL 10579659, *5 (E.D. Va. Dec. 12, 2018) (same).

Nor were the accusations so hyperbolic as to be opinion. Dramatic or not, the Dot.com Defendants' statements are readily understood as statements of fact. As opposed to the "messy, pugnacious posts" at issue in *Hayashi v. Ozawa*, which the defendant admitted to writing while intoxicated, and which the court there found "would leave a reasonable reader with the impression of emotional invective, not a sober presentation of fact," the Dot.com Defendants' statements are factual in nature. *See* No. 17-CV-2558, 2019 WL 1409389, at *5 (S.D.N.Y. Mar. 28, 2019). The Dot.com Defendants defamed Cassava by expressly accusing it of manipulating and doctoring data in order to carry out a fraudulent scheme involving the development of biotechnology—accusations that are capable of being proven true or false (e.g. "You seriously should consider the fact that it's all made up and they are being investigated by FDA/SEC etc." (FAC App. A at 62.)). *Cf. Thomas H. v. Paul B.*, 18 N.Y.3d 580, 585–586 (2012)(finding an opinion cannot be proven false and thus does not give rise to liability for defamation purposes).

These statements are not opinion or hyperbole because they can be found to be factual as a matter of law. They are not exaggerations, assert a literal event that is alleged to have occurred, are not protected opinion or hyperbole and can be actionable for defamation. S*ee Gottwald v. Sebert*, 48 N.Y.S.3d 37, 47 (2021).

## VI. The R&R wrongly concludes that the Dot.com Defendants' statements are non-actionable mixed opinion.

Even if the Dot.com Defendants' statements could be considered opinion, their statements would nonetheless be actionable because they constitute actionable "mixed opinion." Under New York law, defamatory statements that may otherwise qualify as opinion are considered actionable if (1) the underlying facts in the publication are false or (2) a reader is led to believe that the opinion is based on undisclosed facts. *Restis v. Am. Coal. Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705*,* 723 (S.D.N.Y. 2014); *Gross*, 623 N.E.2d at 1168. Here, the FAC contains dozens of allegations

establishing that (1) the underlying facts in the publication are false and (2) the Dot.com Defendants did not disclose material facts in their publications. These allegations are laid out in detail in Cassava's Opposition (Opp'n Memo. at 14–15).

The R&R did not engage in the analysis necessary to determine whether one or more of the defamatory statements and implications were actionable as "mixed opinion." First, and most obviously, the R&R ignores the allegations showing that the Dot.com Defendants failed to disclose material facts in their publications. The FAC includes a section titled "Failure to Disclose Facts," which identifies twenty-eight different material facts that the Dot.com Defendants failed to disclose when they published their defamatory statements. (FAC ¶¶ 387–417.) The R&R does not, because it cannot, identify any instance of the Dot.com Defendants disclosing the material facts that Cassava alleged were not disclosed. Even if Defendants' statements were considered "opinion"—which they were not, as a matter of law—they are still actionable "mixed opinion" because Defendants failed to disclose other material facts. (*See id.*)

Second, in a recurring theme, the Magistrate Judge improperly rejected Cassava's allegations that the underlying facts disclosed by the Dot.com Defendants were false. The FAC includes allegations establishing why each of the Dot.com Defendants' statements was false. (*See* FAC ¶¶ 160–280.). The pattern in the FAC is obvious. Cassava identifies statements by the Dot.com Defendants broken into eleven categories. Cassava then identifies multiple reasons why the statements by the Dot.com Defendants in those categories were factually inaccurate, *i.e.* false. It is impossible, on a motion to dismiss, to conclude that the underlying facts presented by the Dot.com Defendants were accurate – and hence their statements were *not* mixed opinion – when Cassava painstakingly explained in the FAC why the underlying facts presented by the Dot.com Defendants were false.

In the instant R&R, the only way the Magistrate Judge could find that the Dot.com Defendants' statements were *not* mixed opinion was by *not* doing the required analysis. The R&R contains no analysis of the FAC's detailed allegations explaining why the statements made by the Dot.com Defendants were *not* accurate. (FAC ¶¶ 160–280.). In ruling on a 12(b)(6) motion to dismiss, the Court must accept the pleaded facts as true and draw every reasonable inference in favor of the plaintiff. *Arar*, 585 F.3d at 567. The R&R does the exact opposite—replacing Cassava's allegations with the Magistrate Judge's interpretation of the facts. *See supra* Section I.

## VII. The R&R wrongly concludes that the Dot.com Defendants' statements are non-actionable because they are posted on websites, including Twitter.

Cassava's FAC adequately alleges that the Dot.com Defendants published nearly 100 false statements and implications about Cassava in four different publications, including publications accusing Cassava of fraud on the websites "cassavafraud.com" and "simuflimflam.com," as well as over 770 false and defamatory Tweets.

That the publications were posted online and used strong language does not change the conclusion that they were (1) factual in nature and (2) defamatory. As Cassava stated in its Opposition (Opp'n Memo. at 12, n. 8) New York courts have regularly found publications posted online to be actionable where the context and language of the posts suggest that they are asserting facts, not opinions. *See Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550, 557 (N.Y. App. Div. 2020) (social media postings and blog entries did not constitute opinion); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 161–62 (S.D.N.Y. 2020) (social media posts found to be actionable); *Moraes v. White*, 571 F. Supp. 3d 77, 95 (S.D.N.Y. 2021) (same); *Krusen v. Moss*, 105 N.Y.S.3d 607, 610–11 (N.Y. App. Div. 2019) (same).

Here, as discussed above, the Dot.com Defendants' statements are actionable *even though* they were published on websites. Under the test that the Magistrate Judge *should have* applied, the

Dot.com Defendants' statements are actionable because (1) the language used by the Dot.com Defendants was specific, (2) the statements made by the Dot.com Defendants are demonstrably true or false, and (3) the Dot.com Defendants presented their statements in a context that would lead a reasonable reader to understand they were asserting facts about Cassava. The Dot.com Defendants did not present their statements as hyperbole that should be ignored by readers. They presented their statements as *facts* that made Cassava a fraud.

The R&R ignores this abundance of instructive case law, and the allegations in the FAC, and instead holds in two footnotes that "the publication of non-actionable statements does not somehow make them defamatory" (R&R at 10, n. 12, citing *Goldman v. Barrett*, No. 15-CV-9223 (PGG), 2016 WL 5942529, at *5 (S.D.N.Y. Aug. 24, 2016) (publication of true statements on website called "quackwatch.com" did not imply plaintiffs' involvement in healthcare fraud).) *Goldman* is wholly distinguishable. In *Goldman*, Plaintiffs took issue with one article posted on a website that set forth verbatim the text of consent orders entered into between Plaintiffs and the State of Illinois Department of Professional Regulation. *See id*. In that case, it was an ***undisputed fact*** that Plaintiffs entered into consent orders that required them to make a payment of $5,000 to the State of Illinois in connection with having previously identified themselves as M.D.s. *See id*.

Here, the Dot.com defendants published ***false*** and defamatory statements about Cassava, including the following:

> It's that ***it's all made up!*** Starting from 15 years ago, right up to the P2b & OL, and ***Remi know (sic) it.*** (FAC App. A at 120.)
>
> ***
>
> ***except Theranos only defrauded investors and patients, not the government.***
> (FAC App. A at 122.)
>
> ***
>
> Tide has not turned. ***The science is fraudulent and the drug is fake.*** It ticks me off when I am up 5x on my hedges though. (FAC App. A at 122.)

Unlike *Goldman*, these are not true, undisputed, facts that were published—these were false accusations of fraudulent conduct.

Further distinguishing the instant case from *Goldman*, even as Simufilam continued to garner FDA approval to move through the typical Clinical Research Phases for the Investigational New Drug Process, the Dot.com Defendants – including but not limited to Heilbut – insisted that the FDA must be getting it wrong:

> and ***FDA gets a lot of things wrong.*** Reality still exists. ***The drug is fake, Wang is a fraud, and the $SAVA charade is going to come crashing down one of these days***. (FAC App. A at 123.)

This example is telling. The Dot.com Defendants are lending credibility to their statements as factual assertions. The Dot.com Defendants are telling readers that what they are saying about Cassava and Simufilam is *right* and what Cassava and the FDA are saying is *wrong* because "[t]he drug is fake" and "[Cas]SAVA [is a] charade." That is a factual assertion about Cassava and its drug. One person is factually right. The other person is factually wrong. That is how the Dot.com Defendants presented their statements about Cassava and Simufilam. Such statements are obviously actionable.

## VIII. The R&R fails to address any of Cassava's allegations or arguments concerning actual malice or causation.

Similar to the Bredt and Pitt R&R (ECF No. 104), the instant R&R attempts to dispose of Cassava's allegations of actual malice and causation without: (1) considering the allegations pled by Cassava; (2) considering the relevant case law; or (3) addressing any of Cassava's arguments in its opposition papers. Although the R&R refers to "the same reasons I articulated in the Neuroscientist Defendants' R&R" (R&R at 11), that recommendation contained only a footnote summarily concluding that Cassava had failed to plead these elements. Accordingly, Cassava objects to the Magistrate Judge's ruling with respect to its allegations of actual malice and

causation for the same reasons set forth in its B&P Objections (ECF No. 107), and expressly incorporates those arguments herein.

IX. **The R&R wrongly concludes, in an unprecedented manner, that the FAC did not satisfy Rule 8.**

Respectfully, as signaled by the Magistrate Judge's pocket veto of Cassava's right to engage in discovery, Cassava is concerned that the R&R was written to reach a preordained outcome as opposed to evaluating its allegations using the proper standard and legal tests. The R&R's final conclusion, on Rule 8, reinforces Cassava's concern. In her earlier R&R, the Magistrate Judge recommended that Cassava's claims against Defendants Bredt and Pitt be dismissed on the "alternative" ground that the FAC violates Federal Rule of Civil Procedure 8(a). (ECF No. 104 at 22–23.) Without discussing the specifics of Cassava's claims against the Dot.com Defendants, she states that the same grounds for dismissal should apply here, writing that she "see[s] no reason to review or revisit" her earlier "analysis." (R&R at 11–12.) For the same reasons set forth in Cassava's objections to the Magistrate Judge's earlier R&R on this issue (which are incorporated by reference here), Cassava specifically objects to this finding on the basis that the FAC provides a clear roadmap to Cassava's claims against the Dot.com Defendants. *See* ECF No. 108 at 24-25; *see also Shomo v. State of New York*, 374 Fed. App'x 180, 182 (2d Cir. 2010) ("The jurisprudence involving Rule 8 . . . is difficult to apply to the dismissal of a complaint containing too much detail.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Cassava Sciences, Inc. respectfully requests that the Court reject the R&R and deny the Dot.com Defendants' Motion to Dismiss.


Dated: January 19, 2024        Respectfully submitted,
                                           CASSAVA SCIENCES, INC.

By its attorneys,

*/s/ J. Erik Connolly*
J. Erik Connolly (*admitted pro hac vice*)
    EConnolly@beneschlaw.com
    Illinois ARDC No. 6269558

Timothy Frey (*admitted pro hac vice*)
    TFrey@beneschlaw.com
    Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
    kwatsonmoss@beneschlaw.com
    Illinois ARDC No. 6321176

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Michael Vatis
    mvatis@beneschlaw.com
    NY Reg. No. 2258655

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1155 Avenue of the Americas
26th Floor
New York, NY 10036

## CERTIFICATE OF SERVICE

I, Erik Connolly, hereby certify that a copy of the foregoing Objections to Magistrate Judge Wang's Report & Recommendation (ECF No. 105), filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 19, 2024.

Dated: January 19, 2024                                  */s/ J. Erik Connolly*