UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CASSAVA SCIENCES, INC., | ) ) ) |
| Plaintiff, | ) ) Case 1:22-cv-09409-GHW-OTW |
| v. | ) ) ) |
| DAVID BREDT, GEOFFREY PITT, QUINTESSENTIAL CAPITAL MANAGEMENT LLC, ADRIAN HEILBUT, JESSE BRODKIN, ENEA MILIORIS and PATRICK MARKEY, | ) ) ) ) ) ) |
| Defendants. | ) ) |

# RESPONSE OF DEFENDANTS DR. DAVID BREDT AND DR. GEOFFREY PITT TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE WANG'S JANUARY 3, 2024 REPORT AND RECOMMENDATION

Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Defendants David Bredt and Geoffrey Pitt*

Dated:  January 31, 2024

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. STANDARD OF REVIEW ................................................................................................ 3

II. THE R&R PROPERLY DETERMINED THAT THE NEUROSCIENTIST DEFENDANTS' STATEMENTS WERE NON-ACTIONABLE OPINION. ................... 3

III. THE R&R PROPERLY DETERMINED THAT CASSAVA HAD NOT SUFFICIENTLY PLED MALICE AND CAUSATION AS ALTERNATIVE BASES FOR DISMISSAL. ............................................................................................... 10

IV. CASSAVA WAS IN NO WAY "PUNISHED" BY THE R&R'S DETERMINATION REGARDING ITS LACK OF COMPLIANCE WITH RULE 8. ............................................................................................................................ 13

CONCLUSION ............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Gross v. New York Times Co.*,
    82 N.Y.2d 146 (N.Y. 1993) ....................................................................................................9

*Hayashi v. Ozawa*,
    No. 17-CV-2558 (AJN), 2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) ..............................6, 7

*IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*,
    No. 07-CV-6865-LTS-GWG, 2008 WL 4810043 (S.D.N.Y. Nov. 3, 2008) ...........................3

*Kiggins v. Barnhart*,
    No. 98-CV-0204 (LTS)(THK), 2004 WL 1124169 (S.D.N.Y. May 20, 2004) ........................3

*Maroney v. Woodstream Corp.*,
    No. 19-CV-8294 (KMK), 2023 WL 6318226 (S.D.N.Y. Sept. 28, 2023) ................................5

*Marotte v. City of New York*,
    No. 16-CV-8953 (GHW), 2019 WL 1033798 (S.D.N.Y. Mar. 5, 2019) ..................................3

*Milkovich v. Lorain Journal*,
    497 U.S. 1 (1990) .................................................................................................................7, 8

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    No. 17-CV-07568, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) .............................................6

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) ..........................................................................................2, 8, 9

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) .................................................................................................10

*Van-Go Transp. Co. v. N.Y.C. Bd. of Educ.*,
    971 F. Supp. 90 (E.D.N.Y. 1997) .........................................................................................12

**Statutes**

28 U.S.C. § 636(b)(1)(C) ................................................................................................................3

21 C.F.R. § 10.30(b)(3) ..................................................................................................................9

Fed.R.Civ.P. 72(b)(2) .....................................................................................................................3

Fed.R.Civ.P. 8(a) ..........................................................................................................................13

U.S. Const. Amend. I ..............................................................................................................1, 10

**PRELIMINARY STATEMENT**

Drs. David Bredt and Geoffrey Pitt (the "Neuroscientist Defendants") are accomplished scientists who noted anomalies in data published in scientific journals and posters presented at scientific meetings that Plaintiff Cassava Sciences, Inc. ("Cassava") used to support clinical trials for its drug simufilam. Drs. Bredt and Pitt availed themselves of the "Citizen Petition" ("CP") mechanism designed to alert the Food and Drug Administration ("FDA") to public concerns about drug-related matters, and they laid out their concerns in exacting factual detail, requesting further investigation by the FDA. The question presented by this case is whether a pharmaceutical company may wield claims of defamation to squelch First Amendment expression about matters of public import relating to data that Cassava itself has admitted contained "problems" and "errors."

Magistrate Judge Wang's January 3, 2024 Report and Recommendation ("R&R") correctly concluded that the Neuroscientist Defendants offered non-actionable statements of opinion about the data in question, backed up by meticulous factual detail supporting their inferences, as well as Cassava's own admissions concerning inconsistencies and errors in the data in question. The R&R set forth a 23-page systematic, detailed, and comprehensive analysis of the First Amended Complaint ("FAC") and the materials it cited, including the Neuroscientist Defendants' statements and the voluminous exhibits incorporated by reference into the FAC—which afforded full and fair consideration to Cassava's arguments—and ultimately dismissed the FAC on the merits.

In its Objection ("Obj."), Cassava fails to acknowledge Magistrate Judge Wang's efforts, and instead inexplicably suggests that the R&R indicates judicial misconduct. In particular, Cassava characterizes the R&R as "reach[ing] a preordained outcome as opposed to evaluating its allegations using the proper standard and legal tests." Obj. at 23. Cassava further accuses Magistrate Judge Wang with "supplant[ing] Cassava's allegations with [her] own analysis of the

facts and Bredt and Pitt's version of the events" and improperly drawing inferences "against Cassava." Obj. at 2. And in a feeble attempt to discount Magistrate Judge Wang's careful analysis of the Second Circuit's decision in *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013)—a key holding directly applicable to the current dispute—Cassava resorts to accusations that the Judge "creat[ed] new law" to give "*carte blanche* immunity for publishers who attack others engaged in a scientific endeavor." Obj. at 17-18. These characterizations of the R&R could not be further from the truth.

Instead, the R&R carefully considered and correctly found that the Neuroscientist Defendants' statements were "accurate restatements of the representations made and data presented by Cassava or its scientists in press releases and peer-reviewed papers" and that the "inferences and opinions drawn therefrom are in sharp dispute, and thus not actionable." R&R at 22-23. Magistrate Judge Wang further correctly concluded that the cause of action for civil conspiracy should similarly be dismissed, because there is no underlying tort perpetrated by the Neuroscientist Defendants. R&R at 22 n.30.[1] Cassava fails to identify any legitimate error in the R&R or Magistrate Judge Wang's analysis. Instead, the Objection simply repackages the same arguments previously raised in Cassava's opposition to the Neuroscientist Defendants' motion to dismiss and casts aspersions at the Magistrate Judge in a failed attempt to obscure the emptiness of its challenge.

The Neuroscientist Defendants respectfully submit that this Court should adopt Magistrate Judge Wang's R&R in its entirety and dismiss this lawsuit with prejudice.

---

[1] In its Objection, Cassava does not challenge the R&R's dismissal of its conspiracy claim. As such, it has waived its right to challenge the Magistrate Judge's recommendation on this basis.

# ARGUMENT

## I. STANDARD OF REVIEW

A litigant seeking to object to a Magistrate Judge's report and recommendation must file specific, written objections to the magistrate judge's findings. Fed.R.Civ.P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C). As this Court has observed, although a proper objection to a Magistrate Judge's recommendation to grant a dispositive motion is reviewed *de novo*, where, as is the case here, the objection "simply reiterates the original arguments, the Court will review the Report strictly for clear error." *See, e.g.*, *Marotte v. City of New York*, No. 16-CV-8953 (GHW), 2019 WL 1033798, at *1-2 (S.D.N.Y. Mar. 5, 2019) (citing 28 U.S.C. § 636(b)(1)) (Woods, J.) (citing Fed. R. Civ. P. 72(b)(3)); *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865-LTS-GWG, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted)); *Kiggins v. Barnhart*, No. 98-CV-0204(LTS)(THK), 2004 WL 1124169, at *1 (S.D.N.Y. May 20, 2004) (reviewing the report and recommendation for clear error where objections were essentially reiterations of arguments made in earlier submissions and conclusory accusations). Even if the Court were to undertake a *de novo* review, however, the R&R should still be adopted in its entirety for the reasons set forth in the Neuroscientist Defendants' original motion to dismiss, in the R&R, and herein.

## II. THE R&R PROPERLY DETERMINED THAT THE NEUROSCIENTIST DEFENDANTS' STATEMENTS WERE NON-ACTIONABLE OPINION.

Cassava's Objection begins with the same falsehood propounded in their opposition to the Neuroscientist Defendants' motion to dismiss, namely that "Defendants Bredt and Pitt spent months calling Cassava a fraud…a scam, and a criminal enterprise." Obj. at 1. As Magistrate Judge Wang properly found, the Neuroscientist Defendants did no such thing. Instead, as outlined in the R&R, the Neuroscientist Defendants laid out facts in the CP showing anomalous data in six papers

on which Cassava's clinical trials relied, reproducing what those papers depicted. The Neuroscientist Defendants then opined in heavily qualified language that those anomalies were consistent with data manipulation and called for further review. The request for review reflected typical back-and-forth about scientific data and interpretation that demands public scrutiny, particularly concerning matters of crucial public health discourse, and was made to the agency responsible for overseeing such matters (the FDA). The Objection raises several challenges to the Magistrate Judge determination that the Neuroscientist Defendants' statements constituted non-actionable opinion (*see* Obj. Sections I – VI), none of which have merit.

*First,* the Objection argues that "the R&R accepts as true almost none of the allegations stated in the FAC, but rather weighs the evidence and makes the Magistrate Judge the ultimate arbiter of the facts." Obj. at 8-9. In support of this conclusion, the Objection cites language from the R&R where Magistrate Judge Wang confirms that "[she has] reviewed all of the Neuroscientist Defendants' statements and find[s] that their factual statements are accurate restatements of representations made and data presented by Cassava or its scientists in press releases and peer-reviewed scientific papers. . . ." Obj. at 9 (quoting R&R at 22-23.) Contrary to Cassava's suggestion, this language merely confirms the Magistrate Judge's meticulous review of each of the challenged factual assertions made in the Neuroscientist Defendants' CP to determine whether such facts were accurately reflected in the scholarly publications prepared by Drs. Burns and Wang and the press releases prepared by Cassava. *See, e.g.,* R&R at 2-16. This language in no way reflects the Magistrate Judge's ultimate endorsement of the inferences and opinions the Neuroscientist Defendants derived from such facts; to the contrary, the R&R confirms that such conclusions are subject to ongoing debate. Instead, the R&R merely confirms that language quoted and data reproduced by the Neuroscientist Defendants—that is, the factual underpinning of the

CP—constitute accurate reproductions of the information and graphics contained in the underlying source material. The Court also properly considered that these underlying facts, as opposed to the inferences being drawn therefrom, were largely *not* disputed. *See, e.g.,* R&R at 21 n.27 ("Cassava admits that 'independent scientists' found 'problems,' 'obvious errors,' and 'tweaks' in the data. The Neuroscientist Defendants laid out admittedly accurate facts, and Cassava's challenge to opinions derived from those true facts states no claim.")[2] The Magistrate Judge is entitled to review and consider Cassava's own concessions in its pleadings, as well as the documents attached to, and incorporated by reference in, the FAC. *See, Maroney v. Woodstream Corp.*, No. 19-CV-8294 (KMK), 2023 WL 6318226, at *1 (S.D.N.Y. Sept. 28, 2023). Magistrate Judge Wang's determination regarding the accuracy of the underlying facts as described in the CP did not amount to the "weighing of evidence," did not result in burden shifting, and does not undermine any of the R&R's ultimate conclusions. *See* Obj. at 8-9. Effectively, all the R&R did was to note that the facts underlying each of the Neuroscientist Defendants' opinions were not in dispute.

*Second,* the Objection argues that the R&R erred by not finding that the "overall message by Bredt and Pitt in their statements was that Cassava is a fraud," suggesting that the Magistrate Judge merely made a "conclusory remark" dismissing Cassava's characterization "as if those precise words ["Cassava is a fraud"] needed to be voiced." Obj. at 9-10. This is not so. The R&R instead reflects the Magistrate Judge's specific consideration of Cassava's argument, and her ultimate conclusion that Cassava had improperly "collect[ed] and collapse[ed]" many different

---

[2] Indeed, Cassava's own FAC confirms that the papers at issue contained errors and anomalies, albeit ones that Cassava argues can be innocently explained. *See, e.g.*, FAC ¶ 187 (stating that issues with Western blot analysis may result from errors in the publishing process but also conceding that they may indicate manipulated data); *id.* ¶ 188 (taking issue with how the Neuroscientist Defendants "weighed" the "issues" and "inconsistencies" with respect to Western blot analysis but not denying the existence of such issues and inconsistencies); *id.* ¶ 195 (relying on research community's lack of standards to explain away choice to use decade-old brain tissue but not denying that the age of brain tissue was concerning); *id.* ¶¶ 207-09 (explaining its purportedly acceptable reasons for Phase 2b retesting but not denying other possible reasons for retesting or that Cassava's presentation of retested data contained indicia of anomalies).

statements examining "Cassava's published data, and which challenged both the data and the inferences drawn from the data" into an "assertion of 'fact' that Cassava is a fraud"—an inference that the Magistrate Judge ultimately rejected. R&R at 19. The CP, read as a whole, plainly communicated that there were obvious and inexplicable problems with certain data in six papers relied on by Cassava that could evidence manipulation, and these problems warranted further scrutiny. Nothing in it said or implied that Cassava is a "fraud."[3] Cassava's facile reduction of the CP to a single word is completely at odds with the carefully documented, reasonable analysis performed by the Neuroscientist Defendants, and it misses the central point of the CP's exercise, which was not to condemn Cassava, but to urge review by the FDA.[4]

*Third,* citing certain other cherry-picked statements that it contends cast Cassava in a negative light (Obj. at 5, 6, 10, 14), the Objection argues that the Magistrate Judge was required to examine each alleged defamatory statement "standing alone" in a "statement-by-statement analysis" and that the R&R's failure to reflect this piecemeal analysis is somehow fatal to its conclusions. Obj. at 2, 10. But such an argument ignores established legal precedent that courts adopt a "holistic approach" that involves "looking to the tone of the communication, its apparent purpose, and the setting in which it was made." *Hayashi v. Ozawa*, No. 17-CV-2558 (AJN), 2019

---

[3] Even if the CP had impliedly (or expressly) accused Cassava of fraud, this would not make its contents actionable, since its conclusions all rest on a clearly disclosed factual predicate. *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-CV-07568, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018) (finding that short-seller's statements accusing plaintiff of "revenue fraud" and predicting that employees would be "dragged away in handcuffs" were non-actionable opinions).

[4] Throughout the Objection, Cassava makes much of a statement made by the Neuroscientist Defendants' attorney in an August 18, 2021 (more than a year before Cassava's FAC was submitted) cover letter that "Cassava Science apparently didn't get the Theranos memo. Their desire to do groundbreaking research doesn't given the company and its executives a get out of jail free card from regulators, patients, or investors." Obj. at 19; *see also id.* at 1, 6, 10. The fact that certain Theranos personnel were *subsequently* found to have engaged in fraudulent activity does not mean that this statement is equivalent to "Cassava is a fraud." To the contrary, the statement addresses not the anomalies in Cassava's data—which Cassava admitted existed—but Cassava's obstinate refusal to undertake any effort to investigate them. Cassava should have responded to questions about its science in a scientifically curious manner, rather than with concealment and extortionate litigation claims.

WL 1409389, at *3 (S.D.N.Y. Mar. 28, 2019). The Magistrate Judge clearly took this approach when evaluating the Neuroscientist Defendants' statements. The R&R's holistic evaluation of "what the average person hearing or reading the communication would take it to mean" was entirely appropriate at the motion to dismiss stage. *Id.* No reasonable reader of the CP could conclude anything other than certain articles contained evidence consistent with potential data manipulation and this should be reviewed. It was Cassava that decried the obvious (indeed, admitted) errors as "fiction," and made false statements about who analyzed its sample data, drawing immense public skepticism about its *bona fides*. *See* Mot. 21-22; FAC Ex. 3 at 2; FAC Ex. 64.[5]

*Fourth,* the Objection argues that the Magistrate Judge did not engage in the proper legal analysis of Cassava's claims before determining that the Neuroscientist Defendants' statements were non-actionable opinions. Obj. at 15-17. To the contrary, the R&R outlined the four factors articulated in *Milkovich v. Lorain Journal*, 497 U.S. 1, 11–14 (1990), for determining whether under the "totality of the circumstances" a statement is pure opinion. R&R at 18. Magistrate Judge Wang then applied her analysis to those factors, analyzing: (1) the "specific language used," which she reviewed in detail from both the CP, as well as the cited underlying source materials, and characterized the Neuroscientist Defendants' statements as "measured and nuanced series of inferences from Cassava's own underlying research" (R&R at 19); (2) whether the statements are "verifiable," noting that inferences drawn from empirical research are necessarily "tentative and subject to revision" (R&R at 18); (3) the "context" in which the Neuroscientist Defendants' statements were made, considering, among other things, that the statements were made in the

---

[5] The record shows that Cassava's inexplicable intransigence was the cause of any problems it now complains of. Three trading days after the CP, Cassava's stock price was *up* 10%. Three trading days after Cassava issued a press release calling the obvious problems a "fiction" and falsely identifying a third-party lab as having conducted sample testing, its stock price was *down 55%*. Mot. at 7-8. Cassava was hoisted on its own petard.

context of an ongoing scientific discourse (R&R at 20); and (4) the "readers' reactions to Bredt and Pitt's accusations," which she considered to further support an ongoing discourse first aimed at verifying the results, after which different inferences can be drawn. R&R at 21. Consistent with *Milkovich,* the R&R ultimately determined that a statement of opinion relating to matters of public concern which does not contain provable false factual connotation will receive full constitutional protection. R&R at 20. The CP here plainly fits that category. Reproducing the authors' own data and diagrams, the Neuroscientist Defendants noted apparent "copy and paste" issues, inconsistencies and errors, and other problems in the cited articles. The CP lays out exacting factual detail for each of the inferences drawn, and any reader can determine for herself the accuracy of the factual matter underlying the CP's inferences and opinions.

*Fifth,* the Objection accuses Magistrate Judge Wang of "over-extending" the holding of *ONY, Inc. v. Cornerstone Therapeutics, Inc*, 720 F.3d 490 (2d Cir. 2013) to stand for the proposition that any statements made in the course of scientific debate are not actionable and somehow extending "*carte blanche*" immunity to the Neuroscientist Defendants. Obj. at 3, 18, 19. To the contrary, the R&R offers a detailed response to the arguments originally raised in Cassava's opposition brief concerning the applicability of *ONY,* characterizing Cassava's treatment of *ONY* as an oversimplification. R&R at 19-20. Magistrate Judge Wang's R&R does not grant *carte blanche* protection for scientific discourse, but instead applied the Second Circuit's analysis in *ONY* and determined that the Neuroscientist Defendants' statements were not actionable because (i) they drew a measured and nuanced series of inferences from Cassava's own underlying research, namely that the research may be unreliable based on certain irregularities in the reporting of data in the research; and (ii) in response, Cassava disputed those inferences, attaching numerous press releases and scientific papers "as if all the statements, taken together, could be sufficient to

'prove' Cassava's scientific conclusions to be true (or not)." R&R at 19-20. In other words, the R&R correctly noted that Cassava was claiming "falsity" simply because it believes the inferences it draws from the conceded data issues are stronger than those of the Neuroscientist Defendants. Based upon this analysis, the R&R's conclusion is consistent with the *ONY* court's holding that "as a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY*, 720 F.3d at 492. Indeed, this case epitomizes the wisdom of the *ONY* ruling:  Cassava does not and cannot deny that the anomalies cited by the Neuroscientist Defendants *can* be explained by data manipulation. Cassava simply argues that its innocent explanations for those admitted errors are superior. But it is not defamation for the Neuroscientist Defendants to have opined on accurately disclosed factual issues that Cassava itself agrees existed.

*Sixth,* the Objection also challenges the R&R for applying "the wrong standard," arguing that Magistrate Judge Wang did not engage in the necessary analysis to determine whether one or more of the allegedly defamatory statements were actionable "mixed opinion." Obj. at 19-20. Cassava further argues that the R&R ignores allegations showing that the Neuroscientist Defendants "failed to disclose material facts in their publications." Obj at 20. To the contrary, the R&R indicates that Magistrate Judge Wang considered Cassava's arguments, but ultimately concluded, consistent with the standard articulated in *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153–54 (N.Y. 1993), that "[t]he Neuroscientist Defendants' statements arise from – and refer to – Cassava's own published research, and call for further investigation after drawing inferences about Dr. Wang's and Dr. Burns's research and reported results." R&R at 21.[6] In other words, the

---

[6] Such a finding is consistent with disclosures in the CP itself, which confirms that "[a]ll the information detailed herein was obtained from public, non-proprietary sources" which the CP cites extensively. FAC Ex. 3 at 12. The CP certifies, per 21 C.F.R. § 10.30(b)(3), that it "includes all information and views on which the petition relies[.]"

facts cited in the CP came from the articles themselves as any reader of the CP can see. Cassava is again off base in arguing that purported "undisclosed facts" render the CP defamatory.

Overall, the R&R is consistent with controlling law on defamation and the First Amendment, whereas Cassava's arguments are not. The Neuroscientist Defendants did precisely what responsible scientists should do when faced with questionable data being used in human testing of pharmaceutical products: they noted the issues in methodical detail and asked the relevant regulatory authority to make further inquiries. If Cassava's gambit of saddling the Neuroscientist Defendants with defamation claims were to succeed, there would remain no legitimate means of expressing scientific debate and skepticism. The repercussions of such an outcome for science and public health would be unimaginable. Magistrate Judge Wang was not only careful and thorough in her analysis, but she reached the only conclusion that makes sense in light of overriding First Amendment concerns.

In sum, the R&R properly concludes that the Neuroscientist Defendants' statements constituted non-actionable opinions because they: (i) identified specific scientific concerns with the papers and presentations at issue; (ii) accurately quoted or reproduced the authors' own reported results; and (iii) laid out detailed and properly caveated factual bases for why the data appeared anomalous, (iv) which meaningfully contributed to ongoing scientific discourse concerning a matter of public concern. Plaintiff's Objections to the R&R, which repackage its arguments on motion to dismiss, are wholly without merit.

### III. THE R&R PROPERLY DETERMINED THAT CASSAVA HAD NOT SUFFICIENTLY PLED MALICE AND CAUSATION AS ALTERNATIVE BASES FOR DISMISSAL.

Because the R&R correctly determined that the Neuroscientist Defendants' statements constituted non-actionable opinion, this ends the inquiry. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (setting forth a conjunctive test for defamation under New York law).

Nevertheless, the R&R indicates that Magistrate Judge Wang also considered alternative grounds for dismissal and determined that Cassava also failed to adequately plead actual malice or loss causation. R&R at 21-22 n.28. While Cassava's Objection now challenges those alternative findings based upon the brevity of the Court's analysis (*see* Obj. Sections VII-VIII), there is no requirement that the Judge's determination be presented in any particular form or verbosity. Furthermore, the R&R's conclusions are wholly consistent with the record and the law.

*First,* with regard to actual malice, Cassava offered no facts to suggest that the Neuroscientist Defendants knew the inferences drawn in the CP were false (they were not) or that they made those statements with reckless disregard for truth or falsity (they did not). Obj. at 21. Cassava merely declares the CP, as a whole, to be "demonstrably false," but the FAC fails to articulate how or why. Further, Cassava's referenced 21-page chart Appendix B to the FAC, which purports to "demonstrate how actual malice is pled" does nothing of the sort. It instead excerpts certain statements from the CP, assigns each a self-serving (and inaccurate) "[i]implication," and then cuts and pastes a virtually identical string of citing references from the FAC. Opp. 19 n.10. Cassava has presented no facts demonstrating that the Neuroscientist Defendants *knew* the information in the CP was wrong, or that there were *obvious reasons* to doubt its accuracy. The Court is under no obligation to explicitly acknowledge every argument raised in opposition to a motion to dismiss, particularly arguments that do not contribute to the resolution of the matter.

*Second,* the Objection similarly complains that the R&R failed to address its loss causation arguments, including (1) its argument that the Neuroscientist Defendants' statements constituted defamation *per se;* and (2) its assertion of "special damages" in the form of enterprise value decline and out-of-pocket expenses allegedly caused by the CP. Obj. at 23. Once again, the R&R's alternative finding is completely consistent with the record in this case. With regard to defamation

*per se*, the Neuroscientist Defendants assert no criminal conduct by Cassava—indeed, the CP contains no allegation that Cassava was complicit in the errors suggestive of manipulation. And the observation that certain papers contain suspicious errors is not itself a comment on Cassava's business generally. There is nothing in the CP's request that the six papers be investigated fully that imputes to Cassava "misconduct or a general unfitness, incapacity, or inability to perform [its] duties." *Van-Go Transp. Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 98 (E.D.N.Y. 1997). Errors or issues arise with scientific data from time to time and many companies choose to resolve those issues head-on. It was Cassava's intransigent refusal to face the obvious errors—and nothing that the Neuroscientist Defendants did or said—that caused the market to conclude that something at Cassava was horribly amiss.[7]

And with regard to loss causation, Cassava's opposition brief made no effort to challenge the Neuroscientist Defendants' argument that the FAC failed to plead that the CP <u>caused</u> Cassava any alleged injury. Instead, Cassava's discussion of damages lumps "the Defendants" together indiscriminately, with no effort to describe, much less particularize, any injury stemming from the CP itself. FAC ¶¶ 423-38. Thus, Magistrate Judge Wang's alternative finding regarding lack of loss causation is the only conclusion reasonably supported by the FAC's allegations.

Cassava's Objection is suffused with unwarranted attacks against Magistrate Judge Wang, alternately accusing her of bias (Obj. at 23) and incompetence. Obj. at 2. Magistrate Judge Wang did not adopt all of the Neuroscientist Defendants' arguments hook, line, and sinker. For example, although the Neuroscientist Defendants showed that the challenged statements were virtually all

---

[7] As indicated in the Neuroscientist Defendants' motion to dismiss, Cassava's share price <u>rose</u> the week following the CP and crashed only once Cassava publicly decried the concerns the CP raised as "fiction" and made false statements about who analyzed its data. *See* Mot. 21-22; FAC Ex. 3 at 2; FAC Ex. 64. Cassava alleged no facts to show that the alleged losses were due to what the Neuroscientist Defendants did or said, as opposed to its own decision to use data raising serious questions while flippantly trivializing the admitted anomalies.

made more than one year prior to Cassava's lawsuit and thus were time-barred under the one-year statute of limitations, Magistrate Judge Wang declined to recommend dismissal on that basis. As to the grounds upon which she ultimately premised her ruling, however, there can be no question that her report was careful, thorough, amply supported and unquestionably fair. Cassava badly overreaches in suggesting otherwise.

### IV. CASSAVA WAS IN NO WAY "PUNISHED" BY THE R&R'S DETERMINATION REGARDING ITS LACK OF COMPLIANCE WITH RULE 8.

Federal Rule of Civil Procedure 8(a) required Cassava to provide a "short and plain statement" of its claim. Instead, Cassava barraged the Court with a sprawling 1,598 pages of a complaint plus exhibits and asserted that virtually each and every statement made in the CP was false and defamatory. Magistrate Judge Wang did not "punish Cassava for filing a long complaint." Obj., Section IX. Rather, she applied the correct standard in determining that Cassava did not provide a short and plain statement sufficient to put a defendant "on notice of the claim against him" as required by Rule 8(a). R&R at 22. Cassava inexplicably accuses the Magistrate Judge categorization as a "gross distortion of the FAC," when she was, in fact, quoting language from Cassava's own opposition brief.[8] And critically, Magistrate Judge Wang made clear that she was not recommending the dismissal of the FAC on the basis of Rule 8(a), but had instead reviewed all of the voluminous materials, including "all of the [Neuroscientist Defendants'] statements" and reached a substantive determination on the merits. R&R at 22-23. Cassava's pleading was an abuse designed to impose burden on the Neuroscientist Defendants and would have correctly been dismissed on that basis alone; nonetheless Cassava's objection on this basis is a red herring.

---

[8] *See* R&R at 22 (quoting page 25 of Cassava's opposition brief for the proposition that "nearly everything Bredt and Pitt said in their petitions and everything that they republished was factually inaccurate.")

## **CONCLUSION**

For the reasons set forth herein, and in the motion to dismiss briefing, the Neuroscientist Defendants respectfully requests that the Court overrule Plaintiffs' Objection, adopt Magistrate Judge Wang's Report and Recommendation in total, and dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: January 31, 2024

Respectfully submitted,
DAVID BREDT and GEOFFREY PITT

By their attorneys,

*/s/ Jeffrey A. Simes*
Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

-15-

## CERTIFICATE OF SERVICE

      I, Jeffrey A. Simes, hereby certify that a copy of the foregoing Response of Defendants Dr. David Bredt and Dr. Geoffrey Pitt to Plaintiff's Objection to Magistrate Judge Wang's January 3, 2024 Report and Recommendation, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 31, 2024.

Dated:  January 31, 2024                                                    */s/ Jeffrey A. Simes*