**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CASSAVA SCIENCES, INC.,

      Plaintiff,

    v.

DAVID BREDT, GEOFFREY PITT,
QUINTESSENTIAL CAPITAL
MANAGEMENT LLC, ADRIAN HEILBUT,
JESSE BRODKIN, ENEA MILIORIS and
PATRICK MARKEY,

      Defendants.

---

Case No. 1:22-cv-09409-GHW-OTW

---

**DEFENDANTS JESSE BRODKIN, ADRIAN HEILBUT, AND ENEA MILIORIS'S
RESPONSES TO PLAINTIFF CASSAVA'S OBJECTIONS TO MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS**

Dated:  February 2, 2024

CLARICK GUERON REISBAUM LLP

Isaac B. Zaur
David Kumagai
220 Fifth Avenue, 14th Floor
New York, New York 10001
(212) 633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com

LAW OFFICE OF DANIEL F. WACHTELL

Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
(917) 667-6954
dan@danwachtell.com

*Attorneys for Defendants Jesse Brodkin,
Adrian Heilbut, and Enea Milioris*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ............................................................................................... 1

STANDARD OF REVIEW ............................................................................... 6

ARGUMENT .................................................................................................... 7

I.  THE REPORT CORRECTLY FOUND CASSAVA FAILED TO STATE A CLAIM ......... 7

II. EACH OF CASSAVA'S OBJECTIONS FAILS .................................................. 8

    A.  Cassava's First Objection Flatly Mischaracterizes the Report........................................ 8

    B.  Cassava's Second Objection Repeats Meritless Arguments Concerning
        Imputations of "Fraud" that Magistrate Judge Wang Correctly Rejected ..................... 9

    C.  Cassava's Third Objection Wrongly Accuses Magistrate Judge Wang
        of Failing To Evaluate the Allegedly Defamatory Statements ..................................... 13

    D.  Cassava's Fourth Objection Asks the Court to Adopt An Incorrect Legal
        Standard to Assess Whether the Challenged Statements Are Fact or Opinion.............. 15

    E.  Cassava's Fifth Objection Misconstrues the Second Circuit's Opinion in *ONY* ........... 17

    F.  Cassava's Sixth Objection Misstates the Law Governing Statements of "Mixed
        Opinion"................................................................................................................. 22

    G.  Cassava's Seventh Objection Misconstrues the Report's Findings Concerning
        Statements on Twitter ............................................................................................. 23

    H.  Cassava's Eighth Objection Is An Improper General Objection to the
        Report's Findings on Actual Malice and Causation ................................................... 24

    I.  Cassava's Ninth Objection Cannot Salvage Its Improper Pleading Under Rule 8 ........ 25

CONCLUSION................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Cases**

*Arthur v. Offit*,
  No. CIV.A. 01:09-CV-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010) ............................ 18

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) .................................................................................... 14

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ............................................................................................................... 11

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ................................................................................................... 22

*Coliniatis v. Dimas*,
  848 F. Supp. 462 (S.D.N.Y. 1994) ................................................................................... 10, 16

*Davis v. Boeheim*,
  24 N.Y.3d 262 (2014) ................................................................................................. 16, 21, 23

*Eastman Chem. Co. v. Plastipure, Inc.*,
  775 F.3d 230 (5th Cir. 2014) .................................................................................................. 19

*Eros Intern. PLC v. Mangrove Partners*,
  No. 653096/2017, 2019 WL 1129196 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2019) ......... 12, 23

*Fedak v. YIMBY, Inc.*,
  No. 17-cv-8825, 2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018) ............................................ 11

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ....................................................................................................... *passim*

*Hayashi v. Ozawa*,
  No. 17-CV-2558 (AJN), 2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) ......................... *passim*

*Held v. Pokorny*,
  583 F. Supp. 1038 (S.D.N.Y. 1984) ....................................................................................... 16

*Kipper v. NYP Holdings Co.*,
  12 N.Y.3d 348 (2009) ............................................................................................................. 25

*Kleeberg v. Sipser*,
  265 N.Y. 87 (1934) ................................................................................................................. 11

*Levy v. Nissani,*
    115 N.Y.S.3d 418 (2d  Dep't 2020) ....................................................................... 10

*Lewis v. Zon,*
    573 F. Supp. 2d 804 (S.D.N.Y. 2008) ...................................................................... 6

*Live Face on Web, LLC, v. Five Boro Mold Specialist, Inc.,*
    No. 15-cv-4779, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016)................................ 23

*Marotte v. City of New York,*
    No. 16-cv-8953 (GHW), 2019 WL 1033798 (S.D.N.Y. Mar. 5, 2019)............................. 6, 25

*Milkovich v. Lorain Journal,*
    497 U.S. 1 (1990) ........................................................................... 15, 16, 21, 24

*Mimedx Group, Inc. v. Osiris Therapeutics, Inc.,*
    No. 16-cv-3645, 2017 WL 3129799 (S.D.N.Y. July 21, 2017) ................................ 19

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP,*
    No. 17-cv-07568, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ................................ 11

*MiMedx, Inc. v. Sparrow Fund Mgmt. LP,*
    No. 17-cv-7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018)................................ 25

*New York City Dist. Council of Carpenters Pension Fund v. Forde,*
    341 F. Supp. 3d 334 (S.D.N.Y. 2018) ...................................................................... 7

*Nolan v. State of New York,*
    69 N.Y.S.3d 277 (1st Dep't  2018) ....................................................................... 10

*ONY, Inc. v. Cornerstone Therapeutics, Inc,*
    720 F.3d 490 (2d Cir. 2013)...................................................................... *passim*

*Padnes v. Scios Nova Inc.,*
    No. C 95-1693 MHP, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996) ....................... 19

*Rapaport v. Barstool Sports, Inc.,*
    No. 18 CIV. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021)............................ 23

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
    53 F. Supp. 3d 705 (S.D.N.Y. 2014) ..................................................................... 10

*Sandals Resorts Int'l Ltd. v. Google, Inc.,*
    925 N.Y.S.2d 407 (1st Dep't 2011) ....................................................................... 11

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
  No. 150374/2011, 36 Misc. 3d 1231(a), 2012 WL 3569952
  (Sup. Ct. N.Y. County Aug. 16, 2012) ................................................................... 11

*Solys Med., LLC v. Organogensis, Inc.*,
  No. 18-cv-30, 2018 WL 10579659 (E.D. Va. Dec. 12, 2018) ................................. 19

*Steinhilber v. Alphonse*,
  68 N.Y.2d 283 (1986) ................................................................... 22, 23, 24

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ................................................................... 14

*Underwager v. Salter*,
  22 F.3d 730 (7th Cir. 1994) ................................................................... 18

*Valley Elecs. AG v. Polis*,
  No. 21-2108-CV, 2022 WL 893674 (2d Cir. Mar. 28, 2022) .......................................... *passim*

*Vega v. Artuz*,
  No. 97-cv-3775, 2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002) ........................................... 7

*Wexler v. Dorsey & Whitney LLP*,
  815 F. App'x 618 (2d Cir. 2020) ................................................................... 9

## **Rules and Statutes**

Fed. R. Civ P. 8 ................................................................... 25

Fed. R. Civ P. 12(b)(6) ................................................................... 8

28 U.S.C. § 636(b)(1) ................................................................... 6

## PRELIMINARY STATEMENT

After meticulously reviewing the allegations in Cassava's 185-page amended complaint and its 106 exhibits (spanning nearly 1,600 pages), Magistrate Judge Wang issued a well-reasoned Report and Recommendation (Dkt. 105, "R&R" or "Report"), finding that all claims against the Dot.com Defendants should be dismissed with prejudice.  The Report concluded that Cassava's defamation claims fail because all of the challenged statements are either non-actionable scientific discourse or opinion.  The Report also correctly found that Cassava had failed to plead facts supporting actual malice or causation, and that Cassava had abandoned its civil conspiracy claim.  And, finally, Magistrate Judge Wang properly found that Cassava's failure to satisfy Rule 8 provided another, independent grounds for dismissal.

Cassava filed this lawsuit solely to stifle criticism of its experimental Alzheimer's drug, simufilam.  It is legally baseless—as the Report correctly found.

Cassava's objections (Dkt. 109, "Obj.") rehash many of the same arguments advanced in its opposition (Dkt. 95, "Opp.") and properly rejected in the Report.  For the following reasons, as well as those previously stated (*see* Dkt. 87, "Br."; Dkt. 96, "Reply"), the Dot.com Defendants respectfully submit that the Court should adopt the Report and dismiss all claims with prejudice.

## BACKGROUND[1]

Magistrate Judge Wang's Reports (*see* R&R at 2-7; Neuroscientists' R&R at 2-16) and the Dot.com Defendants' opening brief (*see* Dkt. 87, "Br." at 2-10) describe the relevant facts and allegations, as set forth in the First Amended Complaint (*see* Dkt. 30, "FAC") and incorporated documents (*see* Dkts. 30-1 to 39-6).  An abbreviated summary is provided below.

---

[1] Capitalized terms herein have the same definitions as in the Report.  Unless otherwise noted, internal case citations have been omitted.

## A. **Cassava's Disputed Research and Appearance of Data Manipulation**

Cassava is currently sponsoring clinical studies of an experimental drug—simufilam—to treat patients with Alzheimer's disease.  (FAC ¶¶ 36-37.)  According to Cassava, simufilam improves brain health by targeting a protein distorted in the brain of Alzheimer's patients and reverting it to its "native, healthy conformation."  (*Id.* ¶¶ 38-39.)  Cassava's claims are based on research by Dr. Hoau-Yan Wang, a professor at CUNY, and Dr. Lindsay Burns, Cassava's SVP of Neuroscience and the spouse of Cassava's CEO, Remi Barbier.  (*Id.*, Ex. 3 at 10-29.)

### 1. Contested Findings from Simufilam's Phase 2b Trial

In May 2020, Cassava disclosed adverse findings from its "Phase 2b" clinical trials of simufilam.  (*Id.* ¶ 73.)  In August 2020, Cassava sought to dismiss the study's findings as "anomalous and highly improbable," and Cassava's CEO said the Company was conducting a "comprehensive analysis" of the results, which he described as a "re-do."  (*Id.* ¶ 73; Ex. 39 at 2.) In September 2020, Cassava reported that its "re-do" had found positive evidence of simufilam's "effects on biomarkers."  (*Id.*, Ex. 39 at 2.)

### 2. The Citizen Petition and Cassava's Admission of Errors

In August 2021, Defendants David Bredt and Dr. Geoffrey Pitt (the "Neuroscientist Defendants") submitted a Citizen Petition to the FDA.  (*Id.* ¶¶ 13-14, 120, Ex. 3.)  The Citizen Petition described "grave concerns about the quality and integrity of the laboratory-based studies surrounding [simufilam] and supporting the claims for its efficacy."  (FAC, Ex. 3 at 3.)  It also asked the FDA to "halt the clinical studies" "pending a thorough audit of the publications and data relied on by Cassava."  (*Id.*)[2]  In response, on September 3, 2021, Cassava's CEO admitted

---

[2] On February 10, 2022, the FDA denied the Citizen Petition's requests "solely on the grounds that [the] requests are not the appropriate subject of a citizen petition."  (*Id.*, Ex. 15 at 3-4.)

to "errors" in the research papers concerning simufilam but described them as "visual errors," "not material errors."  (FAC, Ex. 104 at 8.)  He also said "[t]here may be more [errors] to come, I just don't know" and claimed that "the data analysis is correct," even though "the visual display of the data is not correct."  (*Id.*)

       3.  <u>Investigations and Lawsuits</u>

Around the same time, peer-reviewed scientific journals that had published papers by Drs. Burns and Wang initiated investigations into the allegations of data manipulation.  (FAC ¶¶ 301-302.)  At least three scientific journals have retracted seven research papers co-authored by Drs. Burns or Wang; four other scientific journals have issued Expressions of Concern or corrections concerning six research papers by Drs. Wang or Burns.  (*See* FAC, Exs. 16-19.)

Beginning in August 2021, several investors filed class actions against Cassava asserting securities fraud claims in connection with the development of simufilam.  *See In Re Cassava Sciences, Inc. Securities Litigation*, No. 21-cv-00751-DAE (W.D. Tex.).  Shareholder derivative actions followed.  *See Zagami et al v. Barbier et al*, No. 21-cv-00998-DAE (W.D. Tex.).

In November 2021, Cassava disclosed that "certain government agencies" had sought "corporate information and documents."[3]  Later that month, the Wall Street Journal reported that the SEC was investigating allegations that Cassava had "manipulated research results of its experimental Alzheimer's drug," and Cassava's CEO confirmed that the allegations had also prompted inquiries by the NIH and CUNY.  (FAC ¶¶ 146-48.)[4]  In July 2022, Reuters reported

---

[3] Cassava Sciences, Inc., Form 10-Q (Nov. 15, 2021) at 34, https://www.cassavasciences.com/static-files/b5c598fa-994d-4b13-b0ae-cb526bd9fc8a

[4] Dave Michaels and Joseph Walker, "SEC Investigating Cassava Sciences, Developer of Experimental Alzheimer's Drug," *The Wall Street Journal* (Nov. 17, 2021), https://www.wsj.com/articles/cassava-sciences-alzheimers-sec-investigation-11637154199

that Cassava was under criminal investigation by the DOJ relating to whether Cassava "manipulated research results" for simufilam.[5]

**B.   Dot.com Defendants' Allegedly Defamatory Statements**

It is within this context that the Dot.com Defendants made the statements that Cassava attacks as defamatory.  (*See* Dkt. 30-8 (Ex. 6); Dkt. 30-9 (Ex. 7); Dkt. 30-12 (Ex. 10); Dkt. 30-14 (Ex. 12), Dkt. 30-1 (Appendix A); *see also* FAC ¶¶ 133-158.)

*First,* on November 2, 2021, following the publication of the Citizen Petition in August 2021, the Dot.com Defendants sent a 23-page letter to the FDA to express "grave concerns regarding Cassava" based on "an assessment" of its simufilam studies "made available for public scrutiny."  (*Id.* ¶¶ 133-35, Ex. 6 ("FDA Letter") at 2.)  The letter stated that the Dot.com Defendants "support the allegations made" in the Citizen Petition (*id.*); described the "methods by which, we allege, Cassava Sciences has either obfuscated or fabricated data during" clinical trials (*id.*); stated that "there is a material concern regarding the sponsor's credibility and very real risk of exposing thousands of patients to a compound with unknown risk" (*id.*); and provided a list of "questions that should be answered before trials continue" (*id.* at 5).  The letter concluded that "[g]iven the obfuscation of clinical benefit outlined in this document . . . there is no justification for large-scale exposure to this drug" (*id.* at 23), "only the conduct of a full, thorough investigation of the data, investigators, sponsor, and collaborators can provide reassurance" (*id.* at 24), and asked that the simufilam program "be reviewed" by the FDA (*id.*).

---

[5] Marisa Taylor and Mike Spector, "Cassava Sciences faces U.S. criminal probe tied to Alzheimer's drug, sources say," *Reuters* (July 27, 2022), https://www.reuters.com/business/healthcare-pharmaceuticals/exclusive-cassava-sciences-faces-us-criminal-probe-tied-alzheimers-drug-sources-2022-07-27/

*Second,* on November 3, 2021, the day after sending the letter to the FDA, the Dot.com Defendants published a "36-page report titled 'Cassava Sciences: A Shambolic Charade'." (*Id.* ¶¶ 136-38, Ex. 7). In the report, the Dot.com Defendants noted that they held "stock and options positions that may benefit from a decline in Cassava Sciences' stock price," (*id.* Ex. 7 at 3), and explained that their "analysis is entirely based on publicly available information and visible for everyone to see and challenge" (*id.* at 4). As summarized on the report's overview slide (*id.* at 6), the report repeated the "key issues and questions" raised in the letter to the FDA (*id.*); described "Cassava's suspicious history and the obvious scientific misconduct pervading all of Cassava's preclinical science" (*id.*); presented "the egregious data anomalies and manipulation of both the biomarker and cognitive measurements from Cassava's Phase 2 trials" (*id.*); and presented an "honest account of what Cassava did, and theory of why they did so" (*id.*)— described on a slide titled "[o]ur version of events" (*id.* at 35); and, finally, repeated the assertion that "only the conduct of a full, thorough investigation of the data, investigators, sponsor, and collaborators can provide reassurance" (*id.* at 36).

*Third,* on November 29, 2021, the Dot.com Defendants posted a "17-page report named 'SavaDx_Theranos2.0.pdf' and titled 'SavaDx Exposed'." (*Id.*, ¶¶ 149-52, Ex. 10.) The report examined "SavaDx", Cassava's "investigational diagnostic to detect Alzheimer's disease" (*id.,* Ex. 10 at 3) with the subtitle: "a revolutionary diagnostic for Alzheimer's Disease or a scam of scientifically illiterate investors?" (*id.* at 2). The report questioned the research underlying SavaDx (*id.* at 5-8) and summarized data and email correspondence the Dot.com Defendants had obtained through public records requests (*id.* at 9-16). The report also included links to websites containing the cited materials. (*Id.* at 17, 28.)

*Fourth*, in December 2021, the Dot.com Defendants posted a "9-page report titled 'Cassava and the Wang Lab: Seeing Through the Blind'."  (*Id.* ¶¶ 156-58, Ex. 12).  The report raised concerns about Cassava and Dr. Wang based on additional email correspondence obtained through public records requests.  (*Id.* at 9.)  Specifically, the report stated that "[b]ased on the obtained emails" the Dot.com Defendants "conclude" there is "a risk of biomarker data manipulation" and "previous assurances of data integrity are suspect."  (*Id.*)  Again, the report included links to websites containing the cited materials.  (*Id.*)

The Dot.com Defendants also posted commentary about Cassava and its underlying science on Twitter.  (*See* FAC ¶¶ 7, 287, Appendix A.)

Cassava filed the FAC on November 4, 2022, asserting claims against the Dot.Com Defendants for defamation (*id.*, Count 4, ¶¶ 475-89) and conspiracy to defame (*id.*, Count 5, ¶¶ 490-95).  On March 9, 2023, the Dot.com Defendants moved to dismiss the FAC. (*See* Dkts. 87, 95, and 96.)  On January 5, 2024, Magistrate Judge Wang issued a Report recommending that all claims against the Dot.com Defendants be dismissed with prejudice.  (*See* Dkt. 105.)

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation on a motion to dismiss "may accept, reject, or modify, in whole or in part" the report's recommendations.  28 U.S.C. § 636(b)(1).  A district court reviews *de novo* "those portions of the report" to which a party has timely and specifically objected, 28 U.S.C. § 636(b)(1)(C), and reviews the remainder of the report for clear error, 28 U.S.C. § 636(b)(1)(A).  *See Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  However, where objections "simply reiterate[] the original arguments, the Court will review the Report strictly for clear error."  *See, e.g.*, *Marotte v. City of New York*, No. 16-cv-8953 (GHW), 2019 WL 1033798, at *1-2 (S.D.N.Y. Mar. 5, 2019).

As explained below, Cassava's objections are either (i) general, superficial attacks on the Magistrate Judge, or (ii) recycled versions of the same arguments made in opposition. Accordingly, this Court need only review the Report for "clear error." *See Vega v. Artuz*, No. 97-cv-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal."); *New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.").

Under either standard, the Report should be adopted.

## ARGUMENT

## I.  THE REPORT CORRECTLY FOUND CASSAVA FAILED TO STATE A CLAIM

Magistrate Judge Wang meticulously summarized Cassava's allegations and the challenged statements (R&R at 2-7), carefully applied the law (*id.* at 8-12), and correctly concluded that all of the Dot.com Defendants' statements are either protected scientific discourse or nonactionable opinions.

*First,* the Report found that the Dot.com Defendants' statements challenging the integrity of the research and studies concerning simufilam and SavaDX were nonactionable scientific discourse under the Second Circuit's holding in *ONY, Inc. v. Cornerstone Therapeutics, Inc*, 720 F.3d 490 (2d Cir. 2013).  (R&R at 9.)  The Report further found that even if *ONY* did not apply, the Dot.com Defendants' statements on these subjects were still not actionable opinions under *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153–54 (1993), because they were accompanied by a recitation of their underlying facts and did not imply the existence of undisclosed underlying

facts.  (R&R at 9.)  As the Report also correctly noted, Cassava's claims "rely principally" on this set of statements.  (*Id.* at 10.)

*Second*, the Report turned to the Dot.com Defendants' statements on other subjects, such as "Cassava's history, insiders, 'shady players,' Scientific Advisory Board, and one of its clinical investigators."  (*Id.* at 10-11.)  The Report correctly found that statements on these subjects were nonactionable opinion under New York law because "they rely on and link to publicly available information," are "rhetorical and hyperbolic," and, when considered in context "together with the Dot.Com Defendants' disclosure of their short positions," the statements would be "understood by an ordinary reader as pure opinion."  (*Id.*)

## II.  EACH OF CASSAVA'S OBJECTIONS FAILS

### A.  Cassava's First Objection Flatly Mischaracterizes the Report

Cassava argues that although the R&R "states the correct standard" under Rule 12(b)(6), Magistrate Judge Wang "does not apply it."  (Obj. at 7-9.)  In fact, the Report appropriately applied *Iqbal* and *Twonbly* to reject Cassava's pleading "grounded on mere suspicion," "labels and conclusions," and "naked assertion[s]."  (R&R at 7; *see also id.* at 8-12.)

Cassava claims that the "R&R does not accept the FAC's allegations as true, opting to weigh the evidence instead."  (*Id.* at 8.)  But Cassava identifies only one purported example of this supposed impropriety: "the Magistrate Judge choses [sic] to 'frame' the Dot.com Defendants' statements in a way that renders them 'non-actionable.'"  (*Id.* (citing R&R at 9).)  This objection is based entirely on the R&R's use of the phrase "framed one way."  (*Id.* ("Framed one way, the Dot.Com Defendants summarize the publicly available data concerning simufilam and offer their opinion . . .")).)  According to Cassava, this phrasing shows that Magistrate Judge Wang construed the FAC's allegations *against* Cassava in violation of *Iqbal*:

"if an allegation can be framed one way" (*i.e.*, as nonactionable "scientific analysis"), Cassava argues, "it can necessarily be framed some other way" more "favorable to Cassava." (Obj. at 8.)

But this ignores what Magistrate Judge Wang actually did: appropriately, and in an abundance of caution, consider two alternative legal "framings" and conclude that the Dot.com Defendants' statements were nonactionable from both possible points of view. Specifically, Magistrate Judge Wang concluded that (i) if the analysis were "framed" through the prism of *ONY*, the statements in question would be nonactionable because of their place in scientific debate (R&R at 9 (citing *ONY*, 720 F.3d 490); and if, in the alternative, (ii) the same statements were analyzed outside the *ONY* framework, they would nevertheless be nonactionable as "pure opinion" because they "are 'accompanied by a recitation of the facts on which [they are] based . . . and do[] not imply the existence of undisclosed underlying facts.'" (R&R at 9-10 (citing *Gross*, 82 N.Y.2d at 153–54.) Cassava also fails to appreciate that "[t]he determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *Wexler v. Dorsey & Whitney LLP*, 815 F. App'x 618, 621 (2d Cir. 2020).

Hence, Cassava's first objection simply mischaracterizes the Report and the legal standard. The objection is frivolous.

## B. Cassava's Second Objection Repeats Meritless Arguments Concerning Imputations of "Fraud" that Magistrate Judge Wang Correctly Rejected

Cassava claims the Report "wrongly concludes that it was permissible for the Dot.com Defendants to state and imply that Cassava is a fraud." (Obj. at 9-11.) This objection merely rehashes the same failed arguments from its opposition brief. (*See* Opp. 9-13.)

As the Report correctly found: "[E]ven accusations of criminal behavior are not actionable if, understood in context, they are opinion rather than fact." (R&R at 10 (quoting *Hayashi v. Ozawa*, No. 17-CV-2558 (AJN), 2019 WL 1409389, at *2–5 (S.D.N.Y. Mar. 28,

2019) (collecting cases).)  Magistrate Judge Wang recognized that "[c]ontext matters," and the "Dot.Com Defendants' rhetorical and hyperbolic statements published on their websites named 'cassavafraud.com' and 'simuflimflam.com,' together with the Dot.Com Defendants' disclosure of their short positions (ECF 30-9 at 3), would be understood by an ordinary reader as pure opinion."  (R&R at 10-11 (citing *Hayashi*, 2019 WL 2409389, at *5).)

Moreover, Cassava claims that Magistrate Judge Wang "ignore[d]" a "long history of legal precedent holding that statements falsely accusing a plaintiff of fraud or fraudulent activity are actionable."  (Obj. 10-11.)  None of the cases cited by Cassava are analogous.  None involve scientific discourse, and each involved defendants whose actionable statements rested upon claims that they knew of non-public facts.  (*Id.*)  For example, the *Restis* case turned on accusations against the plaintiff that alluded to corroborating, undisclosed documents.  *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721-22 (S.D.N.Y. 2014) (involving accusations about shipping company's business "scheme" in Iran where "[d]efendants concealed from public review and scrutiny the two documents" they "cited as corroboration for the accusations"); *see also Coliniatis v. Dimas*, 848 F. Supp. 462, 469 (S.D.N.Y. 1994) (involving allegedly defamatory statements "made in the context of an attorney-client relationship" where attorney accused client's employee of participating in illegal kickback scheme).[6]

In fact, the Report's finding and reliance on *Hayashi* is reinforced by a long line of cases holding that accusations of criminal conduct are nonactionable, where a reasonable reader would

---

[6] Three of the cases Cassava accuses Magistrate Judge Wang of "ignoring" (Obj. at 10-11) were not even cited in Cassava's Opposition.  (*See* Opp. at iv (Table of Authorities).)  And these cases, too, are easily distinguishable.  *See Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (2d Dep't 2020) (involving statements made at synagogue accusing family of being "thieves" and "con artists"—a context that implied to other attendees that the family had "swindled the plaintiff out of money."); *Nolan v. State of New York*, 69 N.Y.S.3d 277, 284 (1st Dep't 2018) (involving

10

understand the accusations, in context, as opinions—and particularly where, as here, the statements were conveyed as "*allegations* to be investigated rather than as *facts*." *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414 (1st Dep't 2011); *see also MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-07568, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018) (finding that short-seller's statements accusing plaintiff of "revenue fraud" and predicting that employees would be "dragged away in handcuffs" were nonactionable opinions) (collecting cases); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, No. 150374/2011, 2012 WL 3569952, at *2 (Sup. Ct. N.Y. County Aug. 16, 2012) (assertions of "fraud" were non-actionable opinions, particularly where the statements "explicitly sought an independent investigation by the government regulator and the other sophisticated, professional readers"); *Brian v. Richardson*, 87 N.Y.2d 46, 54 (1995) (dismissing defamation claims where the context made clear that the "specific charges about plaintiff were allegations"); *Fedak v. YIMBY, Inc.*, No. 17-cv-8825, 2018 WL 6697963, at *6 (S.D.N.Y. Dec. 20, 2018) (same).

Here, as elsewhere, Cassava cherry-picks portions of the Dot.com Defendants' statements and urges the Court to review them in isolation.  (Obj. at 9; Opp. at 6-7.)  This effort to analyze partial statements in a vacuum—divorced from context—is wrong as a matter of law.  *See Valley Elecs. AG v. Polis*, No. 21-2108-CV, 2022 WL 893674, at *1 (2d Cir. Mar. 28, 2022) (instead of "sifting through a communication for the purpose of isolating and identifying assertions of fact," courts "consider the broader written and social contexts of the alleged statements, which are often the key consideration[s] in categorizing a statement as fact or opinion.").  For example, Cassava focuses on three sentences (*see* Obj. at 9-10)—each lifted from the Dot.com

---

statements indicating plaintiff was HIV-positive); *Kleeberg v. Sipser*, 265 N.Y. 87, 93 (1934) (involving statements attacking lawyer's integrity).

Defendants' 23-page FDA Letter—while ignoring the rest of the Letter, which explained, at the outset, that "what follows is a description of the methods by which, *we allege*, Cassava Sciences has either obfuscated or fabricated data during these clinical trials." (Dkt. 30-8 (Ex. 6) at 2.) The FDA Letter also contained a painstaking recitation of the bases for the Dot.com Defendants' opinions (*id.* at 3-24); raised "key questions" to be addressed (*id.* at 5, 6, 13, 17, 22, and 23); and called on the FDA to conduct a "thorough investigation" (*id.* at 24). Thus, when approaching the relevant statements holistically and in context, as the law requires and as Magistrate Judge Wang has done here, any reasonable reader would understand that the Dot.com Defendants were conveying opinions, not facts. (*See* R&R at 3-5, 9-10.)

Finally, Cassava argues that the Report "improperly ignored" Cassava's allegations that the Dot.com Defendants' statements "were factually inaccurate." (Obj. 10.) That is wrong. The Report correctly rejected this argument (i) by relying on *ONY,* which recognized that an assessment of the statements' "verifiability" was ill-suited to this context of scientific discourse (*see* R&R at 9) and (ii) by recognizing that the Dot.com Defendants' statements "rely on Cassava's own public statements and data, and other publicly available information obtained through FOIA and FOIL requests"—"exhaustively linked, referenced and analyzed" (*id.*) *See also Eros Int'l. PLC v. Mangrove Partners*, No. 653096/2017, 2019 WL 1129196, at *8 (N.Y. Sup. Ct. N.Y. County Mar. 08, 2019) (dismissing claims where plaintiff could "not dispute the underlying facts" or "the existence of the source material"). Indeed, this objection fails for the additional reason that Cassava did not even plead falsity—relying instead on misleadingly quoted portions of statements, followed by flat, conclusory denials. (*See* Br. at 14-16; Opp. at 6-7; Reply at 5.)

**C.  Cassava's Third Objection Wrongly Accuses Magistrate Judge Wang of Failing To Evaluate the Allegedly Defamatory Statements**

Cassava contends that Magistrate Judge Wang failed to "evaluat[e] each allegedly defamatory statement (or set of statements) to determine whether it is actionable" and thus "short-circuited Cassava's rights."  (Obj. at 11-14.)  In fact, the Report reflects a painstaking effort to wade through the allegations and facts set forth in Cassava's nearly 1,600-page pleading.  As Magistrate Judge Wang recognized, Cassava's pleading "is tantamount to dropping all of the scientific discourse – spanning years of research – in the lap of a randomly selected federal judge."  (Neuroscientists' R&R at 22.)  Now, Cassava seeks to wield its inordinate pleading as a sword to attack the Report's careful evaluation of its careless pleading.  This objection fails.

The Report correctly recognized that the FAC's allegations against the Dot.com Defendants were based primarily on four publications, which the Report spends more than five pages summarizing.  (R&R at 2-7.)  Indeed, the Report's meticulous assessment of the allegedly defamatory statements in the Dot.com Defendants' publications is reflected throughout the Report, including, for example, by Magistrate Judge Wang's review of the source material hyperlinked in the presentations (*id.* at 6, n.8) and identification of duplicative slides in Cassava's voluminous filings (*id.* at 5, n. 6; *id.* at 6, n. 9).

In addition to the four publications, the FAC also includes a general reference to allegedly defamatory social media posts (*see* FAC ¶¶ 7, 287) and attaches an Appendix purporting to compile "over 840 false and defamatory statements" by Defendant QCM and the Dot.com Defendants (*see* Dkt. 30-1 (Appendix A).)  However, rather than pleading facts showing that any specific social media post was defamatory, the FAC relies entirely on a blanket assertion that all of the posts were defamatory because they "reinforced" the "essential message"

13

that "Cassava is a fraud." (FAC ¶ 287.) This type of conclusory and generalized pleading is precisely the type disallowed by *Iqbal* and *Twombly*. And "[v]agueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 251 (2d Cir. 2017) (finding insufficient a complaint's reference "generally" to an article with "a scattershot collection of nearly a dozen objections to [defendant's] publications"). In Opposition, Cassava made a futile and improper effort to cure this deficiency—submitting yet another 365-page "Appendix," which purported to assign allegations in the FAC to each statement, supposedly indicating that each statement was false and made with actual malice. (Dkt. 95-1.) The Report properly rejected these improper and belated pleading tactics, finding that the "addition of a 365-page 'appendix' listing over 1000 statements . . . does not save Cassava's claim." (R&R at 11.) Contrary to Cassava's objections, the Report did not "short-circuit" Cassava's rights (Obj. at 14); rather, it was Cassava that sought to evade the requirements of *Iqbal*, *Twombly,* and Rule 8 with its incoherent pleading.

Moreover, Cassava suggests that Magistrate Judge Wang was required to provide a written analysis of each of the "*870+ statements*" (although even Cassava is apparently unable to pin down the exact number of statements it believes it pled). None of the cases cited by Cassava supports this contention. (Obj. at 11-12.) At most, Cassava points to decisions that concluded certain statements were actionable while others were not. Certainly, it does not follow that Magistrate Judge Wang erred by finding *none* of the statements Cassava pled to be actionable. Indeed, Cassava itself cites *Biro* (*id.* at 11), which recognized that Courts routinely evaluate a "set of statements" together. *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012). That is precisely the approach reflected in the Report: (1) finding the primary set of "science-

based" statements nonactionable under both *ONY* and *Gross* (Report at 9-10); and (2) finding the remaining set of statements—on topics like "Cassava's history, insiders, 'shady players,' Scientific Advisory Board, and one of its clinical investigators"—nonactionable because "they rely on and link to publicly available information," use a "hyperbolic and rhetorical tone," and, when considered in context, "together with the Dot.Com Defendants' disclosure of their short positions," would be "understood by an ordinary reader as pure opinion" (*id.* at 10-11).

Lastly, Cassava identifies four "examples" of statements that it claims Magistrate Judge Wang failed to evaluate.  (Obj. at 13.)  Yet these examples merely illustrate, once again, Cassava's refusal to engage with the statements holistically and in context.  *See Hayashi*, 2019 WL 1409389, at *3.  The first example (FAC ¶ 133) is another selective quotation from the 23-page FDA Letter, which the Report addresses at length (at 3-5).  The other three examples (FAC App. A at 126, 127, and 4) are from de-contextualized tweets that in any case are referred to only generally in the FAC (¶¶ 7, 287) and are addressed accordingly in the Report (at 11).

This objection fails.  And, Cassava's attacks on Magistrate Judge Wang's diligence ring hollow in light of the morass of Cassava's own pleading.

**D.  Cassava's Fourth Objection Asks the Court to Adopt An Incorrect Legal Standard to Assess Whether the Challenged Statements Are Fact or Opinion**

Cassava argues that Magistrate Judge Wang committed "legal error" in its assessment of whether the Dot.com Defendants' statements were fact or opinion because the Report does not mechanically apply the four factors set forth in *Milkovich v. Lorain Journal*, 497 U.S. 1, 11-14 (1990) to determine whether a statement is fact or opinion: "(1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared."  (Obj. at 14-17.)

15

As an initial matter, unlike the Report, Cassava did not even cite *Milkovich* in its Opposition, relying instead on the three-factor formulation of this inquiry set by the New York Court of Appeals.  (Opp. at 9 (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (1993).)  In any event, this objection fails because courts have repeatedly cautioned against a rigid application of the *Milkovich* or *Gross* factors, *see Hayashi*, 2019 WL 1409389, at *3, and emphasized the importance of taking "a holistic approach to this inquiry" *see Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014).  Here, the Report properly evaluated whether a reasonable reader would have understood the Dot.com Defendants' statements as conveying facts or opinions.  (R&R at 9-11.)  Indeed, the Report's recognition that "context matters" (*id.* at 10) echoes the Second Circuit and New York Court of Appeals, which have each held that it is the "broader written and social contexts of the alleged statements" that are "often the key consideration[s] in categorizing a statement as fact or opinion."  *Valley Elecs. AG v. Polis*, No. 21-2108-CV, 2022 WL 893674, at *1 (2d Cir. Mar. 28, 2022) (citing *Davis*, 24 N.Y.3d at 272).

Cassava's objections also misrepresent the law.  In particular, Cassava claims that the "critical factor" under *Milkovich* is "whether the statements are verifiable."  (Obj. at 15.)  That is wrong, and neither of the two cases Cassava cites here stand for that proposition.  *See Coliniatis v. Dimas*, 848 F. Supp. 462, 467-68 (S.D.N.Y. 1994) (considering verifiability as one of three factors bearing on determination of whether challenged statement was fact or opinion in context); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) (acknowledging Supreme Court's holding that accusation of "blackmail" was opinion in relevant context).  A challenged statement's context, not its verifiability, is the critical factor used by courts to determine whether the statement is opinion or fact.  *See Valley Elecs.*, 2022 WL 893674, at *1 (concluding "as a matter of law" that "statements are nonactionable opinions" based on their context alone, and

noting that "[t]his conclusion is reinforced by the fact that the vast majority" of the challenged statements "carry no precise meaning as used" and are thus not verifiable).

Moreover, where, as is the case here, the challenged statements were made in the context of scientific discourse, the statements' verifiability need not be considered at all.  Indeed, the plaintiff in *ONY* made the same argument Cassava now makes, challenging the district court's dismissal of its claims "without conducting the more fine-grained analysis required by *Milkovich*."  *ONY*, 720 F.3d at 496.  And the "verifiability" factor is what led the Second Circuit to conclude that scientific discourse was ill-suited to the traditional "fact-opinion paradigm of First Amendment jurisprudence."  *Id.*  On one hand, the Court reasoned, the "very premise of the scientific enterprise" is that it "engages with empirically verifiable facts about the universe," but on the other hand, "it is the essence of the scientific method that the conclusions of empirical research are tentative and subject to revision."  *Id.*  Thus, the Second Circuit concluded that in the context of a "novel area of research," even assertions of "fact" may be "highly controversial," and as such, "courts are ill-equipped to [] referee such controversies."  *Id.* at 497.

In sum, the "verifiability" of the Dot.com Defendants' statements is not "the critical factor," as Cassava claims.  In fact, it is rarely a dispositive factor, *see Valley Elecs.*, 2022 WL 893674, at *1, and it is inapplicable entirely in the context of scientific discourse, *see ONY*, 720 F.3d at 496.  Thus, it was not an error for the Report to focus primarily on the statements' context to assess whether an ordinary reader would view them as facts or opinions.

### E.  Cassava's Fifth Objection Misconstrues the Second Circuit's Opinion in *ONY*

Cassava claims that "*ONY* has no relevance here, and it was error for the R&R to rely on it." (Obj. at 17-20.)  This objection is based on a plain misreading of *ONY*, which the Report correctly applied.  In *ONY,* the Second Circuit held that statements made on "subjects about which there is legitimate ongoing scientific disagreement" are more akin to opinion than to fact

and thus nonactionable, so long as the speaker "draws conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions." *ONY,* 720 F.3d at 498.  However, *ONY*'s reasoning is not, as Cassava claims, confined to statements "made in a peer-reviewed academic journal to advance scientific debate."  (Obj. at 18.)  Nor must statements be "directed to the relevant scientific community" to fall within *ONY.* (*Id.* at 19.)

*First*, the factual context of *ONY* itself is not that of pure scientific debate.  Rather, the parties in *ONY* were rival pharmaceutical companies disputing the findings of a study commissioned and paid for by the defendant "as part of its effort to promote and sell" its product by comparing it with plaintiff's product.  *ONY*, 720 F.3d at 494.  While the study was published in a scientific journal, there was some dispute over the journal's decision to publish the sponsored article, and in any case this forum was not central to the Court's broad determination that, "as a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation."  *Id.* at 492.

*Second,* in its reasoning, the Second Circuit relied on three out-of-Circuit decisions where courts declined to referee "scientific controversies," none of which involved claims challenging statements in academic journals.  *See Underwager v. Salter*, 22 F.3d 730, 734 (7th Cir. 1994) (involving statements in television interviews, book reviews, and presentations challenging plaintiff's conclusions in context of "scientific debates" concerning memories of sexual abuse); *Arthur v. Offit*, No. CIV.A. 01:09-CV-1398, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) (recognizing that statements in a magazine article concerning perceived links between vaccines and autism fell within "the thicket of scientific debate" that courts "have a justifiable reticence about venturing into . . . especially in the defamation context"); *Padnes v. Scios Nova Inc.*, No. C

95-1693 MHP, 1996 WL 539711, at *6 (N.D. Cal. Sept. 18, 1996) (declining to assess the

reasonableness or accuracy of press releases and other disclosures that touted the findings of a

Phase II clinical study for a new drug).  After analyzing those three cases, the Court recognized

that, where "a statement is made as part of an ongoing scientific discourse about which there is

considerable disagreement, the traditional dividing line between fact and opinion is not entirely

helpful," and "statements about contested and contestable scientific hypotheses . . . are more

closely akin to matters of opinion."  *ONY*, 720 F.3d at 497.  The Court ultimately held as

follows:

> We therefore conclude that, to the extent a speaker or author draws
> conclusions from non-fraudulent data, based on accurate
> descriptions of the data and methodology underlying those
> conclusions, on **subjects about which there is legitimate ongoing
> scientific disagreement**, those statements are not grounds for a
> claim of false advertising under the Lanham Act [ . . . or] New
> York state common law [ . . . because] New York law is, if
> anything, more protective of free speech interests and less
> expansive in permitting causes of action based on speech, than
> federal law.

*ONY,* 720 F.3d at 498.[7]

Magistrate Judge Wang correctly applied *ONY*'s holding to Cassava's claims.  (R&R at

9.)  Specifically, the Report recognized that most of the Dot.com Defendants' statements

concerned subjects about which there is legitimate ongoing scientific disagreement, focusing on

---

[7] None of the three cases cited by Cassava suggest the Report erred by applying *ONY* to this case, and, unlike here, each involved statements made in advertisements or promotional materials.  (Obj. at 19, n. 5 (*Eastman Chem. Co. v. Plastipure, Inc*., 775 F.3d 230, 235 (5th Cir. 2014) (declining to apply *ONY* to commercial advertisements because if "advertisements" are "immune from Lanham Act scrutiny simply because their claims are open to scientific or public debate" then "the Lanham Act would hardly ever be enforceable."); *Mimedx Group, Inc. v. Osiris Therapeutics, Inc*., No. 16-cv-3645, 2017 WL 3129799, at *8 (S.D.N.Y. July 21, 2017) (holding that *ONY* did not preclude a finding that statements in press release and brochure "qualify as commercial speech"); *Solys Med., LLC v. Organogensis, Inc*., No. 18-cv-30, 2018 WL 10579659, *5 (E.D. Va. Dec. 12, 2018) (same, regarding email advertisement).

"the same questions about the integrity of the research underlying Cassava's development of simufilam as were raised by the Neuroscientist Defendants." (*Id.* at 9.)  Next, the Report correctly concluded that Cassava failed to allege facts sufficient to render the Dot.com Defendants' statements actionable under *ONY*:  That is, on the facts alleged, the Dot.com Defendants' conclusions were (i) drawn from non-fraudulent data (*i.e.*, "Cassava's own public statements and data, and other publicly available information obtained through FOIA and FOIL requests"),[8] and (ii) based on accurate descriptions of the data and methodology underlying their conclusions (*i.e.*, the Dot.com Defendants "summarize the publicly available data," which was "exhaustively linked, referenced and analyzed" in their publications attached to the FAC).  (*Id.*) Accordingly, the Report correctly concluded that "the Dot.Com Defendants' scientific analysis fall squarely under *ONY*." (*Id.*)

*Third*, Cassava again quotes isolated portions of the Dot.com Defendants' statements in an effort to escape *ONY*'s reach.  (Obj. at 18-19 (citing one sentence from the 23-page FDA Letter and two sentences from the 37-page November 3 Presentation).)  Cassava argues that these three allegations show the Dot.com Defendants were not engaged in "scientific debate," but rather, were making "accusations of criminal wrongdoing" that Cassava denies.  (Obj. at 18-19 (citing (FAC ¶¶ 167, 260-65, 280).)  In fact, these examples illustrate the deficiencies in Cassava's entire pleading, which follows a pattern of (a) presenting isolated portions of statements, divorced from their context, (b) mischaracterizing them as factual statements, and

---

[8] Cassava repeatedly refers to supposed accusations of fraud to confuse matters, but this aspect of the *ONY* inquiry focuses on whether Cassava has alleged that the data relied on by the Dot.com Defendants was fraudulent (not on whether the Dot.com Defendants have accused Cassava of fraud); here, Cassava makes no allegations that the data underlying the Dot.com Defendants' conclusions was fraudulent, which is unsurprising given that it is Cassava's public data.  Instead, Cassava challenges only the conclusions drawn from that data, which places its claims squarely within *ONY*, as the Report correctly found.  (R&R at 9-10.)

then (c) asserting conclusory, fact-free, denials.  (*See, e.g.,* FAC ¶ 167 ("Cassava is not a fraud"); ¶ 260 ("Cassava did not know about any of the alleged criminal activities."); ¶ 280 ("Cassava is not a fraud").)  Magistrate Judge Wang correctly found this effort insufficient.  (R&R at 11 ("repeated conclusory statements that these opinions are false does not make them actionable").)

*Fourth*, contrary to Cassava's claims, the Report does not interpret *ONY* as having "replace[d] a century of defamation law to create *carte blanche* immunity for publishers who attack others engaged in a scientific endeavor."  (Obj. at 17.)  As explained above, *ONY* concluded that a mechanical or "fine-grained" application of the *Milkovich* factors was ill-suited to the context of scientific debate, specifically rejecting the factor that considers a statement's "verifiability."  *ONY,* 720 F.3d at 496.  Thus, the holding in *ONY* was both (i) significant insofar as it offered a modified standard for the fact-opinion inquiry, applicable to statements on "subjects about which there is legitimate ongoing scientific disagreement," and (ii) entirely consistent with the "holistic" and contextual approach to this inquiry long followed by courts. *See, e.g., Davis*, 24 N.Y.3d at 272 (collecting cases); *Valley Elecs.*, 2022 WL 893674, at *1; *Hayashi*, 2019 WL 1409389, at *3.

In this context, and elsewhere, Cassava attacks the Report as "incongruous" in holding that the challenged statements are "*either* (a) serious scientific debate about the nature of reality which must be refereed by the scientific community, *or* (b) so hyperbolic that a reader would not understand them to be making an accusation of fact."  (Obj. at 19.)  This is, at best, facile.  The Magistrate Judge's point was not that *the same statements* are either serious scientific debate or else hyperbolic.  Rather, she carefully parsed the Dot.com Defendants' publications to acknowledge that they include statements of these two kinds, nonactionable for two different sets of reasons.

Cassava's objections to the Report's reliance on *ONY* should be rejected.

**F.  Cassava's Sixth Objection Misstates the Law Governing Statements of "Mixed Opinion"**

Cassava argues that Judge Wang "wrongly concludes that the Dot.com Defendants' statements are nonactionable mixed opinion."  (Obj. at 20-22.)  Specifically, Cassava claims the Report erred by "ignor[ing] the allegations showing that the Dot.com Defendants failed to disclose material facts in their publications."  (*Id.* at 21.)  This objection misrepresents the Report and the law.

Cassava's position rests on the notion that a statement is actionable as "mixed opinion," if it is not accompanied by the disclosure of any ostensible fact that the *plaintiff* deems material to the subject.  (*Id.* at 20-22.)  That is wrong.  As the Report correctly found, statements of opinion are nonactionable as "pure opinion," so long as they are "accompanied by a recitation of the facts on which [they are] based . . . and do[] not imply the existence of undisclosed underlying facts."  (R&R at 9-10 (citing *Gross*, 82 N.Y.2d at 153–54).)  There is no requirement to disclose all potentially relevant facts, as Cassava claims; rather, the law provides that "[a]n opinion not accompanied by [] a factual recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon undisclosed facts."  *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).  "Mixed opinion, on the other hand, is an opinion that *does* imply a basis in undisclosed facts, or facts known only to the author, and is actionable."  *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014); *see also Gross*, 82 N.Y.2d at 153–54; *Davis*, 24 N.Y.3d at 269.

Here, Cassava has failed to plead facts showing either (i) that the Dot.com Defendants' opinions were based on facts they failed to disclose, or (ii) that their statements implied to readers they were based on undisclosed facts.  Instead, Cassava merely points to supposed facts that underlie its own opinions (and that it wishes its critics had relied on).  But those allegations

are irrelevant to the test set forth in *Steinhilber*, *Gross*, and *Davis*.  Cassava's "mixed-opinion" objections are all based on this misunderstanding of the law.

### G.  Cassava's Seventh Objection Misconstrues the Report's Findings Concerning Statements on Twitter

Cassava argues that Magistrate Judge Wang "wrongly concludes that the Dot.com Defendants' statements are nonactionable because they are posted on websites, including Twitter."  (Obj. at 22-24.)  This is just wrong:  none of the Report's findings depend solely on the forum or platform on which the challenged statements were made.

Cassava takes issue with the Report's citation to *Ganske,* which found that allegedly defamatory tweets were nonactionable opinion and recognized that Twitter/X is a forum "equally – if not more – informal and freewheeling" than many other internet fora, and statements published on Twitter/X are "generally informal and unedited" and given less credence by readers.  (R&R at 11, n. 13.)  Many courts have reached substantially similar conclusions.  (*See* Br. at 21 (citing *Eros*, 2019 WL 1129196, at *10 (finding tweets by short sellers to be "exactly the type of loose, figurative or hyperbolic statements, [that], even if deprecating the plaintiff, are not actionable."); *Rapaport v. Barstool Sports, Inc.*, No. 18-cv-8783 (NRB), 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) (collecting cases recognizing Twitter and social media as contexts where reasonable readers recognize assertions as opinions); *Live Face on Web, LLC, v. Five Boro Mold Specialist, Inc.,* No. 15-cv-4779, 2016 WL 1717218, at *4 (S.D.N.Y. Apr. 28, 2016) (finding that the use of social media to disseminate information is an indication to readers that the statements "contain opinions, not facts").)  The cases cited by Cassava (Obj. at 22) stand solely for the proposition that a statement's forum is not dispositive.  Neither the Report nor the Dot.com Defendants say otherwise.

Moreover, Cassava's cherry picked selection of partial tweets cannot salvage its claim. (Obj. 22-24 (citing FAC App. A at 120, 122, 123.)  Even if Cassava had adequately pled these statements by pleading more than the blanket assertions in the FAC (*see* FAC ¶¶ 7, 287), these statements still would not be actionable.  *See, e.g., Steinhilber*, 68 N.Y.2d at 294 ("Even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole'").  And, as explained repeatedly, Cassava is wrong to claim that the Court must analyze these tweets or any other statements in isolation and mechanically apply the *Milkovich* factors (Obj. at 22-24)—an approach rejected by courts inside and outside the scientific context.  *See, e.g., Valley Elecs.*, 2022 WL 893674, at *1; *Hayashi*, 2019 WL 1409389, at *3; *ONY*, 720 F.3d at 496.

In sum, Twitter's reputation as a platform with a loose, hyperbolic tone, is just one more contextual factor reinforcing the Report's findings that, when read in context, the Dot.com Defendants' statements would be understood by a reasonable reader as statements of opinion.

## H.   **Cassava's Eighth Objection Is An Improper General Objection to the Report's Findings on Actual Malice and Causation**

Magistrate Judge Wang correctly found that Cassava failed "to plead facts supporting either actual malice or causation."  (R&R at 11 (citing Neuroscientists' R&R at 21-22, n.28).)  Cassava objects generally to this finding (Obj. at 24-25) and seeks to incorporate by reference its objections to the Neuroscientists' R&R.  (*Id.*)  While the Court is under no obligation to provide individualized reasons tailored to each defendant (particularly where, as here, the plaintiff files improper group pleadings), Cassava cannot rely on a generalized or incorporated objection.  This

objection should be rejected because Cassava does not even purport to identify errors specific to its claims against the Dot.com Defendants. *See, e.g., Marotte*, 2019 WL 1033798, at *1-2.

And, under any standard of review, the FAC's general allegations of "actual malice" cannot succeed. (*See* Br. at 22-25; Reply at 5-8.) The only fact that Cassava alleges to support its blanket contention of "actual malice" is that the Defendants are short-sellers, which, as Magistrate Judge Wang correctly recognized, is insufficient to show that any particular Defendant "knew" that any particular statement was "false" (or made recklessly). (*See* R&R at 11; Neuroscientists' R&R at 21-22, n.28.) Conclusory assertions of actual malice, based solely on a defendant's profit motive, are never enough. *See, e.g., MiMedx, Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-7568, 2018 WL 4735717, at *12 (S.D.N.Y. Sept. 29, 2018); *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 356 (2009).

## I.   Cassava's Ninth Objection Cannot Salvage Its Improper Pleading Under Rule 8

Cassava argues that the Report erred by concluding that the FAC did not satisfy Rule 8. (Obj. at 25.) Again, however, Cassava makes only a general objection to this finding and purports to incorporate its objection to the Neuroscientists R&R. (*Id.*) Far from offering a "clear roadmap" to its claims, as Cassava contends, the FAC asserts incoherent claims against seven Defendants, relies on undifferentiated group allegations, and attaches over a hundred Exhibits, purporting to incorporate countless other documents and data referenced throughout the Exhibits. The Report correctly found, as an alternative basis for dismissal, that the FAC violates Rule 8.

## CONCLUSION

For the foregoing reasons, the Dot.com Defendants respectfully submit that the R&R should be adopted and Cassava's claims dismissed with prejudice.

Dated:  February 2, 2024
         New York, New York

CLARICK GUERON REISBAUM LLP

By:  /s/ Isaac B. Zaur
Isaac B. Zaur
David Kumagai
220 Fifth Avenue, 14th Floor
New York, New York 10001
(212) 633-4310
izaur@cgr-law.com
dkumagai@cgr-law.com

LAW OFFICE OF DANIEL F. WACHTELL

By: /s/ Daniel F. Wachtell
Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
(917) 667-6954
dan@danwachtell.com

*Attorneys for Defendants Jesse Brodkin,
Adrian Heilbut, and Enea Milioris*