**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CASSAVA SCIENCES, INC., <br><br>     Plaintiff, <br><br> v. <br><br> DAVID BREDT; GEOFFREY PITT; QUINTESSENTIAL CAPITAL MANAGEMENT LLC; ADRIAN HEILBUT; JESSE BRODKIN; ENEA MILIORIS; and PATRICK MARKEY, <br><br>     Defendants. | Civil Action No. 22-cv-9409-GHW-OTW |

**PLAINTIFF CASSAVA SCIENCES, INC.'S OBJECTIONS TO MAGISTRATE JUDGE WANG'S REPORT AND RECOMMENDATION REGARDING DEFENDANT QCM'S MOTION TO DISMISS (ECF NO. 110)**

Michael Vatis (NY Reg. No. 2258655)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
1155 Avenue of the Americas
26th Floor
New York, NY 10036

J. Erik Connolly (admitted *pro hac vice*)
Timothy Frey (admitted *pro hac vice*)
Kate Watson Moss (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Plaintiff Cassava Sciences, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

OVERVIEW OF ARGUMENTS ........................................................................................... 2

RELEVANT BACKGROUND ............................................................................................... 5

LEGAL STANDARDS .......................................................................................................... 7

OBJECTIONS......................................................................................................................... 8

I.        The R&R improperly ignores the allegations made in the FAC, assumes the allegations are not true, and does not draw any reasonable inferences in Cassava's favor. ................. 8

II.       The R&R wrongly concludes that it was permissible for QCM to state and imply that Cassava is a fraud.............................................................................................................. 11

III.     The R&R wrongly concludes that everything QCM published was opinion. .................. 13

IV.     The R&R fails to conduct an analysis of whether QCM's statements are non-actionable mixed opinion. .............................................................................................................. 17

V.       The R&R improperly expands case law to create a new immunity for short sellers........ 19

VI.     The R&R wrongly concludes that QCM's republications of and commentaries on Defendants' Bredt and Pitt's and the Dot.com Defendants' statements is protected "scientific debate."................................................................................................................ 21

VII.    The R&R wrongly concludes that QCM's statements are non-actionable because they are posted on websites, including Twitter. .............................................................................. 21

VIII.  The R&R fails to address any of Cassava's allegations or arguments concerning actual malice............................................................................................................................... 23

IX.     The R&R fails to address any of Cassava's allegations or arguments concerning causation. ......................................................................................................................... 24

CONCLUSION..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnant v. Shakur*,
  30 F. Supp. 2d 420 (S.D.N.Y. 1998).........................................................................24

*Amira Nature Foods, LTD. v. Prescience Point LLC*,
  No. 15-cv-9655 (S.D.N.Y. Oct. 7, 2016)...................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................................23

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009).................................................................................8, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................8

*Bell Atlantic v. Twombly*,
  550 U.S. 440 (2007)......................................................................................................8

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012).......................................................................19

*Catania v. United Fed. of Teachers*,
  No. 21 Civ. 1257-GHW, 2022 WL 767107 (S.D.N.Y. Mar. 12, 2022)....................7

*Coliniatis v. Dimas*,
  848 F. Supp. 462 (S.D.N.Y. 1994).....................................................................12, 14

*Crime Victims Ctr., Inc. v. Logue*,
  119 N.Y.S.3d 550 (N.Y. App. Div. 2020) ................................................................22

*Cromarty v. Prentice-Hall, Inc.*,
  421 N.Y.S.2d 603 (N.Y. App. Div. 1979) ................................................................25

*Dalbec v. Gentleman's Companion, Inc.*,
  828 F.2d 921 (2d Cir. 1987).......................................................................................23

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016).......................................................................19

*Flynn v. Cable News Network, Inc.*,
  1:21-cv-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021)....................8, 10, 12, 15

*Franklin v. Daily Holdings, Inc.*,
   135 A.D.3d 87, 21 N.Y.S.3d 6 (2015)............................................................................24

*Glob. Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)........................................................................................8

*Goldfarb v. Channel One Russia*,
   663 F. Supp. 3d 280 (S.D.N.Y. 2023)........................................................................24

*Gross v. New York Times Co.*,
   82 N.Y.2d 146 (N.Y. 1993) .......................................................................................18

*Held v. Pokorny*,
   583 F. Supp. 1038 (S.D.N.Y. 1984)...........................................................................14

*Kleeberg v. Sipser*,
   191 N.E. 845 (N.Y. 1934) .........................................................................................13

*Krusen v. Moss*,
   105 N.Y.S.3d 607 (N.Y. App. Div. 2019) .................................................................22

*Levy v. Nissani*,
   115 N.Y.S.3d 418 (N.Y. App. Div. 2020) .........................................................12, 17

*LifeMD, Inc. v. Lamarco*,
   607 F. Supp. 3d 576 (W.D. Penn. 2022)....................................................................18

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007).......................................................................................25

*Milkovich v. Lorain Journal*,
   497 U.S. 1 (1990).......................................................................................................14

*MiMedx Group, Inc. v. Sparrow Fund Management LP*,
   No.17-CV-7568 (PGG), 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018)...................20

*MiMedx Group, Inc. v. Sparrow Fund Management LP*,
   No. 17-CV-7568 (PGG) (KHP), 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018).....19, 20

*Moraes v. White*,
   571 F. Supp. 3d 77 (S.D.N.Y. 2021)..........................................................................22

*Nolan v. State of N.Y.*,
   69 N.Y.S.3d 277 (N.Y. App. Div. 2018) .............................................................13, 24

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*,
   2022 WL 900604 (E.D.N.Y. Mar. 28, 2022).............................................................20

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
     720 F.3d 490 (2d Cir. 2013)....................................................................................21

*Palin v. N.Y. Times Co.*,
     940 F.3d 804 (2d Cir. 2019)....................................................................................24

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
     53 F. Supp. 3d 705 (S.D.N.Y. 2014)..............................................................12, 18

*Valley Elecs. AG v. Polis*,
     No. 21-2108-CV, 2022 WL 893674 (2d Cir. Mar. 28, 2022)................................14

*In Re Vertiv Holdings Co. Sec. Lit.*,
     No. 1:22-CV-3572-GHW, 2024 WL 358106 (S.D.N.Y. Jan. 31, 2024) .................7

*VIP Pet Grooming Studio, Inc. v. Sproule*,
     No. 2021-04228, 2024 WL 172927 (N.Y. App. Div. Jan. 17, 2024) ....................24

*Watson v. NY Doe 1*,
     439 F. Supp. 3d 152 (S.D.N.Y. 2020)...................................................................22

**Statutes**

28 U.S.C. § 636(b)(1) ...................................................................................................1

28 U.S.C. § 636 (b)(1)(C) .......................................................................................7, 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................................2, 8, 10, 25

Fed. R. Civ. P. 72(b)(2)............................................................................................1, 7

Fed. R. Civ. P. 72(b)(3).................................................................................................7

*New York Times* ..........................................................................................................18

Plaintiff, Cassava Sciences, Inc. ("Cassava"), by counsel, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, files the following written objections to the Magistrate Judge's Report and Recommendation (ECF No. 110 ("R&R")) to grant Defendant Quintessential Management LLC's ("QCM's") motion to dismiss.

## INTRODUCTION[1]

As set forth in Cassava's First Amended Complaint (ECF No. 30 ("FAC")), on November 3, 2021, QCM and its sole principal, Gabriel Grego, began a crusade to drive down Cassava's stock price in order to reap a profit. QCM published a Report titled "A warning for the US healthcare system," in which it described Cassava as nothing more than a "pump & dump" scheme that "deceive[d] investors about the effectiveness" of its candidate drug—which it described as a "worthless compound." The Report went on the assert that it had "plenty of disturbing evidence" that Cassava had engaged in the "manipulation of data," and that "based on the extensive evidence," it "fear[ed] that Cassava had been corrupting the entire drug development process." Although it included a disclaimer on the first page of its Report, QCM nonetheless told its readers to act based on its findings because it used "state-of-the-art investigative techniques," "only act[ed] after acquiring *overwhelming evidence*," and had a "100% success rate" in exposing "dishonest companies."

In order to protect itself and its reputation against these false accusations, Cassava filed the instant lawsuit. After waiting for more than a year to begin the discovery process and move forward with its efforts to prove that QCM not only acted with the sole motivation of profit, *but did so with knowledge that its accusations were false*, the Magistrate Judge has recommended that Cassava's claims against QCM be dismissed because all of its statements were either "substantially true" or

---

[1] Emphasis has been added throughout to quotations and internal citations have been omitted.

protected opinion. But QCM itself has publicly stated that its Report was "factual," and Cassava has asserted dozens and dozens of well-pled allegations that the "facts" published by QCM are false. That is all that is needed to survive a motion to dismiss.

## OVERVIEW OF ARGUMENTS

Cassava respectfully requests that this Court reject the R&R and deny QCM's motion to dismiss. The instant R&R suffers from many of the same errors as the Magistrate Judge's prior Reports and Recommendations related to Defendants Bredt and Pitt's Motion to Dismiss (ECF No. 104) and the Dot.com Defendants' Motion to Dismiss (ECF No. 105), but also contains several additional mistakes requiring *de novo* review by this Court. In all, Cassava objects to **nine** different errors. Each independently requires the Court to perform a *de novo* review.

*First*—consistent with the Magistrate Judge's prior R&Rs in this case—contrary to the well-established standards by which a Court is to evaluate a Rule 12(b)(6) motion, the R&R improperly refuses to credit the allegations made in the FAC, assumes those allegations are false, and does not draw any reasonable inferences in Cassava's favor. The R&R wholly supplants Cassava's allegations with the Magistrate Judge's own analysis of the facts. This is improper and permeates every aspect of the recommendation. The R&R not only violated the standard of review for a Rule 12(b)(6) motion by drawing inferences and weighing allegations against Cassava, but it also violated the standard of review that would be used at summary judgment.

*Second*, the R&R fails to address Cassava's theory of liability against QCM. Cassava makes clear in the FAC and its Opposition that its claims are predicated on QCM's statements and implications that Cassava is a fraud engaged in criminal behavior. The Magistrate Judge does not address that theory of liability. Instead, the R&R ignores the overarching message of QCM's publications and breaks QCM's statements down into separate (albeit overbroad) categories which it then incorrectly finds are nonactionable when viewed in isolation. The R&R's disregard of

2

Cassava's allegations as to the clear implication of QCM's statements—an implication that is defamatory *per* se—is the exact opposite of what is supposed to be done on a motion to dismiss.

*Third*, the R&R does not apply the test for determining whether QCM's statements were assertions of fact. The R&R never applies the tests set forth by the U.S. and New York Supreme Courts to analyze any, let alone each, of the defamatory statements. As explained in the FAC and Cassava's Opposition, each of the defamatory statements and implications was demonstrably false and was made in a manner intended to lead the reader to conclude that it was an assertion of fact. QCM made assertions of fact that Cassava and its executives were a group of criminals set out to dupe patients, investors, and the government. It made assertions of fact regarding the manner in which Cassava allegedly achieved this goal. These statements are demonstrably false. Beyond that, QCM told its readers that its assertions were *factual* and based on *extensive evidence*. The R&R finds the statements to be non-actionable only by failing to engage in proper analysis.

*Fourth*, the R&R fails to engage in any analysis whatsoever with respect to whether QCM's statements constitute actionable mixed opinion. Rather than analyzing whether the allegations in the FAC, if true, establish that one or more of QCM's statements constituted actionable mixed opinion under New York law, the R&R instead assumes, contrary to the allegations in the FAC, that the disclosed facts in QCM's accusations were true and that all material facts were disclosed. In fact, the FAC allegations establish the opposite, and those allegations must be accepted as true for purposes of the motion to dismiss.

*Fifth*, the R&R erroneously seeks to avoid employing the proper test for evaluating whether statements are "pure opinions" by assuming wholesale immunity for short sellers who identify themselves as such. But there is no *per se* defamation exception for short sellers. A finding to the contrary sets a dangerous precedent that would allow defendants seeking to make a quick buck to

accuse companies of fraud with impunity. Rather, each statement must be evaluated under the traditional rubrics long set out by federal and New York courts. When that analysis is undertaken, it is clear that Cassava has properly alleged actionable defamatory statements made by QCM.

*Sixth*, the R&R erroneously continues the Magistrate Judge's practice in this case of excusing defendants from liability by construing their statements as matters related to "scientific debate." But QCM was not engaged in scientific debate. It did not publish to scientists (QCM itself is not a science-based organization, nor does it employ scientists), did not publish in a peer-reviewed journal, and was not seeking to draw scientific inferences from experimental data. QCM made assertions and implications that Cassava is full of criminals and that it has been intentionally committing fraudulent acts to peddle a worthless drug. These are defamatory accusations of fact.

*Seventh*, the R&R wrongly concludes that QCM's statements are non-actionable because they are hyperbolic and posted on Twitter. New York courts have found publications posted online to be actionable where the context and language of the posts suggest that they are asserting facts, not opinions. Here, QCM published defamatory statements, including on Twitter, stating matter-of-factly that Cassava is a fraud, its drug is worthless, and it has engaged in years of activities designed to deceive patients, investors, and the government. No matter where published, these accusations are verifiable statements of (alleged) fact and should be treated as such.

*Eighth*, the R&R fails to address any of Cassava's allegations or arguments with respect to actual malice. The R&R cross-references its prior recommendation to hold Cassava has not adequately pled actual malice and spends less than a paragraph describing why that is the case with respect to QCM. As set forth in Cassava's prior Objections, the FAC adequately pleads not only that QCM had an improper motive to defame it—personal profit—but also that it was in possession of contradictory information, knew it lacked evidence to support its accusations, knew

its statements were inherently improbable, purposefully avoided learning the falsity of its accusations, and repeated the same defamatory accusations even after becoming aware of contradictory information. Cassava should be permitted to engage in discovery to establish indisputable proof of these allegations. For purposes of ruling on a motion to dismiss, Cassava has more than adequately pled a plausible inference of actual malice.

*Finally*, the R&R also fails to address any of Cassava's allegations or arguments with respect to causation. Again, the R&R relegates its analysis of Cassava's causation allegations to a short footnote. It does not address Cassava's allegations that the statements made by QCM were defamatory *per se*, nor does it address Cassava's allegations regarding the special damages it incurred as a result. The fact that the R&R with respect to QCM gives such backhanded treatment of Cassava's causation allegations, as did the R&Rs directed at the other defendants' dispositive motions, should cast doubt on the reliability of the R&R in totality. Cassava's causation allegations were not assumed to be true, reasonable inferences were not drawn in Cassava's favor, and Cassava's claims were not evaluated based on the proper legal standards and tests.

## RELEVANT BACKGROUND

On November 2, 2022, Cassava filed a detailed, comprehensive complaint alleging more than 100 specific false and defamatory statements published by QCM in a November 3, 2021 report titled: "Cassava Sciences (SAVA): Game over! A warning for the US healthcare system," ("QCM Report," ECF No. 30-10), as well as in dozens of subsequent Twitter posts. (*See* FAC ¶¶ 160–280; Appendix A, ECF No. 30-02.) Cassava grouped these defamatory statements into eleven overall defamatory implications. (FAC ¶¶ 60–123.) Cassava supported its FAC with exhibits and appendices, both of which it incorporated by reference, to describe in detail the numerous attacks made against it by QCM, whose short position in Cassava's stock would cause it to profit from

any negative movement in Cassava's share value. (*Id.*) The pertinent facts are laid out in the FAC and Cassava's Opposition to QCM's motion to dismiss. (*See generally*, FAC and Opp'n Memo.)

The FAC and Cassava's Opposition make clear that QCM was using defamation to drive down Cassava's stock price so it could profit from its short position. But, although QCM disclosed that it had a short position in a boilerplate disclaimer, it went on to state that it used "state-of-the-art investigative techniques," only published information "after acquiring overwhelming evidence," and had a "100% success rate." (QCM Report at 6.) QCM went on to report to the press, public, and investors that Cassava is a fraud run by criminals which peddled a completely fake pharmaceutical product and is guilty of fabricating clinical data and lying to investors, patients, and the government. For example, QCM said:

> After reviewing the information in its entirety, we are of the opinion that ***Cassava Sciences*** could be a ***scheme orchestrated by management to enrich itself at the expense of shareholders, patients, and the US Federal government***. Simufilam, Cassava's only prospective drug, appears based on allegedly ***forged scientific research***. Phase II trials have been conducted with ***numerous and serious irregularities*** which appear to have ***allowed management to deceive investors about the effectiveness of the drug***. In our opinion, ***Simufilam is a worthless compound***, and any touted benefit is [] likely the result of a combination of ***forgery***, "cherry picking" of patients and ***statistical manipulation of data***, of which we have plenty of ***disturbing evidence***. (*See* FAC at ¶ 140.)

> ***

> The alleged, generalized ***misconduct at Simufilam trials*** could not have been possible without the ***presence of people of questionable character involved at every level of the process***. Indeed, we have never detected ***a higher concentration of felons, fraudsters, and generally incompetent people around any public company, let alone a healthcare one***. (*See* FAC at ¶ 266.)

> ***

> If our allegations are substantiated, we believe Cassava's behavior might constitute ***securities fraud, FDA fraud and a violation of the False Claims Act***. (*See* FAC at ¶ 161(rr).)

QCM repeated this message again and again online in an effort to reduce Cassava's share value. It was not attempting to foster scientific debate—but to ruin Cassava's reputation and make money.

Unfortunately, Cassava has not been allowed to pursue its claims for more than a year. As set forth in detail in Cassava's B&P Objections, the Magistrate Judge stayed discovery since March of 2023 without issuing a formal ruling and only in the past few weeks ruled on the three pending motions to dismiss. (ECF No. 108 at 6–7.) As pertinent to these Objections, on January 23, 2024, the Magistrate Judge issued a R&R that QCM's motion to dismiss be granted in full. (R&R at 16.)

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), parties have the right to object to a magistrate judge's recommendation within the allotted fourteen (14) days. Cassava has timely filed this objection to the R&R.

When a party makes timely objections to a magistrate judge's report and recommendation on a dispositive motion, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); *Catania v. United Fed. of Teachers*, No. 21 Civ. 1257-GHW, 2022 WL 767107, at *1 (S.D.N.Y. Mar. 12, 2022) (citing 28 U.S.C. § 636 (b)(1)(C)). A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A District Judge also has the authority to "return the matter to the magistrate judge with their instructions." *See In Re Vertiv Holdings Co. Sec. Lit.*, No. 1:22-CV-3572-GHW, 2024 WL 358106, at *2–3 (S.D.N.Y. Jan. 31, 2024) (instructing magistrate judge to evaluate "each of the allegedly false or misleading statements that underpin the … claims," and finding that "there are a substantial number of allegedly false or misleading statements that were not examined in the R&R").

Here, the R&R recommends dismissing Cassava's FAC against QCM. (R&R at 16.) That recommendation is based on an improper standard of review, does not properly apply the framework for determining whether an alleged defamatory statement constitutes fact or opinion,

and fails to engage with either case law or allegations as they relate to actual malice and causation. After *de novo* review, this Court should deny QCM's Motion to Dismiss (ECF No. 77) and allow Cassava to proceed to discovery.

## OBJECTIONS

**I.    The R&R improperly ignores the allegations made in the FAC, assumes the allegations are not true, and does not draw any reasonable inferences in Cassava's favor.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 440, 570 (2007)). In making this determination, the Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Flynn v. Cable News Network, Inc.*, 1:21-cv-2587-GHW, 2021 WL 5964129, at *2 (S.D.N.Y. Dec. 16, 2021) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). Factual issues cannot be resolved on a motion to dismiss under Rule 12(b)(6). Discovery and evidence is needed.

Although the R&R states the correct standard for deciding a motion to dismiss (R&R at 9–10), it does not apply that standard. The R&R does not accept the FAC's allegations as true as required by Rule 12(b)(6). For example, QCM made the following false statements regarding Cassava, incorporated into the FAC:

> After reviewing the information in its entirety, we are of the opinion that Cassava could be a ***scheme orchestrated by management to enrich itself*** at the expense of shareholders, patients, and the US Federal Government. The approval of an ***outrageous compensation policy***, blatantly ***rewarding short term stock price appreciation*** ("pump & dump") may have provided a clear incentive for

management to engage in this reckless behavior. (FAC at ¶ 161(nn), citing Ex. 8, 11/3/21 QCM at 2.)

***

There are **powerful incentives** for Cassava's **management** to possibly **commit misconduct** in clinical trials, deceiving investors about the real prospects of Simufilam. (FAC at ¶ 273(a), citing Ex. 8, 11/3/21 QCM at 7.)

***

Based on the extensive evidence we reviewed, we fear that Cassava has been corrupting the entire drug development process to **temporarily inflate Cassava's stock to the market capitalization required for management to maximize its bonuses**. (FAC at ¶ 161(tt), citing Ex. 8, 11/3/21 QCM at 19.)

***

[W]e believe Cassava's behavior might **constitute securities fraud, FDA fraud and a violation of the False Claims Act**. (FAC at ¶ 161(rr), citing Ex. 8, 11/3/21 QCM at 3.)

Cassava specifically addressed each of these statements in the FAC, and identified the reasons they are false, as well as providing publicly available information that demonstrates the falsity of those statements and implications:

Cassava's management **has not received cash payments tied to the Company's stock price**, and may or may never receive any such cash payments, depending on final test results for simufilam and other variables. Review of **Cassava's financial statements, distribution reports, and SEC filings demonstrate that Cassava's management has not received cash payments tied to the Company's stock price**, and may or may never receive any such awards, depending on final test results for simufilam and other variables. (FAC at ¶¶ 166, 278.)

***

Cassava's officers and directors have not sold any of their personal holdings in Cassava in over a decade. **Review of Cassava's financial statements, distribution reports, and SEC filings demonstrate that Cassava's officers and directors have not sold shares in Cassava in over a decade**. (FAC at ¶ 279.)

At this stage in the case, the Court must assume the truth of Cassava's allegations. Instead, the R&R discounts them entirely, writing "Cassava does not claim that any of the specific factual statements about Cassava personnel (such as prior criminal history or prior lawsuits) are false;

9

these statements appear to be drawn from publicly available information." (R&R at 12.) By weighing the evidence in favor of the defendant while affording Cassava's allegations no weight whatsoever, the R&R oversteps the boundaries erected by Rule 12(b)(6). *See Flynn*, 2021 WL 5964129, at *4 ("Even though the tweets . . . are evidence . . . the Court cannot weigh evidence in deciding a motion to dismiss.").

Throughout the R&R, the Magistrate Judge assumes that every statement in the QCM Report was true; Cassava's allegations in the FAC did not receive the same courtesy. (*See, e.g.*, R&R at 3–4, discussing QCM's statements about Cassava's bonus structure, yet ignoring Cassava's allegations to the falsity thereof, discussed *supra*; *see also*, R&R at 4–6, discussing QCM's statements about Cassava and IMIC personnel, yet ignoring Cassava's allegations to the falsity thereof, located in FAC ¶¶ 259–65, 267–72, 410–17.) This is also shown by the headings in the R&R, which declare that the statements Cassava has alleged to be false are actually "[f]actually [t]rue." (R&R at 12.) This error undergirds nearly every recommendation. As discussed below, the R&R fails to assume the pleaded facts as true in connection with determining (1) the meaning and implication of the defamatory statements—finding that they do not support an inference that Cassava engaged in widespread fraud (*see infra* Section II); (2) whether the statements constitute fact or opinion—weighing "qualifying language" more than assertions of QCM's "thorough investigation" and "extensive evidence"(*see infra* Section III); (3) whether the disclosed "facts" stated by QCM were accurate—assuming all were true (*see infra* Section IV); and (4) whether Cassava has pled actual malice or causation—wholly discounting Cassava's allegations in their entirety (*see infra* Sections VIII and IX). This error strikes at the heart of a court's duty in ruling on a 12(b)(6) motion, such that this Court should reject the R&R and review the pleadings and motion papers *de novo*. 28 U.S.C. § 636(b)(1)(C).

**II.    The R&R wrongly concludes that it was permissible for QCM to state and imply that Cassava is a fraud.**

Cassava's FAC expressly alleged that the overall message conveyed by QCM in its statements was that Cassava is a fraud. (*See, e.g.*, FAC ¶¶ 7–8; *id.* at Section V.B.) The FAC contains dozens of examples of QCM stating and implying that Cassava is a fraud, that it has fabricated and manipulated data, that it knowingly used criminals to conduct its research, and that its executives and boards engaged in fraud and insider trading. (*See, e.g.*, *id.* at ¶¶ 160–288.) Likewise, in the FAC, Cassava specifically alleged that those statements and implications are ***not*** true, including by alleging the lack of any evidence or any indicia of wrongdoing or manipulation by Cassava. (*Id.* at ¶¶ 145–78, 300–301, 361.) At this stage in the case, the Court cannot discredit these well-pled factual allegations and must draw all reasonable inferences in Cassava's favor. *Arar*, 585 F.3d at 567. Rather than taking the allegations in the FAC as true and evaluating each allegedly defamatory statement (or set of statements) to determine whether it is actionable, the Magistrate Judge appears to have done her own research into the underlying "evidence" and "publicly available information."[2] (R&R at 12.)

The R&R simply ignores the FAC's allegations. Specifically, in the FAC, Cassava alleged that QCM conveyed the message that Cassava was a fraud. And in its Opposition to QCM's Motion to Dismiss, Cassava laid out not only the specific statements giving rise to QCM's implications but the manner in which the statements made those implications. The Magistrate Judge ignores the overarching message of QCM's statements, which were intended to scare off potential investors in order to drive down Cassava's stock prices. Those statements went beyond hyperbole; they directly accused Cassava of criminal misconduct:

---

[2] For example, in determining that QCM's statements about Juana Pelegri were true, the Magistrate Judge cited a tweet from QCM stating that IMIC had updated a description of her credentials, apparently assuming the truth of QCM's statement and weighing it against Cassava's denial. (R&R at 12, n.16)

In several years of fraud-busting we have rarely come across a more **blatant and costlier exercise in deception than Cassava**. (FAC ¶ 161(qq).)

\*\*\*

**This can only mean one thing**: Cassava didn't choose replacement patients at random (or from the same pool): it is reasonable to assume that they were deliberately selected to alter the sample's composition of the study to flatter the performance of the drug. (FAC ¶ 239(k).)

\*\*\*

Indeed, we have never detected a higher concentration of **felons, fraudsters, and generally incompetent people** around any public company, let alone a healthcare one. (FAC ¶ 266 (b).)

\*\*\*

[Board member]'s presence should be **viewed with concern** by Cassava's shareholders, as **he seems eager to join boards of companies suspected or confirmed to have committed various degrees of fraud**. (FAC ¶ 266 (h).)

These statements, along with dozens of other statements published by QCM in its Report and on Twitter, imply that Cassava is a fraudulent company that has engaged in crimes of dishonesty. The R&R improperly ignored that implication and Cassava's allegations showing that their statements and implications were factually inaccurate. *See Flynn*, 2021 WL 5964129, at \*4 (rejecting portion of report and recommendation that weighed the evidence in assessing falsity).

The R&R also ignores that there is a long history of legal precedent holding that statements falsely accusing a plaintiff of fraud or fraudulent activity are actionable.[3] Indeed, the legal concept

---

[3] *See Levy v. Nissani*, 115 N.Y.S.3d 418, 421–22 (N.Y. App. Div. 2020) ("lender's statements that borrowers were 'thieves' and 'con artists,' viewed in context in which statements were made, could readily be understood to have precise meaning capable of being proven true or false, and thus statements constituted assertions of fact, as necessary for statements to be actionable as subject of defamation action; reasonable listener would likely have understood statements, which were made before entire synagogue congregation, as implying that borrowers swindled lenders out of money in connection with their business"); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 724 (S.D.N.Y. 2014) (defamatory statements published on Facebook and Twitter, as well as statements made in press releases, calling for action to stop not-for-profit shipping company from alleged scheme could indeed be actionable in defamation suits); *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (letter written by law firm to its client was not "opinion" under First Amendment and thus was not exempt from state libel law, since letter addressed area of public concern by discussing possibility that client's employee was engaging in illegal scheme to defraud client).

of defamation *per se* rests on the idea that statements that falsely charge a plaintiff with a "serious crime," or that tend to "injure the plaintiff in [its] trade, business or profession," are so inherently harmful that injury can be presumed. *See Nolan v. State of N.Y.*, 69 N.Y.S.3d 277, 284 (N.Y. App. Div. 2018); *Kleeberg v. Sipser*, 191 N.E. 845, 846–47 (N.Y. 1934). Here, QCM has accused Cassava of engaging in fraud by "deceiving investors" and "temporarily inflating Cassava's stock price." (FAC ¶¶ 273(a), (c); *see also id.* at ¶¶ 161(nn)–(vv) (stating that simufilam is based on "allegedly forged scientific research" and is "worthless," and that Cassava has been "corrupting the entire drug development process").) QCM's defamatory tweets echo the same sentiment. (*See, e.g.*, FAC App. A at 8 ("Multiple instances of FALSE DATA have been detected."), 17 ("Once again, skeptics and short-sellers have proven a force for good in the market, exposing misconduct and warning shareholders of impending danger"), 19 ("The egregious nature of this scheme is clear for all to see").)

QCM called Cassava a fraud; Cassava has denied any fraudulent conduct. At the motion to dismiss stage, indeed even at the summary judgment stage, the Magistrate Judge is not allowed to draw inferences in favor of QCM and *assume* a non-defamatory meaning of their statements. Under New York law, calling a plaintiff a fraud is not only actionable as defamation, it is *per se* defamatory. It is impossible to reconcile the R&R's treatment of QCM's statements, which stated and implied that Cassava is a fraud, with the century-old rule in New York that such statements constitute defamation *per se.* The R&R ignored the clear implication of QCM's statements—the exact opposite of what is supposed to be done on a motion to dismiss. For that reason, the Court should decline to adopt the R&R and review the relevant filings *de novo*.

### III.  The R&R wrongly concludes that everything QCM published was opinion.

Cassava further objects to the R&R's finding that all of QCM's defamatory statements are nonactionable opinion because the R&R fails to utilize the test proscribed by the New York and

United States Supreme Courts for determining whether a statement would be understood by the reasonable reader to be one of fact or opinion. Not only does the R&R fail to mention this test, it also wholly fails to apply it. The traditional test, as stated by the Supreme Court in *Milkovich v. Lorain Journal*, 497 U.S. 1, 9 (1990), looks at four factors: "(1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared."[4] The critical factor here is whether the statements are verifiable. *See, e.g.*, *Coliniatis v. Dimas*, 848 F. Supp. 462, 467–68 (S.D.N.Y. 1994) (rejecting motion to dismiss on the grounds of non-actionable opinion where the alleged statements were capable of being proven false); *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984) ("Accusations of criminal or unethical activity . . . are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof.").

The R&R never evaluates whether the statements and implications made by QCM are actionable based on these four factors, thereby failing to engage in the analysis set forth by the U.S. and New York Supreme Courts. First, the R&R never addresses the "specific language" used in the defamatory publications. The "specific language" used by QCM supports a finding that the defamatory statements are actionable because QCM repeatedly and emphatically stated and implied that Cassava is a fraud that committed a criminal act of fabricating data. (*See, e.g.*, FAC ¶¶ 161 (nn–ww) ("In several years of fraud busting we have rarely come across a more blatant and costlier exercise in deception than Cassava;" "Based on the extensive evidence we reviewed, we fear that Cassava has been corrupting the entire drug development process to temporarily inflate

---

[4] Despite the Dot.com Defendants' assertions to the contrary in their Response Brief, context, alone, is not a sufficient inquiry. (*See* Dot.com Resp. Br., ECF No. 113, citing *Valley Elecs. AG v. Polis*, No. 21-2108-CV, 2022 WL 893674, at *1 (2d Cir. Mar. 28, 2022). However, while context is one of the factors, the court must look to all four. *See id.* ("Beyond context, New York courts also consider 'whether the specific language in issue has a precise meaning which is readily understood' and 'whether the statements are capable of being proven true or false.').

Cassava's stock to the market capitalization required for management to maximize its bonuses.").)

Moreover, the language used by QCM was not vague or ambiguous, it contained specific, easily

understood accusations about the manner in which Cassava allegedly engaged in fraudulent

activities. *See, e.g., id.* ¶ 161 (accusing Cassava of falsifying data by, *inter alia,* "[u]sing Phase II

trials . . to make unsubstantiated claims on the efficacy of the drug," "[a]llowing patients who may

not suffer from [AD] into the study," and "[s]trategically excluding patients from the studies who

have undesirable clinical outcomes[.]") Cassava made this point in its Opposition (Opp'n Memo.

ECF No. 88 at 12-13), but the Magistrate Judge does not address the analysis at all. Indeed, the

R&R never addresses QCM's own statement that everything it published was "***factual and a***

***matter of fact.***" (Opp'n Memo. at 20, *citing* FAC Ex. A at 120.)

Second, the R&R does not examine whether QCM's statements are verifiable. It simply

misses this point altogether. But, as set forth in Cassava's Opposition, QCM's statements are not

only verifiable, but they have also been alleged to be (and will be proven to be) false. For instance,

QCM stated and implied that Cassava fabricated and manipulated test results for its Phase 2b and

open label studies:

> ***This can only mean one thing***: Cassava didn't choose replacement patients at
> random (or from the same pool): it is reasonable to assume that they were
> deliberately selected to alter the sample's composition of the study to flatter the
> performance of the drug. (FAC ¶ 239(k).)
>
> ***
>
> We deduce that patients may have been ***excluded "strategically"*** to fabricate the
> ***false efficacy*** of the drug . . . (FAC ¶ 205(c).)

These statements are verifiable. Cassava either chose replacement patients at random, or it did not.

Cassava either manipulated its trials to strategically alter its test results, or it did not. Cassava has

specifically alleged that it did not and, at this stage of the litigation, it was an error for the

Magistrate Judge to assume to the contrary. *See Flynn,* 2021 WL 5964129, at *4.

15

Third, the R&R erroneously evaluates the context in which the statements were made. The R&R fully fails to consider the numerous statements made by QCM that its Report was based on an extensive and fact-based investigation that was worthy of sharing with not only press, public, and investors, but also federal agencies. For example, the QCM Report couches its "disclaimer" with the following language:

> We are an American hedge fund based in New York City. Our main activity consists in identifying, *investigating*, and *exposing fraud and criminal conduct* in public companies around the world. We *use state-of-the art investigative techniques* and *only after acquiring overwhelming evidence to substantiate our claims*. Since 2015, we have completed over ten short activist campaigns exposing various dishonest companies with *100% success rate*. (FAC Ex. 8 at 6.)

Beyond that, QCM littered its Report with statements touting its extensive evidence, numerous sources, and thorough investigation. (Opp'n Memo. at 13–14 *citing* QCM Report at 4, 7 ("we have had multiple experts review the Citizen Petition and found it highly credible,"), 8 (noting that investigative techniques included a "thorough review" of Cassava's history, "open source intelligence collection," "direct surveillance," "infiltration of undercover investigators," "declarations of a former employee," and "expert opinions"), 21 (citing "extensive evidence"), 22 (touting experts who have "confirmed the allegations" of the Citizen Petition).) This, combined with QCM's sole principal's statement in an interview that QCM "only publish[es] if [it] believe[s its] thesis is definitive and proven beyond reasonable doubt," (*see* FAC Ex. 14 at 3), and his Tweet that the QCM publications were all "factual and a matter of fact" should be all the context required to determine, at the motion to dismiss stage, that a reasonable reader would assume that QCM was not publishing opinion, but matters of specific fact regarding Cassava. The R&R fails to address any of this context, instead briefly citing to "qualifying language" and the fact that QCM disclosed itself as a short seller to find that every statement made by QCM was non-defamatory opinion. At best, the qualifying language and disclaimer allow for an inference that some of QCM's statements

could be viewed as opinion, but this inference does not outweigh the myriad of statements made throughout the Report, and subsequent to the Report, that QCM was making assertions of fact based upon "extensive evidence."

Finally, the broader context in which the statement was made also supports a finding that the QCM Report and Tweets would lead a reasonable reader to conclude that QCM was making assertions of fact, not opinion, regarding Cassava. QCM, a registered investment adviser, published its Report on its website, stated that it had hired experts and consultants to review and verify the accusations against Cassava, touted its 100% success rate in all prior investigations, and emphasized that it had sent its Report to federal investigators. (QCM Report at 5, 39.) All of these things would lead a reasonable reader to believe that QCM was providing factual assertions about Cassava. *See, e.g.*, *Nissani*, 115 N.Y.S.3d at 421–22 (statements actionable where a "reasonable listener would likely understand those statements to imply" the truth of the defamatory message).

The above analysis, when conducted under the proper standard of review, demonstrates that QCM's statements would reasonably lead the reader to believe that they were assertions of fact. The Magistrate Judge did not engage with this analysis. This error requires that the Court reject the R&R and review QCM's Motion and Cassava's Opposition *de novo*.

## IV. The R&R fails to conduct an analysis of whether QCM's statements are non-actionable mixed opinion.

Not only does the R&R fail to conduct the traditional four-part test to determine whether QCM's assertions were statements of fact or opinion, it also wholly fails to analyze whether the statements are actionable mixed opinion. Although the issue of mixed opinion was extensively briefed by Cassava (*see* Opp'n Memo. at 16–19), the R&R does not cite this principle at all.

Under New York law, defamatory statements that may otherwise qualify as opinion are considered actionable mixed opinion if (1) a reader is led to believe that the opinion is based on

undisclosed facts, or (2) the underlying facts in the publication are false. *Restis*, 53 F. Supp. 3d at 723; *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (1993); *see also LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 594 (W.D. Penn. 2022) ("[T]he 'pure' opinion rule 'does not apply unless all of the supporting factual materials are disclosed and none are incorrect or have been misinterpreted.'"). Here, as set forth in detail in Cassava's Opposition, the QCM Report is replete with instances of each.

For example, in its Report QCM claims to rely on "multiple expert opinions" it obtained from "industry leaders" and "consultants hired by QCM," but only discloses two. (QCM Report at 4, 8, 22, 29, 32, 33.) QCM further claims to rely on an "anonymous post" from an individual who purportedly is a "professional well versed in statistical analysis of clinical trials" (*id.* at 27), unnamed "former employees," and an unnamed "research center," (*id.* at 30), yet does not disclose any of their identities. Finally, QCM refers vaguely to "other studies we reviewed," without citation and many of the "links" to underlying sources it provides are to screenshots of its own internal presentation. (*Id.* at 10, 15, 23, 24, 31, 33, 34.) In other words, many of the accusations in the QCM Report are *not* "drawn from publicly available information," as mischaracterized by the Magistrate Judge (R&R at 12), but instead rely upon undisclosed and unknown sources, leading the reader to believe that QCM is in possession of "certain facts, unknown to the audience, which support [its] opinion and are detrimental to" Cassava. *Restis*, 53 F. Supp. 3d at 723. Even if certain of QCM's statements are not statements of fact, because QCM's Report "implies that [QCM]'s opinion is based on [QCM]'s knowledge of facts that are not disclosed to the reader," it is capable of defamatory meaning. *Id.*

Beyond that, the QCM Report is full of false statements regarding Cassava and its research. A statement that may be characterized as opinion under the traditional test is nevertheless

actionable "where the disclosed facts are themselves false." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 476 (S.D.N.Y. 2012) ("If this defamatory implication arose entirely from unchallenged facts, it would be protected as an expression of the author's opinion. But that is not the case."). Again, Cassava's Opposition pointed the Magistrate Judge to numerous examples of the types of false "facts" that were asserted by QCM and to the paragraphs in the FAC alleging those "facts" were false. (Opp'n Memo. at 18–19.) Again, rather than accept Cassava's allegations as to the falsity of QCM's assertions as true for purposes of ruling on QCM's Motion to Dismiss, the Magistrate Judge noted in a footnote that "the allegedly false 'facts' Cassava cites in its opposition brief (ECF 88) at 25–26 are either substantially true or are inferences drawn from publicly available information." (R&R at 13, n. 18.) This critical error—which permeates the entire R&R—is wholly improper in ruling on a motion to dismiss.

**V.    The R&R improperly expands case law to create a new immunity for short sellers.**

Rather than engage in the legally required analyses, the R&R broadly finds that because the QCM Report included a disclaimer and cautionary language, its contents are protected opinion. (R&R at 11.) The R&R goes so far as to state that "market analyst reports and investment analysis are generally considered non-actionable opinion." (*Id.*)   This holding is not only wrong – it is reversible error. Its application would protect a whole industry of short sellers who would be free to smear innocent companies with impunity in order to manipulate the stock market to their own benefit.

While some courts, such as the report and recommendation cited by the instant R&R, *MiMedx Group, Inc. v. Sparrow Fund Management LP*, No. 17-CV-7568 (PGG) (KHP), 2018 WL

847014 (S.D.N.Y. Jan. 12, 2018),[5] have found that statements made by short sellers are non-actionable opinion, this is not a wholesale exception in the manner applied by the Magistrate Judge here. Rather, those courts engaged with both the traditional opinion analysis and the mixed opinion analysis before finding that the alleged defamatory statements were non-actionable. *See id.* at *7. That is because a defendant "is not absolved from defamation liability simply by virtue of being a short-seller or by the inclusion of a blanket disclosure that its Report is an opinion." *NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, 2022 WL 900604, at *5, n.4 (E.D.N.Y. Mar. 28, 2022); *see also* Tr. of Proceedings re: Oct. 7, 2016 Conf. in *Amira Nature Foods, LTD. v. Prescience Point LLC*, No. 15-cv-9655 (S.D.N.Y. Oct. 7, 2016) (ECF No. 66) ("Defendants [short sellers] cannot avoid liability simply by including a legal disclaimer or sprinkling their reports with words that they believe connote opinion.").

In this case, as set forth above, the verifiable statements published by QCM and the context in which QCM published them told the reasonable reader that they were being told *facts*, not *opinions*. The QCM Report not only trumpeted its "state-of-the-art investigative techniques," "100% success rate," and "overwhelming evidence," at the time it published its Report (QCM Report at 8), its sole principal later publicly stated that everything in the report was "factual and a matter of fact." (FAC App. A at 120.) QCM cannot be permitted to tell the public that it is sharing *facts* yet at the same time argue before this Court that its publication should be treated as *opinion* simply because it is a short seller. Cassava therefore objects to the R&R to the extent it eschews the traditional and mixed opinion tests in favor of broad immunity for short sellers, and requests that this Court reject the R&R and review QCM's Motion and Cassava's Opposition *de novo*.

---

[5] Notably, the District Court in *MiMedx* reviewed the report and recommendation *de novo*, and although it affirmed the dismissal of the complaint, did not do so on the grounds that the statements at issue were protected opinion. *See MiMedx Group, Inc. v. Sparrow Fund Management LP*, No.17-CV-7568 (PGG), 2018 WL 4735717, at *7–12 (S.D.N.Y. Sept. 29, 2018).

**VI.    The R&R wrongly concludes that QCM's discussion of Defendants' Bredt and Pitt's and the Dot.com Defendants' statements is protected "scientific debate."**

The R&R also errs in concluding that QCM's "science based" statements are not defamatory. (R&R at 11.) The R&R largely refers back to the prior recommendations in this case to hold that QCM's statements concerning Bredt, Pitt, and the Dot.com Defendants' statements "do not give rise to a defamation claim." (*Id.*) Cassava objects to this finding for all of the same reasons previously set forth in the B&P Objections and Dot.com Objections (ECF Nos. 108 and 109), and expressly incorporates those objections herein.

Beyond that, extending the protection of "scientific debate" to the QCM Report and Tweets demonstrates just how inappropriate that protection is to the facts of this case. Here, just like the other defendants, QCM was *not* (1) publishing in a scientific journal subject to peer-review, (2) directing its messaging to scientists, or (3) positing inferences about the scientific conclusions to be drawn from the analysis of experimental data. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.,* 720 F.3d 490 (2d Cir. 2013). Instead, QCM published its Report titled "Cassava Sciences (SAVA): Game over! A warning for the US healthcare system," on a website directed to the public, press, and investors, and accused Cassava of being "a scheme orchestrated by management to enrich itself at the expense of shareholders, patients, and the US Federal government," that had intentionally forged its research data and manipulated its clinical trials. This is not the type of publication or discourse that the Second Circuit intended to protect in *ONY*, and the Magistrate Judge's decision to grant short sellers free reign to falsely accuse companies engaged in scientific endeavors of fraud and criminal activity should be rejected.

**VII.   The R&R wrongly concludes that QCM's statements are non-actionable because they are posted on websites, including Twitter.**

The R&R also errs in finding that "social media" statements are non-actionable. (R&R at 13–14.) That the publications were posted online and used strong language does not change the

conclusion that they were (1) factual in nature and (2) defamatory. As Cassava explained in its Dot.com Objections, New York courts have regularly found publications posted online to be actionable where the context and language of the posts suggest that they are asserting facts, not opinions. *See Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550, 557 (N.Y. App. Div. 2020) (social media postings and blog entries did not constitute opinion); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 161–62 (S.D.N.Y. 2020) (social media posts found to be actionable); *Moraes v. White*, 571 F. Supp. 3d 77, 95 (S.D.N.Y. 2021) (same); *Krusen v. Moss*, 105 N.Y.S.3d 607, 610–11 (N.Y. App. Div. 2019) (same).

Here, QCM's statements are actionable *even though* they were published on websites. Under the test that the Magistrate Judge *should have* applied, QCM's statements are actionable because (1) the language used by the QCM was specific, (2) the statements made by QCM are demonstrably true or false, and (3) QCM presented their statements in a context that would lead a reasonable reader to understand they were asserting facts about Cassava. QCM did not present its statements as hyperbole that should be ignored by readers. QCM published false and defamatory statements about Cassava, including the following:

> There are **powerful incentives** for **Cassava's management** to possibly **commit misconduct in clinical trials, deceiving investors** about the real prospects of Simufilam. (FAC at ¶ 273(a).)
>
> \*\*\*
>
> What they are doing is **astounding** and, frankly, **desperate**. They are making a **joke of market abuse rules and of the clinical research process**. They **must not be allowed to get away with this**. (FAC App. A at 15.)
>
> \*\*\*
>
> The **egregious** nature of this **scheme** is **clear** for all to see. (FAC App. A at 19.)

QCM lends credibility to its statements as factual assertions. QCM is telling readers that what it is saying about Cassava and Simufilam is *right*. That is a factual assertion about Cassava,

its alleged misconduct in clinical trials, its allegedly criminal management, and its fraudulent behavior. When such statements are made, one person is factually right. The other person is factually wrong. That is how the QCM presented its statements about Cassava and Simufilam, and such statements are actionable.

## VIII. The R&R fails to address any of Cassava's allegations or arguments concerning actual malice.

Similar to the other two R&Rs previously issued in this case (ECF Nos. 104 & 105), the instant R&R attempts to dispose of Cassava's allegations of actual malice without meaningfully engaging with the allegations pled by Cassava, considering the relevant case law, or addressing any of Cassava's arguments in its Opposition. Accordingly, Cassava objects to the R&R's recommendation with respect to its allegations of actual malice for the same reasons set forth in its B&P Objections (ECF No. 108), and expressly incorporates those arguments herein.

Courts have long recognized that, at the pleadings stage, actual malice is typically established "inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and is rarely admitted." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987). Accordingly, to survive a motion to dismiss, the complaint need only plead facts showing that the defendant plausibly acted "with knowledge that [its statements and implications] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986). The R&R appears to be imposing a higher standard of pleading on Cassava—one that would require it to assert direct evidence of QCM's knowledge at the time of publication. But that is not the standard. Cassava has more than plausibly alleged that QCM acted with both knowledge of falsity and reckless disregard for the truth of its accusations. Cassava should be permitted to engage in discovery to obtain the direct evidence of those plausible allegations.

23

IX.     **The R&R fails to address any of Cassava's allegations or arguments concerning causation.**

Finally, the R&R errs by failing to address any of Cassava's allegations or arguments concerning causation. According to the R&R, "Cassava has not – and could not – plead causation." (R&R at 15). The Magistrate Judge's analysis contains several critical legal and factual errors requiring *de novo* review. First, the R&R failed to address Cassava's claim of defamation *per se*. It is well settled that plaintiffs like Cassava that allege defamation *per se* are "exempt from having to prove 'special damages' in the form of a pecuniary or economic loss caused by the defamation." *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 299 (S.D.N.Y. 2023); *see also Nolan v. State*, 69 N.Y.S.3d 277, 291 (N.Y. App. Div. 2018) ("Assuming, without yet deciding, that plaintiff has a defamation *per se* claim, she need not establish special damages."); *VIP Pet Grooming Studio, Inc. v. Sproule*, No. 2021-04228, 2024 WL 172927, at *7 (N.Y. App. Div. Jan. 17, 2024) (same). The Magistrate Judge did acknowledge that one of the elements of defamation is either "special damages or *per se* actionability", (R&R at 10 (quoting *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)), but then failed to address Cassava's defamation *per se* claims. As discussed above, the FAC clearly alleged that the "QCM Defendant's statements and implications were defamatory *per se* because they charged Cassava with a serious crime, including fraud, and were of a nature tending to injure Cassava in its trade, business, and profession." (FAC at ¶ 469.)

Cassava also can and has set forth in the FAC allegations establishing special damages caused by QCM's statements. Special damages are defined as "the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation." *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 93, 21 N.Y.S.3d 6, 11 (2015) (quoting *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998)). The FAC specifically alleged that Cassava's enterprise value declined because

of QCM's statements. (*See* FAC ¶ 433.) The FAC also alleged that Cassava incurred (and will continue to incur) specific out-of-pockets expenses and losses arising from damage to Cassava's reputation caused by QCM's statements, including the cost of defending against multiple ongoing shareholder and securities fraud lawsuits. (*See, e.g.*, *id*. at ¶¶ 436–438.) Such diminution in property value (in this case, enterprise value) and out-of-pocket expenses constitute special damages. *Cromarty v. Prentice-Hall, Inc.*, 421 N.Y.S.2d 603, 604–05 (N.Y. App. Div. 1979).

The Magistrate Judge's decision to disregard Cassava's damages allegations and point out instead that Cassava's stock price "actually increased" in the immediate short-term following the QCM Report is inappropriate under the standard of review for a Rule 12(b)(6) motion. The Magistrate Judge was required to accept as true Cassava's allegation that as a result of QCM's statements, Cassava's stock went from trading at over $100 per share to under $50 per share. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("[T]he Court must accept all allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor."). The R&R draws no reasonable inference in Cassava's favor from any of its damages allegations. Instead, it disregards them completely. Though Cassava was not required to do so based on its defamation *per se* claims, it adequately pled special damages caused by QCM's statements.

## CONCLUSION

For the foregoing reasons, Plaintiff Cassava Sciences, Inc. respectfully requests that the Court reject the R&R and deny QCM's Motion to Dismiss.

Dated: February 6, 2024                Respectfully submitted,
                                           CASSAVA SCIENCES, INC.

                                           By its attorneys,

                                           */s/ J. Erik Connolly*

J. Erik Connolly (*admitted pro hac vice*)
   EConnolly@beneschlaw.com
   Illinois ARDC No. 6269558

Timothy Frey (*admitted pro hac vice*)
   TFrey@beneschlaw.com
   Illinois ARDC No. 6303335

Kate Watson Moss (*admitted pro hac vice*)
   kwatsonmoss@beneschlaw.com
   Illinois ARDC No. 6321176

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

Michael Vatis
   mvatis@beneschlaw.com
   NY Reg. No. 2258655

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1155 Avenue of the Americas
26th Floor
New York, NY 10036

**<u>CERTIFICATE OF SERVICE</u>**

I, Erik Connolly, hereby certify that a copy of the foregoing Objections to Magistrate Judge Wang's Report & Recommendation (ECF No. 110), filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 6, 2024.


Dated: February 6, 2024                                      *<u>/s/ J. Erik Connolly</u>*